# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SALLY FERRARI; ELAINE JOHNSON; JOHN MAGENHEIMER; ELIZABETH WILLIAMS; AND DAVID A. MANISCALCO, <br><br> Plaintiffs, <br><br> V. <br><br> POLAROID CORPORATION; PRIMARY PDC, INC; OEP IMAGING OPERATING CORPORATION, INC.; AND ONE EQUITY PARTNERS, INC., <br><br> Defendants. | **Civil Action No. 03-11275-MLW** |

# POLAROID CORPORATION'S MEMORANDUM OF LAW

## (IN SUPPORT OF ITS MOTION TO TRANSFER THE CASE OR, IN THE ALTERNATIVE, TO DISMISS PLAINTIFFS' COMPLAINT)

Jerome A. Hoffman
Matthew Lee Wiener[*]
DECHERT LLP
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, PA 19103
(215) 994-4000

Richard D. Glovsky
Marni G. Caputo
PRINCE, LOBEL, GLOVSKY & TYE LLP
585 Commercial Street
Boston, MA 02109
(617) 456-8000

Counsel for Polaroid Corporation

Dated: October 3, 2003

---

[*] A motion for the *pro hac vice* admission of Messrs. Hoffman and Wiener is pending before the Court.

## STATEMENT OF THE ISSUES

Last year Judge Walsh of the Bankruptcy Court for the District of Delaware ("Bankruptcy Court") approved the sale of the assets of the bankrupt debtor that Plaintiffs call "Old Polaroid" to the company that Plaintiffs call "New Polaroid." Judge Walsh ordered the assets cleansed of all employee benefit plan and related liabilities, and he enjoined Old Polaroid's employees from suing New Polaroid with respect to these liabilities. The Bankruptcy Court has specifically retained jurisdiction to enforce, implement, and interpret its order ("Sale Order"), which is attached to this brief (the relevant sections highlighted).

Active employees of Old Polaroid until they became permanently disabled, but never employees of New Polaroid, Plaintiffs allege that Old Polaroid unlawfully terminated their paid healthcare benefits before the sale and that New Polaroid refused to assume responsibility for these benefits. This brief presents two principal questions:

1.  *Transfer Motion.* Should the Court transfer the case to the U.S. District Court for the District of Delaware so that: (a) Judge Walsh can decide whether, as New Polaroid submits, the Sale Order forecloses Plaintiffs' claims; (b) the administration of the bankrupt estate can proceed undisturbed by Plaintiffs' request for the imposition of an order inconsistent with the Bankruptcy Court's Sale Order; and (c) this suit can proceed against the main defendant, Old Polaroid, which has invoked the Bankruptcy Code's automatic stay provision in this case?

2.  *Motion to Dismiss.* If the Court decides against transfer, should the Court dismiss Plaintiffs' Complaint because: (a) the Sale Order bars Plaintiffs' claims; (b) never having been employed by New Polaroid, Plaintiffs lack standing to sue New Polaroid; (c) New Polaroid is not liable for Old Polaroid's alleged benefit liabilities, which New Polaroid expressly declined to assume; and (d) Old Polaroid's benefit plans were terminable at will rather than, as Plaintiffs' Complaint assumes, vested?

# STATEMENT OF THE CASE[1]

In October 2001, Old Polaroid filed a bankruptcy petition in the Bankruptcy Court. The case was assigned to Judge Walsh, before whom it remains pending. *See* Docket, Ex. 1. In July 2002, Judge Walsh approved the sale of Old Polaroid's assets (including its name) to a third party that, following a corporate name change, is now called Polaroid Corporation and to which we and Plaintiffs refer simply as "New Polaroid."[2] *See* Complaint ¶ 11; Sale Order. The Bankrupty Court ordered the assets transferred to New Polaroid free and clear of Old Polaroid's liabilities (with limited exceptions not at issue), including all liabilities arising from Old Polaroid's benefit plans and the termination of Old Polaroid's employees. *See* Sale Order; Complaint ¶ 11. New Polaroid now conducts business as a new, independent entity, while Old Polaroid remains in bankruptcy. *See* Docket, Ex. 1. A reorganization plan has not yet been confirmed. *See id.*

Plaintiffs are former employees of Old Polaroid who, having become permanently disabled, sought and received benefits under Old Polaroid's Long-Term Disability ("LTD") Plan. The LTD Plan provided for salary continuation payments consisting of 70% of an

---

[1]    In addition to moving this Court to transfer the case or, in the alternative, to dismiss it, New Polaroid is filing an adversary proceeding in the Bankrupty Court to seek a declaration that the Bankruptcy Court Order bars Plaintiffs' claims, as purchasers often do when sued in contravention of a free-and-clear sale order. *See, e.g., In re Colarusso*, 280 B.R. 548 (Bankr. D. Mass. 2002) (Hillman, C.J.), *aff'd*, 295 B.R. 166 (1st Cir. 2003); *In re Paris Indus. Corp.*, 132 B.R. 504 (D. Me. 1991); *see also, e.g., In re G.S.F. Corp.*, 938 F.2d 1467 (1st Cir. 1991). Because they raise legal, not factual issues, adversary proceeding of this type are usually resolved expeditiously through cross-motions for summary judgement. *See, e.g., Colarusso.*

[2]    Old Polaroid has changed its name to Primary PDC, Inc., and it is designated as such in the Complaint's caption. New Polaroid is designated there as "Polaroid Corporation, Inc.," although the parties have stipulated that the correct name is "Polaroid Corporation." *See* Stipulation of Plaintiffs and Certain Defendants Regarding Waiver of Service, Timing of Response, and Naming of Parties (on file with the Court).

employee's last salary. A third-party insurer paid all benefits under the LTD Plan. *See* Factual Background ¶ II(B) *infra*. In addition to sponsoring the LTD Plan, Old Polaroid also allowed LTD benefit recipients to continue participating in its healthcare plans, and to this end coded them as "employees." It even paid for the portion of the plan premiums that the LTD recipients formerly had to pay themselves as active employees. *See id.*

In connection with the Bankruptcy, Old Polaroid terminated its employee benefit plans. Plaintiffs' LTD Plan salary continuation payments were unaffected; the plan's insurance carrier continues to pay the benefits. Plaintiffs' Old Polaroid-paid benefits under Old Polaroid's healthcare plans did not survive the plans' termination, just as the benefits of other plan participants did not. *See* Factual Background §§ II(B) & (C) *infra*.

Like all "parties in interest" to the bankruptcy proceedings, Plaintiffs received notice of the sale terms and were given a full opportunity to challenge or object to them before the Bankruptcy Court. Plaintiffs did nothing by way of challenge. *See* Factual Background § I(B) *infra*. Instead, Plaintiffs end-ran the Bankruptcy Court and brought this ERISA suit against Old Polaroid, New Polaroid, and New Polaroid's largest shareholder (One Equity Partners LLC). Old Polaroid has already invoked the Bankruptcy Code's automatic stay provision (11 U.S.C. § 362(a)). *See* Suggestion of Bankruptcy and Notice of Operation of Automatic Stay Provision ("Notice of Stay") (on file with the Court).

Counts I and II of Plaintiffs' Complaint seek to hold Defendants liable for Old Polaroid's termination of Plaintiffs' healthcare benefits under the Old Polaroid plans, while Count III seeks to hold Defendants liable because Old Polaroid allegedly did not insure these benefits. Much the same as the first three counts, but curiously pled under ERISA's anti-discrimination provision, § 510, 29 U.S.C. § 1140, Counts IV, V, and VI seek to hold

- 3 -

Old Polaroid liable for terminating Plaintiffs' paid healthcare benefits and New Polaroid

liable for not agreeing to continue them.

## FACTUAL BACKGROUND

The facts set forth below are drawn from Plaintiffs' Complaint; documents

referenced in, integral to, or relied upon in their Complaint; and public documents on file

with the Bankruptcy Court (all of them retrievable electronically from that court).[3]

I.    **NEW POLAROID PURCHASED OLD POLAROID'S ASSETS "FREE AND CLEAR" OUT OF THE BANKRUPTCY PROCEEDING.**

    A.    **The Bankruptcy Court Not Only Wiped the Purchased Assets Clean of Liabilities, But Also Enjoined Suits Against New Polaroid Seeking to Impose These Liabilities on It.  The Bankrupty Court Has Retained Jurisdiction to Interpret, Implement, and Enforce Its Order.**

Judge Walsh approved the sale of Old Polaroid's assets to New Polaroid free and

clear of all liabilities.[4]  *See* Sale Order at 14-15.  Issued after notice to all interested parties,

including Plaintiffs, *see* § I(B) *infra*, his carefully drafted order specifically provides that

New Polaroid "is not assuming[,] and shall have no liability or responsibility, as a

successor or otherwise" for, any "liabilities" or "obligations" "relating to or arising from"

---

[3]      In deciding a Rule 12(b)(6) motion, a district court may consider documents "integral to or explicitly relied upon in the complaint, even though not attached to the complaint, without converting the motion into one for summary judgment."  *The Clorox Co. of Puerto Rico v. The Procter and Gamble Commercial Co.*, 228 F.3d 24 (1st Cir. 2000) (citation omitted).  ERISA plans are among the documents that the First Circuit has allowed district courts to consider.  *See, e.g., Cogan v. Phoenix Life Ins. Co.*, 310 F.3d 238, 241 n.4 (1st Cir. 2002).  A district court may likewise consider "matters fairly incorporated within" a complaint and "matters susceptible to judicial notice, and may in particular 'look to matters of public record in deciding a Rule 12(b)(6) motion.' " *In Re Colonial Mortgage Bankers Corp. v. Lopez-Stubbe*, 324 F.3d 12, 15-16 (1st Cir. 2003) (citation omitted).  Consistent with these well-established principles, we have attached to this brief the documents listed on the Table of Documents that appears in the Appendix.  The abbreviations for the documents used in this brief also appear on the Table.

[4]      The Bankruptcy Court found that New Polaroid was "not an 'insider' of any of the Debtors," but rather a "good faith purchaser" in an "arm's-length bargain[]."  *Id.* at 7; *see also id.* at 3 (concluding that the assets were marketed in accordance with the court's orders); *id.* at 8, 18 (concluding that the assets were sold to the highest bidder and that New Polaroid paid fair consideration for the acquired assets).

-4-

Old Polaroid's "ownership" of the assets or Old Polaroid's "operations" "on or prior to the Closing Date." *Id.* at 20-21 (¶ 23). Included are "any obligations which might otherwise arise [under], or pursuant to, the Employee Retirement Income Security Act of 1974 [ERISA]," among them the "obligation to pay" any "benefits" to employees of Old Polaroid. *Id.* (¶ 23). As for these ERISA liabilities: "[T]he Purchaser [New Polaroid] shall have no liability with respect to any . . . employee pension, employee welfare or retention, compensation, benefit and/or incentive plan, agreement, practices, or program" to which Old Polaroid was "a party." *Id.* (¶ 23) The Sale Order also provides that New Polaroid is not liable for the termination of Old Polaroid's employees. *Id.* (¶ 23).

Judge Walsh backed his free-and-clear order with an injunction: Anyone holding any "Interest" in Old Polaroid—defined to mean any liability related to Old Polaroid, *see id.*— is "forever barred, estopped, and permanently enjoined from asserting against [New Polaroid] . . . such person's . . . respective Interests." *Id.* at 15 (¶ 7). Further: "No such persons . . . shall assert against" New Polaroid "any liability," "claim, or obligation," relating to or arising from the ownership or operation of the Acquired Assets . . . ." *Id.* (¶ 7). Another provision of the Sale Order specifically enjoins any "party" to "any employee welfare" "plan," "agreement," or "program," from suing New Polaroid with respect to "any and all claims arising from or relating thereto." *Id.* at 22-23 (¶ 23 ).

What is more, the Sale Order specifically bars and enjoins any party in interest from suing New Polaroid under a successor liability theory: *"The Purchaser is not and shall not be deemed a successor of or to the Debtors for any Interest against or in the Debtors, [or] the Acquired Assets . . . ."* Id. at 23 (¶ 24) (emphasis added). This injunction extends to Old Polaroid's employees in particular: "[A]ll . . . employees, . . . [and] former

employees shall be, and hereby are, forever barred . . . and permanently enjoined from asserting such Interests . . . against" New Polaroid as "an alleged successor . . . with respect to any Interest of any kind whatever such person . . . had, has or may have against or in "Old Polaroid." *Id.* at 24 (¶ 24).

The Sale Order has this retention-of-jurisdiction clause:

> This Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order as well as to enforce and implement the terms and provisions of the [attached] Purchase Agreement, including . . . retaining jurisdiction to interpret, implement, and enforce the provisions of this Order . . . .

*Id.* at 25 (¶ 27).[5]

B.  **Before Issuing the Sale Order, the Bankruptcy Court Gave Plaintiffs and Other Interested Parties the Opportunity to Voice Any Objections to the Terms of the Sale; Unlike Other Participants in Old Polaroid's Employee Benefit Plans, Plaintiffs Did Not Object.**

Before issuing the Sale Order, Judge Walsh afforded all interested parties, including Plaintiffs, an opportunity to object to its terms at a sale hearing. Notice was provided to each Plaintiff individually by mail, *see* Declaration of Mailing , Ex. 2,[6] and also published in three major newspapers: *The Boston Globe, The New York Times, The Wall Street Journal. See* Notice of Publication, Ex. 3.[7] Judge Walsh has found that

---

[5]  On September 19, 2003, New Polaroid's counsel sent Plaintiffs' counsel a copy of the Sale Order and called his attention to the provisions identified above. No response has been received.

[6]  Four of the Plaintiffs' names (Elaine Johnson, John Magenheimer, Elizabeth Williams, and David A. Maniscalco) appear on pages 607, 723, 1288, and 730, respectively, of Exhibit B of the Declaration of Mailing, Ex. 2. Notice to one of the Plaintiffs, Sally Ferrari (who suffers from Alzheimer's disease, *see* Complaint ¶ 6), was sent to her husband. His name appears on page 395 of Exhibit B to the Declaration of Mailing, Ex. 2.

[7]  Both the newspaper notice and the notice served on each Plaintiffs had the same text. *Compare* Notice of Auction and Sale Hearing accompanying Declaration of Mailing, Ex. 2 (Notice of Auction and Sale Hearing) *with* notices accompanying the Notice of Publication, Ex. 3. The notice provides, in relevant part, that under "the terms of the Asset Purchase Agreement . . . the Debtors are selling" the business assets "free and clear of liens, claims, encumbrances and interests" to New Polaroid, "subject to higher and better offers and Court approval"; that an auction would be held on June 26, 2002; that a sale hearing would be held

"adequate and sufficient notice" was "given to all parties-in-interest" and that "all interested parties" were "afforded an opportunity to be heard" with respect to the sale. Sale Order at 2-3; *see also id.* at 4 (confirming adequacy of notice).

On June 28, 2002, the Bankruptcy Court held a hearing on the terms of the proposed sale. *See* Sale Order at 2. Plaintiffs did not participate in the hearing. Nor, either before or after the hearing, did Plaintiffs voice any objections to, or otherwise communicate with, the Bankruptcy Court about the proposed sale. *See Docket*, Ex. 1. Plaintiffs have not since sought any relief from the Bankrupty Court. *See id.*

By contrast, numerous retirees objected to the proposed sale agreement because it made no provision for New Polaroid's assumption of Old Polaroid's retiree healthcare benefits. *See* Preliminary Objection of the Official Committee of Retirees (Bankruptcy Court docket no. 1024). Old Polaroid eventually reached a pre-sale court-approved settlement with the retirees *within* the context of the bankrupty proceeding. *See* Stipulation and Order (i) Settling Claims and Controversies and (ii) Providing for Release (Bankruptcy Court docket no. 1067).

## II.   PLAINTIFFS' EMPLOYMENT WITH OLD POLAROID AND LTD COVERAGE.

### A.   Plaintiffs Worked for Old Polaroid Until They Became Permanently Disabled.

Plaintiffs were once employed by Old Polaroid. Between 1989 and 1998, each Plaintiff suffered a disability that rendered him or her permanently unable to work. It is undisputed that none of the Plaintiffs was working or able to work for Old Polaroid when

---

before the Bankruptcy Court on June 28, 2002; and that all objections to the sale had to be lodged with the Bankruptcy Court or would be forever waived. *See* Notice of Auction and Sale Hearing Accompanying the Declaration of Mailing, Ex. 2. Recipients of the notice were instructed on how to obtain copies of the documents referenced in it. *See id.*

New Polaroid bought its assets. None had worked for years: Sally Ferrari qualified for LTD benefits in 1997, John Magenheimer and David Maniscalco both in 1998, Elaine Johnson in 1991, and Elizabeth Williams in 1989. *See* Complaint ¶¶ 6-10.

### B.     Plaintiffs Received LTD Benefits from Old Polaroid.

Plaintiffs received benefits under Old Polaroid's LTD Plan. The LTD Plan provided for salary continuation payments consisting of 70% of an employee's last salary. *See* LTD Plan at 6 , Ex. 4. Payments were made through a third-party insurance carrier. Plaintiffs continue to receive full benefits under the LTD Plan from the carrier. *See* Complaint ¶ 28.[8]

Once Plaintiffs qualified for coverage under the LTD Plan, Old Polaroid continued their coverage under its medical and dental plans, and it was for this reason and this reason alone that they were coded administratively as "employees." Both plans allowed an LTD recipient to continue participating "until he terminates, retires, dies, or recovers from such disability." *See* Medical Plan, Ex. 5, at 6 (§ 3.04); Dental Plan, Ex. 6, at 7 (§ 3.04).

At the same time, Old Polaroid reserved the right to terminate both plans, like the LTD Plan, at any time in its discretion. *See* Medical Plan, Ex. 5, at 14 (§ 9.02) (providing that the "the Company shall have no obligation whatsoever to maintain the Plan for any given length of time and may discontinue or terminate the Plan at any time without liability."); Dental Plan, Ex. 6, at 16 (§ 9.02) (same).

Old Polaroid paid the healthcare premiums in full for LTD recipients whereas active employees had to a pay a share of the premiums themselves. Plaintiffs' Complaint alleges that Old Polaroid sent each Plaintiff a letter confirming this: "All insurance

---

[8]     Old Polaroid reserved the right to terminate or modify the LTD Plan in its sole discretion. *See* LTD Plan, Ex. 4, at 15.

premiums that were being deducted from your Polaroid paychecks will be paid by Polaroid while you are on LTD." Complaint ¶ 26.

### C. Before the Sale of Old Polaroid's Assets to New Polaroid, Plaintiffs' Paid Healthcare Benefits Were Terminated.

On July 2, 2002, Old Polaroid informed Plaintiffs by letter that, as a result of the bankruptcy, it was terminating their paid healthcare benefits, but that the insured LTD Plan payments would continue. *See* Complaint ¶ 32; Old Polaroid Letter to Participants, Ex. 7. Old Polaroid stopped paying Plaintiffs' healthcare premiums on July 31, the date the sale closed. *See* Old Polaroid Letter to Participants, Ex. 7.[9] Old Polaroid's active employees lost coverage under Old Polaroid's plans, too. As alleged, New Polaroid did not cover Plaintiffs under its benefit plans. *See* Complaint ¶¶ 32-34.

## ARGUMENT

## I. THE COURT SHOULD TRANSFER THE CASE TO THE U.S. DISTRICT COURT FOR THE DISTRICT OF DELAWARE.[10]

### A. There Is a Strong Presumption That, in the Interest of Justice, All Cases Related to an Ongoing Bankruptcy Proceeding Should Be Transferred to the Bankruptcy Court.

28 U.S.C. § 1404(a) gives a district court discretion to transfer a case to another district court in which the case might originally have been brought "[f]or the convenience of the parties, in the interest of justice."[11] The phrase "interest of justice" does not qualify

---

[9]    Polaroid understands that each Plaintiff has qualified for Social Security disability benefits, which means that they are Medicare-eligible even if under age 65. *See* 42 U.S.C. § 426(b)(2)(A).

[10]    Upon transfer, the case would be referred to the Bankruptcy Court under the District of Delaware's Standing Order of Reference.

[11]    The First Circuit reviews transfer decisions only for abuse of discretion. *See, e.g., Coady v. Ashcroft & Gerel*, 223 F.3d 1, 11 (1st Cir. 2000); *see also Edwards v. First Am. Title Ins. Co. of Nevada*, 19

the phrase "for the convenience of the parties." It "is a separate component of a § 1404(a)

transfer analysis," *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220 (7th Cir. 1986),

meaning that it "may be determinative in a particular case, even if the convenience of the

parties and the witness might call for a different result." *Id.; accord In re Madrid*, 215

F.3d 1341 [unpublished], 1999 WL 507359, at *2 (Fed. Cir. 1999) (same).

There is a strong presumption that, in the interest of justice, all cases related to a

pending bankruptcy proceeding, whether filed in another Bankruptcy court or a district

court, should be transferred to the district in which the Bankruptcy proceeding is pending.

*See, e.g., Havre Benard Ltd v. Nathan Rothschild*, No. 02-Civ.4033 (JGK), 2003 WL

367859, at *6-7 (S.D.N.Y. 2003); *In re Reliance Group Holdings, Inc.*, 273 B.R. 374, 406

(Bankr. E.D. Pa. 2002); *Hohl v. Bastian*, 279 B.R. 165, 177-78 (W.D. Pa. 2002); *Blanton

v. IMN Fin. Mort. Corp.*, 260 B.R. 257, 266-67 (M.D.N.C. 2001); *In re Krystal Cadillac-

Oldsmobile-GMC Truck, Inc.*, 232 B.R. 622, 627-28 (E.D. Pa. 1999); *Larami v. Yes!

Entertainment Corp.*, 244 B.R. 56, 61 (D.N.J. 2000); *Wedlo, Inc. v. Lorch, Wedlo, Inc.*,

212 B.R. 678, 679 (Bankr. M.D. Ala. 1996); *In re Michael Carmine Galluci*, 63 B.R. 93

(Bankr. R.I. 1986); *Kotlicky v. Belford*, 64 B.R. 679, 682 (N.D. Ill. 1986); *Seybolt v. Bio-

Energy of Lincoln, Inc.*, 38 B.R. 123, 128 (D. Mass. 1984).

---

F.3d 1427 [unpublished], 1994 WL 102402, at * 6 (1st Cir. 1994) ("Only in unusual circumstances would we
disturb a district court's [§ 1404(a)] exercise of discretion."), *cert. denied*, 513 U.S. 915 (1994).

B.    **In the Interest of Justice, this Case Should Be Transferred to the District of Delaware Because The Bankruptcy Court Has Retained Jurisdiction to Enforce Its Order, Plaintiffs Are Seeking Relief Against the Debtor, and the Relief Plaintiffs Seek Against New Polaroid May Affect the Distribution to the Estate's Creditors.**[12]

The interest-of-justice factor decidedly favors transfer for three principal reasons:

1.    *Retention of jurisdiction.* Judge Walsh has retained jurisdiction over all disputes arising under or related to, requiring an interpretation of, or seeking to enforce the Sale Order. *See* Sale Order at 25. Nothing is more central to this case than the Sale Order.

2.    *Unavailability of relief against Old Polaroid.* Old Polaroid has invoked the Bankruptcy Code's automatic stay provision in response to this suit. *See* Notice of Stay. It is the key defendant; New Polaroid is being sued merely as an alleged successor. The claims for benefits pled in Counts I and II of the Complaint are claims under Old Polaroid's, not New Polaroid's, plans. The claim pled in Count III is for Old Polaroid's, not New Polaroid's, breach of fiduciary duty. The "discrimination" claims pled in Counts IV, V, and VI arise from Old Polaroid's termination of Plaintiffs' employment and New Polaroid's decision not to assume Old Polaroid's ERISA liabilities.

---

[12]    The Bankruptcy Court has jurisdiction over this case. 28 U.S.C. § 1334 confers jurisdiction on the federal courts over cases "under title 11 [the Bankruptcy Code]," *id.* § 1334(b), and cases "arising under title 11, or arising in or related to cases under title 11," § 1334(c)(1). (The district courts, in turn, have authority to assign such cases to a bankruptcy court. *See* 28 U.S.C. § 157(a) & (b)(1).) If, as here, a case "involves a subsequent purchaser's interpretation of a sale order 'free and clear' . . . an order that can only be issued by a Bankruptcy court," *In re Middlesex Power Equip. & Marine, Inc.*, 292 F.3d 61, 68 (1st Cir. 2002), then it arises either "in a case under title 11 or perhaps arises under title 11." *Id. Accord In re Colarusso*, 280 B.R. 548 (Bankr. D. Mass. 2002). And if, as here, a case may " 'potentially have some effect on the bankrupt estate,' " *Middlesex*, 292 F.3d at 68 (quoting *In re G.S.F. Corp.*, 938 F. 2d 1467, 1475 (1st Cir. 1991), then it falls within the Bankruptcy court's "related to" jurisdiction. *See id.* What is more, a bankruptcy court always retains jurisdiction to enforce its own order, *see, e.g., In re Public Serv. Co. of New Hampshire*, 148 B.R. 702 (Bankr. D.N.H. 1992), *aff'd*, 848 F. Supp. 318 (D.R.I. 1994), *aff'd*, 43 F.3d 763 (1st Cir. 1995), *cert. denied*, 514 U.S. 1108 (1995); *In re Paris Indust. Corp.*, 132 B.R. 504, 507-08 (D. Maine 1991), as the Bankruptcy Court here did. It is also clear that a bankruptcy court, like the district courts to which it is adjunct, has jurisdiction to hear ERISA cases. *See, e.g., Browning v. Levy*, 283 F.3d 761, 772 (6th Cir. 2002).

3.    *Interference with the administration of the bankrupt estate arising from the possible imposition of inconsistent orders.* Plaintiffs ask the Court to impose liability on New Polaroid contrary to the free-and-clear provisions of the Sale Order. New Polaroid paid for assets free of ERISA liabilities and other encumbrances; New Polaroid would not otherwise have bought the assets. *See* Sale Order at 11. If the Court were to hold New Polaroid liable for Old Polaroid's alleged ERISA obligations, as Plaintiffs ask, New Polaroid could seek to rescind the sale or modify the sale price. This could reduce the pool of assets available for distribution to the estate's creditors. *See, e.g., In re Paris Indust. Corp.*, 132 B.R. 504, 507-08 (D. Maine 1991) (noting this very possibility as a reason for enjoining successor liability claims against the purchaser of assets from a bankrupt debtor where, as here, the bankruptcy court had not yet confirmed a plan of reorganization). Judge Walsh should decide the propriety of any relief that so directly affects the administration of the estate.

As for the convenience-of-the-parties factor, it does not point one way or the other. None of the relevant facts are in dispute. Plaintiffs' complaint raises only legal questions. Neither deposition nor trial testimony will likely be needed. Documents are few in number, and the key ones are already on file with the Bankruptcy Court in Delaware.

## II.    IF THE COURT DOES NOT TRANSFER THE CASE, THE COURT SHOULD DISMISS PLAINTIFFS' COMPLAINT WITH PREJUDICE.[13]

Subsection A below establishes that the Court should dismiss the Complaint because the Sale Order precludes each of its claims, subsection B because Plaintiffs lack ERISA standing to sue New Polaroid, and subsection C because the Complaint fails to state a claim under ERISA. New Polaroid seeks dismissal under Rule 12(b)(6) and, because Plaintiffs lack standing to sue, also under Rule 12(b)(1).[14]

### A.    The Sale Order Bars Plaintiffs' Claims.

Rule 12(b)(6) permits dismissal of a complaint barred by another court's order under the doctrine of claim preclusion or *res judicata*. *See, e.g., Colonial Mortgage Bankers*, 324 F.3d at 16 (affirming dismissal of complaint under Rule 12(b)(6) because a prior order was *res judicata*). Here the Sale Order bars Plaintiffs' claims.

### 1.    A Bankruptcy court may order a bankrupt estate's assets sold free and clear; its order binds all "parties in interest."

Section 363(f) of the Bankruptcy Code gives a bankruptcy court the authority to order the sale of the debtor's property "free and clear of any interest in such property." 11 U.S.C. § 363(f). Nearly all courts have construed "interest in property" to cover not only

---

[13]    In deciding a motion under Rule 12(b)(6), the Court should "assume the truth of all well-pleaded facts and indulge all reasonable inferences that fit the plaintiff's stated theory of the case." *In re Colonial Mortgage Bankers Corp.*, 324 F.3d 12, 15 (1st Cir. 2003). The Court need not defer to Plaintiffs' legal conclusions and inferences not reasonably drawn from the well-pled facts. *See, e.g., Glassman v. Computervision*, 90 F.3d 617, 628 (1st Cir. 1996). It likewise need not "credit 'bald assertions, unsupportable conclusions, and opprobrious epithets' woven into the fabric of the complaint." *Id.* (citations omitted). As this Court has observed, the "standard for stating a claim upon which relief can be granted is not . . . 'toothless.' Plaintiffs must 'set forth in their complaint factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable legal theory.'" *Raso v. Lago*, 958 F. Supp. 686, 694 (D. Mass. 1997) (Wolf, J.), *aff'd*, 135 F.3d 11 (1st Cir. 1998), *cert. denied*, 525 U.S. 811 (1998).

[14]    Plaintiffs must have standing in order for the Court to have subject matter jurisdiction under ERISA. *See, e.g., Nahigian v. Leonard*, 233 F. Supp.2d 151, 169 (D. Mass. 2002) (citing *Crawford v. Lamantia*, 34 F.3d 28, 32 (1st Cir. 1994)), *cert. denied*, 514 U.S. 1124 (1995); *see also Crawford*, 34 F.3d at 32 (explaining in an ERISA case that standing " 'goes to the very power of the court to act' ") (citations omitted).

specific (*in rem*) interests in the debtor's property, like liens, but also any " 'other obligations that may flow from the ownership of the property.' " *In re Trans World Airlines, Inc.*, 322 F.3d 283, 289 (3d Cir. 2003) (citation omitted); *accord In re Colarusso*, 280 B.R. 548, 557 (D. Mass. 2002) (specifically endorsing the "broad reading of the term 'interest' ").[15]

Legal claims generally, and employment claims in particular, fall within the definition of "interests." *Trans World Airlines*, the now-leading case, held that § 363 authorized the sale of TWA's assets to American Airlines free of both employment discrimination claims and related liabilities under a consent decree. Similarly, *In re Luckie Smokeless Coal Co.*, 99 F.3d 573 (4th Cir. 1996), held that § 363(f) authorized the sale of the debtor's assets free of the debtor's financial obligations to an employee benefit plan and fund. *See id.* at 582. *Cf. Carcasole-Lacal v. American Airlines, Inc.*, Civ. A. No. CV-02-4359 (DGT), 2003 WL 21525484 (E.D.N.Y. July 8, 2003) (holding that the purchaser of assets out of bankruptcy was not liable for the debtor's obligations under an early retirement plan).

Once entered, a Bankruptcy court sale order precludes claims by a "party in interest"—that is, anyone whose interests may have been adversely affected by the sale's terms, *see, e.g., In re Savage Indus., Inc.*, 43 F.3d 714, 718 (1st Cir. 1994)—who thereafter asserts claims disposed of by the order. *See, e.g., In re Calarusso*, 280 B.R. 548 (D. Mass. 2002); *Cummings Properties, LLC v. Heidelberg Print Finance Americas*, No. Civ.A.01-

---

[15]    The authority to provide for a free and clear sale exists even independent of § 363(f). It is a function of a bankrupty court's inherent powers to administer a bankrupt estate. *See, e.g., Trans World Airlines*, 322 F.3d at 291 (holding that "the priority scheme of the Bankruptcy Code supports the transfer of TWA's assets free and clear" irrespective of § 363(f)); *In re White Motor Credit Corp.*, 79 B.R. 944, 948 (holding that the "authority is implicit in the court's general equitable powers and in its duty to distribute debtor's assets").

11027-GA0, 2002 WL 1839252, at *3 (D. Mass. Aug. 12, 2002); *see also, e.g., ITOFCO v. Megatrans Logistics, Inc.*, 322 F.3d 928, 932 (7th Cir. 2002) (Posner, J.) (holding that a bankruptcy sale order is entitled to *res judicata* effect); *In re Clinton St. Food Corp.*, 254 B.R. 523, 530 (S.D.N.Y. 2000) (same); *cf. Savage*, 43 F.3d at 720 n.9 (providing that a sale order is the "functional equivalent" of an "order confirming a conventional chapter 11 reorganization plan"). *See generally FCIC v. Shearson-American* Express, 996 F.3d 493, 498 (1st Cir. 1993) (holding that unappealled bankruptcy court "[o]rders, judgments, and decrees" are entitled to *res judicata* effect); *In re Belmont Realty Corp.*, 11 F.3d 1092, 1095 (1st Cir. 1993) (noting that *res judicata* applies to bankruptcy sale orders).

Litigants who file suit in disregard of a free-and-clear sale order are subject to an injunction by the issuing bankruptcy court. *See, e.g., Paris Indus.* 132 B.R. at 508-10 (D. Me. 1991) (enjoining successor liability suit against purchaser of assets sold free and clear out of bankruptcy); *see also In re All Am. Ashburn*, 59 B.R. at 191 (same); *see also In re P.K.R. Convalescent Ctrs., Inc.*, 189 B.R. 90, 96 (E.D. Va. 1995) (same with respect to suit brought by state regulatory agency against purchaser); *In re WBC Partnership*, 189 B.R. 97 (Bankr. E.D. Va. 1995) (same); *In re White Motor Credit Corp.*, 75 B.R. 944 (Bankr. N.D. Oh. 1987) (same with respect to a suit by products liability claimants). *See generally In re GSF Corp.*, 938 F.2d 1467 (holding that a bankrupty court has authority under 11 U.S.C. § 105(a) to issue an injunction enjoining an action contrary to the terms of the court's order of judgment).

2.    **The Sale Order clears the purchased assets of the liabilities pled in the Complaint against New Polaroid.**

The Sale Order expressly provides that New Polaroid is not responsible for Old Polaroid's ERISA liabilities, the termination of its employees, or its benefit plan

obligations. *See* Factual Background § I(A), *supra*. As such, the order plainly bars each of Plaintiffs' claims. The six counts of the Complaint break down as follows:

--   *Counts I and II (alleged claim for benefits).* The first two counts seek nothing more than to recover benefits under *Old Polaroid's* welfare plans. Count I proceeds under a straight denial-of-benefits theory, Count II under a promissory estoppel theory. The sole factual basis of both Count I and Count II is *Old Polaroid's* alleged promise of benefits in a letter that each Plaintiff (allegedly) received from Old Polaroid at the time he or she was first approved for LTD coverage. *See* Complaint ¶¶ 35-43. Receipt of the letter predated the sale of assets by years—five years in the case of Plaintiff Sally Ferrari (who applied for LTD benefits in 1997), *see id.* ¶ 6; four years in the case of Plaintiff John Magenheimer (who applied for LTD benefits in 1998), *see id.* ¶ 7; eleven years in the case of Plaintiff Elaine Johnson (who applied for LTD benefits in 1991); twelve years in the case of Plaintiff Elizabeth Williams (who applied for LTD benefits in 1989), *see id.* ¶ 9; and four years in the case of Plaintiff David Maniscalco (who applied for LTD benefits in 1998), *see id.* ¶ 10.

--   *Count III (alleged breach of fiduciary duty).* The third count charges *Old Polaroid* with breaching its fiduciary duty by failing to insure the benefits that Plaintiffs seek to recover. No conduct is attributed to New Polaroid.

--   *Counts IV, V, and VI (alleged discrimination under § 510 of ERISA).* Counts IV, V, and VI allege that New Polaroid unlawfully refused to hire Plaintiffs to avoid paying them healthcare benefits. *See* Compliant ¶¶ 49, 53. This is but another way of claiming that New Polaroid is liable for failing to assume Old Polaroid's alleged promise of paid healthcare benefits. Plaintiffs were not seeking hire from New Polaroid. According to their own allegation, they were at the time of the sale, and are now, permanently unable to work.

B.     **Never Having Been New Polaroid Employees or Participants in a New Polaroid Plan, Plaintiffs Do Not Have Standing to Sue New Polaroid.**

ERISA's civil enforcement provision, § 502(c), confers standing to sue only on plan participants, beneficiaries, fiduciaries, and the Secretary of Labor. *See* 29 U.S.C. § 1132(c); *Nahigian v. Leonard*, 233 F. Supp.2d 151, 165 (D. Mass. 2002). We assume that Plaintiffs intend to sue as participants; that is the suggestion in their Complaint. But while Plaintiffs allege that they were participants in Old Polaroid's Plans, they do not allege that they were participants in New Polaroid's plans. They allege just the opposite—that New

- 16 -

Polaroid never made them participants in its plans. *See* Complaint ¶¶ 44-58. Hence Plaintiffs may have standing to sue Old Polaroid (at least in the Bankruptcy Court), but they do not have standing to sue New Polaroid.

Participant standing is limited to employees of the plan sponsor and its "former employees who have a 'reasonable expectation of returning to covered employment' and/or a 'colorable claim' to vested benefits." *Crawford v. Lamantia*, 34 F.3d 28, 32 (1st 1994); *accord, Nahigian*, 233 F. Supp.2d at 165-66.[16] Employment with the plan sponsor is a condition of participant status under any ERISA plan. *See* 29 U.S.C. § 1002(7); *Nationwide Mut. Life Ins. Co. v. Darden*, 503 U.S. 318, 321 (1992). Non-employees cannot sue under ERISA. *See, e.g., Dykes v. Depuy, Inc.*, 140 F.3d 31, 37 (1st Cir. 1998) (so holding in an ERISA § 510 case).

Plaintiffs are neither current nor former employees of New Polaroid. Hence they could not have a claim for benefits, colorable or otherwise, under New Polaroid's plans. Plaintiffs' claim is to recover vested benefits under Old Polaroid's plans as Old Polaroid employees. That does not give them standing to sue New Polaroid.

This limitation on standing makes perfectly good sense. ERISA concerns itself with protecting employees from the reduction of, and interference with, promised benefits. Its standing rules track this purpose. *See, e.g., Nahigian*, 233 F. Supp.2d at 151; *see also Becker v. Mack Trucks, Inc.*, 281 F.3d 372, 381 (3d Cir. 2002) (emphasizing that ERISA protects promised benefits, not the benefits that applicants would have been entitled had they been hired; protecting the latter "is inconsistent with Congress's purpose in enacting

---

[16]     *Crawford* affirmed a decision of this Court. *See Crawford v. Magee*, Civ. A. No. 89-1038-WF, 1993 WL 438463 (D. Mass. Oct. 12, 1993) (Wolf, J.).

ERISA"). New Polaroid never promised Plaintiffs benefits. The alleged promise was Old Polaroid's.

C.     **The Complaint Otherwise Fails to State a Claim.**

1.     **Counts I, II, and III (recovery of benefits, promissory estoppel, and breach of fiduciary duty) fail to state a claim because New Polaroid did not assume any of Old Polaroid's ERISA liabilities and because Plaintiffs can pursue Old Polaroid in the Bankruptcy Court.**

It is unclear whether Counts I, II, and III are pled against New Polaroid or just Old Polaroid. Counts I and II relate only to promises that Old Polaroid *allegedly* made to Plaintiffs; Count III relates only to Old Polaroid's *alleged* fiduciary breach. None of the allegations in these Counts concern or relate to New Polaroid.

In any case, Plaintiffs have no basis for pleading Counts I, II, and III against New Polaroid. A "corporation which acquires another corporate entity's assets does not assume the seller's liabilities." *In re Savage Indus., Inc.*, 43 F.3d 714, 717 n.4 (1st Cir. 1994); *accord Devine v. Devine Food Brokers, Inc. v. Wampler Foods, Inc.*, 313 F.3d 616, 618 (1st Cir. 2002). Exceptions to this "general rule," *Carreiro v. Rhodes Gill and Co.*, 68 F.3d 1443, 1447 (1st Cir. 1995), are narrow and few. *See, e.g., Savage Indust.*, 43 F.3d at 717 n.4; *see also Massachusetts Carpenters Gen. Collection Agency v. Belmont Concrete Corp.*, 139 F.3d 304, 307-08 (1st Cir. 1998). None are invoked here.

ERISA liabilities are no different than any other liabilities. A buyer that does not agree to assume them is not responsible for them. *See, e.g., Carcasole-Lacal v. American Airlines, Inc.*, CV-02-4359 (DGT), 2003 WL 21525484, at *4 (E.D.N.Y. July 8, 2003) (holding that, having disavowed assumption under a bankruptcy court-approved sale agreement, the buyer was not liable for the seller's obligations under an early retirement program); *Redman v. FDIC*, 794 F. Supp. 20, 23 (D. Me. 1992) (reaching the same result

with respect to an ERISA severance plan). New Polaroid did not agree to assume Old Polaroid's ERISA liabilities; it expressly declined to do so. *See* Exhibit A to Sale Order (appearing in the Appendix as Ex. 8), at 18-19, 47-50.

An equally significant reason why New Polaroid is not liable as a successor is that Plaintiffs have not pursued their claims against Old Polaroid in the Bankruptcy Court. Successor liability depends on the absence of a remedy against the seller. It is usually imposed because the seller has disappeared. If the seller is the debtor in a pending bankruptcy case, the plaintiff has a remedy against the seller, and a claim will not lie against the buyer as an alleged successor. *See, e.g., Savage*, 43 F.3d at 720 ("As a general rule, a successor to the chapter 11 debtor would be absolved of strict tort liability if the claimant failed to pursue any available chapter 11 remedy."); *see also Conway v. White Trucks*, 885 F.2d 90, 96 (3d Cir. 1989) (holding that the plaintiffs could not sue a purchaser of a tortfeasor's assets under a successor liability theory because they had not attempted to pursue their claims against the bankrupt seller in Bankruptcy court).

2.    **Counts I and II (recovery of benefits and promissory estoppel) fail to state a claim because Old Polaroid never vested the LTD benefits; instead, Old Polaroid reserved the right to terminate the benefits in its discretion.**

All of the LTD-related benefits claimed in the Complaint—medical, dental, and life insurance, *see* Complaint ¶¶ 21-23—constitute welfare (as distinct from pension) benefits under ERISA. *See* 29 U.S.C. § 1002(1). An employer may modify or eliminate welfare benefits at any time, unless the employer drafts its plans to say otherwise. *See, e.g., Curtis-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 74 (1995); *Campbell v. BankBoston, N.A.*, 327 F.3d 1, 7 (1st Cir. 2003); *Allen v. Adage, Inc.*, 967 F.2d 695, 798 (1st Cir. 1993); *Center v. First Int'l Life Ins. Co.*, Civ. A. No. 94-11596-PBS, 1997 WL 1364473, at *7-9

- 19 -

(D. Mass. Mar. 13, 1997). The vesting of welfare benefits requires express vesting language. Silence is not enough. *See, e.g., First Int'l Life Ins.*, 1997 WL 136473, at *10.[17]

There is no vesting language in Old Polaroid's plans. Like the employer in *First International Life*, Old Polaroid specifically reserved the right to terminate the LTD Plan, the Medical Plan, and the Dental Plan. *See* § Factual Background, § II(B).

Naturally, Plaintiffs do not rely on the plans. Instead they rely upon a single sentence of a letter that each Plaintiff allegedly received from Old Polaroid upon qualifying for LTD benefits. It reads: "All insurance premiums that were being deducted from your Polaroid Paychecks will be paid for by Polaroid while you are on LTD." Complaint ¶ 26. Plaintiffs allege that this sentence "constituted a novation of the LTD plan's terms," *id.* ¶ 37—specifically, a promise to provide free benefits so long as Plaintiffs "remained disabled," *id.* ¶ 23.[18]

The letter contains no such promise. The quoted language merely confirmed that Old Polaroid would pay the premiums under the healthcare plans for which Plaintiffs were formerly responsible.[19] It did not obligate Old Polaroid to maintain its healthcare plans

---

[17] ERISA governs benefit plans that employers choose to sponsor; it does not require employers to sponsor plans in the first place. That decision is committed to each employer's discretion. *See, e.g., Shaw v. Delta Airlines, Inc.*, 528 U.S. 85, 91 (1999); *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996).

[18] Plaintiffs say, alternatively, that the letter constituted a "summary plan description." Complaint ¶ 37. In fact the letter is neither a novation nor a summary plan description. But the Court need not concern itself with what legal characterization to assign the letter because the language on which Plaintiffs rely (*see* Complaint ¶ 26) appears in the applicable plans themselves and, as noted in the next paragraph, does nothing whatsoever to vest benefits (were that even possible given Old Polaroid's express reservation of rights to terminate the plans).

[19] Because nothing in the letter promises vested benefits, the Court need not address separately Count II, which purports to state a claim for promissory estoppel. *See* Complaint ¶ 42. A viable promissory estoppel claim under ERISA would require reasonable reliance on the representation. *See, e.g., First Int'l*, 1997 WL at *13. Plaintiffs could not reasonably have read the letter quoted in paragraph 26 to vest benefits. There is another, perhaps more fundamental, problem with Plaintiffs' theory: even had the letter vested benefits, it could not form the basis of an estoppel claim since the letter would have contradicted the plan's anti-vesting provision. First Circuit law holds that estoppel may not be used under ERISA to modify a plan,

however long Plaintiffs remained disabled. Termination is a separate matter to which the plans, but not the letter, speak. The letter speaks only to the financial terms under which Plaintiffs would participate in the plans upon qualifying for LTD benefits.

Plaintiffs' claim for benefits rests ultimately neither on the plans nor the letter, but instead on Plaintiffs' legal contention that "once an employee was qualified to receive Long-term disability benefits," he or she would remain eligible "for so long as" he or she "remained disabled." Complaint ¶ 23. This is plainly wrong—contrary to the ERISA rule, stated above, that welfare benefits do not vest under ERISA. Qualifying for participation in a welfare plan does not render an employee eligible for benefits so long as he or she maintains the qualification, whether the qualification be disability status or, as in *First Int'l Life*, retirement status. *See* 1997 WL 1364473, at \*9. Unless it says otherwise, a welfare plan is plainly terminable at will. *See, e.g., id.*

    3.    **The Complaint's third count (breach of fiduciary duty) fails to state a clam for the additional reason that nothing in ERISA requires that a plan be insured.**

Count III charges Old Polaroid with breaching a fiduciary duty by failing to insure certain LTD benefits. *See* Complaint ¶ 33-45. But the decision whether to insure a plan concerns plan design, not plan administration. *See, e.g., Johnson v. Georgia-Pacific Corp.*, 19 F.3d 1184, 1188 (7th Cir. 1994) (holding that plan design includes "decid[ing]who receives . . . benefits and in what amounts, select[ing] levels of funding, adjust[ing] a myriad of other details"). Design decisions are not fiduciary acts and so cannot form the

---

only to interpret an ambiguity. *See Law v. Ernst & Young*, 956 F.2d 364, 369-70 (1st Cir. 1992). *Accord First Int'l Life*, 1997 WL 1364473, at \*4. Because Plaintiffs have not, and cannot, plead an estoppel claim, we do no address, and there is no reason for the Court to decide, whether estoppel is even viable theory of recovery under ERISA. *Ernst & Young* left that question open. *See* 956 F.3d at 370 n.9.

basis of an ERISA breach of fiduciary duty claim. *See, e.g., Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996); *Campbell v. BankBoston, N.A.*, 327 F.3d 1, 6 (1st Cir. 2003) (same).

Equally important, nothing in ERISA imposes an insurance requirement. The statute contemplates that some plans will be insured and others not. *See, e.g.*, 29 U.S.C. § 1002(a) (noting that a welfare plan can provide benefits "through the purchase of insurance or otherwise"); 29 U.S.C. 1144(b)(6)(A)(i)-(ii) (setting forth separate preemption rules for insured and uninsured multiple employer plans); *id.* § 1023(e) (requiring additional information on annual reports if "some or all of the benefits under the plan are purchased from and guaranteed by an insurance company"). So, too, do the Department of Labor's implementing regulations. *See, e.g.*, 29 C.F.R. 2520.102-3(q) (requiring summary plan descriptions to identify "whether and to what extent benefits under the plan are guaranteed under a contract or policy of insurance" if a health insurance issuer "is responsible, in whole or in part, for the financing or administration of a group health plan").

4.    **Plaintiffs' claims for discrimination under § 510 of ERISA (Counts IV, V, and VI) fail to state a claim against New Polaroid because § 510 neither requires an asset purchaser to assume the seller's liabilities nor covers hiring decisions.**

Counts IV, V, and VI allege that New Polaroid violated § 510 of ERISA, which in relevant part prohibits an employer from "discharg[ing], expel[ing], disciplin[ing], or discriminat[ing] against a participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which such participant may be entitled" under an ERISA-governed plan. 29 U.S.C. § 1140. As pled against New Polaroid, the claim is that New Polaroid violated § 510 by failing to "maintain Plaintiffs' employment," Complaint ¶ 49,

or, alternatively put, "refus[ing]" to hire Plaintiffs, *id.* ¶ 53, to deprive them of LTD benefits.[20]

This characterization of the facts pled is well wide of the mark. Plaintiffs have never sought to work for New Polaroid. Long before the sale of Old Polaroid's assets Plaintiffs represented themselves as unable to work in order to collect benefits under the Old Polaroid LTD Plan. *See* Complaint ¶¶ 24, 29. As they acknowledge, their continued eligibility for the LTD Plan salary continuation payments depended (and still depends) on their continued inability to work. *See id.* ¶ 23.

Plaintiffs' claim is and can only be that New Polaroid failed to honor the promises that Old Polaroid *allegedly* made to provide them with free healthcare benefits so long as they remain disabled, and in this respect their claim is really nothing but a successor liability claim for benefits in different garb. *See* § II(C)(1) *supra.* Whatever its contours, § 510's prohibition against "discrimination" cannot be stretched to require a purchaser to assume a seller's ERISA liabilities. *Cf. Aronson v. Servus Rubber*, 730 F.3d 12, 16 (1st Cir. 1984) (counseling against an "overly literal interpretation" of § 510 "discrimination").

In any case, § 510 does not proscribe an employer's refusal to hire someone to avoid offering benefits. It does not cover hiring at all, as the one circuit court to have addressed the issue—the Third Circuit—held just last year. *See Becker v. Mack Trucks*,

---

[20]     Count VI of the Complaint alleges that Old Polaroid and New Polaroid violated § 510 by "conspiring" in their purchase agreement (Exhibit A to the Sale Order, Appendix Exhibit 8) to terminate the "employment" of LTD recipients as a condition of sale. *See* Complaint ¶¶ 51, 52, & 56-58. Nothing in the agreement, however, bears out this legal contention. The agreement does not even mention LTD recipients. More, Judge Walsh specifically approved the terms of the agreement, *see* Sales Order at 1, and specifically ordered that New Polaroid was not assuming any liability for the termination of Old Polaroid's employees, *see id.* at 22. All that said, there is no "conspiracy" cause of action under ERISA. *See, e.g., Cipollone v. Univ. of Pennsylvania*, No. Civ. A 97-6565, 1998 WL 47285, at *2 (E.D. Pa. 1998) ("Plaintiffs have failed to state a claim for conspiracy to violate ERISA [§ 510]. There is no indication of any statutory basis for Plaintiff's claim and ERISA itself contains no explicit cause of action for civil conspiracy.").

281 F.3d 372 (3d Cir. 2002); *accord Williams v. Am. Int'l Group, Inc.*, No. 01 Civ.9673 (CSH), 2002 WL 31115184, at *3 (S.D.N.Y. Sept. 23, 2002) (following *Mack Trucks*). *Cf. Dykes v. Depuy, Inc.*, 140 F.3d 31, 37 (1st Cir. 1998) (holding that a plaintiff must be an employer of the plan sponsor to sue under § 510).

Two reasons compel the Third Circuit's conclusion—one drawn from the text of the statute, the other from its purpose. First, § 510 does not list hiring; by contrast, the statutory provision on which § 510 is based, § 8(a)(3) of the National Labor Relations Act, 29 U.S.C. § 158(3), does specifically include hiring. *See Mack Trucks*, 281 F.3d at 372. This "omission[] in § 510 reveal[s] that Congress did not intend to regulate hiring decisions under ERISA." *Id.* Instead Congress "limited [§ 510] to actions affecting the employer-employee relationship" once having arisen. *Id.* at 382 (citations omitted); *see also id.* at 383 ("The language enacted by Congress simply does not extend to actions taken before an employer-employee relationship exists.").

Second, the purpose of § 510 is "to protect benefits promised to an employee arising from a pre-existing employment relationship." *Id.* at 381. Section 510 "established an important check on employer's ability to undermine ERISA's protections for promised benefits" by "circumvent[ing] the provision of promised benefits." *Id.* The most obvious example is the employer that, having promised to vest an employee's pension benefits after five years of service, decides to terminate the employee short of his fifth anniversary to avoid vesting. The termination interferes with the employee's "attainment," 29 U.S.C. § 1140, of promised benefits. An employee who has not been hired has not been promised any benefits, and so there is nothing with which the employer can interfere. *See Mack*

- 24 -

*Trucks*, 281 F.3d at 382.  ERISA does not force employers to promise benefits, only to make good on the promises that they have chosen to make.  *See id.* at 381.

New Polaroid did not promise any benefits to Plaintiffs.  Section 510 cannot be used to create a promise that New Polaroid never made.

## CONCLUSION

The Court should transfer this case to the United States District Court for the District of Delaware or, in the alternative, dismiss the Complaint with prejudice.

Respectfully submitted,

Richard D. Glovsky
Marni G. Caputo
Prince, Lobel, Glovsky & Tye LLP
585 Commercial Street
Boston, MA 02109
(617) 456-8000


Jerome A. Hoffman*
Mathew Lee Wiener
DECHERT LLP
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, PA 19103
(215) 994-4000


Attorneys For Polaroid Corporation

Dated:  October 3, 2003

---

\* A motion for the *pro hoc vice* admission of Messrs. Hoffman and Wiener is pending before the Court.

## CERTIFICATE OF SERVICE

I certify that on October 3, 2003, the foregoing was served upon each of the following counsel of record by First Class Mail (at the addresses listed):

Gus P. Coldebella
Goodwin Procter LLP
Exchange Place
Boston, MA 02109

Gregg M. Galardi
Skadden, Arps, Slate, Meagher & Flom LLP
One Rodney Square
P.O. Box 636
Wilmington, DE 19899

Harvey A. Schwartz
Rodgers, Powers & Schwartz, LLP
18 Tremont Street, Suite 500
Boston, Massachusetts 02108

Richard D. Glovsky