UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SALLY FERRARI, ELAINE JOHNSON, JOHN MAGENHEIMER, ELIZABETH WILLIAMS and DAVID A. MANISCALCO, Plaintiffs, vs. POLAROID CORPORATION, PRIMARY PDC, INC., OEP IMAGING OPERATING CORPORATION, INC. and ONE EQUITY PARTNERS LLC, Defendants. | CIVIL ACTION NO. 03-11275-MLW |

**MEMORANDUM IN SUPPORT OF DEFENDANT
ONE EQUITY PARTNERS LLC'S
MOTION TO DISMISS**

James S. Dittmar, P.C. (BBO No. 126320)
Gus P. Coldebella (BBO No. 566918)
GOODWIN PROCTER LLP
Exchange Place
Boston, Massachusetts 02109
(617) 570-1000
(617) 523-1231 (facsimile)

# TABLE OF CONTENTS

Table of Authorities ................................................................................................... iii

Introduction ............................................................................................................... 1

Argument ................................................................................................................... 3

I.   The Bankruptcy Court's Free and Clear Order Compels
     Dismissal of The Complaint ................................................................................ 3

     A.   The Complaint Is An Impermissible Collateral Attack On The
          Bankruptcy Court's Free and Clear Order ................................................... 3

          1.   The Free and Clear Order ................................................................... 3

          2.   Plaintiffs' Complaint Must Be Dismissed Under Celotex ................... 4

     B.   Plaintiffs' Claims Are Barred By The Free And Clear Order ....................... 6

     C.   The Asset Purchase Agreement Provides That New Polaroid Did Not Assume
          ERISA Liabilities And That Its Affiliates Were Protected ........................... 9

II.  Plaintiffs' ERISA Claims Against One Equity Partners Fail On The Merits ............ 11

     A.   The Complaint Fails To State A Claim Under ERISA Against One Equity
          Partners For Breach Of Plan Provisions (Count I) ....................................... 11

     B.   The Complaint Fails To State A Claim Under ERISA Against One Equity
          Partners For Promissory Estoppel (Count II) .............................................. 11

     C.   The Complaint Fails To State A Claim Under ERISA Against One Equity
          Partners For Breach Of Fiduciary Duty (Count III) ..................................... 14

     D.   The Complaint Fails To State A Claim Under ERISA Section 510 Against
          One Equity Partners (Counts IV-VI) ........................................................... 15

          1.   New Polaroid Did Not Violate Section 510 Due To Old Polaroid's
               Termination Of Plaintiffs' Employment ............................................. 16

          2.   New Polaroid Did Not Violate Section 510 Due To Its Failure To Hire
               Plaintiffs ........................................................................................... 18

Conclusion ................................................................................................................ 20

LIBA/1311316.5

Glassman v. Computervision Corp., 90 F.3d 617 (1st Cir. 1996) ................................. 1

Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204 (2002) ............................. 12, 15

Grottkau v. Sky Climber Inc., 79 F.3d 70 (7th Cir. 1996)........................................ 20

Hughes Aircraft Co. v. Jacobson, 525 U.S. 432 (1999) ............................................. 14

In re G.S.F. Corp., 938 F.2d 1467 (1st Cir. 1991)................................................. 8

In re Hoffman, 53 B.R. 874 (Bankr. D.R.I. 1985), aff'd 65 B.R. 985 (D.R.I. 1986)................. 7

In re Peritus Software Servs., Inc., 52 F. Supp. 2d 211 (D. Mass. 1999) ...................... 1

Int'l Union v. Morse Tool, Inc., 85 B.R. 666 (D. Mass. 1988)................................... 7

Johnson v. Georgia-Pacific Corp., 19 F.3d 1184 (7th Cir. 1994)................................... 14

Kane v. Aetna Life Ins.,m 893 F.2d 1283 (11th Cir. 1990)....................................... 13

LaRocca v. Borden, Inc., 276 F.3d 22 (1st Cir. 2002)............................................. 12

Law v. Ernst & Young, 956 F.2d 364 (1st Cir. 1992) ............................................. 12, 13

Lessard v. Applied Risk Mgmt., 307 F.3d 1020 (9th Cir. 2002)................................... 17

Lockheed Corp. v. Spink, 517 U.S. 882 (1996) ................................................... 14

MacArthur Co. v. Johns-Manville Corp. (In re Johns-Manville Corp.),
    837 F.2d 89 (2d Cir. 1988), cert. denied, 488 U.S. 868 (1988)............................... 7

Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134 (1985) ...................................... 12

Mauser v. Raytheon Co. Pension Plan for Salaried Employees, 239 F.3d 51
    (1st Cir. 2001)........................................................................... 13-14

Mertens v. Hewitt Assocs., 508 U.S. 248 (1993) ................................................ 12

Nachman Corp. v. Pension Benefit Guar. Corp., 446 U.S. 359 (1980)............................. 12, 17

Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318 (1992)........................................ 19

P.K.R. Convalescent Ctrs. v. Virginia (In re P.K.R. Convalescent Ctrs., Inc.), 189 B.R.
    90 (Bankr. E.D. Va. 1995)................................................................. 8

Paris Mfg. Corp. v. Ace Hardware Corp. (In re Paris Indus. Corp.), 132 B.R. 504
    (D. Me. 1991) ........................................................................... 7, 8, 9, 10

Redman v. FDIC, 794 F. Supp. 20 (D. Me. 1992)................................................. 10, 11

LIBA/1311316.5

Rossi v. Boston Gas Co., 833 F. Supp. 62 (D. Mass. 1993) ....................................................... 11

Turner v. Fallon Cmty. Health Plan, Inc., 127 F.3d 196 (1st Cir. 1997) ................................. 12

W. Auto Supply Co. v. Savage Arms, Inc. (In re Savage Indus., Inc.), 43 F.3d 714
   (1st Cir. 1994) ...................................................................................................................... 8, 9

Walker v. Birmingham, 388 U.S. 307 (1967) ........................................................................... 5

Watkins v. Westinghouse Hanford Co., 12 F.3d 1517 (9th Cir. 1993) .................................... 12

**FEDERAL STATUTES**

11 U.S.C. § 105(a) ............................................................................................................. 5, 8, 9

11 U.S.C. § 363 ..................................................................................................................... 8, 9

28 U.S.C. § 157(b)(2)(N) ........................................................................................................ 9

28 U.S.C. § 158(a) .............................................................................................................. 6, 18

29 U.S.C. § 623(a)(1) ............................................................................................................ 18

29 U.S.C. § 1001 ..................................................................................................................... 2

29 U.S.C. § 1002(1) ............................................................................................................... 15

29 U.S.C. § 1002(7) ............................................................................................................... 18

29 U.S.C. § 1002(21)(A) ....................................................................................................... 14

29 U.S.C. § 1082(c)(11)(B) ................................................................................................... 15

29 U.S.C. § 1102(a) ............................................................................................................... 14

29 U.S.C. § 1105(a)(1) ........................................................................................................... 17

29 U.S.C. § 1132(a)(1)(B) ................................................................................................. 11, 17

29 U.S.C. § 1132(a)(3) ........................................................................................................... 19

29 U.S.C. § 1140 ............................................................................................. 15, 16, 17, 18, 19

29 U.S.C. § 1362(a) ............................................................................................................... 15

29 U.S.C. § 1364(a) ............................................................................................................... 15

42 U.S.C. § 2000e-2(a)(1) ...................................................................................................... 18

42 U.S.C. § 12112(a) ............................................................................................................. 18

# OTHER AUTHORITIES

Fed. R. Civ. P. 12(b)(6) ................................................................................................................. 1

Fed. R. Civ. P. 60(b) .................................................................................................................... 6

Rev. Rul. 87-41, 1987-1 Cum. Bull. 296, 298-99 ..................................................................... 19

Restatement (Second) of Agency § 220(2) ................................................................................. 19

Defendant One Equity Partners LLC ("One Equity Partners")[1] moves to dismiss plaintiffs' complaint pursuant to Fed. R. Civ. P. 12(b)(6).

Relevant facts are to be found in the allegations of the complaint,[2] the terms of certain documents on which plaintiffs' claims rely, and the record of proceedings in the United States Bankruptcy Court for the District of Delaware.[3] One Equity Partners relies upon and incorporates by reference the statement of facts in the brief of defendant Polaroid Corporation in support of its motion to dismiss.

## INTRODUCTION

Plaintiffs' claims are foreclosed by prior binding judicial decision. Defendant Primary PDC, Inc., which was formerly known as Polaroid Corporation and is referred to in this brief as "Old Polaroid,"[4] is the debtor in proceedings pending since October 21, 2001 under chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware, Case Number 01-10864 (PJW) (the "chapter 11 case"). *See* Compl. ¶ 11. On July 31, 2002, Old Polaroid sold substantially all its assets to OEP Imaging Operating Corporation, which later changed its name to Polaroid Corporation and is referred to in this brief as "New Polaroid." One

---

[1]    One Equity Partners LLC was misnamed in the complaint as One Equity Partners, Inc.—a misnomer which was corrected in the parties' stipulation dated August 22, 2003.

[2]    For purposes of this motion to dismiss, the Court must presume true only the well-pleaded facts in the complaint. *See Cooperman v. Individual Inc.*, 171 F.3d 43, 47-48 (1st Cir. 1999); *In re Peritus Software Servs., Inc.*, 52 F. Supp. 2d 211, 218-19 (D. Mass. 1999). The Court need not accord deference to legal conclusions or inferences not logically drawn from the well-pleaded facts. *Glassman v. Computervision Corp.*, 90 F.3d 617, 628 (1st Cir. 1996)

[3]    In deciding a Rule 12(b)(6) motion, a court may consider documents "integral to or explicitly relied upon in the complaint, even though not attached to the complaint, without converting the motion into one for summary judgment." *Clorox Co. of Puerto Rico v. Procter & Gamble Commercial Co.*, 228 F.3d 24, 32 (1st Cir. 2000) (citation omitted). A court may likewise consider "matters susceptible to judicial notice . . . [and may in particular] 'look to matters of public record in deciding a Rule 12(b)(6) motion.'" *Banco Santander de Puerto Rico v. Lopez-Stubbe (In re Colonial Mortgage Bankers Corp.)*, 324 F.3d 12, 15-16 (1st Cir. 2003) (citation omitted).

[4]    In this brief, One Equity Partners will follow the convention used by defendant Polaroid Corporation in its brief: Primary PDC, Inc., formerly known as Polaroid Corporation, the debtor in the chapter 11 case, will be referred to as "Old Polaroid" or "debtor." The purchaser of Old Polaroid's assets, formerly known as OEP Imaging Operating Corporation, and now named Polaroid Corporation, will be referred to as "New Polaroid" or "purchaser."

Equity Partners owns approximately 65% of New Polaroid; the other 35% will be distributed to Old Polaroid's creditors pursuant to a plan of reorganization in the chapter 11 case. *Id.* ¶ 12. Judicial approval of the sale of assets and related relief are embodied in the bankruptcy court's July 3, 2002 "Order Authorizing And Approving (1) Asset Purchase Agreement, (2) Sale Of Substantially All Of The Debtor's Assets Free And Clear Of Liens, Claims, And Encumbrances To OEP Imaging Corporation, (3) Assumption And Assignment To OEP Imaging Corporation Of Certain Executory Contracts And Unexpired Leases And (4) Certain Related Relief" (the "Free and Clear Order").

The Free and Clear Order provides that New Polaroid did not assume any liability—as successor, transferee or otherwise—of Old Polaroid except those liabilities specifically assumed in the Asset Purchase Agreement. The Free and Clear Order specifically provides that New Polaroid did not assume any liability based on any welfare plan of Old Polaroid; on Old Polaroid's employment or termination of employment of any person; or on the Employee Retirement Income Security Act of 1974, as amended at 29 U.S.C. §§ 1001 *et seq.* ("ERISA"). The order also enjoined Old Polaroid's former employees from asserting any such claims against purchaser New Polaroid.

Plaintiffs are former employees of Old Polaroid. In spite of the bankruptcy court's Free and Clear Order, plaintiffs filed a complaint in this Court asserting ERISA claims against Old Polaroid, as well as successor liability ERISA claims against New Polaroid. The claims are, however, the very claims that plaintiffs were enjoined from bringing by the Free and Clear Order. The claims against Old Polaroid also run afoul of the automatic stay provision of the bankruptcy code, as pointed out by Old Polaroid in a suggestion of bankruptcy previously filed.

Although One Equity Partners is also named as a defendant in this action, no facts supporting any claim against One Equity Partners are alleged in the complaint. Plaintiffs allege that One Equity Partners is an "affiliate" of the purchaser. *See* Compl. ¶ 13. However, none of the counts of the complaint alleges that One Equity Partners had any relevant duty under ERISA or

engaged in any conduct that is wrongful under ERISA—a pleading defect which alone must result in dismissal. Further, as all claims against the purchaser New Polaroid must be dismissed as a result of the bankruptcy court's Free and Clear Order, and as One Equity Partners' only connection with plaintiffs' claims rests solely on its derivative status as New Polaroid's affiliate, no claim against One Equity Partners is stated.

As argued in this brief, the complaint should be dismissed as to One Equity Partners for the following reasons:[5]

*First*, the Free and Clear Order eliminated the claims asserted by plaintiffs, and it further enjoined plaintiffs from bringing them. Well-settled law compels plaintiffs to challenge or seek relief from the bankruptcy court's order in the bankruptcy court itself, and a collateral attack on such an order—as is the essential nature of this action—is impermissible. *See Celotex Corp. v. Edwards*, 514 U.S. 300, 313 (1995).[6]

*Second*, the court should in any event enforce the terms of the Free and Clear Order, including the injunction against plaintiffs' bringing the claims asserted in their complaint. *Res judicata*, in short, compels the complaint's dismissal.

*Third*, although the Court need not reach the merits of plaintiffs' ERISA claims, each of those claims fails as a matter of law against One Equity Partners.

## ARGUMENT

**I.    THE BANKRUPTCY COURT'S FREE AND CLEAR ORDER COMPELS DISMISSAL OF THE COMPLAINT**

**A.    The Complaint Is An Impermissible Collateral Attack On The Bankruptcy Court's Free and Clear Order**

**1.    The Free and Clear Order**

After notice and an opportunity to be heard was afforded to "all interested persons and entities," the bankruptcy court for the district of Delaware entered an order which, among other things, approved the sale of substantially all of debtor Old Polaroid's assets to purchaser New

---

[5]    One Equity Partners also joins in, and incorporates by reference, all of the arguments of New Polaroid in support of its motion to dismiss.

[6]    One Equity Partners, in tandem with New Polaroid, is filing a proceeding in the United States Bankruptcy Court for the District of Delaware, seeking a declaration that the bankruptcy court's Free and Clear Order bars the claims pleaded in the complaint.

Polaroid free and clear of all liabilities. *See* Free and Clear Order, *passim* (submitted with New Polaroid's motion to dismiss). That notice was provided individually to each of the plaintiffs in this action, as demonstrated by the declaration of mailing attached to New Polaroid's motion, and was also published in *The New York Times*, *The Wall Street Journal* and *The Boston Globe*. *See* Ex. 2 (Declaration of Mailing) and Ex. 3 (Notice of Publication) (also submitted with New Polaroid's motion).

In the Free and Clear Order, the bankruptcy court, among other things, ordered the following:

- that the purchaser shall not assume or be liable or responsible for any liabilities, debts, or obligations of the debtor, whether as successor or transferee or otherwise, except for those specifically assumed. Free and Clear Order at 21.

- that the purchaser shall not assume or be liable or responsible for liabilities, debts or obligations specifically based on (1) successor or transferee liability, (2) labor law, including without limitation any obligations under ERISA, and (3) *de facto* merger or substantial continuity. *Id.* at 22.

- that the purchaser has no obligation to pay wages, bonuses, severance pay, or benefits—including contributions or payments on account of any undertaking with respect to any and all pension plans—or any other payment to employees of debtor. *Id.*

- that the purchaser shall have no obligation for the cessation of any of the debtor's operations, dismissal by the debtor of employees, or termination by the debtor of employment or labor agreements. *Id.*

- that the purchaser shall have no liability with respect to any employee pension plan, employee welfare or retention, compensation, benefit and/or incentive plan, agreements, practices, or program to which debtor is a party, and that the purchaser shall in no way be deemed a party to or assignee of any such agreement, plan, practice or program. *Id.*

- that all parties to any employee pension plan, employee welfare or retention, compensation, benefit and/or incentive plan, agreements, practices, or program to which any of the debtors are a party "*are hereby enjoined from asserting against the Purchaser any and all claims arising from or relating thereto.*" *Id.* at 22-23 (emphasis in original).

## 2.    Plaintiffs' Complaint Must Be Dismissed Under *Celotex*

The Free and Clear Order addresses the very claims brought by plaintiffs in this action. The Free and Clear Order eliminates those claims and enjoins plaintiffs—who were afforded notice and

an opportunity to be heard—from asserting the claims against New Polaroid. Rather than challenging or seeking relief from the order in the bankruptcy court, or appealing it to the district court for the district of Delaware or the court of appeals for the Third Circuit, plaintiffs brought this action in the district of Massachusetts.

Yet the law is well-settled: this action constitutes a collateral attack on an order of the bankruptcy court; it is impermissible; and dismissal of the complaint is required. In *Celotex*, the Supreme Court addressed a parallel circumstance. There a bankruptcy court had issued an injunction preventing creditors of a chapter 11 debtor from executing on a supersedeas bond posted for the debtor's appeal of a judgment of a district court in another circuit. Without challenging the injunction in the bankruptcy court, and following the debtor's unsuccessful appeal from the judgment of the other district court, a creditor executed on the bond. The Supreme Court ruled that this procedure was improper:

> If respondents believed the Section 105 Injunction was improper, they should have challenged it in the Bankruptcy Court, like other similarly situated . . . creditors. . . . If dissatisfied with the Bankruptcy Court's ultimate decision, respondents can appeal to the district court for the judicial district in which the bankruptcy judge is serving and then to the Court of Appeals for [that Circuit]. Respondents chose not to pursue this course of action, but instead to collaterally attack the Bankruptcy Court's Section 105 Injunction in the federal courts [of another district]. This they cannot be permitted to do without seriously undercutting the orderly process of the law.

*Celotex*, 514 U.S. at 313 (citations omitted). The Supreme Court made clear in *Celotex* that "'it is for the court of first instance [here, the bankruptcy court], to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decisions are to be respected.'" *Id.* (quoting *Walker* v. *Birmingham*, 388 U.S. 307, 314 (1967)).

Judge O'Toole of this court recently dealt with a circumstance closely analogous to the case at hand. In *Cummings Props., LLC* v. *Heidelberg Print Fin. Americas, Inc.*, No. Civ.A.01-11027-

GAO, 2002 WL 1839252 (D. Mass. Aug. 12, 2002), following a bankruptcy court "free and clear" order approving an asset sale, a dissatisfied creditor initiated a collateral action against the purchaser of the debtor's assets. Judge O'Toole correctly concluded that the creditor's only recourse to challenge the bankruptcy court order barring his claims was to challenge the order directly, either by seeking relief pursuant to Fed. R. Civ. P. 60(b) or by appeal. Because the plaintiff in *Cummings* chose neither open course, its complaint was dismissed.[7]

Here, if plaintiffs believed the Free and Clear Order enjoining their claims was improperly granted, they could and should have challenged the order in the bankruptcy court. If dissatisfied with the bankruptcy court's ultimate decision, plaintiffs could and should have appealed to the district court in Delaware, and, if necessary, to the Third Circuit Court of Appeals. *See* 28 U.S.C. §158(a); *Celotex*, 514 U.S. at 313. Plaintiffs instead brought an action which collaterally attacks the bankruptcy court's Free and Clear Order. As plaintiffs' approach "seriously undercuts the orderly process of the law," *Celotex*, 514 U.S. at 313, this Court should not permit the action to proceed.

### B.    Plaintiffs' Claims Are Barred By The Free And Clear Order

Even if the complaint were properly before this Court, the Court need not reach the substance of the plaintiffs' ERISA claims to grant dismissal. Rule 12(b)(6) requires a court to dismiss a complaint barred by another court's final order under principles of claim preclusion. *See, e.g., Banco Santender de Puerto Rico* v. *Lopez-Stubbe (In re Colonial Mortgage Bankers)*, 324 F.3d 12, 16 (1st Cir. 2003). Under the unambiguous terms of the Free and Clear Order, plaintiffs are enjoined from asserting *any* claims against the purchaser that were barred by the bankruptcy court.

A bankruptcy court has jurisdiction to order that claims against a debtor be directed against the proceeds of a free and clear sale of the debtor's property, thereby requiring adjudication in the bankruptcy proceeding itself, and that those claims not be asserted against the purchaser. *See, e.g.,*

---

[7]    Of course neither the Free and Clear Order nor the bankruptcy court order in *Cummings* prevented persons having claims against the debtor from pursuing the proceeds of the asset sale in the bankruptcy court.

*Int'l Union* v. *Morse Tool, Inc.*, 85 B.R. 666 (D. Mass. 1988) (upholding sale free and clear of all encumbrances including collective bargaining agreements); *In re Hoffman*, 53 B.R. 874 (Bankr. D.R.I. 1985), *aff'd* 65 B.R. 985 (D.R.I. 1986) (allowing liquor license transferred free and clear notwithstanding state law prohibiting transfer where taxes remained unpaid); *cf. MacArthur Co.* v. *Johns-Manville Corp. (In re Johns-Manville Corp.)*, 837 F.2d 89 (2d Cir. 1988), *cert. denied*, 488 U.S. 868 (1988) (holding bankruptcy court had the authority to approve debtor's settlement with insurers and to channel claims arising under the policies to the proceeds of the settlement).

The channeling effect of such orders protects good faith purchasers and thus encourages full value offers to bankruptcy estates. *EEOC* v. *Knox-Schillinger (In re Trans World Airlines, Inc.)*, 322 F.3d 283, 292-93 (3d Cir. 2003) (arguing that absent entry of "free and clear" order, purchaser may have offered a discounted bid); *Paris Mfg. Corp.* v. *Ace Hardware Corp. (In re Paris Indus. Corp.)*, 132 B.R. 504, 510 n.14 (D. Me. 1991) (acknowledging "negative impact" that successor liability claims could have on asset sales). Indeed, that very purpose was served here, as the Free and Clear Order recognized in finding that the terms of the Asset Purchase Agreement were "necessary and appropriate to maximize the value of the Debtor's estates." Free and Clear Order at 6-7, ¶ J. Such orders also preclude certain creditors from receiving preferential treatment by suing the purchaser of debtor's assets and obtaining a recovery greater than that received by all other creditors according to the priorities of distribution established by Congress under the bankruptcy code.

Bankruptcy courts also have the power to enjoin third parties from bringing claims against the purchaser of assets. Because the bankruptcy court determined that an injunction enjoining these plaintiffs, among others, was necessary and appropriate to effectuate the sale of Old Polaroid's

assets for the benefit of all creditors, the injunction represents an appropriate application of the bankruptcy court's equitable powers and accordingly should be enforced.[8]

The bankruptcy court's authority to enjoin claims derives from two sources. The first is the bankruptcy court's equitable power under section 105(a) of the bankruptcy code. *In re G.S.F. Corp.*, 938 F.2d 1467, 1474 (1st Cir. 1991) (authority under section 105(a) to enjoin third party action which may affect debtor's estate); *In re Paris Indus.*, 132 B.R. at 508 (authority under section 105(a) to enjoin future product liability actions against purchaser).

The second source of the bankruptcy court's authority to enjoin third parties from bringing claims against the purchaser of a debtor's assets derives from the bankruptcy court's powers to extinguish interests in a debtor's property under section 363(f) of the bankruptcy code. *In re TWA*, 322 F.3d at 289-90 (employment claims constitute "interests" under section 363(f), and therefore assets could be sold free and clear of such claims); *P.K.R. Convalescent Ctrs. v. Virginia (In re P.K.R. Convalescent Ctrs., Inc.)*, 189 B.R. 90, 94 (Bankr. E.D. Va. 1995) ("[Section] 363 covers more situations than just sales involving liens."); *All Am. Hous. of Ala. v. Bonapfel (In re All Am. of Ashburn, Inc.)*, 56 B.R. 186, 190 (Bankr. N.D. Ga. 1986), *aff'd*, 805 F.2d 1515 (11th Cir. 1986) (bankruptcy court had authority under section 363(f) to preclude prosecution of product liability action against purchaser of assets).

The First Circuit has deferred determining the issue of whether "claims" constitute "interests" (within the meaning of the bankruptcy code) that may be extinguished in a section 363 asset sale. *See W. Auto Supply Co. v. Savage Arms, Inc. (In re Savage Indus., Inc.)*, 43 F.3d 714

---

[8]    The specific findings of the bankruptcy court clearly support its inclusion of injunctive relief within the Free and Clear Order. Among other things, the bankruptcy court found that (i) there was a "good, sufficient, and sound business purpose and justification for the Sale," (ii) the sale prior to, and outside of, a plan of reorganization was "further justified by the compelling circumstances" of the Debtors, and (iii) the Agreement had to be approved and consummated promptly in order to preserve the viability of the Debtor's businesses as a going concern. *See* Free and Clear Order ¶¶ J, L. Most importantly, the bankruptcy court found that the purchaser would not have entered into the Agreement and would not consummate the sale if the sale to the purchaser were not free and clear of all claims against the Debtors, including the employee benefit claims at issue here. *See id.* ¶ X.

(1st Cir. 1994), 721 ("even assuming . . . the . . . claim constituted an 'interest'"). However, ample authority supports ruling that section 363 gives power to extinguish claims. *See supra* § I.B. In any event, cases in the First Circuit have consistently recognized bankruptcy court jurisdiction under section 105(a) to issue injunctions as part of a sale order in order to protect third party purchasers where necessary to preserve the interests of the debtor and its estate. *See In re Savage Indus.*, Civ. A. No. 92-30227-F, 1993 WL 763407, at *3 (D. Mass. Oct. 19, 1993) ("This Court does not question that the . . . Order of Sale . . . was a 'core proceeding' as defined by 28 U.S.C. § 157(b)(2)(N). Nor does the Court challenge the bankruptcy court's power to 'issue any order, process or judgment that is necessary or appropriate to carry out the provisions of' Title 11.") (citation omitted); *In re Paris Indus.*, 132 B.R. at 508. This Court, therefore, need not determine the scope of "interests" under section 363(f) to rule that the bankruptcy court had the power to enjoin plaintiffs from asserting claims against New Polaroid, since the bankruptcy court's authority under section 105(a) is sufficient.

The Free and Clear Order operates to eliminate the claims in the complaint, and to enjoin plaintiffs from bringing them, against New Polaroid. Moreover, the only connection pleaded between New Polaroid and One Equity Partners is that One Equity Partners is New Polaroid's "affiliate." Plaintiffs' claims against One Equity Partners derive entirely from its status as an affiliate. If the Free and Clear Order wipes Old Polaroid's assets clean of any claims against New Polaroid and enjoins plaintiffs from bringing suit against New Polaroid, the order must also protect an affiliate, whose alleged liability is derivative only.

## C.    The Asset Purchase Agreement Provides That New Polaroid Did Not Assume ERISA Liabilities And That Its Affiliates Were Protected

The bankruptcy court's Free and Clear Order expressly approved a contract between the debtor and the purchaser—the Asset Purchase Agreement (submitted with New Polaroid's motion to dismiss). The Asset Purchase Agreement provides that New Polaroid did not assume any but

certain specified liabilities of Old Polaroid. *See* Asset Purchase Agreement §§ 2.03-2.04, at 17-19. In particular, the Asset Purchase Agreement specified that New Polaroid would not assume any liability or obligation relating to Old Polaroid's employees or benefit plans. *See id.* §§ 2.04(g), 6.08(e), (g), at 18-19, 49.

These provisions of the Asset Purchase Agreement preclude plaintiffs' claims against New Polaroid. "Under generally accepted corporate law principles, the purchaser of the assets of another corporation does not assume the debts and liabilities of the transferor." *Devine & Devine Food Brokers, Inc.* v. *Wampler Foods, Inc.,* 313 F.3d 616, 618 (1st Cir. 2002). In particular, a buyer that does not assume the seller's benefit plan liabilities is not responsible for them. *See, e.g., Carcasole-Lacal* v. *American Airlines, Inc.*, No. CV-02-4359 (DGT), 2003 WL 21525484, at *4 (E.D.N.Y. July 8, 2003) (holding that a buyer, having not assumed liabilities under a bankruptcy court-approved sale agreement, was not liable for seller's obligations under early retirement program); *Redman* v. *FDIC*, 794 F. Supp. 20, 23-24 (D. Me. 1992) (same result with respect to an ERISA severance plan).

The Asset Purchase Agreement protects not only New Polaroid but also New Polaroid's affiliates. *See* Asset Purchase Agreement § 10.13, at 67 ("Nothing in this Agreement, express or implied, is intended to or shall . . . confer on any director, officer or employee of the Purchaser *or its Affiliates* any obligations or liabilities under or by reason of this Agreement."). Since for purposes of this motion it is undisputed that One Equity Partners is an "affiliate" of New Polaroid, *see* Compl. ¶ 13, the Asset Purchase Agreement must be read to preclude plaintiffs' claims against One Equity Partners.

## II.  PLAINTIFFS' ERISA CLAIMS AGAINST ONE EQUITY PARTNERS FAIL ON THE MERITS

### A.  The Complaint Fails To State A Claim Under ERISA Against One Equity Partners For Breach Of Plan Provisions (Count I)

In Count I, plaintiffs allege that Old Polaroid violated ERISA by not providing certain insurance premium plan benefits to plaintiffs. *See id.* ¶¶ 35-41.  By the complaint's very terms, neither New Polaroid nor its investor affiliate, One Equity Partners, is implicated in this count. Accordingly, Count I should be dismissed as to them.

Even if plaintiffs were to amend their complaint to assert this benefits claim against One Equity Partners, the claim would fail as a matter of law.  The only proper defendants in a case to recover benefits under 29 U.S.C. § 1132(a)(1)(B)[9] are a plan or the plan administrator.  *See Rossi* v. *Boston Gas Co.*, 833 F. Supp. 62, 67-68 (D. Mass. 1993) (plan is proper party to be sued in an action to recover ERISA benefits); *Everhart* v. *Allmerica Fin. Life Ins. Co.*, 275 F.3d 751, 754 (9th Cir. 2001) (cataloguing cases holding that plan and/or plan administrator are the only proper defendants in an ERISA benefits action).  Plaintiffs cannot allege that One Equity Partners was an administrator of any benefits plan in which the plaintiffs were participants.  The only benefits plan(s) mentioned in the complaint are Old Polaroid's plan(s).  *See* Compl. ¶ 17.  For this additional reason, Count I fails against One Equity Partners.

### B.  The Complaint Fails To State A Claim Under ERISA Against One Equity Partners For Promissory Estoppel (Count II)

Count II alleges that "plaintiffs relied to their detriment on the promise *made by Polaroid.* . . .  As a result, *Polaroid* is estopped from refusing to provide those benefits to the plaintiffs." *Id.* ¶¶ 42-43 (emphasis added).  Once again, the complaint does not allege that One Equity Partners engaged in any conduct at issue.  The only alleged "promise" was made by Old

---

[9]  Though plaintiffs do not cite to it specifically, 29 U.S.C. § 1132(a)(1)(B) applies because any claim for benefits under ERISA is brought pursuant to that section.

Polaroid. *See id.* ¶ 26. Accordingly, plaintiffs fail to state a promissory estoppel claim against One

Equity Partners.

Count II fails for an additional reason. ERISA does not provide for participant benefits

claims benefits based upon a theory of promissory estoppel. As both the Supreme Court and the

First Circuit have repeatedly instructed, courts should refrain from finding implied causes of action

and remedies under ERISA. Indeed, the Supreme Court reiterated only last year:

> We have observed repeatedly that ERISA is a "'comprehensive and
> reticulated statute,' the product of a decade of congressional study of
> the Nation's private employee benefit system." *Mertens v. Hewitt
> Assocs.*, 508 U.S. 248, 251 (1993) (quoting *Nachman Corp. v.
> Pension Benefit Guar. Corp.*, 446 U.S. 359, 361 (1980)). We have
> therefore been especially "reluctant to tamper with [the] enforcement
> scheme" embodied in the statute by extending remedies not
> specifically authorized by its text. *Mass. Mut. Life Ins. Co. v. Russell*,
> 473 U.S. 134, 147 (1985). Indeed, we have noted that ERISA's
> "carefully crafted and detailed enforcement scheme provides 'strong
> evidence that Congress did *not* intend to authorize other remedies that
> it simply forgot to incorporate expressly.'" *Mertens, supra,* at 254
> (quoting *Russell, supra,* at 146-47).

*Great-West Life & Annuity Ins. Co.* v. *Knudson*, 534 U.S. 204, 209 (2002) ("*Great-West*").[10] The

complaint's invitation to the Court to find an implied claim and remedy must be rejected. Although

the First Circuit has declined to decide whether a promissory estoppel claim for benefits exists

under ERISA, *see City of Hope Nat'l Med. Ctr.* v. *Healthplus, Inc.*, 156 F.3d 223, 230 n.9 (1st Cir.

1998); *Law* v. *Ernst & Young*, 956 F.2d 364, 371 n.9 (1st Cir. 1992), other courts have rejected

attempts to expand ERISA's remedies to include claims for benefits based on alleged promises or

representations outside a plan's express terms, *see, e.g., Watkins* v. *Westinghouse Hanford Co.*, 12

F.3d 1517, 1527-28 (9th Cir. 1993). This court should do the same.

---

[10]    *See also LaRocca* v. *Borden, Inc.*, 276 F.3d 22, 30-31 (1st Cir. 2002) (discussing "Congressional Balance"
struck by ERISA's remedial provisions); *Turner* v. *Fallon Cmty. Health Plan, Inc.*, 127 F.3d 196, 199 (1st
Cir. 1997) ("[T]he Supreme Court has adamantly ruled that ERISA's express remedies are a signal to
courts not to create additional remedies of their own.").

In any event, even if promissory estoppel were to be recognized in the First Circuit, plaintiffs have failed to state a viable promissory estoppel ERISA claim. The First Circuit has held that if it were to rule that ERISA authorizes promissory estoppel claims, such a claim would be permitted only where the alleged promise constituted a reasonable interpretation—not a modification—of plan terms. *See Law*, 956 F.2d at 367-68 (finding plaintiff's "estoppel claim is not actionable under ERISA because he did not establish that the estoppel would merely hold [the plan administrator] to a plausible interpretation of the plan, rather than to a modification of that plan); *see also Gaskell* v. *Harvard Coop. Soc'y*, 3 F.3d 495, 502 n.10 (1st Cir. 1993) ("[A] preliminary showing of ambiguity is required; 'estoppel may not be invoked to enlarge or extend the coverage specified in a contract.'") (citing and quoting *Kane* v. *Aetna Life Ins.*, 893 F.2d 1283, 1285 n.3 (11th Cir. 1990)). Here, plaintiffs have not alleged any facts showing that Old Polaroid's plans were at all ambiguous, or that, in light of ambiguity, any promise served only to interpret that ambiguity. Indeed, plaintiffs' own allegations demonstrate that, if the alleged "promise" were enforced, it would constitute a modification of the plan: "[t]he acceptance for benefits letter ... *constituted a novation* of the LTD plan's terms as outlined in the then existing plan documents." Compl. ¶ 37 (emphasis added).

Also, an element of any promissory estoppel claim is that "the party claiming the estoppel must have [reasonably] relied on its adversary's conduct 'in such a manner as to change his position for the worse.'" *Law*, 956 F.2d at 368 (citation omitted). Plaintiffs have alleged no facts showing that they relied to their detriment on any alleged promise. No allegations detail how plaintiffs changed their position for the worse. Plaintiffs are required to advance an allegation of "some measurable prejudice." *Mauser* v. *Raytheon Co. Pension Plan for Salaried Employees*, 239 F.3d

51, 56 (1st Cir. 2001). "[T]he mere forming of an expectation as to benefits is not enough." *Id.*[11]

Without such allegations, Count II should be dismissed.

### C.    The Complaint Fails To State A Claim Under ERISA Against One Equity Partners For Breach Of Fiduciary Duty (Count III)

Count III claims breach of ERISA fiduciary duty due to the failure to insure certain welfare benefit insurance premiums. Once again, Count III asserts a claim against Old Polaroid and no one else: "As a fiduciary of an employee benefit plan, *Polaroid* had a duty to act in the best interests of the beneficiaries." Compl. ¶ 44 (emphasis added); *see also id.* ¶ 18 ("At all relevant times, the 'old' Polaroid was a fiduciary of its employee benefit plan as defined by 29 U.S.C. § 1102(a)."); *id.* ¶ 28 (referencing "[t]he fiduciaries of the 'old' Polaroid's employee benefit plan"). Plaintiffs do not claim that One Equity Partners was a fiduciary under 29 U.S.C. § 1102(a). Nor do plaintiffs allege any facts showing that One Equity Partners achieved fiduciary status through any exercise of discretionary control or authority over any plan's management, administration or assets. *See* 29 U.S.C. § 1002(21)(A). Because plaintiffs make no allegations that One Equity Partners was a plan fiduciary, Count III should be dismissed as to it.

In addition, the decision to insure or not insure benefits under a plan is a matter of plan design. Plan design decisions—such as "decid[ing] who receives . . . benefits and in what amounts, select[ing] levels of funding, [and] adjust[ing] myriad other details"—are committed to the plan sponsor and do not implicate ERISA fiduciary duties. *Johnson* v. *Georgia-Pacific Corp.*, 19 F.3d 1184, 1188 (7th Cir. 1994). "When employers undertake those actions, they do not act as fiduciaries, but are analogous to the settlors of a trust." *Lockheed Corp.* v. *Spink*, 517 U.S. 882, 890 (1996) (citing *Johnson*); *see also Hughes Aircraft Co.* v. *Jacobson*, 525 U.S. 432, 444 (1999); *Campbell* v. *BankBoston, N.A.*, 327 F.3d 1, 6 (1st Cir. 2003). Indeed, nothing in ERISA imposes

---

[11]    It is also difficult to see how this promissory estoppel claim could be pleaded in a putative class action complaint. After all, each plaintiff's alleged detrimental reliance on a purported promise will be different, and therefore not amenable to class determination.

any obligation on a fiduciary to insure a plan benefit. To the contrary, ERISA contemplates that plan benefits may not be insured. *See, e.g.*, 29 U.S.C. § 1002(1) (defining welfare plan as program providing, for example, medical or death benefits "through the purchase of insurance or otherwise").

**D.    The Complaint Fails To State A Claim Under ERISA Section 510 Against One Equity Partners (Counts IV – VI)**

Counts IV, V and VI of the complaint assert claims under ERISA Section 510, 29 U.S.C. § 1140. Section 510 provides in relevant part:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan. . . .

Significantly, none of Counts IV through VI by its terms asserts any claim against One Equity Partners, or even mentions One Equity Partners. *See* Compl. ¶¶ 46-58. Although the complaint alleges that One Equity Partners is an "affiliate" of purchaser New Polaroid, *see id.* ¶¶ 11, 13, plaintiffs do not suggest in Counts IV through VI that, by mere affiliation, or by any other action, One Equity Partners violated Section 510. For this reason alone, Counts IV through VI should be dismissed as to One Equity Partners.

Dismissal of these counts is also required for two further independent reasons. First, Section 510 simply does not provide for a claim against a party based solely on its investment affiliation with another person who, allegedly, has violated that section.[12] Second, Counts IV through VI attempt to state a Section 510 claim against purchaser New Polaroid based on two alleged actions:

---

[12]    Notably, other provisions of ERISA do provide for joint and several liability among specified affiliated entities for certain clearly defined, pension-related liabilities. *See, e.g.*, 29 U.S.C. §§ 1082(c)(11)(B) (minimum funding of pension plans), 1362(a) (pension plan termination liabilities), 1364(a) (same). The fact that there is no reference to affiliate liability in Section 510 demonstrates that Congress did not intend to provide such a remedy. *See supra* § II.B (quoting *Great-West* and other cases).

first, New Polaroid's supposed involvement in debtor's termination of plaintiffs' employment with debtor, *see id.* ¶¶ 46, 52, 56-58; and, second, New Polaroid's alleged "refusal to hire" or failure to make plaintiffs its employees, *see id.* ¶¶ 49, 53. However, Counts IV through VI fail to state a claim because they ignore the terms of Section 510 and the facts the Court must accept as true in considering this motion to dismiss. Because the underlying claims against New Polaroid fail, any claims against OEP as an affiliate of New Polaroid must also fail.

### 1.    New Polaroid Did Not Violate Section 510 Due To Old Polaroid's Termination Of Plaintiffs' Employment

Under Section 510, it is unlawful for a person to interfere with a participant's benefit rights by taking certain specified actions.[13] As relevant to plaintiffs' Section 510 termination claim, the statutorily prohibited action must be "discharge" from Old Polaroid's employment. However, the person who discharged plaintiffs was Old Polaroid, not New Polaroid or One Equity Partners. If anyone could be liable under Section 510 for that action, it is Old Polaroid alone.

Evidently recognizing this flaw, plaintiffs attempt to assert that New Polaroid is nevertheless liable under Section 510 because it purportedly engaged in a "conspiracy" to violate Section 510 by requiring, as a term of the Asset Purchase Agreement, that Old Polaroid terminate them. *See id.* ¶¶ 52, 56, 58. There is, however, no factual or legal basis for such a claim.    First, as a matter of fact, the terms of the Asset Purchase Agreement did *not* require Old Polaroid to discharge plaintiffs. In relevant part, the Asset Purchase Agreement provides only that New Polaroid is free to offer employment to employees of Old Polaroid of its choosing. *See* Asset Purchase Agreement, § 6.08(a), at 47. The agreement says nothing about the continued employment by Old Polaroid of any other employees. Plaintiffs' allegation that the Asset Purchase Agreement required Old Polaroid to discharge them thus contradicts the Asset Purchase Agreement itself and cannot be

---

[13]    Under Section 510, the prohibited actions are: "discharge, fine, suspend, expel, discipline, or discriminate." 29 U.S.C. § 1140.

accepted as true for purposes of this motion to dismiss. *See, e.g., Arruda* v. *Sears, Roebuck & Co.,* 310 F.3d 13, 18 (1st Cir. 2002).[14]

Second, there is no legal basis for plaintiffs' conspiracy theory, because Section 510 does not provide for a claim of conspiracy. Section 510 proscribes only certain specified actions, such as discharge, for certain specified purposes. Section 510 includes no mention of conspiracy or liability for assisting or participating in another party's Section 510 violation. Notably, in other contexts, ERISA does by its express terms impose liability on parties who knowingly participate in the statutory violations of others. *See, e.g.,* 29 U.S.C. §§ 1105(a)(1), 1132(a)(1)(B). If Congress had intended there to be a claim against those who purportedly assist or conspire in a discharge that violates Section 510, it would have stated as much in the statutory text. Given ERISA's "comprehensive and reticulated nature," *see Nachman,* 446 U.S. at 361, there is no basis to conclude that Congress intended to authorize a Section 510 conspiracy claim and simply forgot to express the intent in statutory language. *See, e.g., Cipollone* v. *University of Pennsylvania,* No. Civ.

---

[14] Plaintiffs may argue that *Lessard* v. *Applied Risk Mgmt.,* 307 F.3d 1020 (9th Cir. 2002), supports their Section 510 claim. In *Lessard* the Ninth Circuit ruled that a private asset sale agreement providing for the automatic transfer of employment of all employees except those on medical, disability or other extended leave "facially discriminated" against persons on disability and medical leave. However, *Lessard* has no bearing here.

To begin with, *Lessard* involved an entirely private sale. In that case, there was no approval of the sale by a bankruptcy court; no court order that debtor's assets pass free of all employment, employment termination or ERISA liabilities, and no injunction against prosecution of claims asserting such liabilities.

In addition, *Lessard* is distinguishable on several critical scores. First, in *Lessard* the asset purchase agreement expressly provided that the employment of seller's employees on extended leave would not be transferred to buyer, a provision which the court ruled to effect a "presumptive discharge." Here the Asset Purchase Agreement provides only that New Polaroid shall have complete discretion to determine which Old Polaroid employees it intends to hire. Asset Purchase Agreement §6.08(a) at 47. Second, in *Lessard* the court noted that it would have been perfectly proper to terminate benefits of all employees. Here, that is precisely what happened, as all of Old Polaroid's welfare benefit plans were in fact terminated as to all participants two weeks after the closing of the asset sale. Accordingly, plaintiffs' termination of employment in fact caused them no injury that was not effected in any event by plan termination applicable to all employees. Third, in *Lessard* plaintiffs complained about what was in effect a discriminatory discharge from employment. Here, however, plaintiffs were "employees" of Old Polaroid purely as an administrative matter, as they were permanently unable to perform any services, and they had never sought, nor are they able to perform any responsibilities of, employment by New Polaroid.

Finally, *Lessard* is simply wrong. There is no reason to disregard the fundamental rule of corporate law that a purchaser of assets is under no obligation to hire employees of the seller who are unable to perform employment services where those individuals have recourse against the proceeds of the asset sale in the hands of the seller.

A. 97-6565, 971998 U.S. Dist. LEXIS 1153, at *4 (E.D. Pa. Feb. 3, 1998) (noting "[t]here is no indication of any statutory basis for" a conspiracy claim under section 510).

## 2.  New Polaroid Did Not Violate Section 510 Due To Its Failure To Hire Plaintiffs

### a.  Section 510 Does Not Prohibit The Refusal To Hire

Although the complaint alleges that New Polaroid violated Section 510 by failing to make plaintiffs its employees, *see* Compl. ¶¶ 49, 53, Section 510 does not prohibit refusal to hire. Section 510 proscribes only certain specified actions—discharge, firing, suspension, expulsion, discipline, or discrimination. Refusal to hire is simply not on the list of prohibited acts, and there is no basis for expanding this list beyond the express congressional proscriptions. *See supra* § II.B.

Plaintiffs might try to argue that New Polaroid "discriminated" against them when it failed to hire them. Such an argument, however, would be without merit. Significantly, in enacting Section 510, Congress recognized that the statute paralleled in many respects federal legislation prohibiting discrimination based on, *e.g.*, race, gender, and union affiliation.[15] Notably the other federal discrimination statutes explicitly prohibit discrimination in the refusal to hire while Section 510 does not.[16] Consistent with this fundamental distinction between hiring and firing, the other federal discrimination statutes protect "individuals," which would include job applicants. Section 510, on the other hand, extends protection only to "participants," a term which includes only certain current and former "employees." *See* 29 U.S.C. § 1002(7). Given the careful wording of the statute, Section 510's reference to "discriminate" cannot be extended to cover a refusal to hire. *See Becker* v. *Mack Trucks, Inc.*, 281 F.3d 372, 380-81 (3d Cir. 2002). Moreover, extension of the term "discriminate" to include a refusal to hire would not be warranted by the purpose of

---

[15]  *See* 2 Legislative History of ERISA (Comm. Print 1976), at 1641 (statement of Sen. Javits, 1775 (statement of Sen. Hartke).

[16]  *See* 29 U.S.C. § 158(a)(3) (National Labor Relations Act); *id.* § 623(a)(1) (Age Discrimination in Employment Act); 42 U.S.C. § 2000e-2(a)(1) (Title VII (race, gender, national origin discrimination)); *id.* §12112(a) (Americans with Disabilities Act).

Section 510—*i.e.*, to prevent employers from failing to provide benefits they have promised to their employees. *Id.* at 381-82.

### b.   Plaintiffs Do Not Allege That They Could Become New Polaroid's Employees

Although plaintiffs assert that New Polaroid has violated Section 510 by failing to hire them, it is clear from the complaint that plaintiffs neither seek nor are qualified to be employees of New Polaroid. In ERISA contexts, a person is an "employee" if, in return for compensation, he provides services to an employer.[17] However, plaintiffs do not allege that they have ever performed services for New Polaroid, or that they are ready, willing and able to do so. Indeed, the complaint makes clear that they are totally and permanently disabled. *See* Compl. ¶¶ 6-10.

Plaintiffs' lack of employee status eliminates their standing to sue New Polaroid or One Equity Partners for alleged violation of Section 510. Section 510 extends its protections only to "participants," and Section 502(a)(3) (the provision through which Section 510 claims are enforced) authorizes actions only by "participants." *See* 29 U.S.C. § 1132(a)(3). The term "participant" under ERISA, however, is limited to an "employee or former employee of an employer" (who meets certain other requirements). *Id.* § 1002(7). Having never been employees of New Polaroid, plaintiffs simply have no standing to sue New Polaroid under Section 510. *See Dykes* v. *DePuy, Inc.*, 140 F.3d 31, 36 n.2, 37-39 (1st Cir. 1998) (concluding an individual who was not an employee of defendant can not assert Section 510 claim against defendant). Moreover, because plaintiffs are unable to provide services to New Polaroid, *see* Compl. ¶¶6-10, they cannot satisfy a separate element of a Section 510 action, namely, that for a Section 510 claim, a plaintiff must have been

---

[17]   In *Nationwide Mut. Ins. Co.* v. *Darden*, 503 U.S. 318, 319 (1992), the Supreme Court held that ERISA determines employee status using traditional agency law criteria for identifying master-servant relationships. Applying those criteria, an individual is considered an employee only when he performs services for the employer (subject to the employer's control). *See* Restatement (Second) of Agency § 220(2), *cited in Darden*, 503 U.S. at 324; *id.* § 2(2); Rev. Rul. 87-41, 1987-1 Cum. Bull. 296, 298-99, *cited in Darden*, 503 U.S. at 324; *see also Flynn* v. *Hach*, 138 F. Supp. 2d 334, 346 (E.D.N.Y. 2001) (finding the individual not an "employee" under common law test adopted in *Darden* for periods in which he was not providing services).

"qualified for" a position with the employer. *See Barbour* v. *Dynamics Research Corp.*, 63 F.3d 32, 38 (1st Cir. 1995); *Grottkau* v. *Sky Climber Inc.*, 79 F.3d 70, 73 (7th Cir. 1996).

## CONCLUSION

For the foregoing reasons, the complaint should be dismissed with prejudice as to One Equity Partners LLC.

Respectfully submitted,

ONE EQUITY PARTNERS LLC

By its attorneys,

James S. Dittmar, P.C. (BBO No. 126320)
Gus P. Coldebella (BBO No. 566918)
GOODWIN PROCTER LLP
Exchange Place
Boston, Massachusetts 02109
(617) 570-1000
(617) 523-1231 (facsimile)

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney(s) of record for each other party by mail/hand on _____