## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **SALLY FERRARI, ELAINE JOHNSON,** | ) | |
| **JOHN MAGENHEIMER, ELIZABETH** | ) | |
| **WILLIAMS, and DAVID A.** | ) | |
| **MANISCALCO,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **POLAROID CORPORATION, INC.;** | ) | **CA. No. 03-11275-MLW** |
| **PRIMARY PDC, INC.; OEP IMAGING** | ) | |
| **OPERATING CORPORATION, INC.; and** | ) | |
| **ONE EQUITY PARTNERS, INC.** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT POLAROID CORPORATION'S
MOTION TO TRANSFER THE CASE OR, IN THE ALTERNATIVE,
TO DISMISS PLAINTIFF'S COMPLAINT AND ONE EQUITY
PARTNERS' MOTION TO DISMISS**

### I.    INTRODUCTION

This lawsuit is brought by a class of former Polaroid employees and their

surviving spouses who were receiving Long Term Disability Benefits through Polaroid's

qualified employee benefit plan. As a part of that plan, the plaintiffs were promised that

for so long as they received Long Term Disability benefits they would also receive

medical, dental and life insurance cost-free. In summer 2002, Polaroid and One Equity

Partners agreed on the terms of a purchase agreement whereby One Equity Partners

would purchase 65% of Polaroid's assets. The two corporations agreed, before the sale

closed, that Polaroid would terminate all employees receiving Long Term Disability

benefits. As a consequence of being terminated in July 2002, the plaintiffs' medical,
dental and life insurance premiums were cut off.[1] The complaint alleges that this conduct
constituted an illegal conspiracy between the two corporations to violate the plaintiffs'
ERISA rights. The plaintiffs seek equitable and legal relief pursuant to the Employee
Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et. seq.* ("ERISA").

## II.    PROCEDURAL BACKGROUND

In response to the plaintiffs' original complaint, Polaroid Corporation moved to
transfer or, in the alternative, to dismiss the case[2]. One Equity Partners moved to dismiss
all counts. Subsequent to service of the defendants' motions, the plaintiffs amended their
complaint, dismissing three defendants, including One Equity Partners, adding one
defendant, Neil Goldman, and narrowing the claims to two counts: one against the "new"
Polaroid Corporation for violation of ERISA Sec. 510 and one against Neil Goldman,
former general counsel, secretary and member of the Polaroid benefits committee, for
breach of fiduciary duty.[3] Because Mr. Goldman has yet to respond to the plaintiff's
amended complaint and because all original defendants but the "new" Polaroid
Corporation have been dismissed, the plaintiffs respond to so much of Polaroid's
arguments as remain at issue in light of the amended complaint.

---

[1] The plaintiffs' terminations did not affect their salary reimbursement benefit because this benefit had
been properly insured.

[2] The names of the corporations can be confusing. After the sale, the original Polaroid Corporation (the
debtor) changed its name to Primary PDC, Inc. Simultaneously, One Equity Partners changed its name to
Polaroid Corporation. *See Memorandum in Support of Defendant One Equity Partners LLC'S Motion to
Dismiss, p.1, n.4.* They will be referred to as the "old" Polaroid and the "new" Polaroid.

[3] A copy of the plaintiffs' Amended Complaint is annexed hereto as Exhibit 1.

2

III.     **ARGUMENT**

    A.     **STANDARD**

"In adjudicating motions to dismiss under Fed. R. Civ. P. 12(b)(6), the

Court must accept all allegations in the complaints as true and all reasonable inferences

must be drawn in favor of the plaintiffs. The complaints should be dismissed only if 'it is

clear that no relief could be granted under any set of facts that could be proved consistent

with the allegations.'" *Limone v. United States*, 271 F. Supp. 2d. 345, 349 (D. Mass.

2003)(internal citations omitted).  In this case, the facts alleged in the plaintiffs' amended

complaint control.

    B.     **THE PLAINTIFFS' AMENDED COMPLAINT STATES A CAUSE OF ACTION AGAINST POLAROID BECAUSE IT ALLEGES VIOLATIONS AGAINST POLAROID FOR ACTIONS TAKEN IN ITS OWN RIGHT, DOES NOT ALLEGE SUCCESSOR LIABILITY, AND DOES NOT INVOKE THE BANKRUPTCY PROCEDINGS OR THE BANKRUPTCY ESTATE.**

Polaroid asserts two arguments in support of its motion, both of which rest on the

status of the debtor "old" Polaroid and its bankruptcy proceedings in Delaware. At the

heart of Polaroid Corporation's Motion to Transfer Venue, or in the alternative, to

Dismiss the Plaintiff's Complaint, is the premise that the plaintiffs' case against what is

the "new" Polaroid Corporation seeks recovery from and involves the debtor "old"

Polaroid's bankruptcy estate.  This argument is based on the false premise that the

complaint alleges wrongs for which the defendant would be liable only under the theory

of successor liability.  Polaroid also asserts that the bankruptcy sale order of the Delaware

Bankruptcy Court, approving its purchase of debtor Polaroid's assets, controls the

plaintiffs' present action because, Polaroid suggests, the present claims constitute a

"collateral attack" on the bankruptcy proceedings of the "old" Polaroid and must

therefore be brought in the Delaware Bankruptcy Court. *See Celotex Corp. v. Edwards,* 514 U.S. 300 (1995)(holding that all actions that can be characterized as "core proceedings" or "related to" the administration of a bankruptcy estate are properly brought in bankruptcy court). None of these arguments survive close scrutiny in light of the amended complaint.

The plaintiffs do not bring this case in their capacity as creditors of the bankruptcy estate, do not allege that Polaroid is liable for acts of the debtor under any theory of successor liability, and do not allege wrongful acts that in any way implicate the bankruptcy action. In simplest terms, the plaintiffs allege that before the purchase and sale of the debtor's assets, what is now the "new" Polaroid Corporation conspired with the "old" Polaroid to interfere with the plaintiffs' receipt of benefits in violation of ERISA Sec. 510. The plaintiffs' further allege that the defendant Goldman breached his fiduciary duty to the Long Term Disability plan by simultaneously acting as a fiduciary for the plan and by negotiating both a purchase agreement that required the termination of the plaintiffs' employment - an act that resulted in the plaintiffs' loss of promised health, dental and life insurance benefits – and a personal stake in the new corporation for himself. Both are organic claims, alleged against each defendant for acts each took in its own capacity; each act is wholly independent of the bankruptcy. Neither implicates the debtor Polaroid. All the wrongful conduct occurred before the asset sale and was independent of that sale. Neither Polaroid Corporation nor Goldman can turn to the debtor to satisfy any judgment and neither should be allowed to seek protection from suit, in this or any court, based on the debtor's bankruptcy proceedings.

## C.    THE PLAINTIFFS' COMPLAINT STATES A CLAIM AGAINST THE DEFENDANT POLAROID CORPORATION THAT IS PROPERLY LITIGATED IN THIS COURT

The plaintiffs allege in their amended complaint that defendant Polaroid

Corporation illegally conspired with "old" Polaroid to wrongfully reduce old Polaroid's

obligations toward its employees who were receiving Long Term Disability benefits.

The plaintiffs allege that this conspiracy was entered into for the purpose and with the

specific intent of interfering with the plaintiffs' rights to and attainment of the medical,

dental and life insurance benefits that were promised to them by the "old" Polaroid. The

amended complaint brings this claim against the "new" Polaroid Corporation in its own

right; the "old" Polaroid's bankruptcy estate is not named as a defendant, nor are the

estate's assets subject to this claim.

### 1.    The Conspiracy Claim

Section 510 of ERISA provides, in pertinent part:

> It shall be unlawful for any person to discharge or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employer benefit plan for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan.

29 *U.S.C.* § 1140. The section prohibits employers from discharging an employee

who has asserted an ERISA right for the purpose of interfering with that right. Congress

enacted Section 510 "primarily to prevent unscrupulous employers from discharging or

harassing their employees in order to keep them from obtaining vested ... benefits."

*DeWitt v. Penn-Del Directory Corp.*, 106 F.3d 514, 522 (3d Cir. 1997). As a result,

"[t]he ultimate inquiry in a Section 510 case is whether the employment action was taken

with the specific intent of interfering with the employee's ERISA benefits." *Barbour v.*

*Dynamics Research Corporation,* 63 F.3d 32, 37 (1st Cir. 1995), *cert. denied* 516 U.S.

113 (1996). To prove a prima facie case under Section 510 a plaintiff must show (1) that an employer took specific actions (2) for the purpose of interfering (3) with an employee's attainment of ... benefit rights. *Eichorn v. AT&T Corp*, 248 F.3d 131, 149 (3rd Cir. 2001)

Clearly, the old Polaroid could not arbitrarily fire all of its employees who had asserted their ERISA rights by seeking and obtaining benefits under the LTD plan. *See Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 143 (1995)(Allegation that employer terminated employee to prevent employee from receiving benefit is the "prototypical" ERISA claim.). The question, then, is whether the "old" Polaroid and the new Polaroid, acting together as they did, could legally do what the "old" Polaroid alone could not have done. The plaintiffs, supported by the Ninth Circuit decision in *Lessard v. Applied Risk Management, et al.*, 307 F.3d 1020 (9th Cir. 2002), suggest that the "new" Polaroid is liable for conspiring to violate ERISA rights to the same extent that the debtor Polaroid would be. This liability arises not at all from the fact the "new" Polaroid is some sort of successor to the "old" Polaroid. Rather, the liability is based directly on the conduct of OEPI itself prior to the sale.

*Lessard, id.*, involved a situation virtually identical to the present case. Two companies negotiated the sale of one of the companies.. As a term of the sale, all employees would be automatically transferred to employment with the new company. However, in order to transfer, the employee must have been actively employed, or on non-medical, non-extended leave on the day that the sale agreement was effectuated. Employees who were out of work on disability or other medically related leaves on the day of the sale were eligible for transfer only "if and when he or she returns to active employment." *Lessard*, 307 F.3d at 1022, n. 1. In short, all employees receiving long term disability benefits at the time of the sale were terminated, all active employees were hired by the purchasing corporation. This is identical to the situation in the present case.

6

Lessard was out on medical leave the day of the sale; at the time of the lawsuit her medical condition was such that her return to active work was unlikely. She originally filed her suit under the Americans with Disabilities Act. On motion, the District Court dismissed her ADA claim and further held that her state law claims were to be construed as alleging a single claim for wrongful termination pursuant to ERISA Sec. 510. The Court then found that <u>both the buyer and the seller</u> had violated Lessard's Section 510 rights. *Lessard*, 307 F.3d at 1024-1025. The Court of Appeals confirmed, finding both buying and selling companies liable for the ERISA violation.

The Ninth Circuit's application of common law conspiracy analysis in *Lessard* is consistent with other courts' extension of ERISA liability to those who conspire with ERISA employers or fiduciaries. For example, in *Thornton v. Evans*, 692 F.2d 1064 (7th Cir. 1982), the Seventh Circuit found that entities not directly subject to ERISA liability can be found liable to ERISA beneficiaries if they act jointly with proper ERISA defendants. The Court said,

> But, even though plaintiffs have failed to state a claim against these defendants as fiduciaries within the meaning of ERISA, they may still have stated a claim under ERISA on the theory that the defendants conspired with parties who *are* fiduciaries to breach the duties imposed by ERISA

*Id. At 1078. See also Fremont v. McGraw-Edison Co.*, 606 F.2d 752, 759 (7th Cir. 1979*), cert. denied*, 445 U.S. 951 (1980) ("We are not saying that in an ordinary civil action against a trustee, others who have aided him, or conspired with him, in a breach of fiduciary duty may not be liable to the extent that they have profited from the breach. *See* Restatement, Second, Trusts § 256.") Accord *Freund v. Marshall & Ilsley Bank, 485 F. Supp. 629, 641-42 (W.D. Wis. 1979).* (In an ERISA action, "the Court is fully empowered

to award the relief available in traditional trust law against nonfiduciaries who knowingly participate . . . in a breach of trust.")[4]

Similarly, in *Eichorn v. AT&T Corp*, 248 F.3d 131 (3rd Cir. 2001), the Third Circuit found that all parties to the sale of a corporation could be jointly liable for violating the ERISA obligations of the selling entity. The Court specifically found that evidence that the purchasing entity would be relieved from paying expensive benefits for some employees of the selling company could supply a motivation for violating the employees' ERISA rights, the same motivation alleged in the present case. The Court said,

> Plaintiffs point to the economic benefits that both
> Lucent and AT&T received from the no-hire
> agreement, specifically that neither defendant was
> required to pay for pension benefits, as evidence of
> specific intent to interfere with an ERISA pension
> plan in violation of § 510. *Turner v. Schering-
> Plough Corp.*, 901 F.2d 335, 348 (3d. Cir. 1990)
> (savings to an employer that result from employees'
> termination might be viewed as a motivating factor
> sufficient to satisfy the intent element of § 510
> liability).

248 F.3d at 149. Such facts, the Court found, are prima facie evidence of both the purchasing and selling corporations' intent to violate the beneficiaries' ERISA rights. "We hold that plaintiffs have produced sufficient evidence that both AT&T and Lucent received a direct and substantial financial gain from the cancellation of pension benefits, namely they were relieved from paying large sums for the pension benefits of the several Paradyne employees affected by the agreement." *Id.*, 248 F.3d at 150.

---

[4] A long line of cases are in accord with *Freund's* reasoning. *See, e.g., Brock v. Hendershott*, 840 F.2d 339, 342 (6th Cir. 1988); *Lowen v. Tower Asset Management, Inc.*, 829 F.2d 1209, 1220 (2d. Cir. 1987); *Fink v. Nat. Savings & Trust Co.*, 772 F.2d 951, 958 (D.C. Cir. 1985) (dicta); *Dole v. Compton*, 753 F. Supp. 563, 565-69 (E.D. Pa. 1990); *Pension Benefit Guar. Corp. v. Ross*, 733 F. Supp. 1005, 1006-08 (M.D.N.C. 1990); *Pension Fund-Mid Jersey Trucking Ind. v. Omni-Funding Group*, 731 F. Supp. 161, 177-79 (D.N.J. 1990).

The First Circuit has similarly applied traditional civil conspiracy law in the

ERISA context. In *Crane v. Green & Freedman Baking Co.*, 134 F.3d 17, 24 (1st Cir.

1998), the Court cited *Lowen v. Tower Asset Management,* 829 F.2d 1209 (2nd Cir.

1987), which held that an entity that conspires with a proper ERISA defendant may

become liable itself for the ERISA violation. "Parties may not use shell-game-like

maneuvers to shift fiduciary obligations to one legal entity while channeling profits from

self-dealing to a separate legal entity under their control." 829 F. 2d at 1220. This is

consistent with the application of civil conspiracy law, which requires simply an

agreement to do something wrong and an act in furtherance of that agreement. For

example, in *Aetna Casualty Sur. Co. v. P & B Autobody*, 43 F.3d 1546, 1564 (1st Cir.

1994), the Court said that "[f]or liability to attach on this basis, there must be, first, a

common design or an agreement, although not necessarily express, between two or more

persons to do a wrongful act and, second, proof of some tortious act in furtherance of the

agreement." *See* Restatement (Second) of Torts § 876 cmt. b. ("Where two or more

persons act in concert, each will be jointly and severally liable for the tort.")

The sale of the old Polaroid to One Equity Partners (which is now Polaroid

Corporation) is factually similar to these cases. ERISA barred old Polaroid from

terminating all its employees who were receiving LTD benefits so that it could avoid the

expense of paying for those benefits. Such an action would have violated Section 510. A

party who conspired with Polaroid to violate ERISA is equally liable as Polaroid itself,

once an act in furtherance of the conspiracy takes place. What the old Polaroid could not

do on its own, the old Polaroid and the new Polaroid could not do together.

2.    **Defendant Polaroid Can Be Held Liable, *In Its Own Right,* for Its Participation In the Conspiracy**

In joint action and conspiracy cases, such as the present complaint alleges, each actor is held liable for its individual participation in the joint act and is likewise liable, individually, for any judgment against it. *See* Restatement (Second) Torts, *supra.* The plaintiffs' case is easily distinguished from those in which plaintiffs were enjoined from pursuing claims against the purchaser of a debtor's assets. For instance, in *In Re Paris Industries*, 132 B.R. 504 (D. Maine 1991), the Court enjoined the plaintiffs' product liability suit against the purchaser of the alleged negligent debtor company because the suit was a "direct challenge" to the sale order and would have an "adverse impact" on the bankruptcy estate. *Id.* at 507. The Court's holding flowed directly from the fact that the acts of the debtor were at issue.

In their amended complaint, the plaintiffs do not allege that defendant "new" Polaroid should be held liable because of any acts of the debtor corporation. Rather, "new" Polaroid is responsible for acts it committed; it is the wrongful conduct of the decision makers that creates liability. The plaintiffs' suit does not "directly challenge" the acts of the debtor. *Id.* Therefore, the plaintiffs' suit will not in any way affect the administration of the bankruptcy estate.

3.    **The Plaintiffs Have Standing to Bring Their Section 510 Claim Against Polaroid Corporation**

"ERISA § 502(a)(2) provides that "[a] civil action may be brought...by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 409. 29 U.S.C. § 1132(a)(2)." *Kling v. Fid. Mgmt. Trust Co.,* 270 F. Supp. 2d 121, 124 (D.Mass. 2003). Polaroid argues that because "[p]laintiffs are neither current nor former employees of New Polaroid" that they do no have standing to sue." However, the plaintiffs are not considered "employees" of the new Polaroid Corporation due only to the defendant's illegal activity. As pled in the amended complaint, had "new" Polaroid

not conspired with the debtor Polaroid to terminate the plaintiffs' employment, thereby cutting-off their health and life insurance premiums, the plaintiffs would be considered employees of the new Polaroid, just as all other former "old" Polaroid employees are presently employed by the "new" Polaroid. *See, Amended Complaint ¶¶ 36, 38.* In fact, the only thing that differentiates the plaintiffs from other former Polaroid employees is that they did not become employees of the New Polaroid. *See, Amended Complaint ¶ 38.* The very reason the plaintiffs bring this action is because Polaroid fired them. The defendant's argument sounds like the plea of the child who murders his parents and then seeks mercy because he is an orphan.

The First Circuit has interpreted ERISA standing with great breadth. "The ultimate question is whether the plaintiff is within the zone of interests ERISA was intended to protect." *Vartanian v. Monsanto* Co., 14 F.3d 697, 701 (1st Cir. 1994), quoting, *Astor v. International Bus. Mac. Corp.*, 7 F.3d 533, 538-539 (6th Cir. 1993) (holding that the plaintiff, though not technically a plan participant at the time he initiated suit, must be afforded standing to sue because "given the broad inclusive scope of the ERISA statute, and its preclusion of all other judicial recourse, it would be entirely inconsistent with the ERISA statute," to hold otherwise. *Id.* at *702-702).* Similarly, in *Sotiropoulos v. The Travelers Indemnity Co. Of Rhode Island*, 971 F. Supp. 52 (D. Mass. 1997), the District Court (Ponsor, J.) held that *Vartanian's* broad standing analysis encompassed a plaintiff's allegation of wrongful termination of LTD benefits, where she initiated her complaint after the termination of her employment, when, just as with thye present plaintiffs, she was not an employee of the defendant.) *See Crawford v. Lamantia, et. al.,* 34 F.3d 28, 31 n.2 (suggesting a plaintiff who is terminated with the intent of depriving him of standing to initiate an action can maintain an ERISA cause of action.).[5]

---

[5] The plaintiffs, as beneficiaries of the Polaroid LTD Plan, have standing to sue Neil Goldman for an alleged breach of fiduciary duty pursuant to 29 U.S.C. § 1132(a), "which authorizes a "participant," "beneficiary" or "fiduciary" to bring a civil action for breach of any fiduciary duty proscribed by 39 U.S.C. § 1109(a). *Crawford v. Lamantia, et al.,* 34 F.3d 28, 31 (1st. Cir. 1994).

Of course, were the defendant correct that the plaintiffs lack standing to bring an ERISA claim, the plaintiffs in *Lessard, supra.* and *Eichorn, supra*, would also have lacked standing and those cases would have been decided differently than they were.

Following the reasoning of *Sotitopoulos* and *Crawford*, the plaintiffs have standing to sue new Polaroid. Allowing the plaintiffs to pursue this claim in their capacity as wrongfully terminated employees comports with ERISA's general scheme and is consitent with ERISA's objective of protecting employees' rights as guaranteed by employee benefit plans. *Helwig, et.al. v. Kelsey-Hayes Company*, 857 F.Supp.1168, 1181 (D. EDMI, 1994), quoting *29 U.S.C. ¶ 1001(b)*.

The wrongful loss of employee status cannot preclude suit if Section 510 is to have any meaning as a protective device for the wrongfully terminated employee. To so hold would be to doubly punish the employee, protect the employer, and place an unavoidable obstacle in the path of those seeking to enforce their ERISA rights.

### D. THE PLAINTIFFS' CASE SHOULD NOT BE TRANSFERRED TO DELAWARE BECAUSE THE DELAWARE BANKRUPTCY COURT DOES NOT HAVE JURISDICTION TO HEAR THE PLAINTIFFS' CLAIMS

Jurisdiction for the claims alleged in the plaintiffs' amended complaint properly lies in this Court. The plaintiffs allege two separate counts of ERISA violations that do not constitute "core proceedings" and which are "unrelated" to the debtor Polaroid's bankruptcy proceedings in Delaware. *Celotex, supra.*

#### 1. The Delaware Bankruptcy Court Has No Jurisdiction Over the Plaintiffs' Claims Because The Plaintiffs' Suit Is Not A Core Proceeding Related to the Bankruptcy Action.

The plaintiffs' Amended Complaint is not a "core proceeding" relating to the "old" Polaroid's bankruptcy case, such that it is required by *28 U.S.C. § 57 (B)(2)(A-O)*

12

to be heard in the Bankruptcy Court. The statute's listed examples of core proceedings

demonstrate that in order to be considered such the proceeding at issue must have some

effect on the bankruptcy estate. *Id.* None of the plaintiffs' claims do.

> To qualify as core, a proceeding must at least be so integral to the bankruptcy
> process that Congress has the power under Article I of the Constitution to
> authorize a specialized, non-Article III judge to render a final decision of its
> merits. Accordingly, under the guiding precedent in this Circuit, a proceeding is
> 'core' under § 157(b) only if it is integral to the basic function of the bankruptcy
> court and historically has been entrusted to the bankruptcy court, not reserved
> exclusively for Article III courts.

*Gray v. Exec. Risk Indem., Inc. (In Re Molten Metal Tech., Inc.)*, 271 B.R. 711, 714

(Bankr. D. Mass. 2002). As the plaintiffs' claims do not implicate the debtor or the

debtor's estate, they do not qualify as core proceedings. *See In re Gardner*, 913 F.2d

1515, 1518 (10th Cir. 1990) ("Actions which do not depend on the bankruptcy laws for

their existence and which could proceed in another court are not core proceedings.")

Bankruptcy Court jurisdiction also fails because the plaintiffs' claims are not

"related to" the administration of the debtor's estate. "A bankruptcy judge may hear a

proceeding that is not a core proceeding but that is otherwise related to a case under title

11 [11 USCS § § 101 *et seq.*]." *28 U.S.C. § 157(c)(1)*.

> 'The usual articulation of the test for determining
> whether a civil proceeding is related to bankruptcy
> is whether the outcome of that proceeding could
> conceivably have any effect on the estate being
> administered in bankruptcy. … An action is related
> to bankruptcy if the outcome could alter the
> debtor's rights, liabilities, options or freedom of
> action (either positively or negatively) and which in
> any way impacts upon the handling and
> administration of the bankrupt estate'.

*In Re Calorie Express*, 288 B.R. 167, 169 (D. Mass. 2002), *quoting Celotex, 514 U.S. at*

*308, n.6.* The plaintiffs' amended complaint excludes the debtor Polaroid as a defendant,

13

and alleges claims against "new" Polaroid Corporation and Neil Goldman for acts taken

in their own right--acts that do not implicate successor liability of the debtor Polaroid--

and which do not implicate the debtor's bankruptcy estate. In short, Polaroid's debtors

will neither receive more nor less money depending on the outcome of the present case.

As a result, the Delaware Bankruptcy Court does not have jurisdiction over the plaintiffs'

present claims. "Bankruptcy courts have no jurisdiction over proceedings that have no

effect on the debtor." *Celotex , supra at* 308, n.6.

> Both the case law and the legislative history make it
> clear that the lodestar of bankruptcy jurisdiction is
> the effect of a given action on a bankruptcy
> estate...A matter may be unrelated to a bankruptcy
> estate because it substantively had no impact on that
> estate or it may be unrelated because the estate does
> not exist anymore. Either way, if a give dispute is
> unrelated to a bankruptcy estate, a bankruptcy
> court...has no subject-matter jurisdiction over that
> dispute.

*In Re Calorie Express*, *supra* at 169. "Related proceedings...must, however, 'potentially

have some effect on the bankruptcy estate, such as altering debtor's rights, liabilities,

options, or freedom of action, or otherwise have an impact upon the handling and

administration of the bankrupt estate.' (citations omitted)." *In Re G.S.F. Corp.,* 978 F.2d

1467, 1475 (1st Cir. 1991).

If Polaroid and/or Goldman were to be found liable for the acts alleged in the

plaintiffs' amended complaint neither could turn to the bankruptcy estate to satisfy the

plaintiffs' judgments against them. Just as Polaroid "did not agree to assume Old

Polaroid's ERISA liabilities," *Polaroid Corporation's Memorandum of Law (In Support*

*of Its Motion to Transfer the Case Or, In the Alternative, to Dismiss Plaintiff's*

*Complaint, p. 19*, debtor Polaroid bears no liability for "new" Polaroid Corporation's acts.

### 2. The Bankruptcy Sale Order Is Of No Effect to The Plaintiffs' Amended Complaint

Polaroid urges the Court to apply the Delaware Bankruptcy Court's Sale Order, approving the purchase and sale of the majority of debtor Polaroid's assets to One Equity Partners. This is a bait and switch argument. If this Court is convinced that the plaintiffs' amended complaint is "related to" the debtor Polaroid's bankruptcy proceeding, then a finding that the sale order is relevant seems likely. However, the Sale Order contains a retention of jurisdiction clause that specifies that the Bankruptcy Court retains jurisdiction to interpret the order. Therefore, by baiting this Court into finding the Sale Order controlling, the defendant would effectively force a switch to the Delaware courts.

Polaroid has also filed an adversary proceeding in the Bankruptcy Court seeking a declaration that the plaintiffs' suit is foreclosed by the sale order. In that proceeding, the Bankruptcy Court will rule on the very issue that the defendant would like this Court to decide--whether the Plaintiffs' suit is foreclosed by the sale order, which is effectually a ruling on whether the suit is related to the bankruptcy estate. Absent a decision in the Bankruptcy Court that the present suit implicates the debtor's "rights, liabilities, options, or freedom of action," *In Re G.S.F. Corp., supra* at 1475, this Court should assume, for the reasons discussed above, that the present case is unrelated to the bankruptcy estate in Delaware.

### 3. The Plaintiffs' Notice of the Contents of the Sale Order Does Not Affect Their Claims.

15

Whether the plaintiffs were on notice of the terms of the Sale Order is of no consequence to the instant action. As alleged in the Amended Complaint, all facts at issue with respect to the plaintiffs' claims occurred <u>prior</u> to the Sale Order, in fact, <u>prior</u> to the sale agreement itself. The amended complaint alleges that the illegal activity that resulted in the plaintiffs being wrongfully stripped of their promised benefits occurred during the negotiation process. The final Purchase Agreement is not evidence of the wrongful act alleged and is, in many respects, irrelevant to the claims.

By way of analogy, were a criminal defendant accused of conspiracy to commit a bank robbery, a bag of marked bills found in the back seat of the defendant's car would not be direct evidence the defendant engaged in a conspiracy. The bills represent evidence only that a criminal act likely took place. The best evidence of the defendant's conspiratorial activity would be testimony of a person, present in the same room as the defendant and his co-conspirator, that he overheard the two planning the crime. This analogy applies to the facts as alleged in the plaintiff's amended complaint. The Purchase Agreement, approved by the Bankruptcy Court, was the fruit that sprouted from the illegal conspiracy. This case, as amended, however, is more about the planting and gestation of the seeds than about the ultimate plucking of the fruit. If this case is allowed to proceed, the plaintiffs expect to discover evidence that before the Bankruptcy Court approved the agreement, in fact, before the parties executed the agreement, the defendant corporation conspired to deprive them of their rightful benefits in violation of ERISA. Whether the agreement was ever executed, whether it was ever approved, are immaterial to the evidence needed to prove the conspiracy alleged. After all, the plaintiffs claim

there was a conspiracy to deprive them of their benefits, not a conspiracy to sell Polaroid's assets.

As a result, whether the plaintiffs had notice of the ultimate terms of the purchase agreement prior to its endorsement by the Bankruptcy Court is irrelevant to the question whether, prior to the Court's approval, the defendant corporation conspired to violate ERISA. Because the Sale Order is not relevant to the plaintiffs' conspiracy count, their notice of the order does not bar their Section 510 claim.

## IV.    CONCLUSION

For the foregoing reasons, the plaintiffs respectfully request that the Defendant Polaroid Corporation's Motion to Transfer or, in the alternative, to Dismiss Complaint be denied.

Respectfully submitted,

SALLY A. FERRARI, ELAINE JOHNSON, JOHN MAGENHEIMER, ELIZABETH WILLIAMS, and DAVID MANISCALCO, plaintiffs,

By their attorneys,

HARVEY A. SCHWARTZ
BBO # 448080
LAURIE A. FRANKL
BBO # 647181
Rodgers, Powers and Schwartz, LLP
18 Tremont Street, Suite 500
Boston, MA 02108
617-742-7010

Dated: November 24, 2003

17

## Certificate of Service

I, Laurie A. Frankl, hereby certify that on November 24, 2003, I caused a true copy of the foregoing to be served by mail upon:

Greg M. Galardi, Esq
Skadden, Arps, Meager & Flom LLP
One Rodney Square
P.O. Box 636
Wilmington, DE 19899

Gus Coldebella, Esq.
Goodwin Proctor
Exchange Place
Boston, MA 02109

Matthew Wiener, Esq.
Dechart LLP
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, PA 19103

Matthew J. Matule, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
One Beacon Street
Boston, MA 02018

Richard Glovsky, Esq.
Prince, Lobel, Glovsky & Tye LLP
585 Commercial Street
Boston, MA 02109

Laurie A. Frankl