IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

In re:                                    )    Chapter 11
                                          )
POLAROID CORPORATION,                     )    Case No. 01-10864 (PJW)
    et al.,                               )
                                          )    Jointly Administered
                          Debtors.        )    **Related Document: 865**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**ORDER AUTHORIZING AND APPROVING (1) ASSET PURCHASE
AGREEMENT, (2) SALE OF SUBSTANTIALLY ALL OF THE
DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, AND
ENCUMBRANCES TO OEP IMAGING CORPORATION, (3) ASSUMPTION AND
ASSIGNMENT TO OEP IMAGING CORPORATION OF CERTAIN
EXECUTORY CONTRACTS AND UNEXPIRED LEASES,
AND (4) CERTAIN RELATED RELIEF**

This matter having come before the Court on the Motion, dated April 18, 2002

(the "Motion")[1] of Polaroid Corporation ("Polaroid") and certain of its subsidiaries and affiliates,

as debtors and debtors in possession (collectively, the "Debtors") for entry of an order

authorizing and approving, among other things, (i) certain bidding procedures and bid

protections (collectively, the "Bidding Procedures"), and a form of asset purchase agreement in

connection with the Debtors' intended sale of substantially all of their assets, (ii) the sale (the

"Sale") of such assets free and clear of liens, claims, and encumbrances (other than the express

Permitted Encumbrances) to OEP Imaging Corporation (the "Purchaser"), pursuant to that

certain Asset Purchase Agreement, dated as of April 18, 2002 (including all exhibits and

attachments thereto, and as amended from time to time, the "Purchase Agreement," a copy of

which is attached hereto as Exhibit A), among certain of the Debtors, as sellers (collectively, the

---

1.    All capitalized terms not otherwise defined herein shall have the meaning ascribed to
      them in the Motion or the Purchase Agreement (as defined below), as applicable.

"Sellers"), and the Purchaser, as purchaser, subject to higher and better offers, (iii) the assumption and assignment of certain related executory contracts and unexpired leases, and (iv) notice with respect thereto; and the Court having entered an order on May 10, 2002 (the "Sale Procedures Order") approving, among other things, the proposed Bidding Procedures, the form of asset purchase agreement for the Sale, and notice of the Sale; and an auction (the "Auction") of the Acquired Assets (as defined below) having been held on June 26 and 27, 2002 in accordance with the Bidding Procedures; and certain of the Debtors, as Sellers, having executed the Purchase Agreement and the Purchaser having been determined by the Debtors to have submitted the highest and/or otherwise best bid at the Auction for the assets that are the subject of the Purchase Agreement, which include, but are not limited to, (A) (i) all of the Sellers' respective rights, title, and interest in and to all of the outstanding capital stock of the Acquired Subsidiaries (the "Acquired Stock") and (ii) all of each of the Sellers' respective rights, title, and interests in and to all of such Sellers' properties, assets, and rights of every nature, kind, and description, tangible and intangible (including goodwill), wherever such properties, assets, and rights are located and whether real, personal, or mixed, whether accrued, contingent, or otherwise, other than the Excluded Assets (such rights, title, and interests in and to all such assets, properties, and claims being collectively referred to herein, together with the Acquired Stock, as the "Acquired Assets"), and (B) the Assumed Contracts to be assumed and assigned to the Purchaser pursuant to the Purchase Agreement; and a hearing to consider the remaining relief requested in the Motion having been held on June 28, 2002 (the "Sale Hearing"); and the Debtors having submitted into evidence the transcript of the Auction at the Sale Hearing; and adequate and sufficient notice of the Bidding Procedures, the proposed Purchase Agreement (and all transactions contemplated thereunder and in this Order, including, but not limited to, the Sale

2

and the assignment of the Assumed Contracts to the Purchaser (collectively, the "Transactions")), the Auction, and the Sale Hearing having been given to all parties-in-interest in these cases; and all interested parties having been afforded an opportunity to be heard with respect to the Motion and all relief related thereto; and the Court having reviewed and considered (i) the Motion, (ii) the objections thereto, if any, and (iii) the arguments of counsel made, and the evidence proffered or adduced, at the Sale Hearing; and it appearing that the relief requested in the Motion and the approval of the Sale to the Purchaser of the Acquired Assets identified in the Purchase Agreement and the assumption and assignment to the Purchaser of the Assumed Contracts is in the best interests of the Debtors, their estates, creditors, and other parties-in-interest herein; and based on the Motion, the statements of counsel, the record of the Sale Hearing, and the Auction, and the record in these cases, the Court having determined and concluded as follows, it is hereby

FOUND AND DETERMINED THAT:[2]

A.     The court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.     The statutory predicates for the relief sought in the Motion are sections 105(a), 363(b), (f), (m), and (n), 365, and 1146(c) of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"), and Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

---

2.     Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

C.    This Court entered the Sale Procedures Order on May 10, 2002, and the Sale Procedures Order has become a final and non-appealable Order. Due, proper, timely, adequate, and sufficient notice of the Bidding Procedures has been given in accordance with the provisions of sections 363(b) and (f) of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004. No other or further notice of the Bidding Procedures is or shall be required.

D.    As evidenced by the affidavits of service and publication filed with this Court, and based on representations of counsel at the Sale Hearing, (i) due, proper, timely, adequate, and sufficient notice of the Motion, the Sale Hearing, and the Transactions, including, without limitation, the Sale of the Acquired Assets, the assignment of the Post-Petition Contracts, and the assumption and assignment of the Initial Assumed Contracts, has been provided in accordance with sections 102(1), 105(a), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9014, and 9019 and in compliance with the Bidding Procedures, (ii) such notice was good, sufficient, and appropriate under the particular circumstances, and (iii) no other or further notice of the Motion, the Sale Hearing, or the Transactions, including, without limitation, the Sale of the Acquired Assets, the assignment of the Post-Petition Contracts, and the assumption and assignment of the Initial Assumed Contracts is or shall be required.

E.    A reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein (including, without limitation, the Sale of the Acquired Assets, the assignment of the Post-Petition Contracts, and the assumption and assignment of the Initial Assumed Contracts) has been afforded to all interested persons and entities, including, without limitation: (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel for the Committee; (iii) counsel for the Agent for the Lenders; (iv) all entities known to have

4

expressed an interest in a Transaction with respect to the Acquired Assets since the Petition Date; (v) all entities known to have expressed or asserted any liens, claims, or encumbrances in or upon any of the Acquired Assets or the Assumed Contracts; (vi) the United States Attorney's office; (vii) the Securities and Exchange Commission; (viii) the Internal Revenue Service and any other taxing authority known to the Debtors as having a potential lien, claim, or encumbrance or other interest in all or any part of the Acquired Assets, if any; (ix) counsel for any other official committee appointed in these cases; (x) parties to governmental approvals or permits; (xi) non-Debtor parties to the Post-Petition Contracts and the Initial Assumed Contracts; (xii) all federal, state, and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested in the Motion; and (xiii) all other parties that have filed a notice of appearance and demand for service of papers in these cases under Bankruptcy Rule 2002.

F.    As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, the Debtors and their professionals have marketed the Acquired Assets and the Assumed Contracts and conducted the sale process with respect thereto in compliance with the Bidding Procedures and the Sale Procedures Order.

G.    Each Seller (i) has full corporate power and authority to execute the Purchase Agreement and all other documents contemplated thereby (including, without limitation, the Ancillary Agreements and any Acquisition Agreement), and the Sale of the Acquired Assets, the assignment of the Assumed Contracts by the Debtors, and all of the other Transactions have been duly and validly authorized by all necessary corporate action of each of the Sellers, (ii) has all of the corporate power and authority necessary to consummate the Transactions, (iii) has

taken all corporate action necessary to authorize and approve the Purchase Agreement and all other documents contemplated thereby (including, without limitation, the Ancillary Agreements and any Acquisition Agreement) and the consummation by such Debtors of the Transactions, and (iv) other than the consent of this Court, no consents or approvals are required for the Debtors, the Sellers, or the Purchaser to consummate the Transactions.

H.    The relief requested in the Motion (including, without limitation, the approval of the Purchase Agreement, the Sale pursuant to section 363(b) of the Bankruptcy Code, and the other Transactions) is a necessary and appropriate step toward enabling the Debtors to successfully conclude these Chapter 11 cases and is in the best interests of the Debtors, their creditors, their estates, and all other parties-in-interest in these cases.

I.    The Sale to the Purchaser and the consummation of the other Transactions is a prerequisite to the Debtors' ability to confirm and consummate a plan or plans of liquidation. The Sale is a sale in contemplation of a plan and, accordingly, a transfer pursuant to section 1146(c) of the Bankruptcy Code, which shall not be taxed under any law imposing a stamp tax or similar tax.

J.    The Debtors have demonstrated and proven to the satisfaction of this Court good, sufficient, and sound business purpose and justification for the Sale and other Transactions contemplated by the Purchase Agreement and this Order, pursuant to section 363(b) of the Bankruptcy Code. The relief requested in the Motion (including, without limitation, the approval of the Purchase Agreement, the Sale, and the other Transactions) at this time prior to, and outside of, a plan of reorganization is further justified by the compelling circumstances described in the Motion and on the record of the Sale Hearing. Accordingly, the entry of this Order and the approval of (a) the Sale of the Acquired Assets and the (b) assumption and assignment of the

Assumed Contracts to the Purchaser under the Purchase Agreement, pursuant to sections 363(b), 363(f), and 365 of the Bankruptcy Code, are necessary and appropriate to maximize the value of the Debtors' estates.

K.    The Purchaser is not an "insider" of any of the Debtors, as that term is defined in section 101 of the Bankruptcy Code, and is completely unrelated to the Debtors. The sale price under the Purchase Agreement was not controlled by an agreement between potential or actual bidders within the meaning of section 363(n) of the Bankruptcy Code. The Purchase Agreement was negotiated, proposed, and entered into by the Debtors and the Purchaser without collusion, in good faith, and from arm's-length bargaining positions. Neither the Debtors nor the Purchaser have engaged in any conduct that would cause or permit the Purchase Agreement or any part of the Transactions to be avoided under section 363(n) of the Bankruptcy Code.

L.    The Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby. The Purchaser will be acting in good faith within the meaning of section 363(m) of the Bankruptcy Code and In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143 (3d Cir. 1986) in closing the Transactions.

M.    The Purchase Agreement must be approved and consummated promptly in order to preserve the viability of the Debtors' businesses (collectively, the "Business") as a going concern.

N.    Through marketing efforts and a competitive sale process, including (i) the marketing of the Business through an investment banking firm for several months and (ii) seeking higher and better offers for the Acquired Assets and the Assumed Contracts through notice of the Motion, the Auction, and pursuant to the overbid procedures set forth in the Sale Procedures Order, the Debtors and their professionals afforded interested potential purchasers a

full, fair, and reasonable opportunity to make a higher and better offer to purchase the Acquired Assets and the Assumed Contracts.

      O.     The Acquired Assets, which include the Assumed Contracts to be assumed and assigned pursuant to the Purchase Agreement, are in full force and effect and (subject to, and upon the payment of, the Cure Amounts (as defined below herein)) relating to the Assumed Contracts, no default exists thereunder with respect to any material term, condition, covenant, payment obligation or other obligations thereunder, whether prepetition or postpetition in nature, on the part of any of the Debtors, other than any event of default existing as a result of the filing of these bankruptcy cases, which event of default may and shall be cured by or at the Closing.

      P.     Each entity with a security interest in the Acquired Assets or the Assumed Contracts has consented to its sale, is deemed to have consented to its sale, or could be compelled in a legal or equitable proceeding to accept a money satisfaction of such interest, or the Sale otherwise satisfies the requirements of section 363(f) of the Bankruptcy Code.

      Q.     The Debtors have, to the extent necessary, satisfied the requirements of sections 365(b)(1) and 365(f) of the Bankruptcy Code in connection with the sale, assumption, and assignment of the Initial Assumed Contracts, and shall upon the assignment thereof at the Closing, be relieved from any liability for any breach of such Initial Assumed Contracts.

      R.     The aggregate consideration provided by the Purchaser for the Acquired Assets pursuant to the Purchase Agreement and the assignment of the Assumed Contracts thereunder (i) is fair and reasonable, (ii) is the highest and best offer for the Acquired Assets and the Assumed Contracts, (iii) will provide a greater recovery for the Debtors' creditors than would be provided by any other practical, available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state,

8

territory, possession, or the District of Columbia. The terms and conditions of the Purchase Agreement are also fair and reasonable.

S.     The transfer of the Acquired Assets and the Assumed Contracts to the Purchaser will be a legal, valid, and effective transfer of such assets and contracts and will vest the Purchaser with all right, title, and interest of the Debtors to such assets and contracts free and clear of all claims and interests (except for the Permitted Encumbrances), including, without limitation, those (i) that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal, or termination of the Debtors' or the Purchaser's interest in such assets or contracts, or any similar rights and (ii) relate to taxes arising under or out of, in connection with, or in any way relating to the operation of the Business prior to the date of the closing of the Purchase Agreement (the "Closing Date").

T.     The Debtors may sell the Acquired Assets free and clear of all claims and interests of any kind or nature whatsoever (except for the Permitted Encumbrances) because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those non-debtor parties with claims or interests in the Acquired Assets who did not object, or who withdrew their objections, to the Purchase Agreement or the Motion are deemed to have consented to such sale pursuant to sections 363(f)(2) and 365 of the Bankruptcy Code. Those non-debtor parties with claims or interests in the Acquired Assets who did object fall within one or more of the other subsections of sections 363(f) and 365 of the Bankruptcy Code and are adequately protected by having their claims or interests, if any, attach to the cash proceeds of the Transactions retained by the Debtors on the Closing Date and ultimately attributable to the property against or in which they claim an interest with the same validity,

force, and effect which they now have, subject to any claims and defenses the Debtors may possess with respect thereto.

U.     Except for the specific liabilities and obligations of the Sellers expressly assumed by the Purchaser in the Purchase Agreement (collectively the "Assumed Liabilities"), (i) the transfer of the Acquired Assets and (ii) the assumption and assignment of the Assumed Contracts to the Purchaser shall not subject the Purchaser to any liability whatsoever with respect to the operation of the Business prior to the Closing Date or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, in any theory of law or equity, including, without limitation, any theory of antitrust, successor, or transferee liability. The Purchaser shall not assume or in any manner whatsoever be liable or responsible for any Liability of any Seller, or any predecessors or Affiliate of any Seller, and any of their respective Representatives or any claim against any and all of the foregoing, whether matured or unmatured, known or unknown, contingent or absolute, direct or indirect, whensoever incurred, whether or not related to the Business, other than the Assumed Liabilities.

V.     This Court has previously entered orders dated October 15, 2001 and November 5, 2001 that authorize, among other things, the use of the pre-petition lenders' "cash collateral" (as that term is defined in section 363(a) of the Bankruptcy Code), the granting of adequate protection therewith, and the incurrence by the Debtors of post-petition financing (collectively, the "Post-Petition Financing Orders"). The Post-Petition Financing Orders and the debtor in possession financing agreement (the "DIP Financing Agreement") specifically authorize and direct the payment to the Lenders of any cash proceeds from asset sales. The Interests of the Debtors' pre-petition and DIP lenders (collectively, the "Lenders") will attach to the Debtors'

interest in the proceeds of the Sale (the "Sale Proceeds") with the priority provided for in the Post-Petition Financing Orders.

W. Under the terms of the DIP Financing Agreement and the Post-Petition Financing Order, the Net Proceeds (as defined in the DIP Financing Agreement) from the Sale are to be paid directly to the Lenders. Notwithstanding such right, and other rights that the Lenders have under applicable law and the governing contractual documents, the Lenders have agreed, after extensive arm's-length negotiations with the Debtors and the Creditors Committee, to accept the irrevocable payment of $228 million in full satisfaction of all claims for principal and interest under the Existing Agreements (as defined in the Post-Petition Financing Order). The Debtors shall pay $50 million to the Agent upon entry of this Order, and $178 million simultaneously upon consummation of the Sale. The remaining cash purchase price and the equity being made available by Purchaser shall be paid to the estates. Upon receipt of said $228 million by the Agent for the account of the Lenders (subject to a $3 million maximum adjustment as described below), the Lenders shall be deemed to have released all remaining claims for interest and principal under the Existing Agreements.

X. The Purchaser would not have entered into the Purchase Agreement and would not consummate the Transactions, thus adversely affecting the Debtors, their estates, and their creditors, if the Sale of the Acquired Assets and the assignment of the Assumed Contracts to the Purchaser were not free and clear of all Interests (as defined below herein) of any kind or nature whatsoever, or if the Purchaser would, or in the future could, be liable for any of the Interests, including, without limitation, the Excluded Liabilities.

Y. The Debtors have demonstrated that it is an exercise of their sound business judgment to assume and assign the Assumed Contracts to the Purchaser in connection with the

11

consummation of the Transactions, and the assumption and assignment of the Assumed Contracts to the Purchaser is in the best interests of the Debtors, their estates, and their creditors. The Assumed Contracts being assigned to the Purchaser are an integral part of the Acquired Assets purchased by the Purchaser and, accordingly, the assumption and assignment of the Assumed Contracts to the Purchaser is reasonable, enhances the value of the Debtors' estates, and does not constitute unfair discrimination.

Z.    The Debtors and the Purchaser have (i) cured, or have provided adequate assurance of cure, of any default existing prior to the date hereof under each of the Assumed Contracts, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code, (ii) provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under any of the Assumed Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code, and (iii) have provided adequate assurance of the Purchaser's future performance of and under the Assumed Contracts, within the meaning of sections 365(b)(l)(C) and 365(f)(2)(B) of the Bankruptcy Code.

AA.    Time is of the essence in closing the Transactions, and the Debtors and the Purchaser intend to close the Sale and other Transactions as soon as possible. Therefore, any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay or risk their appeal being foreclosed as moot.

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

### General Provisions

1.    The Motion is GRANTED in all respects to the extent provided herein.

2.    With the exception of the objection filed by Fuji Photo Film, Co., Ltd. ("Fuji"), all objections to the entry of this Order or the relief provided herein and in the Motion that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby denied and overruled on the merits with prejudice.

### Approval of the Purchase Agreement

3.    The Purchase Agreement, and all of the terms and conditions thereof, the Sale, and all other Transactions are hereby approved in all respects.

4.    Pursuant to section 363(b) of the Bankruptcy Code, the Debtors (including, but not limited to, their respective officers, employees, and agents) are authorized and directed to consummate the Transactions pursuant to, and in accordance with, the terms and conditions of the Purchase Agreement.

5.    Pursuant to section 363(b) of the Bankruptcy Code, the Debtors (including, but not limited to, their respective officers, employees, and agents) are further authorized and directed to execute and deliver, and empowered to perform under, consummate, and implement the Purchase Agreement, together with all additional instruments and documents (including, without limitation, the Ancillary Agreements and any Acquisition Agreement substantially in the form attached as Exhibit T to the Purchase Agreement) that may be reasonably necessary, appropriate, or desirable to implement the Purchase Agreement (including, but not limited to, any and all such instruments of assignment, transfer, or conveyance as shall, in the reasonable opinion of the Purchaser and its counsel, be necessary or appropriate to vest in the Purchaser good, valid, and marketable title to the Acquired Assets and to put the Purchaser in actual possession or control of the Acquired Assets), and to take all further actions as may be necessary, desirable, or appropriate to the performance of the obligations and to implement more

13

effectively the Transactions as contemplated by the Purchase Agreement, as set forth more fully in Article VII thereof.

### Transfer of the Acquired Assets and the Post-Petition Contracts

6.    Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Acquired Assets and the Post-Petition Contracts (and good, clear, and marketable title thereto) shall be transferred, conveyed, and assigned to the Purchaser upon consummation of the Transactions (the "Closing") as set forth in the Purchase Agreement free and clear of all liens, Claims, Liabilities, and Encumbrances of any kind, type, description, or nature whatsoever (collectively, the "Interests"), other than the Assumed Liabilities and the Permitted Encumbrances, with all such Interests of any kind, type, description, or nature whatsoever to attach to the net cash proceeds of the Transactions ultimately attributable to the property against or in which the holder of an Interest claims or may claim an Interest in the order of their priority, with the same validity, force, and effect which they now have, subject to any claims and defenses the Debtors may possess with respect thereto. Without in any way limiting the generality of the foregoing, other than as set forth in the Purchase Agreement with respect to the Assumed Liabilities and the Permitted Encumbrances, the Acquired Assets and the Post-Petition Contracts transferred under the Purchase Agreement shall be transferred, conveyed, and assigned to the Purchaser free and clear of any and all claims, liens, pledges, offsets, set-offs, recoupments, charges, successor, product, environmental, tax, and other liabilities (whether secured or unsecured, contingent, or absolute, liquidated or unliquidated, perfected or unperfected, choate or inchoate, filed or unfilled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded), taxes, security interests, mortgages, restrictions, indentures, loans, credit agreements, other agreements, instruments, contracts, judgments, and orders of any court or

governmental department, commission, board, agency, or instrumentality, domestic or foreign, and any actions and proceedings of any kind or nature, and any claim by any person or entity asserting any rights or interests except as specifically reserved within the Purchase Agreement.

7.     Except as expressly permitted or otherwise specifically provided by the Purchase Agreement or this Order or as otherwise required by applicable law, all persons and entities, including, but not limited to, all debt security holders, equity security holders, federal, state, or local governmental, tax, environmental, and regulatory authorities or agencies, lenders, trade, and other creditors, holding Interests of any kind or nature whatsoever against or in the Debtors, the Acquired Assets, or the Assumed Contracts (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtors, the Acquired Assets, the Assumed Contracts, the Excluded Liabilities, the operation of the Business prior to the Closing Date, or the transfer of the Acquired Assets or the Assumed Contracts to the Purchaser, hereby are forever barred, estopped, and permanently enjoined from asserting against the Purchaser, its successors or assigns, property, or assets, such persons' or entities' respective Interests. No such persons or entities shall assert against the Purchaser or its successors in interest any liability, debt, claim, or obligation relating to or arising from the ownership or operation of the Acquired Assets or any liabilities calculable by reference to the Debtors or the Sellers or the Debtors' or the Sellers' assets or operations.

8.     The transfer of the Acquired Assets and the Assumed Contracts to the Purchaser pursuant to the Purchase Agreement constitutes a legal, valid, and effective transfer, assignment, and conveyance of such assets and contracts, and shall vest the Purchaser with all right, title (which shall be good, clear, and marketable), and interest of the Debtors in and to such

assets and contracts free and clear of all Interests of any kind or nature whatsoever. Without

limiting the generality of the foregoing, the Debtors shall transfer to the Purchaser all Licenses

and Permits held by each Seller or issued or granted by any Governmental Authority or any other

Person with respect to the operation of the Business or the use or ownership of any of the

Acquired Assets, and all Persons and Governmental Authorities shall honor such transfer.

         9.      The transfer of the Acquired Assets and the Assumed Contracts pursuant

to the Transactions is a transfer pursuant to section 1146(c) of the Bankruptcy Code, and

accordingly shall not be taxed under any federal, state, local municipal, or other law imposing, or

claiming to impose, a stamp tax or any other similar tax on any of the Debtors' transfers or sales

of real estate, personal property, or other assets owned by it.

<u>Assumption and Assignment to the Purchaser of the Initial Assumed Contracts</u>[3]

         10.     Pursuant to sections 105(a) and 365 of the Bankruptcy Code, and subject

to and conditioned upon the Closing, the Debtors' assumption and assignment to the Purchaser,

and the Purchaser's assumption on the terms set forth in the Purchase Agreement, of the Initial

---

3.      For purposes of this Order, the terms "Assumed Contracts" and "Initial Assumed
        Contracts" shall not include the cross-license agreement between Polaroid and Fuji dated
        as of March 18, 1998 (the "Fuji Cross-License"), pending resolution of Fuji's objection
        by this Court (the "Fuji Objection"). The Debtors, Fuji and the Purchaser reserve all of
        their respective rights and defenses with respect to the Fuji Cross-License, including, but
        not limited to, the Debtors' right to reject the Fuji Cross-License at any time prior to the
        date of this Court's ruling on the Fuji Objection. In the event that the Court overrules or
        denies the Fuji Objection, the Debtors shall, at the Purchaser's option, promptly submit a
        proposed order to the Court providing for the assumption and assignment of the Fuji
        Cross-License to the Purchaser. Fuji reserves all of its rights and defenses with respect to
        such proposed order, including, but not limited to, the right to object to the proposed
        order and appeal any order ultimately entered by the Court. Likewise, in the event that
        the Court sustains the Fuji Objection, the Purchaser and the Debtors reserve all of their
        rights to object to any such order sustaining the Fuji Objection and appeal any order
        ultimately entered by the Court.

Assumed Contracts, is hereby approved, and the requirements of section 365(b)(1) of the Bankruptcy Code with respect thereto are hereby deemed satisfied.

11.    The Debtors are hereby authorized and directed in accordance with sections 105(a) and 365 of the Bankruptcy Code to (a) assume and assign to the Purchaser, effective upon the Closing, the Initial Assumed Contracts and the Assumed Liabilities free and clear of all Interests of any kind or nature whatsoever, and (b) as set forth in the Purchase Agreement, execute and deliver to the Purchaser such documents or other instruments and take all further actions as may be necessary or appropriate to assign and transfer the Initial Assumed Contracts and the Assumed Liabilities to the Purchaser.

12.    The Assumed Contracts and the Assumed Liabilities shall be transferred to, and remain in full force and effect for the benefit of, the Purchaser in accordance with their respective terms, notwithstanding any provision in any such Assumed Contract (including those of the type described in sections 365(b)(2) and (f)(1) of the Bankruptcy Code) that prohibits, precludes, restricts, or conditions such assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability with respect to the Assumed Contracts after such assignment to, and assumption by, the Purchaser.

13.    All defaults or other obligations of the Debtors under any (i) Initial Assumed Contract arising or accruing prior to the date of this Order or (ii) any Additional Assumed Contract arising or accruing prior to the date of any order approving the assumption and assignment thereof to the Purchaser (without, in either case, giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be deemed cured by the Debtors upon payment by the Purchaser by or at the Closing of the Transactions or as soon thereafter as practicable of the cure amounts with respect to those

17

Assumed Contracts (the "Cure Amounts"), and the Purchaser shall have no other liability or obligation arising or accruing prior to the Closing Date, except as otherwise expressly provided in the Purchase Agreement with respect to the Assumed Liabilities.

14.     Except for the obligation to pay the Cure Amounts, each non-debtor party to an Initial Assumed Contract is forever barred, precluded, estopped, and permanently enjoined from asserting against the Debtors or the Purchaser, or the property of any of them, any default existing as of the date of the Sale Hearing; or, against the Purchaser, any counterclaim, defense, setoff, or any other claim asserted or assertable against the Debtors.

15.     Any provision in any Assumed Contract or any other agreement to which any of the Debtors is a party that purports to declare a breach or default as a result of a change in control of the Business or requires the consent of a non-Debtor party is hereby deemed unenforceable under section 365(f) of the Bankruptcy Code, and all such Assumed Contracts and other agreements shall remain in full force and effect and shall be valid, binding, and enforceable upon all non-debtor parties thereto to the same extent they were prior to the transfer thereof by the applicable Debtors.

16.     The failure of the Debtors or the Purchaser to enforce at any time one or more terms or conditions of any Assumed Contract shall not be a waiver of such terms or conditions, of the Debtors' and the Purchaser's rights to enforce every term and condition of such Assumed Contract.

### Additional Provisions

17.     The aggregate consideration provided by the Purchaser for the Acquired Assets pursuant to the Purchase Agreement and the assignment of the Assumed Contracts thereunder (i) is fair and reasonable and (ii) shall be deemed to constitute reasonably equivalent

value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia. The terms and conditions of the Purchase Agreement are also fair and reasonable, and may not be avoided under section 363(n) of the Bankruptcy Code.

18.     On the Closing Date of the Transactions, each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be necessary to release its Interests in the Acquired Assets and the Assumed Contracts, if any, as such Interests may have been recorded or may otherwise exist.

19.     This Order (a) shall be effective as a determination that, on the Closing Date, all Interests of any kind or nature whatsoever existing with respect to the Debtors, the Acquired Assets, or the Assumed Contracts prior to the Closing have been unconditionally released, discharged, and terminated (other than the Assumed Liabilities or the Permitted Encumbrances), and that the conveyances described herein have been effected, and (b) shall be binding upon and shall govern the acts of all entities including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of such assets or contracts.

20.     Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement (including,

but not limited to, with respect to the Sale of the Acquired Assets, the transfer of all Permits and Licenses, and the assignment of the Assumed Contracts).

21.    If any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing Interests with respect to the Debtors, the Acquired Assets, or the Assumed Contracts shall not have delivered to the Debtors and the Purchaser prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Interests which the person or entity has with respect to the Debtors, the Acquired Assets, the Assumed Contracts, or otherwise, then (a) the Debtors are hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to such assets and contracts and (b) the Purchaser is hereby authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Interests in the Acquired Assets and the Assumed Contracts of any kind or nature whatsoever (other than the Permitted Encumbrances).

22.    All entities who are presently, or on the Closing Date may be, in possession of some or all of the Acquired Assets are hereby directed to surrender possession of the Acquired Assets either to (a) the Debtors prior to the Closing Date, for subsequent transfer to the Purchaser on the Closing Date, or (b) to the Purchaser on the Closing Date.

23.    Except for the Assumed Liabilities or as otherwise provided in the Purchase Agreement, the Purchaser is not assuming and shall have no liability or responsibility, as a successor or otherwise, for any liabilities, debts, or obligations of the Debtors or the Sellers or any liabilities, debts, or obligations in any way whatsoever relating to or arising from the

Sellers' ownership or operation of the Acquired Assets or the Assumed Contracts to the Closing Date or any liabilities calculable by reference to the Debtors or the Sellers or their assets or operations, or relating to continuing conditions existing on or prior to the Closing Date, without regard to whether the claimant asserting any such liabilities, debts, or obligations has delivered to the Purchaser a release thereof. Without limiting the generality of the foregoing, and except as otherwise specifically provided herein or in the Purchase Agreement with respect to the Assumed Liabilities, the Purchaser shall not assume or in any manner whatsoever be liable or responsible for any Liability of any Debtor or Seller, or any predecessors or Affiliate of any Debtor or Seller, and any of their respective Representatives or any claim against any and all of the foregoing, whether matured or unmatured, known or unknown, contingent or absolute, direct or indirect, whensoever incurred, whether or not related to the Business, and the Purchaser shall have no successor or vicarious liability or responsibility of any kind or character whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or the Sellers or any obligations of the Debtors or the Sellers arising prior to the Closing Date, including but not limited to, (1) any liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of the Business prior to the Closing Date (including, without limitation, any liabilities arising under or with respect to any tax statutes or ordinances including, without limitation, the Internal Revenue Code of 1986, as amended) and (2) any liabilities based on any theory of antitrust; environmental, including, without limitation, debts, claims, or obligations arising from conditions first existing on or prior to Closing (including, without limitation, the presence of hazardous, toxic, polluting, or contaminating substances or wastes) which may be asserted on any basis, including, without limitation, under the Comprehensive

21

Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601, et seq.; successor or transferee liability; labor law, including, without limitation, any obligations which might otherwise arise or, pursuant to, the Employee Retirement Income Security Act of 1974, as amended, the Fair Labor Standards Act, Title VII of Civil Rights Act of 1964, the Age Discrimination and Employment Act of 1967, the Federal Rehabilitation Act of 1973, the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101, et seq. the National Labor Relations Act, or the Consolidated Omnibus Budget Reconciliation Act of 1985, workmen's compensation, occupational disease, retirement health benefit or unemployment or temporary disability insurance claims; de facto merger, or substantial continuity; any bulk sales or similar law; and any products liability or similar claims whether pursuant to any state or any federal laws or otherwise.  Further without limiting the generality of the foregoing, except as expressly provided in the Purchase Agreement, (A) the Purchaser shall have no obligation to pay wages, bonuses, severance pay, benefits (including, without limitation, unemployment benefits and contributions or payments on account of any undertaking with respect to any and all pension plans) or any other payment to employees of Debtors, (B) the Purchaser shall have no obligation for the cessation of any of the Debtors' operations, dismissal by the Debtors of employees, or termination by the Debtors of employment or labor agreements, (C) the Purchaser shall have no liability with respect to any collective bargaining agreement, employee pension plan, employee welfare or retention, compensation, benefit and/or incentive plan, agreements, practices, or program to which any of the Debtors are a party (including, without limitation, arising from or related to the rejection or termination of any such agreement), (D) the Purchaser shall in no way be deemed a party to or assignee of any such agreement, plan, practice, or program, (E) no employee of the Purchaser shall be deemed in any way covered by a party to any such

agreement, practice, plan, or program, and (F) *all parties to any such agreement, practice, plan, or program are hereby enjoined from asserting against the Purchaser any and all claims arising from or relating thereto.* The recitation in this paragraph of the Order of specific agreements, plans, programs, statutes, or any other potential source of liability, is not intended, and shall not be construed, to limit the generality of the categories of liabilities, debts, claims, or obligations referred to therein.

        24.    The Purchaser is not and shall not be deemed a successor of or to the Debtors for any Interest against or in the Debtors, the Acquired Assets, the Excluded Liabilities, or the Assumed Contracts of any kind or nature whatsoever. Except for the Assumed Liabilities, the sale, transfer, assignment, and delivery of the Acquired Assets and the Assumed Contracts shall not be subject to any Interests, and Interests of any kind or nature whatsoever shall remain with, and continue to be obligations of, the Debtors. *Except for persons holding Assumed Liabilities, all persons holding Interests against or in the Debtors, the Acquired Assets, or the Assumed Contracts of any kind or nature whatsoever (including, but not limited to, the Debtors and/or their respective successors (including any trustee), creditors, employees, unions, former employees and shareholders, administrative agencies, governmental units, secretaries of state, federal, state, and local officials, including those maintaining any authority relating to any environmental, health and safety laws, and the successors and assigns of each of the foregoing) shall be, and hereby are, forever barred, banned, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing such Interests of any kind or nature whatsoever against the Purchaser, its property, its successors and assigns, or the Acquired Assets or the Assumed Contracts, as an alleged successor or otherwise, with respect to any Interest of any kind or nature whatsoever such person or entity had, has, or may have against or in the Debtors,*

*their estates, officers, directors, shareholders, or the Acquired Assets or the Assumed Contracts.*
Following the Closing Date, no holder of an Interest in the Debtors shall interfere with the
Purchaser's title to, or use and enjoyment of, the Acquired Assets or the Assumed Contracts
based on or related to such Interest, or any actions that the Debtors may take in their Chapter 11
cases.

25.    Any amounts that become payable by the Debtors pursuant to the
Purchase Agreement or any of the documents delivered by the Debtors pursuant to or in
connection with the Purchase Agreement shall (a) be paid by the Debtors in the time and manner
as provided in the Purchase Agreement, without further order of this Court; and (b) not be
discharged, modified, or otherwise affected by any plan of reorganization or liquidation of any of
the Debtors.

26.    The Debtors, the Purchaser, or an Affiliate of the Purchaser are each
hereby authorized to (i) enter into, (ii) execute, and (iii) take all actions and execute all
documents reasonably necessary or appropriate to effectuate any Acquisition Agreement(s)
substantially in the form attached as Exhibit T to the Purchaser Agreement.  Any and all such
Acquisition Agreements are hereby authorized and approved without the need for any other or
further order of this Court.  Without limiting the generality of the foregoing, notwithstanding any
provision to the contrary contained herein or in the Purchase Agreement, the Purchaser and/or its
designated Affiliate may, at the Purchaser's election, purchase all or a portion of the Sellers'
right, title, and interest in and to any or all of the outstanding capital stock of the Acquired
Subsidiaries under one or more separate Acquisition Agreements.  If the Purchaser and/or its
designated Affiliate elects to enter into one or more Acquisition Agreements, the indemnification
and other post-closing obligation provisions of the Purchase Agreement shall apply to such

24

Acquisition Agreements and be binding on the parties to such Acquisition Agreements as if the capital stock of the Acquired Subsidiaries purchased or sold under such Acquisition Agreements were purchased and sold under the Purchase Agreement.

27.    This Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order as well as to enforce and implement the terms and provisions of the Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith in all respects (including, without limitation, the Ancillary Agreements and any Acquisition Agreement), including, but not limited to, retaining jurisdiction to (a) compel delivery of the Acquired Assets to the Purchaser, (b) resolve any disputes arising under, or related to, the Purchase Agreement, except as otherwise provided therein, (c) interpret, implement, and enforce the provisions of this Order, and (d) protect the Purchaser against any Interests in the Debtors or any of the Excluded Liabilities, of any kind or nature whatsoever, attaching to the proceeds of the Transactions.

28.    Nothing contained in any plan of liquidation or reorganization confirmed in these cases or any order of this court confirming such plan shall conflict with, or derogate from, the provisions of the Purchase Agreement or the terms of this Order.

29.    The transactions contemplated by the Purchase Agreement are undertaken by the Purchaser in good faith, as that term is used in section 363(m) of the Bankruptcy Code and In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143 (3d Cir. 1986). Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Transactions shall not affect the validity of the Transactions as to the Purchaser, except to the extent such authorization is duly stayed pending such appeal prior to such consummation.

30.     The terms and provisions of the Purchase Agreement and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors, their estates, and their creditors, the Purchaser, and its affiliates, successors and assigns, and shall be binding in all respects upon any affected third parties including, but not limited to, all persons asserting Interests in such assets and contracts to be sold or assigned to the Purchaser pursuant to the Purchase Agreement, notwithstanding any subsequent appointment of any trustee(s) or similar party under any Chapter of the Bankruptcy Code, as to which trustee(s) or similar party such terms and provisions likewise shall be binding.

31.     The (i) transfer of the Acquired Assets (ii) and the assumption and assignment of the Assumed Contracts to the Purchaser shall not subject the Purchaser to any liability whatsoever with respect to the operation of the Business prior to the Closing Date or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, in any theory of law or equity, including, without limitation, any theory of antitrust, successor, or transferee liability.

32.     Except as otherwise provided in the Purchase Agreement, this Sale Order, or other Order of this Court, after the Closing, the Debtors shall have no further liabilities or obligations with respect to the Assumed Liabilities and all holders of claims related to or otherwise in connection with the Assumed Liabilities are forever barred and estopped from asserting such claims against the Debtors, their successors or assigns, and/or each of their respective assets.

33.     The failure specifically to include or reference any particular provision, section, or article of the Purchase Agreement in this Order shall not diminish or impair the

effectiveness of such provision, section, or article, it being the intent of the Court that the Purchase Agreement be authorized and approved in its entirety. Likewise, all of the provisions of this Order are nonseverable and mutually dependent.

34.    The Purchase Agreement and any related agreements, documents, or other instruments (including, without limitation, the Ancillary Agreements and any Acquisition Agreement) may be modified, amended, or supplemented in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates.

35.    As provided by Bankruptcy Rule 7062, this Order shall be effective and enforceable immediately upon entry. Time is of the essence in closing the Transactions, and the Debtors and the Purchaser intend to close the Sale and other Transactions as soon as possible. Therefore, any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay or risk their appeal being foreclosed as moot.

36.    As required by the Post-Petition Financing Orders and the DIP Financing Agreement (as modified by the agreements reflected herein among the Debtors, the Agent and the Official Committee of Unsecured Creditors) and in respect of the Lenders' rights under applicable law and the governing contractual documents, the Debtors shall irrevocably pay to the Agent for the benefit of the Lenders (a) upon entry of this Order, $50 million and (b) simultaneously upon consummation of the Sale, $178 million. Upon receipt of said $228 million by the Agent for the account of the Lenders (subject to a $3 million maximum adjustment as described below), the Lenders shall be deemed to have released the Debtors from all remaining claims for interest and principal under the Existing Agreements.

37.    As set forth in the Purchase Agreement, if, after June 2, 2002, the aggregate amount of the Estate Costs paid or incurred exceeds $27,000,000, then the Sellers and/or their successor(s) shall not incur any expenses to pursue any causes of action, judgments, Claims or demands that constitute Excluded Assets without the Purchaser's and the Agent's prior written consents, which consents shall not be unreasonably withheld.

38.    As set forth in the Purchase Agreement, if, after June 2, 2002 and until the distribution of all of the Sellers' Stock by the Sellers and/or their successor(s) to the creditors of the Sellers, the aggregate amount of the Estate Costs paid exceeds $27,000,000 (and the Sellers and/or their successor(s) do not have any cash available to pay additional Estate Costs), then, for any Estate Costs in excess of $27,000,000 that become due and payable, the Purchaser forthwith shall pay to the Sellers and/or their successor(s) an amount equal to such excess up to $4,000,000 in cash, upon receipt by the Purchaser of reasonably satisfactory documentation evidencing Sellers' and/or their successors(s)' obligation to pay such Estate Costs. If, after June 2, 2002 and until the distribution of all of the Sellers' Stock by the Sellers and/or their successor(s) to the creditors of the Sellers, the aggregate amount of the Estate Costs paid exceeds $31,000,000 (and the Sellers and/or their successor(s) do not have any cash available to pay additional Estate Costs), then, for any Estate Costs in excess of $31,000,000 that become due and payable, the Agent, on behalf of the secured lenders to the Sellers, forthwith shall pay to the Sellers and/or their successor(s) an amount equal to such excess up to $3,000,000 in cash (the "Bank Reimbursement"), upon receipt by the Agent of reasonably satisfactory documentation evidencing Sellers' and/or their successors(s)' obligation to pay such Estate Costs. If, after June 2, 2002 and until the distribution of all of the Sellers' Stock by the Sellers and/or their successor(s) to the creditors of the Sellers, the aggregate amount of the Estate Costs paid exceeds

$34,000,000 (and the Sellers and/or their successor(s) do not have any cash available to pay additional Estate Costs), then, for any Estate Costs in excess of $34,000,000 that become due and payable, the Purchaser forthwith shall pay to the Sellers and/or their successor(s) an amount equal to such excess up to $3,000,000 in cash (the "Second Tier Reimbursement"), upon receipt by the Purchaser of reasonably satisfactory documentation evidencing Sellers' and/or their successors(s)' obligation to pay such Estate Costs.

39.    As set forth in the Purchase Agreement, if, after June 2, 2002 and until the distribution of all of the Sellers' Stock by the Sellers and/or their successor(s) to the creditors of the Sellers, the aggregate amount of the Estate Costs paid or required to be paid exceeds $37,000,000 (and the Sellers and/or their successor(s) do not have any cash available to pay additional Estate Costs), then, for any Estate Costs in excess of $37,000,000 that become due and payable, and for the sole purpose of generating cash to fund all or a portion of such excess, up to a maximum excess of $4,500,000, the Sellers and/or their successor(s) shall have the right, but not the obligation, to sell to the Purchaser up to such number of shares of the Sellers' Stock as shall equal four percent (4%) of the Issued Stock for a maximum aggregate purchase price of $4,500,000, as follows: the Sellers and/or their successor(s) shall have the right, but not the obligation, to sell such number of shares of the Sellers' Stock to the Purchaser at a price equal to: (i) for the first two percent (2%) of the Issued Stock, $1,250,000 for each one percent (1%) of the Issued Stock (or a pro-rata price based thereon); and (ii) for the next two percent (2%) of the Issued Stock, $1,000,000 for each one percent (1%) of the Issued Stock (or a pro-rata price based thereon). If more than one class of stock is included in the Sellers' Stock, all sales of stock by the Sellers and/or their successor(s) to the Purchaser pursuant to this paragraph must include the same percentage of each class of stock included in the Sellers' Stock. Except in the case of a

distribution by the Sellers and/or their successor(s) to the holders of allowed Claims in the Case under a confirmed Chapter 11 plan of reorganization, if the Sellers and/or their successor(s) wish to sell or otherwise transfer shares of the Sellers' Stock to a Third Party pursuant to a bona fide written offer therefor, then the Sellers and/or their successor(s) shall give the Purchaser written notice thereof, which notice shall (x) include a copy of such bona fide written offer and a description of any other material terms of the offer not contained in such offer, including the identity of the transferee, the price or other consideration for which the shares of the Sellers' Stock are proposed to be sold or transferred, and the number of shares of the Sellers' Stock to be sold or transferred, and (y) contain an irrevocable offer to sell such shares of the Sellers' Stock to the Purchaser at the same price and on the same terms contained in the bona fide written offer. For a period of twenty days after its receipt of such notice, the Purchaser and/or its designee(s) shall have the right and option to purchase all or a portion of the shares of the Sellers' Stock at the same price and on the same terms contained in the bona fide written offer.

40.    If (i) there remain any assets in the Sellers and/or their successor(s) (the "Remaining Assets") and (ii) either the Agent shall have made a Bank Reimbursement or the Purchaser shall have made a Second Tier Reimbursement, then, unless the Sellers and/or their successor(s) determine in good faith that there continues to be a reasonable expectation of additional Estate Costs, the Sellers and/or their successor(s) shall (x) pay to the Purchaser such percentage of the Remaining Assets as the amount of the Second Tier Reimbursement actually paid bears to the sum of the amount of the Bank Reimbursement actually paid and the amount of the Second Tier Reimbursement actually paid (such sum, the "Total Reimbursement Paid"), up to $5,000,000 and (y) pay to the Agent, for the benefit of the secured lenders to the Sellers, such percentage of the Remaining Assets as the amount of the Bank Reimbursement actually paid bears to the Total Reimbursement Paid, up to $5,000,000. The Sellers and/or their successor(s)

shall not make any distributions or payments (other than distributions of the Sellers' Stock or on account of Estate Costs) unless the Sellers shall have (i) made all of the payments described in the immediately preceding sentence and (ii) waived their rights to receive any and all payments under Section 7.04(b) of the Purchase Agreement and waived their rights to sell the Sellers' Stock to the Purchaser under Section 7.04(c) of the Purchase Agreement.

41.    To the extent that, after giving effect to Section 7.04(d) of the Purchase Agreement, there remain any Remaining Assets, such Remaining Assets shall be retained by Sellers and/or their successor(s).

42.    For purposes of paragraphs 37 through 41 above, "successor(s)" to the Sellers shall mean a plan administrator, liquidating trust or an entity serving a comparable function appointed or established (as the case may be) pursuant to a confirmed plan of reorganization in these cases, and shall not include the creditors of the Sellers to whom the Sellers' Stock is distributed.

43.    As set forth on the record of the Sale Hearing, the Purchaser shall be the "sponsor" under the current Polaroid-sponsored medical supplement insurance plan (the "Medicare Plan") for retirees over age 65 (the "Retirees") referred to, and at issue in, the Limited Objection of Massachusetts Attorney General to any Bid to Purchase Polaroid Assets that Does not Include Continuation of Insurance Coverage for Retirees Over 65, dated June 20, 2002, solely until the earliest of any of the following events: (i) Massachusetts legislation is approved that makes it legal for the Retirees and/or the Polaroid Retiree Association to serve as sponsor for the Medicare Plan; (ii) Hartford Life Insurance Company or any other applicable insurance carrier declines to provide coverage under the Medicare Plan; (iii) the introduction of any federal or state legislation that could subject the Purchaser to any potential liability under the Medicare

31

Plan (including, without limitation, with respect to providing coverage thereunder); or (iv) 24 months from the date of the closing of the Transactions.

44.    The Committee shall select the Plan Administrator (as that term is defined in the Joint Plan of Reorganization of Polaroid Corporation and its Debtor Subsidiaries, which shall be amended in accordance with this Order and the Purchase Agreement (the "Plan")), provided that, the identity of such Plan Administrator shall be reasonably acceptable to Purchaser and Agent.

45.    The Plan shall contain provisions that will provide that prior to the date on which the Plan is consummated (the "Consummation Date"), (x) the Committee shall be primarily responsible for the reconciliation and allowance of general unsecured claims, provided that, the Committee shall consult, in good faith, with the Debtors and the Purchaser with respect to such reconciliation and allowance of such general unsecured claims; and (y) the Debtors shall be primarily responsible for the reconciliation, allowance or payment of administrative and priority claims, provided that, the Debtors shall consult, in good faith, with the Committee, the Purchaser and the Agent with respect to such reconciliation, allowance and payment of such administrative or priority claims.

46.    The Plan shall contain provisions that will provide that after the Consummation Date, the Plan Administrator (as that term is defined in the Plan) shall be primarily responsible for the claims reconciliation process with respect to the allowance and payment of general unsecured, administrative and priority claims, provided that, the Plan Administrator shall consult, in good faith, with the Purchaser and Agent with respect to such reconciliation, allowance and payment of such general unsecured, administrative or priority claims.

47.     The Plan shall provide that no payment in excess of $50,000 shall be made on account of an administrative or priority claim without the written consent of Purchaser and Agent, which consent shall not be unreasonably withheld, unless otherwise approved by order of the Court.

48.     The Plan shall contain provisions reasonably acceptable to the Purchaser and the Agent, which provisions shall obligate the Sellers and/or their successor(s), including the Plan Administrator, to incur estate costs in a reasonable and cost-effective manner, provided, however, that the retention of the Committee's current professionals is hereby deemed reasonable and cost-effective.

49.     Without limiting any of the foregoing, the Plan shall not deviate, contravene or otherwise derogate from the Purchase Agreement or this Order unless the Purchaser, Agent and Committee consent, in writing, to such deviation, contravention or derogation.

50.     Upon the Agent's receipt of the $50 million payment described herein, the Stipulation and Settlement Agreement, Inter Alia, Providing Supplemental Adequate Protection to Pre-Petition Secured Lenders signed by the Court on May 6, 2002 (Docket No. 963), shall be deemed modified such that the monthly adequate protection payments to the Agent described therein, including the monthly adequate protection payment due in June, 2002, shall be discontinued.

51.     As provided by Bankruptcy Rules 6004(g) and 6006(d), this Order shall not be stayed for 10 days after the entry hereof and shall be effective and enforceable immediately upon the entry hereof.

Dated: Wilmington, Delaware
          July 3, 2002

33

Honorable Peter J. Walsh,
Chief United States Bankruptcy Judge

## EXHIBIT A

Purchase Agreement