Document Control LTD #3

# THE POLAROID LONG-TERM DISABILITY PLAN

As Amended Effective January 1, 2001

THE POLAROID LONG-TERM DISABILITY PLAN

ARTICLE I
THE PLAN

1.01     <u>Establishment of the Plan</u>. Polaroid Corporation hereby establishes the Polaroid Long-Term Disability Plan which is intended to be a welfare benefit Plan within the meaning of Section 3(1) of the Employment Retirement Income Security Act of 1974, as amended from time to time.

1.02     <u>Purpose</u>. The Polaroid Long-Term Disability Plan is designed to guarantee Participants Long Term Disability Coverage provided they meet the requirements identified in the Certificate of Insurance attached hereto. This Plan is intended to be operated for the exclusive benefit of Employees. Employee's rights to coverage and benefits under this Plan are intended to be legally enforceable.

1.03     <u>Application of the Plan</u>. The terms of this Plan are applicable only to Participants as defined in Article III of this Plan.

ARTICLE II
DEFINITIONS

2.01     <u>Base Pay</u>. Base Pay shall mean a Participant's rate of pay as of his last day of work, annualized and excluding all other forms of payment, such as but not limited to overtime, shift premiums, bonuses, or incentive payments.

2.02 _Certificate of Insurance_. Certificate of Insurance shall mean the "Polaroid Long-Term Disability Certificate of Insurance" as amended from time to time and incorporated by reference herein and attached as Annex A.

2.03 _Claims Administrator_. Claims Administrator shall mean the insurance company or other person or entity designed by the Company to process claims under the Plan. The Claims Administrator is further identified in the Certificate of Insurance attached hereto, as updated yearly.

2.04 _Company_. Company shall mean Polaroid Corporation, a Delaware corporation.

2.05 _Current Obligations_. Current obligations shall mean all debts and obligations for which the Employer is liable.

2.06 _Employee_. Employee shall mean any officer or any "Regular Full Time" employee or any "Regular Part-Time" employee of the Employer, as defined by the Employer in a uniform and non-discriminatory manner.

2.07 _Employer_. Employer shall mean:

(a) the Company; and

(b) a Subsidiary which, with the approval of the Company, adopts the Plan pursuant to resolutions of the board of directors of the Subsidiary.

Any Employer, with the consent of the Company, may withdraw from the Plan pursuant to resolutions of the board of directors of the Employer. The Company's consent to withdraw from the Plan shall not be given unless adequate provision is made for the satisfaction of any Current Obligations attributable to the Employer as determined by the Company.

2.08 <u>Layoff</u>. Layoff shall mean a separation of service from Polaroid, either voluntarily or involuntarily, due to a reduction in workforce.

2.09 <u>Leave of Absence</u>. Leave of Absence shall mean authorized time off from work without pay.

2.10 <u>Long Term Disability Coverage</u>. Long Term Disability Coverage shall mean coverage provided to Participants as set forth in the Certificate of Insurance attached hereto when Participants satisfy eligibility requirements for these benefits. To the extent there is any discrepancy between the terms of this Plan and the Certificate of Insurance, the Certificate of Insurance shall take precedence.

2.11 <u>Participant</u>. Participant shall mean an individual who satisfies the terms as set forth in Article III of this Plan.

2.12 <u>Plan</u>. Plan shall mean the Polaroid Long-Term Disability Plan.

2.13 <u>Plan Administrator</u>. Plan Administrator shall mean the committee designated by the Chief Executive Officer or his designee.

2.14 <u>Subsidiary</u>. Subsidiary shall mean any corporation of which more than fifty percent of the outstanding shares of voting stock are beneficially owned directly or indirectly by the Company.

2.15 <u>Termination Date</u>. Termination Date shall mean the day an Employee is no longer considered an active member for payment of wages.

## ARTICLE III
## PARTICIPATION

3.01 <u>Participant</u>. Each Employee who is scheduled to work at least twenty (20) hours per week for the Employer automatically becomes a Participant in the Plan on his first day of active employment.

3.02 <u>Termination of Participation</u>. Participation ceases for any of the following reasons:

    (a)    A Participant terminates from the Employer

    (b)    A Participant is laid off; or

    (c)    The Plan is terminated by the Company and Participant does not otherwise qualify for benefits on his Termination Date as set forth in the Certificate of Insurance.

In the event of any the above, a former Participant may be entitled to such benefits set forth in the Certificate of Insurance while he was a Participant.

3.03 <u>Leave of Absence</u>. A Participant who takes a Leave of Absence may continue to participate in the Plan under the terms set forth in the Certificate of Insurance, assuming the Participant makes the required premium payments as if he were an active employee.

ARTICLE IV
BENEFITS

4.01  Eligibility for Benefits. In order to receive benefits under this Plan a Participant must meet the requirements stated in the Certificate of Insurance.

4.02  Amount of Benefits. A Participant's benefit under this Plan shall be as set forth in the Certificate of Insurance, which may change from time to time.

4.03  Termination of Benefits. A Participant's benefit under this Plan will cease at such time set forth in the Certificate of Insurance.

4.04  Nondiscriminatory Benefits. This Plan is intended not to discriminate in favor of highly compensated individuals as to eligibility to participant and as to contributions and/or benefits. This Plan shall comply with all requirements of the Code and all other applicable rules and regulations.


ARTICLE V
FINANCING

5.01  Provision of Benefits. The Plan is provided by the Certificate of Insurance attached as Annex A.

5.02  Cost of the Plan. The Participant shall pay a percentage of the premium as determined by the Company from time to time in a uniform and nondiscriminatory manner. If a Participant is receiving benefits under this Plan the premium may be waived subject to the approval of the Plan Administrator. The expenses of administering this Plan are included in the premium.

ARTICLE VI
ADMINISTRATION

6.01     <u>Plan Administrator</u>. The Plan Administrator shall consist of a Chairman and at least two (2) other members appointed by the Chief Executive Officer of the Company. The Chief Executive Officer shall have the ability to appoint members to the Plan Administrator and to remove members of the Plan Administrator at any time with or without cause. The members of the Plan Administrator shall not be entitled to any compensation for services hereunder.

6.02     <u>Duties of the Plan Administrator</u>. The Plan Administrator, the committee selected by the Chief Executive Officer, shall be responsible for the administration and interpretation of the Plan. Specifically, the Plan Administrator shall:

    (a)     administer the Plan in accordance with all its terms and shall have all the powers necessary to carry out the provisions of the Plan;

    (b)     have the exclusive discretionary authority to interpret the Plan on any and all matters which it has not delegated to the Plan Manager;

    (c)     develop policies and procedures as may be necessary for the proper and effective administration of the Plan;

    (d)     serve on a panel to make final judgment on appeals by Employees;

    (e)     maintain records of its actions;

    (f)     appoint the Plan Manager;

    (g)    engage and consult with counsel, accountants, specialists and other persons as the Plan Administrator deems necessary and desirable;

    (h)    notify the Trustee in writing of all actions the Plan Administrator desires of the Trustee; and

    (i)    delegate such additional duties and responsibilities to the Plan Manager as it in its sole discretionary authority deems appropriate.

Any determination by the Plan Administrator shall be conclusive and binding on all persons except as otherwise provided in the Plan or prohibited by law.

6.03    <u>Decisions of the Plan Administrator</u>. A meeting of the Plan Administrator shall only occur when there is a quorum present (i.e. a majority of the members on the Committee). Any act authorized or required of the Plan Administrator may be done by the majority of the members present at such meeting or by the majority of the Committee in writing. The action of such majority expressed either by vote at a meeting or in writing without a meeting shall constitute the action of the Plan Administrator. Any member of the Plan Administrator who is a Participant in this Plan shall not vote on any question relating exclusively to himself.

6.04    <u>Claims Administrator</u>. The Claims Administrator shall have the following duties under the supervision of the Plan Administrator:

    (a)    To review claims for benefits under the Plan;

    (b)    To pay claims for benefits under the Plan;

    (c)    To prepare and submit to the Plan Administrator periodic reports of its activities; and

    (d)    To provide such services as set forth in the Certificate of Insurance.

## ARTICLE VII
## CLAIMS PROCEDURE

7.01    <u>Review Procedure</u>. If a Participant believes he is being denied any rights or benefits under the Plan, such Participant may file a written request for review with the Plan Administrator within 60 days following the date of denial. The Participant shall have the right:

    (a)    to review pertinent documents; and

    (b)    to submit written comments.

The Participant may also request that the review be in the nature of an in-person meeting.

7.03    <u>Appeal Procedure</u>. Within 60 days of receiving a request to review a denial of benefits under this Plan, the Plan Administrator shall render a decision on the request if there has been no meeting. If the Participant has requested a meeting, the Plan Administrator shall respond by setting a time and date for the meeting. The meeting shall be conducted and a decision rendered no later than 120 days from the receipt of the initial request for a review.

## ARTICLE VIII
## MISCELLANEOUS PROVISIONS

8.01   Applicable Law.  This instrument shall be construed in accordance with and governed by the laws of the Commonwealth of Massachusetts to the extent not superseded by the laws of the United States.

8.02   Effective Date.  This Plan, originally adopted by the Company on April 1, 1977, and amended effective January 1, 1990 and July 1, 1997, is amended effective as of January 1, 2001.

8.03   Gender and Number.  Unless the context clearly requires otherwise, the masculine pronoun whenever used shall include the feminine and neuter pronoun, the singular shall include the plural, and vice versa.

8.04   Indemnification.  To the extent permitted by law, the Plan Administrator and all agents and representatives of the Plan Administrator shall be indemnified by the Company and saved harmless against any claim and the expenses of defending against such claims, resulting from any action or conduct relating to the administration of the Plan except claims arising from gross negligence, willful neglect, or willful misconduct.

8.05   Limitation of Rights.  Neither the adoption and maintenance of the Plan nor anything contained herein shall with respect to any present or former Participant, or other officer or employee of Polaroid or any Subsidiary be deemed to: (a) limit the right of Polaroid or any Subsidiary to discharge or discipline any such person,

or otherwise terminate or modify the terms of his employment, or (b) create any contract or other right or interest under the Plan or in any funds hereunder other than as specifically provided herein.

8.06. Unenforceability of a Particular Provision. The unenforceability of any particular provision of this document shall not affect the other provisions, and the document shall be construed in all respects as if such unenforceable provision were omitted.

## ARTICLE IX
## RIGHT TO AMEND, MODIFY, OR TERMINATE THE PLAN

9.01 Amendment of Plan. The Company reserves the right at any time or times to amend the provisions of the Plan to any extent and in any manner that it may deem advisable, by a written instrument signed by an authorized officer of the Company. Notwithstanding the foregoing, no officer shall adopt any amendment that relates exclusively to himself.

9.02 Termination of Plan. The Company has established the Plan with the bona fide intention and expectation that it will be continued indefinitely, but the Company will have no obligation whatsoever to maintain the Plan for any given length of time and may discontinue or terminate the Plan at any time without liability.

IN WITNESS WHEREOF, Polaroid has caused this instrument to be executed, effective January 1, 2001.

POLAROID CORPORATION

_____
Neal D. Goldman