Document Control No.: PMP#1

# THE POLAROID MEDICAL PLAN

Originally Effective April 1, 1977

Amended Effective January 1, 1999

# THE POLAROID MEDICAL PLAN

## TABLE OF CONTENTS

| | | | |
|---|---|---|---|
| **ARTICLE I** | | **THE PLAN** | 1 |
| | 1.01 | Establishment of the Plan | 1 |
| | 1.02 | Purpose | 1 |
| | 1.03 | Application of the Plan | 1 |
| **ARTICLE II** | | **DEFINITIONS** | 1 |
| | 2.01 | Certificate | 1 |
| | 2.02 | Claims Administrator | 2 |
| | 2.03 | Company | 2 |
| | 2.04 | Current Obligations | 2 |
| | 2.05 | Employee | 2 |
| | 2.06 | Employer | 2 |
| | 2.07 | Layoff | 3 |
| | 2.08 | Long-term Disability | 3 |
| | 2.09 | Open Enrollment Period | 4 |
| | 2.10 | Participant | 4 |
| | 2.11 | Plan | 4 |
| | 2.12 | Plan Administrator | 4 |
| | 2.13 | Retiree | 4 |
| | 2.14 | Subsidiary | 5 |
| **ARTICLE III** | | **PARTICIPATION** | 5 |
| | 3.01 | Participant | 5 |
| | 3.02 | Termination of Participation | 5 |
| | 3.03 | Optional Participation for Participant's Family and Students | 6 |
| | 3.04 | Participation for Employees on Long-term Disability | 6 |
| | 3.05 | Participant Employees on Layoff | 6 |
| | 3.06 | Continuation of Benefits under the Consolidated Omnibus Budget Reconciliation Act ("COBRA") | 7 |
| **ARTICLE IV** | | **BENEFITS** | 7 |
| | 4.01 | Coverage | 7 |
| | 4.02 | Changes in Coverage | 7 |
| | 4.03 | Nondiscriminatory Benefits | 8 |
| **ARTICLE V** | | **FINANCING** | 8 |
| | 5.01 | Provision of Benefits | 8 |
| | 5.02 | Cost of the Plan | 8 |
| **ARTICLE VI** | | **ADMINISTRATION** | 9 |
| | 6.01 | Plan Administrator | 9 |

|  |  |  |
|---|---|---|
| 6.02 | Duties of the Plan Administrator | 9 |
| 6.03 | Claims Administrator | 11 |
| **ARTICLE VII** | **CLAIMS PROCEDURE** | 11 |
| 7.02 | Review Procedure | 11 |
| 7.03 | Appeal Procedure | 12 |
| **ARTICLE VIII** | **MISCELLANEOUS PROVISIONS** | 12 |
| 8.01 | Applicable Law | 12 |
| 8.02 | Effective Date | 12 |
| 8.03 | Gender and Number | 13 |
| 8.04 | Indemnification | 13 |
| 8.05 | Limitation of Rights | 13 |
| 8.06 | Unenforceability of a Particular Provision | 14 |
| **ARTICLE IX** | **RIGHT TO AMEND, MODIFY, OR TERMINATE THE PLAN** | 14 |
| 9.01 | Amendment of Plan | 14 |
| 9.02 | Termination of Plan | 14 |

# THE POLAROID MEDICAL PLAN

## ARTICLE I

## THE PLAN

1.01     Establishment of the Plan. Polaroid Corporation hereby establishes the Polaroid Medical Plan which is intended to be a welfare benefit plan within the meaning of Section 3(1) of the Employment Retirement Income Security Act of 1974, as amended from time to time.

1.02     Purpose. The Polaroid Medical Plan is designed to provide medical benefits to Employees and their eligible dependents. This Plan is intended to be operated for the exclusive benefit of Employees. Employees' rights to coverage and benefits under this Plan are intended to be legally enforceable.

1.03     Application of the Plan. The terms of this Plan are applicable only to Participants, as defined in Article III of this Plan.

## ARTICLE II

## DEFINITIONS

2.01     Certificate. Certificate shall mean each Claims Administrator's Certificate. All Certificates are attached together as Annex A. To the extent there is any

1

discrepancy between the terms of this Plan and any Certificate, the Certificate shall take precedence.

2.02    Claims Administrator. Claims Administrator shall mean the insurance companies or other persons or entities designated by the Company to process claims under the Plan. Claims Administrator is further defined in Section 6.03.

2.03    Company. Company shall mean Polaroid Corporation, a Delaware corporation.

2.04    Current Obligations. Current Obligations shall mean all debts and obligations for which the Employer is liable.

2.05    Employee. Employee shall mean any officer or any "Regular Full-Time" employee or any "Regular Part-Time" employee of the Employer, as defined by the Employer in a uniform and non-discriminatory manner.

2.06    Employer. Employer shall mean:
(a) the Company; and
(b) a Subsidiary which, with the approval of the Company, adopts the Plan pursuant to resolutions of the Board of Directors of the Subsidiary.
Any Employer, with the consent of the Company, may withdraw from the Plan pursuant to resolutions of the Board of Directors of the Employer. The

2

Company's consent to withdraw from the Plan shall not be given unless adequate provision is made for the satisfaction of any Current Obligations attributable to the Employer as determined by the Company.

2.07    <u>Layoff</u>.  Layoff shall mean a separation of service from Polaroid, either voluntarily or involuntarily, due to a reduction in workforce, in accordance with the Polaroid Policy Statement "Movement of People".

2.08    <u>Long-term Disability</u>.  Long-term Disability shall mean a physical or mental condition arising after an Employee has become a Participant which totally prevents, and for an indefinite period of time will prevent, the Participant from engaging for remuneration or profit in any occupation or employment other than an occupation or employment engaged in for the purpose of rehabilitation and which is not incompatible with a finding of total disability.  The determination as to whether a Participant is so disabled shall be made by the Plan Administrator upon:

(a)    medical evidence of a licensed physician designated by the Plan Administrator; or

(b)    evidence of the Participant's eligibility for disability benefits under any long-term disability plan sponsored by Polaroid or any Subsidiary, but administered by an independent third party.

The commencement of Long-term Disability for any Participant shall be as of the

date determined by the Plan Administrator.

2.09    Open Enrollment Period.  Open Enrollment Period shall mean an annual period designated by the Plan Administrator during which time a Participant can switch from one Claims Administrator to another or switch from individual coverage to family coverage or vice-versa.

2.10    Participant.  Participant shall mean an Employee who satisfies the terms as set forth in Article III of this Plan.

2.11    Plan. Plan shall mean the Polaroid Medical Plan.

2.12    Plan Administrator.  Plan Administrator shall mean the Polaroid Total Compensation Policy Committee whose members are designated by the Chief Executive Officer of the Company or his designee and as further defined in Article VI hereof.

2.13    Retiree.  Retiree shall mean any former Employee of an Employer who upon termination from the Employer was at least age fifty-five (55), with at least five (5) years of service and whose age plus years of service equaled sixty-five (65) or more.

2.14    Subsidiary. Subsidiary shall mean any corporation of which more than fifty percent (50%) of the outstanding shares of voting stock are beneficially owned directly or indirectly by the Company.

# ARTICLE III

## PARTICIPATION

3.01    Participant. Each Employee who is scheduled to work at least twenty (20) hours a week for the Employer must become a Participant in the Plan on his first day of active employment, unless the Employee has medical coverage elsewhere. Any Retiree who is under age sixty-five (65) may also participate in this Plan. Participation continues as long as an individual remains an Employee, however, it is conditioned upon payment of the premium.

3.02    Termination of Participation. Participation ceases for any of the following reasons:

    (a)    Termination from the Employer, unless the Participant becomes a Retiree and is under the age of sixty-five (65) or unless participation is continued after termination through a special program offered by the Employer in a uniform and non-discriminatory manner;

    (b)    The attainment of age sixty-five (65) by a Retiree; or

    (c)    Termination of the Plan by the Company.

Notwithstanding the foregoing, participation may be continued as required by statutory mandates of Federal, State, or Local governments.

3.03  Optional Participation for Participant's Family and Students. A Participant may choose between individual membership and family membership. Participants who choose family coverage shall have higher premiums. Student memberships are available for dependents of Participants who are between the age of nineteen (19) and twenty-three (23), and are unmarried, full-time students. Certain Claims Administrators allow an unmarried, full-time student to continue student membership through age twenty-six (26).

3.04  Participation for Employees on Long-term Disability. A Participant on Long-term Disability shall be able to continue to participate in this Plan, subject to the approval of the Plan Administrator, until he terminates, retires, dies, or recovers from such Long-term Disability.

3.05  Participant Employees on Layoff.
 (a) An Employee who has been laid off by the Employer may continue to participate in this Plan for the following durations:
  (1) If the Participant has less than three (3) months of service, he is entitled to continue in this Plan for up to three (3) months from the last day of the month in which he was laid off.

  (2) If the Participant has worked more than three (3) months, he is entitled to continue in the Plan for up to twelve (12) months from the last day of the month in which he was laid off.

  (3) If the Participant terminates under certain special severance programs, he may be allowed for more or less than twelve (12) months, based on the severance plan terms.

(b) To remain a Participant for the applicable period set forth in Section 3.05(a) above, the Participant must make the same premium payments as if he were an active Employee.

3.06 <u>Continuation of Benefits under the Consolidated Omnibus Budget Reconciliation Act ("COBRA")</u>.  Continuation of benefits shall be offered consistent with federally mandated requirements.

## ARTICLE IV

### BENEFITS

4.01 <u>Coverage</u>.  The type and amount of coverage each Participant receives is dependent upon the Claims Administrator the Participant chooses.  Details on coverage for each Claims Administrator is given in the Certificate.

4.02 <u>Changes in Coverage</u>.  A Participant may switch from one Claims Administrator

to another only during the Open Enrollment Period. A Participant may switch from family to individual coverage (or vice-versa) during the Open Enrollment Period or within thirty (30) to sixty (60) days (dependent on the Participant's Claims Administrator) of a change in family status (i.e. marriage, divorce, birth of child, spouse loses coverage at his place of employment, etc.).

4.03    Nondiscriminatory Benefits. This Plan is intended not to discriminate in favor of highly compensated individuals, as to the eligibility to participate, and as to the contributions and/or benefits. This Plan shall comply with all requirements of the Code and all other applicable rules and regulations

## ARTICLE V

## FINANCING

5.01    Provision of Benefits. The Plan is provided by insurance contracts incorporated by reference herein and attached as Annex B.

5.02    Cost of the Plan. The Company shall contribute a flat amount for the Participant's coverage regardless of the coverage selected. The Company's portion of the contribution, including the expenses of administering this Plan, is paid out of the general assets of the Company.

## ARTICLE VI

## ADMINISTRATION

6.01 <u>Plan Administrator</u>. The Chief Executive Officer of the Company shall appoint the Total Compensation Policy Committee as Plan Administrator. The Plan Administrator shall be a committee consisting of a Chairman and at least two (2) other members. Any member of the Plan Administrator may be removed by the Chief Executive Officer of the Company at any time with or without cause. A member of the Plan Administrator may resign at any time by filing written notice thereof with the Secretary of the Company. Each member of the Plan Administrator shall serve until such time as he retires, dies, resigns or is removed. Vacancies in the Plan Administrator shall be filled by the Chief Executive Officer of the Company.

6.02 <u>Duties of the Plan Administrator</u>. The Plan Administrator shall have the following responsibilities and powers:

(a) The Plan Administrator shall administer the Plan in accordance with its terms and shall have all the powers necessary to carry out the provisions of the Plan. The Plan Administrator shall interpret the Plan and shall determine all questions, including questions of eligibility, arising in the interpretation, administration and application of the Plan and including all appeals by Employees. Any determination by the Plan Administrator shall

9

be conclusive and binding on all persons unless arbitrary or capricious or otherwise prohibited by law. Any exercise of discretion by the Plan Administrator shall be exercised in a non-discriminatory manner.

(b) The Plan Administrator shall keep a permanent record of its actions with respect to the Plan which shall be available for inspection by appropriate parties as provided in the Code and the Employee Retirement Income Security Act of 1974, as amended from time to time.

(c) The Plan Administrator may engage and consult with counsel, accountants, specialists and other persons as the Plan Administrator deems necessary and desirable. Members of the Plan Administrator shall be indemnified by the Company with respect to any action taken or omitted by the Plan Administrator in good faith reliance on the advice of such persons, provided that the Plan Administrator has acted prudently in selecting or retaining such persons, to which end the Plan Administrator shall periodically review such persons' performance.

(d) The members of the Plan Administrator shall not be entitled to any compensation for services hereunder. A meeting of the Plan Administrator shall only occur when there is a quorum present (i.e. a majority of the members on the Committee). Any act authorized or required of the Plan Administrator may be done by the majority of the members present at such meeting or by the majority of the Committee in writing. The action of such majority expressed either by vote at a meeting

or in writing without a meeting shall constitute the action of the Plan Administrator. Any member of the Plan Administrator who is a Participant in this Plan shall not vote on any question relating exclusively to himself.

6.03   Claims Administrator. The Claims Administrator shall have the following duties under the supervision of the Plan Administrator:

(a)   To review claims for benefits under the Plan; and

(b)   To pay claims for benefits under the Plan; and

(c)   To prepare and submit to the Plan Administrator periodic reports of its activities.

## ARTICLE VII

### CLAIMS PROCEDURE

7.01   Claims for Benefits. A Participant shall make a claim for Plan benefits, if necessary, by filing a written request with the Claims Administrator on a form to be furnished to him for such purpose. The Claims Administrator shall process the claim.

7.02   Review Procedure. If a Participant believes he is being denied any rights or benefits under the Plan, such Participant may file a written request for review with

the Plan Administrator within sixty (60) days following the date of denial. The Participant shall have the right:

(a)  to representation; and

(b)  to review pertinent documents; and,

(c)  to submit written comments.

The Participant may also request that the review be in the nature of a hearing.

7.03    Appeal Procedure. Within sixty (60) days of receiving a request to review a denial of benefits under this Plan, the Plan Administrator shall render a decision on the request if there has been no hearing. If the Participant has requested a hearing, the Plan Administrator shall respond by setting a time and date for the hearing. The hearing shall be conducted and a decision rendered no later than one hundred twenty (120) days from the receipt of the initial request for a review.

## ARTICLE VIII

### MISCELLANEOUS PROVISIONS

8.01    Applicable Law. This instrument shall be construed in accordance with and governed by the laws of the Commonwealth of Massachusetts to the extent not superseded by the laws of the United States.

8.02    Effective Date. This Plan, originally adopted by the Company on April 1, 1977,

is amended effective as of January 1, 1999.

8.03   Gender and Number. Unless the context clearly requires otherwise, the masculine pronoun whenever used shall include the feminine and neuter pronoun, the singular shall include the plural, and vice versa.

8.04   Indemnification. To the extent permitted by law, the Plan Administrator and all agents and representatives of the Plan Administrator shall be indemnified by the Company and saved harmless against any claim and the expenses of defending against such claims, resulting from any action or conduct relating to the administration of the Plan except claims arising from gross negligence, willful neglect, or willful misconduct.

8.05   Limitation of Rights. Neither the adoption and maintenance of the Plan nor anything contained herein, shall with respect to any present or former Participant, or other officer or employee of the Company or any Subsidiary be deemed to:

(a)   limit the right of the Company or any Subsidiary to discharge or discipline any such person, or otherwise terminate or modify the terms of his employment, or

(b)   create any contract or other right or interest under the Plan or in any funds hereunder other than as specifically provided herein.

8.06    <u>Unenforceability of a Particular Provision</u>. The unenforceability of any particular provision of this document shall not affect the other provisions, and the document shall be construed in all respects as if such unenforceable provision were omitted.

## ARTICLE IX

## RIGHT TO AMEND, MODIFY, OR TERMINATE THE PLAN

9.01    <u>Amendment of Plan</u>. The Company reserves the right at any time or times to amend the provisions of the Plan to any extent and in any manner that it may deem advisable, by a written instrument signed by an authorized officer of the Company. Notwithstanding the foregoing, no officer shall adopt any amendment that relates exclusively to himself.

9.02    <u>Termination of Plan</u>. The Company has established the Plan with the bona fide intention and expectation that it will be continued indefinitely, but the Company will have no obligation whatsoever to maintain the Plan for any given length of time and may discontinue or terminate the Plan at any time without liability.

15

IN WITNESS WHEREOF, Polaroid has caused this instrument to be executed this <u>20</u>th day of <u>DECEMBER</u>, 1999, effective January 1, 1999.

POLAROID CORPORATION

_____
Vice President, Human Resources

Kathryn M. La Fargue

15