- 2 -



UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

SALLY FERRARI; ELAINE JOHNSON;
JOHN MAGENHEIMER; ELIZABETH
WILLIAMS; AND DAVID A. MANISCALCO,

        Plaintiffs,

V.

POLAROID CORPORATION;
AND NEAL GOLDMAN,

        Defendants.

**Civil Action No.
03-11275-MLW**

---

**POLAROID CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

FOR POLAROID CORPORATION:

| | |
|---|---|
| Jerome A. Hoffman | Richard D. Glovsky, Esq. (BBO #195820) |
| Matthew Lee Wiener | Marni G. Caputo, Esq. (BBO#650590) |
| DECHERT LLP | PRINCE, LOBEL, GLOVSKY & TYE |
| 4000 Bell Atlantic Tower | 585 Commercial Street |
| 1717 Arch Street | Boston, MA 02109 |
| Philadelphia, PA 19103 | (617) 456-8000 |
| (215) 994-4000 | |

Dated: January 9, 2004

## I. STATEMENT OF THE ISSUES

In July 2002, the United States Bankruptcy Court (District of Delaware) approved the arms' length sale of the assets of the bankrupt debtor that Plaintiffs call "Old Polaroid" to OEP Imaging Operating Corporation (since renamed Polaroid Corporation), which Plaintiffs call "New Polaroid." The Bankruptcy Court's order ("Sale Order") (attached with the key provisions highlighted) not only cleansed the assets of any liabilities arising from Old Polaroid's employee benefits plans, but also expressly provided that New Polaroid would not be liable for, among other things, the "dismissal" of Old Polaroid's employees.

Plaintiffs worked for Old Polaroid until (well before the bankruptcy filing) each of them became permanently disabled and qualified for salary continuation benefits under Old Polaroid's Long-term Disability Plan ("LTD Plan"). Old Polaroid covered LTD-benefit recipients like Plaintiffs under its healthcare plans and paid their plan premiums. Before selling its assets to New Polaroid, Old Polaroid laid off Plaintiffs along with the rest of its employees, then terminated its benefit plans. But Plaintiffs' salary continuation payments, having been insured, survived the bankruptcy. The insurance carrier continues to pay them.

Plaintiffs allege that Old Polaroid terminated their employment with the intent to interfere with their claimed "right" to paid healthcare benefits, in violation of § 510 of ERISA, 29 U.S.C. § 1140. Having now dropped Old Polaroid as a defendant in this case, Plaintiffs seek to hold New Polaroid liable for "conspiring" with Old Polaroid to terminate their employment. This is the sole claim against New Polaroid.

New Polaroid's motion to dismiss presents two questions.

1.  Does the Sale Order bar Plaintiffs' § 510 claim against New Polaroid?

2. Should the Court recognize a cause of action for conspiracy to violate § 510 of ERISA where neither the statute nor the case law provides for one?

## II. STATEMENT OF THE CASE

Plaintiffs originally filed this suit against Old Polaroid, New Polaroid, and New Polaroid's largest shareholder (One Equity Partners). *See* Compl. at 1. Six counts long, Plaintiffs' original Complaint sought to hold each defendant liable for (1) Old Polaroid's termination of Plaintiffs' paid healthcare benefits, (2) Old Polaroid's alleged breach of fiduciary duty in failing to insure those benefits, (3) New Polaroid's failure to hire Plaintiffs,[1] and (4) Old Polaroid's termination of Plaintiffs' employment. *See* Compl. at 10-14 (¶¶ 35-58).

New Polaroid and One Equity Partners separately moved the Court to dismiss the original Complaint.[2] Old Polaroid invoked the automatic stay provision of the Bankruptcy Code (11 U.S.C. § 362(a)). *See* Polaroid Corporation's Mot. to Dismiss Pls.' Compl.; Primary PDC, Inc.'s Suggestion of Bankr. and Notice of Operation of Automatic Stay Provision.

---

[1] The original complaint's main claim against New Polaroid was that it failed to hire Plaintiffs in violation of § 510 of ERISA. *See* Compl. ¶¶ 49, 52-53. This claim had no factual or legal merit. It had no factual merit because Plaintiffs were at the time of the bankruptcy sale, and remain today, permanently unable to work (according to their own allegations). It had no legal merit because § 510 does not cover hiring. *See* Becker *v. Mack Trucks, Inc.*, 281 F.3d 372, 381 (3d Cir. 2002). Actually, what Plaintiffs were really alleging in their original complaint was not that New Polaroid failed to hire them, but that it failed to assume Old Polaroid's employee benefit plan liabilities. ERISA imposes no such obligation on a buyer, and the Sale Order specifically wiped the assets clear of benefit liabilities. *See* Sale Order at 21-23 (¶23).

[2] On October 7, 2003, New Polaroid filed an adversary proceeding in the Bankruptcy Court seeking a declaration that Plaintiffs' original complaint in this action was barred by the Sale Order. The complaint in the adversary proceeding was rendered moot when, on November 6, 2003, Plaintiffs filed the amended complaint now before the Court. New Polaroid is filing a new adversary proceeding in the Bankruptcy Court seeking a declaration that the Sale Order bars the amended complaint for the reasons set forth below. After that filing, New Polaroid will renew its motion with this Court to transfer the case to the Bankruptcy Court.

In response, Plaintiffs filed the Amended Complaint now before the Court, dropping from the case five of the six counts pleaded against New Polaroid and two of the defendants named in the original Complaint: Old Polaroid and One Equity Partners. Only a single § 510 count for "conspiracy" to terminate Plaintiffs' employment with Old Polaroid remains against New Polaroid in the Amended Complaint. *See* Am. Compl. at 10-11 (Count I).[3]

While Plaintiffs are ostensibly challenging the termination of their employment with Old Polaroid, in reality they are challenging the contemporaneous termination of the Old Polaroid ERISA plans under which they received healthcare benefits. Section 510 will not support this challenge. That provision prohibits an employer from terminating an employee to deprive him or her of benefits under a plan, but does not restrict an employer's right to terminate the plan in the first place—a right that Old Polaroid specifically retained in its plan documents and, upon the sale of its assets in bankruptcy, exercised consistent with ERISA. *See infra* III(B)(2). New Polaroid does not seek dismissal on this ground, however, because the date of plan termination is not pleaded in the Amended Complaint.[4]

Rather, New Polaroid takes Count I of Plaintiffs' Amended Complaint exactly as it is pleaded and asks the Court to dismiss it on two independent grounds: first, that it is barred by the Sale Order (as established in § IV(A)); and second, that ERISA does not provide a cause of action for conspiracy to violate § 510 (as established in § (IV)(B)).

---

[3]   The Amended Complaint's other count (Count II) is pleaded against a former Old Polaroid officer, Neal Goldman, in his alleged capacity as a fiduciary of Old Polaroid's benefit plans at issue in this case. *See id.* at 12-13 (¶¶ 50-54). Mr. Goldman is separately represented.

[4]   Another reason that Plaintiffs' § 510 claim cannot succeed is that Old Polaroid did not act with the proscribed intent in terminating Plaintiffs' employment; that is, it did not terminate Plaintiffs' employment with the object of interfering with Plaintiffs' benefits. New Polaroid does not move for dismissal on this basis because it might take the Court beyond the four corners of the amended complaint. *See infra* note 15.

## III. FACTUAL BACKGROUND

The following facts are drawn from Plaintiffs' Amended Complaint; documents referenced in it; and public documents on file with the Bankruptcy Court.[5]

### A. The Bankruptcy Court's Sale Order.

1. *The Sale Order expressly provides that New Polaroid is not liable for, among other things, the "dismissal" of Old Polaroid's employees.*

The Bankruptcy Court approved the sale of Old Polaroid's assets to New Polaroid free and clear of all liabilities.[6] *See* Sale Order at 14-15. Issued after notice to all interested parties, including each Plaintiff, *see infra* § I(A)(2), the Sale Order provides that New Polaroid "is not assuming[,] and shall have no liability or responsibility, as a successor or otherwise" for, any "liabilities" or "obligations" "relating to or arising from" Old Polaroid's "ownership" of the assets or Old Polaroid's "operations" "on or prior to the Closing Date." *Id.* at 20-21 (¶ 23). Specifically, "the Purchaser *shall have no obligation . . . for the dismissal by the Debtors of employees . . . .*" *Id.* at 22 (¶ 23) (emphasis added).

Among other such excluded liabilities are "any obligations which might otherwise arise [under], or pursuant to, the Employee Retirement Income Security Act of 1974

---

[5] In deciding a Rule 12(b)(6) motion, a district court may consider documents "integral to or explicitly relied upon in the complaint, even though not attached to the complaint, without converting the motion into one for summary judgment." *The Clorox Co. of Puerto Rico v. The Procter and Gamble Commercial Co.*, 228 F.3d 24, 32 (1st Cir. 2000) (citation omitted). ERISA plans are among the documents that the First Circuit has allowed district courts to consider. *See, e.g., Cogan v. Phoenix Life Ins. Co.*, 310 F.3d 238, 241 n.4 (1st Cir. 2002). A district court may likewise consider "matters fairly incorporated within" a complaint and "matters susceptible to judicial notice, and may in particular 'look to matters of public record in deciding a Rule 12(b)(6) motion.' " *In Re Colonial Mortgage Bankers Corp. v. Lopez-Stubbe*, 324 F.3d 12, 15-16 (1st Cir. 2003) (citation omitted). Consistent with these well-established principles, we have attached to this brief the documents listed on the Table of Documents that appears in the brief's Appendix; among them are the applicable benefit plans

[6] The Bankruptcy Court found that New Polaroid was "not an 'insider' of any of the Debtors," but rather a "good faith purchaser" in an "arm's-length bargain." *Id.* at 7; *see also id.* at 3 (concluding that the assets were

[ERISA]," among them the "obligation to pay" any "benefits" to employees of Old Polaroid. *Id.* (¶ 23). Further to this point, the Sale Order provides that "Purchaser [New Polaroid] shall have no liability with respect to any . . . employee pension, employee welfare or retention, compensation, benefit and/or incentive plan, agreement, practices, or program" to which Old Polaroid was "a party." *Id.* (¶ 23).[7]

The Bankruptcy Court backed the Sale Order with an injunction: Anyone holding any "Interest" in Old Polaroid—defined to mean any claim arising from the "operation" of Old Polaroid, *see id.*— is "forever barred, estopped, and permanently enjoined from asserting against [New Polaroid] . . . such person's . . . respective Interests." *Id.* at 15 (¶ 7). Further: "No such persons . . . shall assert against" New Polaroid "any liability," "claim, or obligation," relating to or arising from the ownership or operation of the Acquired Assets . . . ." *Id.* (¶ 7). The Sale Order also specifically enjoins any "party" to "any employee welfare" "plan," "agreement," or "program," from suing New Polaroid with respect to "any and all claims arising from or relating thereto." *Id.* at 22-23 (¶ 23 ).[8]

---

marketed in accordance with the court's orders); *id.* at 8, 18 (concluding that the assets were sold to the highest bidder and that New Polaroid paid fair consideration for the acquired assets).

[7] Under ERISA, "welfare benefit plan" is a broad term that includes (among other plans) both insured and uninsured long-term disability, medical, and dental plans. *See* 29 U.S.C. § 1002(1).

[8] The Sale Order also bars and enjoins any party in interest from suing New Polaroid under a successor liability theory: "*The Purchaser is not and shall not be deemed a successor of or to the Debtors for any Interest against or in the Debtors, [or] the Acquired Assets . . . .*" *Id.* at 23 (¶ 24) (emphasis added). This injunction extends to Old Polaroid's employees: "[A]ll . . . employees, . . . [and] former employees shall be, and hereby are, forever barred . . . and permanently enjoined from asserting such Interests . . . against" New Polaroid as an alleged successor . . . with respect to any Interest of any kind whatever such person . . . had, has or may have against or in "Old Polaroid." *Id.* at 24 (¶ 24).

2. *The Bankruptcy Court gave Plaintiffs the opportunity to object to the terms of the sale at a sale hearing, but Plaintiffs did not object.*

Before issuing the Sale Order, the Bankruptcy Court afforded all interested parties, including Plaintiffs, an opportunity to object to its terms at a sale hearing. Notice of the hearing provided was to each Plaintiff by mail, *see* Ex. 2 ("Declaration of Mailing"),[9] and published in *The Boston Globe, The New York Times,* and *The Wall Street Journal. See* Ex. 3 ("Notice of Publication").[10] The Bankruptcy Court found that "adequate and sufficient notice" was "given to all parties-in-interest" and that "all interested parties" were "afforded an opportunity to be heard" with respect to the sale. Sale Order at 2-3, 4.

On June 28, 2002, the Bankruptcy Court held a hearing on the terms of the proposed sale. *See* Sale Order at 2. Plaintiffs did not participate in the hearing. Nor, either before or after the hearing, did Plaintiffs voice any objections to, or otherwise communicate with, the Bankruptcy Court about the proposed sale. *See* Ex. 1 (docket). Plaintiffs have not since sought any relief from the Bankrupty Court or filed with it against Old Polaroid. *See id.*

---

[9] Four of the Plaintiffs' names (Elaine Johnson, John Magenheimer, Elizabeth Williams, and David A. Maniscalco) appear on pages 607, 723, 1288, and 730, respectively, of Exhibit B of the "Declaration of Mailing." Ex. 2. Notice to one of the Plaintiffs, Sally Ferrari (who suffers from Alzheimer's disease, *see* Am Compl. ¶ 7), was sent to her husband. *See* Ex. 2 (p. 395 of Exhibit B to the "Declaration of Mailing").

[10] Both the newspaper notices and the notice served on each Plaintiff had the same text. *Compare* Ex. 2 *with* Ex. 3. The notice provides, in relevant part, that under "the terms of the Asset Purchase Agreement . . . the Debtors are selling" the business assets "free and clear of liens, claims, encumbrances and interests" to New Polaroid, "subject to higher and better offers and Court approval"; that an auction would be held on June 26, 2002; that a sale hearing would be held before the Bankruptcy Court on June 28, 2002; and that all objections to the sale had to be lodged with the Bankruptcy Court or would be forever waived. *See* Ex. 2. The notice instructed recipients how to obtain copies of the documents referenced in it. *See id.*

### B.      Plaintiffs' Employment With Old Polaroid and LTD Status.

1.      *Plaintiffs worked for Old Polaroid until they became permanently disabled.*

Plaintiffs once worked for Old Polaroid. Between 1989 and 1998, each Plaintiff suffered a disability that rendered him or her permanently unable to work. It is undisputed that none of the Plaintiffs was working or able to work for Old Polaroid when Old Polaroid filed for bankruptcy or when it sold its assets to New Polaroid. None, in fact, had worked for years. Sally Ferrari qualified for LTD benefits in 1997, John Magenheimer and David Maniscalco in 1998, Elaine Johnson in 1991, and Elizabeth Williams in 1989. *See* Am. Compl. ¶¶ 7-11.

2.      *Plaintiffs received LTD benefits from Old Polaroid.*

Plaintiffs were covered under Old Polaroid's LTD plan, which provided for salary continuation payments consisting of about two-thirds of an employee's last salary. *See* Ex 4. The Plan was insured through an outside insurance carrier, which paid Plan benefits directly to the recipients. *See* Am. Compl. ¶ 33. Plaintiffs still receive from the carrier the full amount of the salary continuation benefits provided for under the LTD Plan. *See id.*

Once Plaintiffs qualified for coverage under the LTD Plan, Old Polaroid continued their coverage under its medical and dental plans (and it was for this limited reason that Old Polaroid continued to classify them as employees). The healthcare plans allowed an LTD recipient to continue participating "until he terminates, retires, dies, or recovers from such disability," Ex. 5 at 6 (§ 3.04 of medical plan); Ex. 6 at 7 (§ 3.04 of dental plan), as did the

LTD Plan itself, *see* Ex. 4 (§ 3.02). Plaintiffs allege that, under the LTD Plan, Old Polaroid was responsible for picking up their healthcare plan premiums. *See* Am. Compl. ¶¶ 1, 28.

Old Polaroid specifically reserved the right to terminate both the LTD Plan and the healthcare plans at any time. Ex. 4 at 15 (LTD Plan, § 9.02 ) ("[T]he Company will have *no obligation whatsoever to maintain the Plan for any given length of time and may discontinue or terminate the Plan at any time* without liability.") (emphasis added); Ex. 5 at 14 (Medical Plan, § 9.02) ("[T]he Company will have *no obligation whatsoever to maintain the Plan for any given length of time and may discontinue or terminate the Plan at any time* without liability.") (emphasis added); Ex. 6 at 16 (Dental Plan, s. 9.02) (same).[11]

    3.    *Just before the sale of Old Polaroid's assets to New Polaroid, Old Polaroid terminated Plaintiffs' paid healthcare benefits.*

On July 2, 2002, Old Polaroid informed Plaintiffs by letter that, as a result of the bankruptcy, it was terminating their employment and with it their paid healthcare benefits, but that an insurance carrier would continue to pay their salary continuation benefits. *See* Am. Compl. ¶ 36; Ex. 7 (letter referenced in Am. Compl. ¶ 36). Old Polaroid stopped paying

---

[11] Old Polaroid terminated all of these (and its other) benefit plans contemporaneously with the bankruptcy sale, which is to say contemporaneously with the termination of Plaintiffs' employment. Under ERISA, an employer may modify or eliminate a welfare benefit plan at any time—even absent the type of reservation-of-rights language quoted from above—unless the plan says otherwise. The reason is that welfare-plan benefits (like LTD and healthcare benefits) do not vest. *See, e.g., Curtis-Wright Corp. v. Schoonejongen,* 514 U.S. 73, 74 (1995); *Campbell v. BankBoston, N.A.,* 327 F.3d 1, 7 (1st Cir. 2003); *Allen v. Adage, Inc.,* 967 F.2d 695, 798 (1st Cir. 1993); *Center v. First Int'l Life Ins. Co.,* Civ. A. No. 94-11596-PBS, 1997 WL 136443, at *7-9 (D. Mass. Mar. 13, 1997). What Plaintiffs are really complaining about in this suit is not that their employment was terminated—they did not and could not, after all, actually work for Old Polaroid—but that their paid healthcare benefits were terminated. Plaintiffs are in effect trying to use § 510 to abrogate Old Polaroid's right to terminate the plans under which the benefits were paid. The Supreme Court has made clear, however, that § 510 cannot be put to this use; it does not take away an employer's right to terminate a plan. *See Inter-Modal Rail Employees' Ass'n v. Atchison, Topeka & Santa Fe Railway Co.,* 520 U.S. 510 *passim* (1997).

Plaintiffs' healthcare premiums on July 31, the date the sale closed. *See* Ex. 7;[12] Am. Compl. ¶¶ 1, 37. Plaintiffs continue to receive the salary continuation payments provided under the LTD Plan. *See id.* ¶ 33.

## IV. ARGUMENT

Set forth in paragraphs 46-49 of the Amended Complaint, the single count remaining in this suit against New Polaroid alleges as follows:

- *Paragraph 46*: "*Prior to the sale* of the old Polaroid to the entity that is now the defendant new Polaroid, the two corporations entered into an illegal agreement to wrongfully reduce Old Polaroid's obligations toward its employees who were receiving LTD benefits. In that agreement, the *Old Polaroid conspired with the new Polaroid to terminate all employees receiving Long Term Disability benefits*. This was done for the purpose and with the specific intent of interfering with the plaintiffs' rights and attainment of the medical, dental, and life insurance benefits that were promised to them and which are terms of the Polaroid LTD Plan." (emphasis added).

- *Paragraph 47*: "Both the 'new' and the 'old' Polaroid, knew or should have known that such a termination of employees because they applied for and received Long Term Disability benefits would violate § 510 of ERISA, which prohibits discrimination against a participant or a beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan."

- *Paragraph 48*: "This agreement constituted a conspiracy between the 'old' Polaroid and the 'new' Polaroid to interfere with the plaintiffs' rights to and attainment of the medical, dental, and life insurance premium benefits that were promised to them and which constituted a term of the Polaroid LTD Plan, in violation of § 510 of ERISA. *The conduct constituting the conspiracy took place prior to the asset sale* in August 2002." (emphasis added)

- *Paragraph 49*: "This conduct violated § 510 of ERISA, which makes it '. . . unlawful for any person . . . to discriminate against a participant or a beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . .' "

---

[12] Individuals who qualify for Social Security disability benefits are eligible for Medicare benefits without regard to whether they have reached age 65. *See* 42 U.S.C. § 426(b)(2)(A).

This count fails to state a claim for two independent reasons: first, the Sale Order bars claims against New Polaroid arising from the termination of Old Polaroid's employees; and second, ERISA does not authorize a cause of action for conspiracy to violate § 510.

### A.   The Sale Order Bars Plaintiffs' Claims.

First Circuit law holds that *res judicata* (or claim preclusion) may be raised in a motion to dismiss. *See, e.g., Colonial Mortgage Bankers Corp. v. Lopez-Stubbe*, 324 F.3d 12, 16 (1st Cir. 2003). This Court should give the Sale Order *res judicata* effect for the following reasons.

> 1.   *A bankruptcy court may order a bankrupt estate's assets sold "free and clear," and its order binds all "parties in interest."*

Section 363(f) of the Bankruptcy Code gives a bankruptcy court the authority to order the sale of the debtor's property "free and clear of any interest in such property." 11 U.S.C. § 363(f). Nearly all courts have construed "interest in property" to cover not only specific (*in rem*) interests in the debtor's property, like liens, but also any " 'other obligations that may flow from the ownership of the property.'" *In re Trans World Airlines, Inc.*, 322 F.3d 283, 289 (3d Cir. 2003) (citation omitted); *accord In re Colarusso*, 280 B.R. 548, 557 (D. Mass 2002) (endorsing "broad reading of the term 'interest'").[13]

Legal claims generally, and employment claims in particular, fall within the definition of "interests." *Trans World Airlines*, the now-leading case, held that § 363 authorized the sale

---

[13]   The authority to provide for a free and clear sale exists even independent of § 363(f). It is a function of a bankruptcy court's inherent powers to administer a bankrupt estate. *See, e.g., Trans World Airlines*, 322 F.3d at 291 (holding that "the priority scheme of the Bankruptcy Code supports the transfer of TWA's assets free and clear" irrespective of § 363(f)); *In re White Motor Credit Corp.*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987) (holding that the "authority is implicit in the court's general equitable powers and in its duty to distribute debtor's assets").

of TWA's assets to American Airlines free of both employment discrimination claims and related liabilities under a consent decree. Before that, *In re Luckie Smokeless Coal Co.*, 99 F.3d 573 (4th Cir. 1996), held that § 363(f) authorized the sale of the debtor's assets free of the debtor's financial obligations to an employee benefit plan and fund. *See id.* at 582. *Cf. Carcasole-Lacal v. American Airlines, Inc.*, Civ. A. No. CV-02-4359 (DGT), 2003 WL 21525484 (E.D.N.Y. July 8, 2003) (holding that the purchaser of assets out of bankruptcy was not liable for the debtor's obligations under an early retirement plan).

Once entered, a bankruptcy court sale order precludes claims by any "party in interest"—that is, anyone whose interests may have been adversely affected by the sale's terms, *see, e.g., In re Savage Indus., Inc.*, 43 F.3d 714, 718 (1st Cir. 1994)—who thereafter asserts claims disposed of by the order. *See, e.g., In re Colarusso*, 280 B.R. 548 (D. Mass. 2002); *Cummings Properties, LLC v. Heidelberg Print Finance Americas*, No. Civ.A.01-11027-GA0, 2002 WL 1839252, at *3 (D. Mass. Aug. 12, 2002); *see also, e.g., ITOFCO v. Megatrans Logistics, Inc.*, 322 F.3d 928, 932 (7th Cir. 2002) (Posner, J.) (holding that a bankruptcy sale order is entitled to *res judicata* effect); *In re Clinton St. Food Corp.*, 254 F.R. 523, 530 (S.D.N.Y. 2000) (same); *cf. Savage*, 43 F.3d at 720 n.9 (providing that a sale order is the "functional equivalent" of an "order confirming a conventional chapter 11 reorganization plan"). *See generally FCIC v. Shearson-American* Express, 996 F.3d 493, 498 (1st Cir. 1993) (holding that unappealled bankruptcy court "[o]rders, judgments, and decrees" are entitled to

*res judicata* effect); *In re Belmont Realty Corp.*, 11 F.3d 1092, 1095 (1st Cir. 1993) (noting that *res judicata* applies to bankruptcy sale orders).[14]

2.  *The Sale Order expressly provides that New Polaroid is not liable for the termination of Old Polaroid's employees.*

The Sale Order could not be more clear in providing that New Polaroid "shall have no liability or responsibility" (p. 20) for the pre-sale conduct of Old Polaroid in general and "no obligation for the . . . the dismissal by the Debtors of employees" (p. 22) in particular. It is similarly clear in enjoining "all persons" with any claim against Old Polaroid from "asserting against the Purchaser [New Polaroid]" (p. 15) any claims "arising under or out of, in connection with, or in any way relating to" Old Polaroid, the purchased assets or "the operation" of Old Polaroid "prior to the [sale] Closing Date" (p. 15).

Count I of Plaintiffs' Amended Complaint—the only count remaining against New Polaroid—runs headlong into the literal wording of the Sale Order. The basis of Count I is nothing other than the *pre-sale* termination of Plaintiffs' employment with Old Polaroid, *see* Am. Compl. at 10-11 (¶¶ 46-47), for which New Polaroid is *not* responsible under the plain language of the Sale Order. The Sale Order is therefore dispositive of Count I.

---

[14] Litigants who file suit in disregard of a free-and-clear sale order are subject to an injunction by the issuing bankruptcy court. *See, e.g., In re Paris Indus. Corp.*, 132 B.R. 504, 508-10 (D. Me. 1991) (enjoining successor liability suit against purchaser of assets sold free and clear out of bankruptcy); *see also In re All Am. of Ashburn, Inc.*, 56 B.R. 186, 191 (N.D. Ge.) (same); *see also In re P.K.R. Convalescent Ctrs., Inc.*, 189 B.R. 90, 96 (E.D. Va. 1995) (same with respect to suit brought by state regulatory agency against purchaser); *In re WBC Partnership*, 189 B.R. 97 (Bankr. E.D. Va. 1995) (same); *In re White Motor Credit Corp.*, 75 B.R. 944 (Bankr. N.D. Ohio 1987) (same with respect to a suit by products liability claimants). *See generally In re GSF Corp.*, 938 F.2d 1467 (1st Cir. 1991) (holding that a bankruptcy court has authority under 11 U.S.C. § 105(a) to issue an injunction enjoining an action contrary to the terms of the court's order of judgment).

**B.     Even Absent the Bankruptcy Court Order, Plaintiffs' Amended Complaint Fails to State a Claim Upon Which Relief Can Be Granted Because ERISA Does Not Authorize a Cause of Action for Conspiracy to Violate § 510.**

Plaintiffs do not have a cause of action under the plain language of ERISA § 510, the statutory section they invoke. That section provides, in relevant part, that it "shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled . . . [under an ERISA] plan . . . ." 29 U.S.C. § 1140. Plaintiffs allege that Old Polaroid, not New Polaroid, "discharge[d]" Plaintiffs with the *alleged* intent of depriving them of benefits.[15] It is not alleged, nor could it be alleged, that New Polaroid was a "person" that discharged Plaintiffs. For it is undisputed (in fact it is alleged) that Plaintiffs were Old Polaroid's, not New Polaroid's, employees.

Only by reading a "conspiracy" cause of action into § 510—extending liability not just to the "person" who discharges an employee, but also to a third party that conspires to

---

[15]    Old Polaroid did not act with the proscribed intent—that is, to interfere with Plaintiffs' ERISA benefits. *See generally Barbour v. Dynamics Research Corp.*, 63 F.3d 32, 37 (1st Cir. 1995) (holding that under § 510 a plaintiff must prove that the employer acted "with the specific intent of interfering with the employee's ERISA benefits"). The alleged "conspiracy" on which Plaintiffs apparently (their complaint is, admittedly, vague on the point ) resides in the Bankruptcy Court-approved purchase agreement. Ex.8; Sale Order at 13. The relevant section (§ 6.09 ("WARN Act Notices")) addresses "plant closing" and "mass layoff" notice obligations under the Worker Adjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C. §§ 2101-2109. Section 6.09 provided that Old Polaroid would terminate, pre-closing, the employees that New Polaroid did not intend to hire. This provision ensured that the obligation to provide WARN Act notices, if any, remained with the bankrupt debtor, Old Polaroid, and did not pass to New Polaroid. Under the WARN Act, a seller of assets is responsible for providing notice to employees who suffer an "employment loss" as the result of a "plant closing" or "mass layoff" up to the sale's effective date. *See* 29 U.S.C. §2101(b)(1); *see also generally* Ethan Lipsig and Keith R. Fentonmiller, *A WARN Act Roadmap*, 11 Lab. Law. 273, 302 (1996). As for the Old Polaroid employees that New Polaroid intended to hire, there was no reason to include a WARN Act provision requiring Old Polaroid to terminate their employment pre-closing. A specific WARN Act exception provides that an employee of the seller who is immediately reemployed by the buyer is not deemed to have experienced an "employment loss." *See* 29 U.S.C. §2101(b)(1).

bring about the discharge—can the Court find that Count I states a claim. The Court should not do so. ERISA is a "comprehensive and reticulated statute." *Mertens v. Hewitt Assoc.*, 508 U.S. 248 (1993). The Supreme Court has "emphasized" its "unwillingness to infer causes of action in the ERISA context," *id.* at 254, as has the First Circuit. *See, e.g., Reich v. Rowe*, 20 F.3d 25, 30 (1st Cir. 1994); *see also Sampson v. Rubin*, No. Civ. A. 00-10215-DPW, 2002 WL 31432701, at *6 (D. Mass. Oct. 29, 2002) ("I am mindful of the Supreme Court's 'unwillingness to infer causes of action in the ERISA context'"). In *Mertens*, for instance, the Court held that the ERISA provision authorizing suit against a plan fiduciary for breach of fiduciary duty cannot be read to authorize suit against a "nonfiduciary who knowingly participates in the breach." *Mertens*, 508 U.S. at 249; *accord Rowe*, 20 F.3d at 30.

The only federal court of which we are aware to have addressed whether a conspiracy cause of action lies under § 510 answered "no." *See Cipollone v. University of Pennsylvania*, No. Civ. A. 97-6565, 1998 WL 47285, at *2 (E.D. Pa. Feb. 3, 1998) ("Plaintiffs have failed to state a claim of conspiracy to violate ERISA. There is no indication of any statutory basis for Plaintiffs' claim and ERISA itself contains no explicit cause of action for civil conspiracy.").[16] Another federal district court, citing the First Circuit's decision in *Rowe*, similarly held that there is no ERISA cause of action for conspiracy to breach ERISA-imposed fiduciary duties. *See, e.g., Riley v. Murdock*, 890 F. Supp. 444, 454 (E.D.N.C. 1995) ("Applying the reasoning of *Mertens*, plaintiffs cannot make a claim for conspiracy under

---

[16] The non-employer in *Cippollone* was a firm to which the University of Pennsylvania had subcontracted work, resulting in the termination of the University employees who previously performed the work. *See id.* at *1. The employees alleged that the university terminated them to avoid ERISA liabilities. Much like here, the conspiracy was alleged to reside in the subcontracting agreement. *See id.* The court dismissed the § 510 conspiracy claim pleaded against the subcontractor for failure to state a claim. *See id.* at *2.

*ERISA*. The statute does not prohibit anyone from 'conspiring' with a fiduciary for any purpose, just as it does not prohibit 'aiding and abetting' the breach of fiduciary duty.") (citing *Rowe*). *Cf. Daley v. Wellpoint Health Networks, Inc.*, 146 F. Supp. 2d 92, 104 & n. 7 (D. Mass. 2001) (dismissing claim against supervisor alleged to have aided and abetted the employer in its violation Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, because "Title VII has no analogue to [a state law]'s 'aiding and abetting' provision which has been held to permit the naming of individual defendants in state discrimination suits");

In summary, while the Court need not address whether ERISA provides a cause of action for conspiracy to violate § 510 given the Sale Order's preclusive effect, if the Court does, its answer, like that of the court in *Cippollone*, should be "no."

## V. CONCLUSION

For the reasons stated above, the Court should dismiss Plaintiffs' Amended Complaint with prejudice.

Respectfully submitted,

Jerome A. Hoffman
Matthew Lee Wiener
DECHERT LLP
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, PA 19103
(215) 994-4000

Richard D. Glovsky (BBO #195820)
Marni G. Caputo (BBO #650590)
PRINCE, LOBEL, GLOVSKY & TYE LLP
585 Commercial Street
Boston, MA 02109
(617) 456-8000

Counsel for Polaroid Corporation

Dated: January 9, 2004

## CERTIFICATE OF SERVICE

I certify that on January 9, 2004, the foregoing was served upon Plaintiffs' counsel of record, via First Class Mail, addressed as follows:

> Harvey A. Schwartz
> Rodgers, Powers & Schwartz, LLP
> 18 Tremont Street, Suite 500
> Boston, Massachusetts 02108

/Marni Goldstein Caputo