UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SALLY FERRARI, ELAINE JOHNSON, | ) | |
| JOHN MAGENHEIMER, ELIZABETH | ) | |
| WILLIAMS, and DAVID A. | ) | |
| MANISCALCO, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| POLAROID CORPORATION and | ) | CA. No. 03-11275-MLW |
| NEIL GOLDMAN | ) | |
| Defendants. | ) | |

## PLAINTIFFS' MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANT
## POLAROID CORPORATION'S MOTION TO DISMISS

## I.    INTRODUCTION

This lawsuit is brought by former Polaroid[1] employees and their surviving

spouses who were receiving Long Term Disability Benefits pursuant to the

company's qualified employee benefit plan. As a part of the Long Term Disability

plan, the plaintiffs were promised that for so long as they were receiving Long

Term Disability benefits they would also receive medical, dental and life insurance

benefits cost-free. In summer 2002, Polaroid and One Equity Partners ("OEP")

agreed on the terms of a purchase agreement whereby One Equity Partners would

purchase 65% of Polaroid's assets. The purchase of Polaroid's assets was approved

by the Delaware Bankruptcy Court in a final Sale Order. Just days before the

---

[1] The debtor/seller company is referred to as the old Polaroid; the defendant/purchaser company is referred to as the new Polaroid.

1

Bankruptcy Court order on the asset sale, the plaintiffs received notice from the old Polaroid that their employment was terminated and that they would no longer have their Long Term Disability ("LTD") medical, dental and life insurance premiums paid by the company.[2]  The plaintiffs seek both equitable and legal relief against the defendant new Polaroid, and others, pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et. seq.* ("ERISA").

## II.     THE LEGAL ISSUES

Polaroid has moved to dismiss the complaint[3] under two theories: first, that the Bankruptcy Court's Sale Order bars the plaintiffs' ERISA claims against the new Polaroid and, second, that the new Polaroid cannot be liable as a co-conspirator under ERISA. Neither theory supports dismissal of this action.

## III.    THE RELEVANT FACTS

The defendant's motion is brought pursuant to Fed.R.Civ.P. 12(b)(6). "In adjudicating motions to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept all allegations in the complaint as true and all reasonable inferences must be drawn in favor of the plaintiffs. The complaint should be dismissed only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Limone v. United States*, 271 F. Supp. 2d. 345, 349 (D. Mass. 2003)(internal citations omitted).  In this case, the

---

[2] The plaintiffs continue to receive LTD salary reimbursement payments because this benefit had been properly insured.

[3] The defendant Neil Goldman has not joined this motion.

plaintiffs' Amended Complaint, and the facts included therein, control. In addition,

on July 5, 2002, the Delaware Bankruptcy Court signed-off on the terms of

defendant Polaroid's purchase of the old Polaroid's bankruptcy assets. The

defendant has attached this Sale Order to its Motion to Dismiss and requests that

this Court consider the Sale Order in deciding its motion.  See *Polaroid*

*Corporation's Memorandum of Law in Support of Its Motion to Dismiss Plaintiffs'*

*Amended Complaint, p. 4, n.5.*  The plaintiff agrees that this Court may consider the

Sale Order in regard to this motion.

## DISCUSSION

### A.    AN ENTITY THAT CONSPIRES WITH AN EMPLOYER TO VIOLATE ERISA CAN BE HELD LIABLE FOR ITS CONDUCT.

#### 1.    Common law civil conspiracy doctrine applies to ERISA claims.

The plaintiffs allege in their Amended Complaint that

> prior to the sale of the assets of the old Polaroid to the
> entity that is now the defendant new Polaroid, the two
> corporations entered into an illegal agreement to
> wrongfully reduce old Polaroid's obligations toward its
> employees who were receiving LTD benefits. In that
> agreement, the old Polaroid conspired with the new
> Polaroid to terminate all employees receiving Long
> Term Disability benefits. This was done for the purpose
> and with the specific intent of interfering with the
> plaintiffs' rights to and attainment of the medical,
> dental, and life insurance benefits that were promised to
> them and which are terms of the Polaroid LTD Plan.

Amended Complaint, ¶ 46.  For purposes of this motion this conspiracy allegation

must be accepted as true.  The Amended Complaint brings this claim against the

3

new Polaroid Corporation in its own right; the old Polaroid's bankruptcy estate is

not named as a defendant, nor are the estate's assets subject to this claim. A party

that enters into such a conspiracy with an employer to violate workers' ERISA

rights can itself become liable under that statute, even if it is not the workers'

employer, because traditional notions of civil conspiracy, which invoke such joint

liability on co-conspirators, apply to ERISA claims.

Section 510 of ERISA provides, in pertinent part:

> It shall be unlawful for any person to discharge or discriminate against a
> participant or beneficiary for exercising any right to which he is entitled
> under the provisions of an employer benefit plan for the purpose of
> interfering with the attainment of any right to which such participant may
> become entitled under the plan.

29 *U.S.C.* § 1140.  This section prohibits employers from discharging an employee

who has asserted an ERISA right for the purpose of interfering with that right.

Congress enacted Section 510 "primarily to prevent unscrupulous employers from

discharging or harassing their employees in order to keep them from obtaining

vested ... benefits." *DeWitt v. Penn-Del Directory Corp.*, 106 F.3d 514, 522 (3d

Cir. 1997).  As a result, "[t]he ultimate inquiry in a Section 510 case is whether the

employment action was taken with the specific intent of interfering with the

employee's ERISA benefits." *Barbour v. Dynamics Research Corp.*, 63 F.3d 32, 37

(1st Cir. 1995), *cert. denied* 516 U.S. 113 (1996).  To prove a prima facie case

under Section 510 a plaintiff must show (1) that an employer took specific actions

(2) for the purpose of interfering (3) with an employee's attainment of ... benefit

rights. *Eichorn v. AT&T Corp.*, 248 F.3d 131, 149 (3rd Cir. 2001).  The Amended

Complaint properly alleges such a Section 510 violation.

Clearly, the old Polaroid could not arbitrarily fire all of its employees who had asserted their ERISA rights by seeking and obtaining benefits under the LTD plan. *See Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133 (1995). The question, then, is whether the old Polaroid and the new Polaroid, acting together as they did, could legally do what the old Polaroid could not have done alone. The plaintiffs, supported by the Ninth Circuit decision in *Lessard v. Applied Risk Mgmt., et al.*, 307 F.3d 1020 (9th Cir. 2002), suggest that the new Polaroid is liable for its own conduct in conspiring to violate ERISA rights to the same extent that the debtor Polaroid would be.

Lessard involved a situation virtually identical to the present case. Two companies negotiated the sale of a company. As a term of the sale, all employees would be automatically transferred to employment with the new company. However, there was one important condition of transfer: in order to transfer, the employee must have been actively employed, or on non-medical, non-extended leave on the day that the sale agreement was effectuated. Employees who were out of work on disability or other medically related leaves on the day of the sale were eligible for transfer only "if and when he or she returns to active employment." *Lessard*, 307 F.3d at 1022, n. 1. In short, all employees receiving long term disability benefits at the time of the sale were terminated, while all active employees were hired by the purchasing corporation. This is identical to the agreement in the present case.

Lessard was on medical leave the day of the sale; at the time of the lawsuit her medical condition was such that her return to active work was unlikely. She originally filed her suit under the Americans with Disabilities Act. On motion, the District Court dismissed her ADA claim and further held that her state law claims were to be construed as alleging a single claim for wrongful termination pursuant to

5

ERISA Sec. 510.  The Court then found that <u>both the buyer and the seller</u> had violated Lessard's Section 510 rights. *Lessard,* 307 F.3d at 1024-25. The Court stated it was clear that "[the selling entity] acting alone would not have been permitted to terminate the benefits of a select group of employees – most of whom were high-users of the company's Plan – because those employees were on medical leave … The same single action, jointly agreed upon and executed by the two companies, just as certainly constitutes a violation of Section 510." *Id.*  Judge Alex Kozinski of that Court, writing separately in concurrence, was more succinct,

> The ploy to dump workers on long-term
> disability violates ERISA … It runs afoul of the
> "too clever by half" doctrine. Parties acting in
> concert can't get away with what they couldn't
> do separately. The lawyers who papered this
> transaction should have advised against it, and
> the clients should have heeded the warning. One
> hopes, perhaps in vain, that future lawyers and
> clients will know better.

*Id.* at 1027-28 (citations omitted).

The Ninth Circuit's application of conspiracy analysis in *Lessard* is consistent with other courts' extension of ERISA liability to those who conspire with ERISA employers or fiduciaries. For example, in *Thornton v. Evans,* 692 F.2d 1064 (7th Cir. 1982), the Seventh Circuit found that entities not directly subject to ERISA liability can be found liable to ERISA beneficiaries if they act jointly with proper ERISA defendants.

> But, even though plaintiffs have failed to state a
> claim against these defendants as fiduciaries
> within the meaning of ERISA, they may still
> have stated a claim under ERISA on the theory
> that the defendants conspired with parties who

6

> <u>are</u> fiduciaries to breach the duties imposed by
> ERISA

692 F.2d at 1078 (emphasis by the Court). *See Fremont v. McGraw-Edison Co.*,
606 F.2d 752, 759 (7th Cir. 1979), *cert. denied*, 445 U.S. 951 (1980) ("We are not
saying that in an ordinary civil action against a trustee, others who have aided him,
or conspired with him, in a breach of fiduciary duty may not be liable to the extent
that they have profited from the breach. *See* RESTATEMENT (SECOND) TRUSTS §
256.") *Accord Freund v. Marshall & Ilsley Bank, 485 F. Supp. 629, 641-42 (W.D.
Wis. 1979).* (In an ERISA action, "the Court is fully empowered to award the relief
available in traditional trust law against nonfiduciaries who knowingly
participate… in a breach of trust.")[4]

Similarly, in *Eichorn v. AT&T Corp.*, 248 F.3d 131 (3rd Cir. 2001), the
Third Circuit found that all parties to the sale of a corporation could be jointly
liable for violating the ERISA obligations of the selling entity. The Court
specifically found that evidence that the purchasing entity would be relieved from
paying expensive benefits for some employees of the selling company could supply
a motivation for violating the employees' ERISA rights, the same motivation
alleged in the present case. The *Eichorn* Court said,

> Plaintiffs point to the economic benefits that
> both Lucent and AT&T received from the no-
> hire agreement, specifically that neither
> defendant was required to pay for pension
> benefits, as evidence of specific intent to
> interfere with an ERISA pension plan in
> violation of § 510. *Turner v. Schering-Plough
> Corp.*, 901 F.2d 335, 348 (3d. Cir. 1990)

---

[4] A long line of cases are in accord with *Freund's* reasoning. *See, e.g., Brock v. Hendershott,* 840 F.2d 339,
342 (6th Cir. 1988); *Lowen v. Tower Asset Mgmt., Inc.,* 829 F.2d 1209, 1220 (2d. Cir. 1987); *Fink v. Nat.
Savings & Trust Co.,* 772 F.2d 951, 958 (D.C. Cir. 1985) (dicta); *Dole v. Compton,* 753 F. Supp. 563, 565-
69 (E.D. Pa. 1990); *Pension Benefit Guar. Corp. v. Ross,* 733 F. Supp. 1005, 1006-08 (M.D.N.C. 1990);
*Pension Fund-Mid Jersey Trucking Ind. v. Omni-Funding Group,* 731 F. Supp. 161, 177-79 (D.N.J. 1990).

> (savings to an employer that result from
> employees' termination might be viewed as a
> motivating factor sufficient to satisfy the intent
> element of § 510 liability).

248 F.3d at 149. Such evidence, the Court found, is prima facie evidence of both

the purchasing and selling corporations' intent to violate the beneficiaries' ERISA

rights. "We hold that plaintiffs have produced sufficient evidence that both AT&T

and Lucent received a direct and substantial financial gain from the cancellation of

pension benefits, namely they were relieved from paying large sums for the pension

benefits of the several Paradyne employees affected by the agreement." *Id.* at 150.

The First Circuit has similarly applied traditional civil conspiracy law in the

ERISA context. In *Crane v. Green & Freedman Baking Co.*, 134 F.3d 17, 24 (1st

Cir. 1998), the Court cited *Lowen v. Tower Asset Mgmt.*, 829 F.2d 1209 (2nd Cir.

1987), which held that an entity that conspires with a proper ERISA defendant may

become liable itself for the ERISA violation. "Parties may not use shell-game-like

maneuvers to shift fiduciary obligations to one legal entity while channeling profits

from self-dealing to a separate legal entity under their control." 829 F. 2d at 1220.

This is consistent with the application of civil conspiracy law in ERISA cases. For

example, in *Aetna Casualty Sur. Co. v. P & B Autobody*, 43 F.3d 1546, 1564 (1st

Cir. 1994), the Court said that "[f]or liability to attach on this basis, there must be,

first, a common design or an agreement, although not necessarily express, between

two or more persons to do a wrongful act and, second, proof of some tortious act in

furtherance of the agreement." *See* RESTATEMENT (SECOND) OF TORTS § 876 cmt.

b. ("Where two or more persons act in concert, each will be jointly and severally

liable for the tort"). *Id.*

The sale of the old Polaroid to One Equity Partners (which is now Polaroid

Corporation) is factually similar to these cases. The old Polaroid could not have

chosen to terminate all its employees who were receiving LTD benefits so that it

could avoid the expense of paying for those benefits. Such an action would have violated Section 510. What the old Polaroid could not do on its own, the old Polaroid and the new Polaroid could not do together.

**2.  The plaintiffs have standing to bring their Section 510 claim against Polaroid Corporation.**

"ERISA § 502(a)(2) provides that "[a] civil action may be brought...by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 409. 29 U.S.C. § 1132(a)(2)." *Kling v. Fid. Mgmt. Trust Co.*, 270 F. Supp. 2d 121, 124 (D.Mass. 2003). The plaintiffs are not considered "employees" of the new Polaroid Corporation due only to the defendant's illegal activity. As pled in the Amended Complaint, had Polaroid not conspired with the debtor Polaroid to terminate the plaintiffs' employment, thereby cutting-off their health and life insurance premiums, the plaintiffs would be considered employees of the new Polaroid just as all other former Old Polaroid employees are presently employed by the "new" Polaroid. *See, Amended Complaint ¶¶ 36, 38.* Indeed, the only thing that differentiates the plaintiffs from other former Polaroid employees is that they did not become employees of the New Polaroid. *See  Amended Complaint ¶* 38.

Regardless, since the defendant Polaroid's liability is based on its status as a conspirator, not as an employer, it is irrelevant to the conspiracy claim whether or not the plaintiffs were ever employed by the new Polaroid. If, as the Court found in *Lessard*, a corporation that conspires with an ERISA employer can be liable for the ERISA violation, than it does not matter whether the plaintiffs were employed by this defendant; it is enough to state the claim that they were employed by the other conspirator, the old Polaroid.

The First Circuit has interpreted ERISA standing with some breadth. "The ultimate question is whether the plaintiff is within the zone of interests ERISA was

9

intended to protect." *Vartanian v. Monsanto* Co., 14 F.3d 697, 701 (1st Cir. 1994), quoting, *Astor v. International Bus. Mac. Corp.*, 7 F.3d 533, 538-539 (6th Cir. 1993) (holding that the plaintiff, though not technically a plan participant at the time he initiated suit, must be afforded standing to sue because "given the broad inclusive scope of the ERISA statute, and its preclusion of all other judicial recourse, it would be entirely inconsistent with the ERISA statute" to hold otherwise. *Id.* at *702-03)*.   Similarly, in *Sotiropoulos  v. The Travelers Indemnity Co. Of Rhode Island*, 971 F. Supp. 52 (D. Mass. 1997), the District Court (Ponsor, J.) held that *Vartanian's* broad standing analysis encompassed a plaintiff alleging wrongful termination of LTD benefits who initiated her complaint following the termination of her employment.) *See Crawford v. Lamantia, et. al.*, 34 F.3d 28, 31 n.2 (suggesting a plaintiff who is terminated with the intent of depriving him of standing to initiate an action can maintain an ERISA cause of action) Accordingly, if the plaintiffs lack standing to bring an ERISA claim, the plaintiffs in *Lessard and* Eichorn, should have also lacked standing.

Under the reasoning of *Sotitopoulos* and *Crawford*, the plaintiffs have standing to sue new Polaroid.   Allowing the plaintiffs to pursue this claim in their capacity as wrongfully terminated employees comports with ERISA's general scheme.  One of ERISA objectives is to aid in protecting employees' rights as guaranteed by employee benefit plans. *Helwig, et. al. v. Kelsey-Hayes Co.*, 857 F.Supp.1168, 1181 (D. EDMI, 1994), quoting *29 U.S.C. § 1001(b)*.

The wrongful loss of employee status cannot preclude suit if Section 510 is to have any meaning as a protective device for the wrongfully terminated employee. To hold otherwise would have the force of doubly punishing the employee, protecting the employer, and placing an unavoidable obstacle in the path of those seeking to enforce their ERISA rights.

10

3.    **Defendant Polaroid can be held liable,** *in its own right,* **for its participation in the conspiracy.**

In joint action and conspiracy cases, such as the present complaint alleges, each actor is held liable for its individual participation in the joint act and is likewise liable, individually, for any judgment against it.  *See* RESTATEMENT (SECOND) TORTS, *supra.*  The plaintiffs' case is easily distinguished from those in which plaintiffs were enjoined from pursuing claims against the purchaser of a debtor's assets.  For instance, in *In Re Paris Indus.*, 132 B.R. 504 (D. Maine 1991), the Court enjoined the plaintiffs' product liability suit against the purchaser of the alleged negligent debtor company because the suit was a "direct challenge" to the Sale Order and would have an "adverse impact" on the bankruptcy estate.  *Id.* at 507.  The Court's holding flowed directly from the fact that the acts of the <u>debtor</u> were at issue.

The plaintiffs do not allege that defendant new Polaroid should be held liable because of any acts of the debtor corporation.  Rather, new Polaroid is responsible for acts it committed; it is namely the wrongful conduct of OEP's decision makers that creates liability.  The plaintiffs' suit does not "directly challenge" the acts of the debtor.  *Id.*  Certainly the conduct of the old Polaroid will be evidence at trial, but only to prove the wrongful conduct of OEP, which is the source of liability in the conspiracy claim.

**B.    THE PLAINTIFFS' ERIDA CLAIM IS NOT PRECLUDED, UNDER THE THEORY OF *RES JUDICATA*, BY THE BANKRUPTCY SALE ORDER.**

*Res judicata* is an affirmative defense. *Banco Santander P.R. v. Lopez-Stubbe (In Re Colonial Mortg. Bankers Corp.)*, 324 F. 3d 12 (1st Cir. 2003). "The facts that establish the defense must be definitively ascertainable from the allegations of the complaint, the documents (if any) incorporated therein, matters of public record, and other matters of which the court may take judicial notice. The second condition is that the facts so gleaned must conclusively establish the affirmative defense." *Id.* at 16.

It is the theory of *res judicata* that a "final judgment on the merits of an action precludes the parties [to that action] from relitigating claims that were raised or [that] could have been raised in that action." *Bay State HMO Mgmt., Inc., v. Tingley Sys. Inc.,* 181 F. 3d 174, 177 (1st Cir. 1999). The First Circuit recently analyzed the doctrine in *Mihos v. Swift*, 2004 U.S. App. Lexis 2427 (Feb. 13, 2004). The Court said,

> When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim. *Restatement (Second) of Judgments § 27* (1982),

2004 U.S. App. Lexis 2427, 19. In that case, however, the First Circuit reversed a District Court finding that a prior Massachusetts Supreme Judicial Court decision

involving the same parties was binding in regard to the defendant's motivation in removing the plaintiff from his position. The First Circuit found the SJC decision was not binding in regard to that fact "since that issue was never litigated," noting, "when two adversaries concentrate on attempting to resolve an issue importantly involved in a litigation, there is no unfairness in considering that issue settled for all time between the parties and those in their shoes. But... it is unfair to close the door to issues which have not been on stage center, for there is no knowing what the white light of controversy would have revealed." *Id.* at 20, *citing Farmington Dowel Prods. Co. v. Forster Mfg. Co., Inc.,* 421 F.2d 61, 79 (1st Cir. 1969).

Polaroid's *res judicata* defense fails because there is not "sufficient identity between the causes of action asserted in the earlier and later suits," *Id.* The plaintiffs' ERISA claim could not have been raised, litigated or decided in the Bankruptcy Court; in short, to use the words of the First Circuit in *Mihos v. Swift, supra.*, the ERISA conspiracy issue was far from "center stage" in the bankruptcy case. Because the issue was not litigated in that case, the order in that case is not dispositive as to the ERISA issue under the doctrine of issue preclusion.

The plaintiffs' ERISA claim could not have been litigated in the Bankruptcy Court, as it is not a claim that arises out of the terms of the purchase agreement.[5] The plaintiffs' firings from Polaroid are <u>not an explicit term of the Sale Order</u> nor

---

[5] In fact, the defendant argues in alternative to its *res judicata* defense that the plaintiffs' ERISA count does not state a claim upon which relief can be granted. These two defenses, presented together, are counter-intuitive.

were the plaintiffs on notice of their firings in time to contest them as arising out of the terms of the purchase agreement. The timing of key events is critical.

According to the facts as presented by the defendant, interested parties, such as the plaintiffs, were put on notice of the terms of the purchase agreement in June, 2002 and were informed that the Bankruptcy Court would hear objections to the sale on June 28, 2002. *Polaroid Corporation's Memorandum of Law in Support of Its Motion to Dismiss Amended Complaint*, p. 6, n. 10. The Delaware Bankruptcy Court entered the Sale Order on July 5, 2002. However, the plaintiffs' termination letter was dated, and presumably mailed, July 2, 2002. Simply, the plaintiffs did not know that they were fired and that that had lost their LTD benefits in time to contest the Sale Order at the Bankruptcy Court hearing.

Even had the plaintiffs known that they were fired in time to complain, their conspiracy complaint could not have been heard in the Bankruptcy Court. The plaintiffs' only objection in the Bankruptcy Court could have been to the stated terms of the purchase agreement. The order itself confirms as much: "all interested persons and entities" were given "[a] reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein (including, without limitation, the Sale of the Acquired Assets, the assignment of the Post-Petition Contacts, and the assumption and assignment of the Initial Assumed Contracts)". *Bankrutpcy Sale Order*, page 4, para E.  That issue – whether the sale should have been allowed – is far different from whether OEP conspired with old Polaroid to

14

violate the plaintiffs' Section 510 rights. "The critical inquiry in determining whether two claims are identical for *res judicata* purposes is whether the facts underlying the claims are identical." *In the Matter of A. Musto Co., Inc. et al, v. Satran,* 477 F.Supp. 1172, 1176 (D. Mass. 1979). In this case, they are not. The present suit alleges illegal activity that may have induced the execution of the contract; it doesn't allege illegality in the terms of the agreement. The Sale Order, therefore, is not a "final judgment on the merits" of the plaintiffs' instant ERISA claims. *Id.* at 1176.

Further, Polaroid's *res judicata* argument rests entirely on its status as successor to old Polaroid and the protection that the Bankruptcy Court Sale Order provides it as a purchaser and successor. In this regard, this Court should carefully read Paragraph 23 of the Sale Order, in which the Bankruptcy Court limits the purchasing entity's liabilities. Key to this language is the limitation that "Purchaser is not assuming and shall have no liability or responsibility, as a successor or otherwise, for any liabilities, debts or obligations of the Debtors or Sellers." (Emphasis added). The paragraph goes on to state that "the Purchaser shall have no successor or vicarious liability or responsibility ... with respect to ... any obligations of the Debtors..." based on a panoply of legal theories, including ERISA.

Such language is to be expected in a bankruptcy proceeding, where the purpose is to convey the bankruptcy estate free and clear of all the debtor's obligations or liabilities. Were the plaintiffs' claims brought against the new

Polaroid in its role as successor of the old Polaroid, on some theory that the purchaser assumed the liabilities of the seller, than the defendant's argument that the Sale Order is a bar to this action would have merit. That, however, is not the plaintiffs' claim in this case. The complaint alleges conduct by One Equity Partners (now called Polaroid) – not conduct by the debtor – that directly caused the plaintiffs' harm. This is not a derivative claim based on the purchase of old Polaroid's assets. It is akin to a simple tort claim alleging that in the spring of 2002 One Equity Partners harmed the plaintiffs. Certainly, if that harm had been caused by an OEP truck driver negligently striking a Polaroid employee, the defendant would not suggest that the bankruptcy order barred a tort claim by that Polaroid employee against OEP. Similarly, the present complaint alleges conduct by OEP acting on its own behalf as a co-conspirator to harm the plaintiffs, actions for which it should remain liable despite the Bankruptcy Order.

1.    **The plaintiff's claim does not implicate the debtor, the bankruptcy estate, or Polaroid's status as successor in interest to the debtor.**

The plaintiffs do not bring this case in their capacity as creditors of the bankruptcy estate, nor do they allege that Polaroid is liable for acts of the debtor under any theory of successor liability. Furthermore the Plaintiffs do not allege wrongful acts that in any way implicate the bankruptcy action. In simplest terms, the plaintiffs allege that before the purchase and sale of the debtor's assets, OEP (now Polaroid) conspired to interfere with the plaintiffs' receipt of benefits in

16

violation of ERISA Sec. 510. This is an organic claim, alleged against the defendant for acts taken by the defendant in its own right. All the wrongful conduct occurred before the asset sale and was independent of that sale. Polaroid cannot turn to the debtor to satisfy any judgment and cannot seek protection from suit, in this or any court, based on the debtor's bankruptcy proceedings.

11 U.S.C. § 363(f) authorizes bankruptcy trustees to transfer bankruptcy property "free and clear" of any interest in that property. This bankruptcy code provision encourages the purchase of bankruptcy assets by allowing sweeping protection for buyers. However, and critical to this case, § 363(f) only protects the assets of the bankruptcy estate. See *John T. Callahan & Sons, Inc. v. Dykeman Electric Co., Inc.*, 266 F.Supp.2d 208, n.27 (D. Mass. 2003)("A bankruptcy sale under 11 U.S.C. 363(f) thereby authorizes asset sales free and clear of liens and any 'interest in' the property of the debtor." (emphasis supplied)). The plaintiffs' claim is against "new" Polaroid for a wrongful act committed in its own right. The bankruptcy estate, the property of the debtor, is therefore irrelevant. The "free and clear" provision does not protect the defendant from this suit.

The Bankruptcy Court's approval of the Sale Order does not bar the present action. The issues in the present case – whether the new Polaroid conspired to deprive the plaintiffs of their ERISA rights – not only were not at "center stage" in the bankruptcy case, they were not even in the theater. The Sale Order similarly does not bar the present action because the defendant Polaroid is sued for its own

17

conduct, committed by its own employees and principles, acting on behalf of OEP, prior to the asset sale. The defendant's liability is in no way derivative of its purchase of the old Polaroid's assets, and, as such, the bankruptcy estate is not subject to this claim. The present action should be permitted to proceed.

For the foregoing reasons, the plaintiffs respectfully request that Polaroid Corporation's Motion to Dismiss be denied.

Respectfully submitted,

SALLY A. FERRARI, ELAINE
JOHNSON, JOHN MAGENHEIMER,
ELIZABETH WILLIAMS, and DAVID
MANISCALCO, plaintiffs,

By their attorneys,

HARVEY A. SCHWARTZ
 BBO # 448080
LAURIE A. FRANKL
 BBO # 647181
Rodgers, Powers and Schwartz, LLP
18 Tremont Street, Suite 500
Boston, MA 02108
617-742-7010

Dated: February 20, 2004

## Certificate of Service

I, Laurie A. Frankl, hereby certify that on February 20, 2004, I caused a true copy of the foregoing to be served by first-class mail upon:


Matthew Wiener, Esq.
Dechart LLP
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, PA 19103


Richard Glovsky, Esq.
Prince, Lobel, Glovsky & Tye LLP
585 Commercial Street
Boston, MA 02109


Michael Pontrelli, Esq.
Epstein, Becker & Green, P.C.
111 Huntington Avenue
26th Floor
Boston, MA 02199-7610


Laurie A. Frankl

RODGERS, POWERS & SCHWARTZ LLP

18 Tremont Street        *A T T O R N E Y S   A T   L A W*
Boston, MA 02108
Tel. (617) 742-7010
Fax (617) 742-7225

Laurie A. Frankl
Email · Laurie@theemploymentlawyers.com

February 20, 2004

Civil Clerk
United States District Court
One Courthouse Way
Boston, MA 02110

Re:   Sally A. Ferrari, et al. v. Polaroid, Inc., et al.
      C.A. No. 03-11275-MLW

Dear Sir/Madam:

Enclosed for filing in the above-referenced case please find the Plaintiff's Opposition to Polaroid Corporation's Motion to Dismiss.

Thank you so much for your assistance in this regard.

Very truly yours,

Laurie A. Frankl

enc.

cc:   Matthew Wiener, Esq.
      Richard Glovsky, Esq.

Harvey A. Schwartz, P.C.
Kevin Powers
Elizabeth A. Rodgers
Jonathan J. Margolis
Robert S. Mantell
Linda Evans
Laurie A. Frankl