# Exhibit A

Case 1:05-cv-00436-SLR    Document 83-21    Filed 06/27/2005    Page 1 of 10

**Primary PDC, Inc.**

*1265 Main Street*
*Waltham, MA 02451*

March 31, 2004

Attached is a true and accurate copy of the Primary PDC, Inc. Board of Director minutes dated August 15, 2002.

*KRPond* (signature)

Kevin R. Pond
Past President & Secretary
Primary PDC, Inc.

*Sherle LaRocque* (signature)
Notary
My Commission Expires
February 27, 2009

# MINUTES

# BOARD OF DIRECTORS

# PRIMARY PDC, INC.

# AUGUST 15, 2002

**Time and Place of Meeting:**

A telephonic meeting of the Board of Directors (the "Board") of Primary PDC, Inc. (the "Company") was held on August 15, 2002.

**Present:**

The following directors participated in the call:

John W. Loose
Stephen A. Bernazzani
Stephen P. Kaufman
Gary T. DiCamillo
Albin F. Moschner
Ralph Z. Sorenson
Carole F. St. Mark
Bernee D. L. Strom
Alfred M. Zeien

constituting a quorum of the members of the Board. Also participating were:

| | |
|---|---|
| Neal Goldman | Executive Vice President, Polaroid Corporation |
| Louise Cavanaugh | Assistant General Counsel, Polaroid Corporation |
| Kevin Pond | Consultant, Primary PDC, Inc. |
| Benjamin C. Byrd, III | Consultant, Primary PDC, Inc. |
| Gary Ford | Groom Law Group |
| Lonie Hassel | Groom Law Group |
| Gregg Galardi | Partner, Skadden, Arps, Slate, Meagher & Flom, LLP |
| Chipman L. Flowers, Jr. | Associate, Skadden, Arps, Slate, Meagher & Flom, LLP |

At 4:00 p.m. the meeting was called to order.

## Principal Purposes of the Meeting

The principal purposes of the meeting was to (1) authorize an amendment to the Company's Bylaws to create the offices of President, Executive Vice President, Treasurer and Secretary (the "Amendment"), (2) remove the existing officers of the Company and appoint new officers of the Company, (3) approve the consulting agreements between the Company and Messrs. Pond and Byrd (collectively, the "Consulting Agreements"), (4) discuss outstanding issues related to the Company's benefit, pension and retirement plans (collectively, the "Plans"), (5) approve the Transition Services Agreement between the Company and Polaroid Corporation (the "Transition Services Agreement"), and (6) discuss issues related to the Pension Benefit Guaranty Corporation's ("PBGC") claim against the Company (the "PBGC Claim").

## Removal/Appointment of Officers, the Amendment, and the Consulting Agreements

After a brief opening, Mr. Goldman informed the Board that the Company did not receive the required number of signatures to adopt resolutions, by unanimous written consent, pertaining to the (1) removal of the Company's officers, (2) the appointment of new Company officers, (3) the Amendment, and (4) the Consulting Agreements.

Mr. Goldman introduced Mr. Galardi, who made a presentation to the Board. Mr. Galardi discussed the significance of removing the Company's existing officers versus acceptance of resignations from the officers of the Company. Mr. Galardi informed the Board that the removal of the officers from the Company would not trigger additional payment obligations on behalf of the Company. Also, Mr. Galardi discussed the need for the Board to adopt the Amendment and appoint new officers in order for the Company to conduct operations on a going forward basis. Additionally, Mr. Galardi discussed the significance of the Consulting Agreements and informed the Board of the powers granted to the Messrs. Pond and Byrd under the Consulting Agreements. Following the presentation, the Board and its advisors discussed the foregoing matters and requested additional background information on Mr. Pond.

After a brief introduction, Mr. Goldman introduced Mr. Pond. Mr. Pond provided the Board with a brief description of his responsibilities and duties during his thirty-three (33) years of employment with the Company. Mr. Pond informed the Board that he had discussed his responsibilities with Mr. William Murphy of Zolfo Cooper and Mr. Galardi prior to accepting his nomination for the positions of President and Secretary of the Company.

Following Mr. Pond's presentation to the Board, the Board engaged in a discussion regarding the Company's existing internal control procedures. Mr. Galardi informed the Board that the Company does have certain internal control procedures in place, particularly with respect to Company expenditures in excess of US$15,000. The Board and its advisors discussed the existing internal control procedures and the role of the Creditor's Committee with respect to such procedure.

Upon a motion duly made, seconded and carried, the following resolutions were then unanimously adopted by the Board:

### *Amended and Restated By-laws*

WHEREAS, the Board has determined that it is advisable and in the best interests of the Company to amend and restate the Company's By-laws (the "By-Laws"), to (i) reflect the change of the Company's name to "Primary PDC, Inc." and (ii) provide that the only officers of the Company shall be a President, Executive Vice President, Secretary and Treasurer; and

WHEREAS, pursuant to Section 109 of the General Company Law of the State of Delaware and Section 9(c)(1) of the Company's Restated Certificate of Incorporation, as amended, the Board is authorized to amend the By-Laws;

NOW, THEREFORE, BE IT RESOLVED, that the By-Laws be amended and restated in their entirety to read as set forth in the Amended and Restated By-Laws attached hereto as Exhibit A, such Amended and Restated By-Laws to become effective immediately upon the adoption of these resolutions; and

### *Appointment and Removal of Officers*

WHEREAS, the Board has determined that it is advisable and in the best interests of the Company to remove all of the officers of the Company and to appoint Kevin Pond to serve as the President and Secretary of the Company and Benjamin C. Byrd, III to serve as the Executive Vice President and Treasurer of the Company and to empower each of them to manage the day-to-day business and affairs of the Company and to take any and all actions necessary or desirable in connection with winding down the business and affairs of the Company and assisting in the implementation of the Company's Plan of Reorganization;

NOW, THEREFORE, BE IT RESOLVED, that the officers of the Company are hereby removed; and

FURTHER RESOLVED, that Kevin Pond is hereby appointed to serve as the President and Secretary of the Company and to hold such offices until his successor is chosen and qualified or until his earlier resignation or removal by the Board; and

FURTHER RESOLVED, that Benjamin C. Byrd, III is hereby appointed to serve as Executive Vice President and Treasurer of the Company and to hold such offices until his successor is chosen and qualified or until his earlier resignation or removal by the Board; and

FURTHER RESOLVED, that Kevin Pond and Benjamin C. Byrd, III be, and each of them hereby is, authorized and directed to manage the day-to-day business and affairs of the Company and to take any and all actions necessary or desirable in connection with winding down the business and affairs of the Company and assisting in the implementation of the Company's Plan of Reorganization; and

FURTHER RESOLVED, that any banking institutions chosen by the officers of the Company be, and they hereby are, designated as depositories of the funds of this Company and that the proper officers of this Company are hereby authorized and directed to open checking and other depository accounts with such banking institutions; and that any resolutions required to be adopted by banking institutions are hereby adopted in haec verba as resolutions of this Board of Directors; and

FURTHER RESOLVED, that the officers of the Company are authorized to, and the signature of two officers shall be sufficient to, sign and issue checks and make any other withdrawals and payments from any and all bank and depository accounts of the Company; and

### *Consulting Agreements*

WHEREAS, the Board has determined that it is advisable and in the best interests of the Company for the Company to enter into a Consulting Agreement with Kevin Pond, substantially in the form presented to the Board at this meeting (the "Pond Consulting Agreement"), pursuant to which the Company will retain Mr. Pond to serve as its President and Secretary, and to provide certain consulting and other services in connection therewith, and Mr. Pond will agree to serve the Company in such capacities, all upon the terms and subject to the conditions set forth therein; and

WHEREAS, the Board has determined that it is advisable and in the best interests of the Company for the Company to enter into a Consulting Agreement with Benjamin C. Byrd, III, substantially in the form presented to the Board at this meeting (the "Byrd Consulting Agreement" and, together with the Pond Consulting Agreement, the "Consulting Agreements"), pursuant to which the Company will retain Mr. Byrd to serve as its Executive President and Treasurer, and to provide certain consulting and other services in connection therewith, and Mr. Byrd will agree to serve the Company in such capacities, all upon the terms and subject to the conditions set forth therein; and

NOW, THEREFORE, BE IT RESOLVED, that the form, terms and provisions of the Consulting Agreements, substantially in the form presented to the Board at this meeting, be, and they hereby are, approved and adopted in all respects; and

FURTHER RESOLVED, that the officers of the Company be, and each of them hereby is, authorized and directed to execute and deliver, in the name and on behalf of the Company, the Consulting Agreements, substantially in the form presented to the Board at this meeting, with such changes therein and additions thereto as shall be deemed necessary, appropriate or advisable by the officer or officers executing the same on behalf of the Company, the execution thereof by such officer or officers to be conclusive evidence of the approval by them of such changes and additions; and

### *General Authorizations*

FURTHER RESOLVED, that all actions taken by the officers of the Company prior to the adoption of these resolutions in furtherance of the respective transactions contemplated by and approved in these resolutions, including, without limitation, the execution and delivery on behalf of the Company of any and all instruments, documents and certificates, are hereby ratified, approved, adopted and confirmed in all respects, as and for the act and deed of the Company; and

FURTHER RESOLVED, that the officers of the Company are hereby authorized to do and perform, or cause to be done and performed, all such acts, deeds and things, and to make, execute and deliver, or cause to be made, executed and delivered, all such agreements, undertakings, documents, instruments and certificates, in the name and on behalf of the Company, as they, or each of them, may approve as being necessary, desirable or appropriate to effectuate or carry out more fully the purpose and intent of the foregoing resolutions, and to incur all such fees and expenses as in their judgment shall be necessary or advisable in order to carry out fully the intent and purposes of the foregoing resolutions and each of them in each such case, such execution or action when made or taken to be conclusive evidence of such approval and of the authority therefor hereunder.

## Benefit, Pension and Retirement Plans

After a brief introduction, Mr. Goldman introduced Ms. Hassel and Mr. Ford, whom made a presentation to the Board. Ms. Hassel provided the Board with an overview of the Company's outstanding Plans, including the Company's responsibility as the sponsor and fiduciary of the Plans, and recommended an amendment to the Company's Retirement and Savings Plan (the "401(k) Plan") to allow former employees of the Company to have their accounts in the 401(k) Plan rolled over into a comparable plan sponsored by the Polaroid Corporation (the "Rollover"). Ms. Hassel and Mr. Ford discussed the legal framework that allows the Company to grant its former employees the ability to Rollover, without negative tax consequences. During Ms. Hassel's presentation, the Board discussed comparable plans at Polaroid Corporation and the distributions to be given to the former employees of the Company. Ms. Cavanaugh provided the Board with a description of the mechanics that will be used to effectuate the Rollover.

Upon a motion duly made, seconded and carried, the following resolutions were then unanimously adopted by the Board:

NOW, THEREFORE, BE IT RESOLVED, the amendments to the retirement plans and trust agreements to reflect the changes in the company and the administration of the Plans, specifically the name changes and individuals authorized to provide direction are approved; and further

FURTHER RESOLVED, the officers of the Company be, and each of them hereby is, authorized to take any and all actions necessary or desirable to commence and maintain the Rollover, including, without limitation, (1) authorizing those persons necessary to transfer individual accounts of former employees of the Company to Polaroid Corporation and (2) to engage in discussions and correspondence with any governmental taxing authority to receive favorable tax treatment with respect to such Rollover.

## Termination of the Plans

Ms. Hassel, with input from Mr. Ford, continued her presentation and recommended that the Board terminate the Polaroid Retirement Savings, Medical, Dental, Life Insurance, Long Term Disability and Severance Plans, the ID subsidiary 401(k), medical, dental, life insurance, short term and long term disability and severance plans, and any other employee benefit plans maintained by Primary PDC or its subsidiaries, other than the Polaroid Pension Plan. Ms. Hassel informed the Board, since the Company has no employees that the Company would obtain certain benefits by terminating these Plans, including cost savings. Ms. Hassel advised the Board that before its assets were completely distributed, the 401(k) Plan would need to apply for and receive a determination letter from the Internal Revenue Service (the "IRS") stating the Retirement Savings Plan is tax qualified (the "IRS Letter") upon its termination. This would ensure that no penalty would be assessed to individuals who participate in the Rollover or on the plan that accepts the Rollover. Ms. Hassel informed the Board that obtaining the IRS Letter takes approximately six (6) months. At the conclusion of Ms. Hassel's presentation, the Board discussed the impact of terminating these Plans on benefits owed to the Company's former employees.

Mr. Kaufman discussed the need to provide ample notice to the employees affected by the termination of the Plans. The Board discussed issues surrounding the timing of such notice and the Board agreed that the Company should be encouraged to provide notice to the former employees as soon as possible.

The Board also discussed the necessary steps to "wind down" all issues related to the Plans, including the duration of service of the Board members. Mr. Galardi informed the Board that the composition of the Board will remain intact until a plan of reorganization is consummated in the Company's Chapter 11 proceedings.

Upon a motion duly made, seconded and carried, the following resolutions were then unanimously adopted by the Board:

NOW, THEREFORE, BE IT RESOLVED, that the Polaroid Retirement Savings, Medical, Dental, Life Insurance, Long Term Disability and Severance Plans, the ID subsidiary 401(k), medical, dental, life insurance, short term and long term disability and severance plans, and any other employee benefit plans maintained by Primary PDC or its subsidiaries, other than the Polaroid Pension Plan, are hereby terminated effective August 1, 200_;

FURTHER RESOLVED, the officers of the Company be, and each of them hereby is, authorized to take any and all actions necessary or desirable to implement termination of the above-referenced plans, including, without limitation (1) seeking a determination letter that any tax-qualified plans are qualified upon termination, (2) engaging such advisors as necessary to implement the terminations, (3) engaging in discussions and correspondence with any governmental authority to receive favorable advice; and (4) adopting and implementing such plan amendments and trust amendments as required, consistent with this objective.

FURTHER RESOLVED, upon receipt of the appropriate governmental advice or determinations, that the officers of the Company be, and each of them hereby is, authorized to take any and all actions necessary or desirable to effect the distribution of assets of the Polaroid Retirement Savings Plan and the Polaroid ID 401(k) Plan including, without limitation, to provide such notices and correspondence as necessary with respect to Plan participants, trustees, and governmental entities.

FURTHER RESOLVED, that Mr. Jeffrey Miller is hereby authorized to take any and all actions necessary to administer and maintain the Polaroid Retirement Savings Plan on behalf of the Company until such time as all assets are distributed.

**Transition Services Agreement**

Ms. Cavanaugh provided the Board with an overview of the Transition Services Agreement. The Board discussed the Transition Services Agreement and the co-obligations of the signatories thereunder. Additionally, the Board discussed the oversight responsibility of the employees of Polaroid Corporation that will be performing functions on behalf of the Company under the Transition Services Agreement. Mr. Galardi discussed the Company's existing safeguards with respect to persons serving as agents of the Company. Mr. Byrd offered to develop a monthly internal control procedure and report any major findings to the Board. The Board accepted Mr. Byrd's offer.

Upon a motion duly made, seconded and carried, the following resolutions were then unanimously adopted by the Board:

NOW, THEREFORE, BE IT RESOLVED, that the form, terms and provisions of the Transition Services Agreement in substantially the form heretofore presented to the Board be and it hereby is approved and adopted in all respects; and

FURTHER RESOLVED, that the appropriate officers of the Company be, and they hereby are, authorized and directed to enter into, execute and deliver, for and on behalf of the Company, the Transition Services Agreement, with such changes therein and additions thereto as such officers deem necessary, proper or advisable and in the best interests of the Company, the approval of such changes or additions to be conclusively established by the execution and delivery thereof.

## PBGC Claim

Ms. Hassel, with input from Mr. Galardi, made a presentation to the Board regarding the status of the PBGC Claim. Mr. Galardi advised the Board on the outstanding legal issues surrounding the PBGC Claim. The Board discussed the PBGC Claim and recommended the Company's officers continue to inform the Board of any major developments.

There being no further business, upon motion duly made and seconded, the meeting was adjourned at 5.30 p.m.

_____
Secretary