UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SALLY FERRARI; ELAINE JOHNSON;
JOHN MAGENHEIMER; ELIZABETH
WILLIAMS; AND DAVID A. MANISCALCO,

    Plaintiffs,

V.

POLAROID CORPORATION; AND
NEAL GOLDMAN,

    Defendants.

Civil Action No.
03-11275-MLW

# MEMORANDUM OF LAW IN SUPPORT OF
POLAROID CORPORATION'S MOTION TO TRANSFER

Jerome A. Hoffman
Matthew Lee Wiener
DECHERT LLP
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, PA 19103
(215) 994-4000

Richard D. Glovsky
Jeffrey J. Pyle
PRINCE, LOBEL, GLOVSKY & TYE LLP
585 Commercial Street
Boston, MA 02109
(617) 456-8000

Counsel for Polaroid Corporation

Dated: April 12, 2004

## I. INTRODUCTION

By filing their action in this Court, Plaintiffs have attempted to circumvent the effects of extensive proceedings that have taken place before the United States Bankruptcy Court for the District of Delaware. New Polaroid is therefore moving to transfer this proceeding to the United States District Court for the District of Delaware and requesting that this Court allow the Bankruptcy Court to determine whether Plaintiffs' attempts to evade the Bankruptcy Code's priority scheme and the provisions of that Court's free-and-clear sale order should be permitted.

Because this case involves issues with which the Bankruptcy Court is particularly equipped to deal, this matter should be transferred to that Bankruptcy Court for a definitive determination as to the contours and implications of that Court's orders. Pursuant to 28 USC § 1404, such transfer will serve "the interest of justice" because it will allow the Bankruptcy Court to construe its own Sale Order, which lies at the heart of this case. Additionally, transfer would not inconvenience the parties to this dispute because questions of law will control the outcome of the case, and testimony of the plaintiffs is unlikely to be required. New Polaroid submits this Memorandum of Law in support of its Motion to Transfer.

## II. STATEMENT OF THE ISSUE[1]

On July 3, 2002, the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court") approved the arms' length sale of the assets of the bankrupt debtor that

---

[1] The documents referenced in this brief appear in the Appendix of Defendant Polaroid Corporation's Motion to Dismiss Plaintiffs' Amended Complaint, except for the document referred to below as the "Sale Order," which is appended to Polaroid Corporation's Memorandum of Law in Support of Its Motion to Dismiss Plaintiffs' Amended Complaint ("Polaroid's Memorandum").

871756.4.50 4/12/2004

Plaintiffs call "Old Polaroid" to OEP Imaging Operating Corporation (since renamed Polaroid Corporation), which Plaintiffs call "New Polaroid." The Court's order issued the same day (the "Sale Order") provided that New Polaroid would not be liable for the termination of Old Polaroid's employees or any obligations arising under Old Polaroid's employee benefit plans. The Bankruptcy Court further enjoined any "party in interest" from claiming otherwise in subsequent litigation and specifically retained jurisdiction to enforce the Sale Order.

Plaintiffs worked for Old Polaroid until (well before the bankruptcy filing) each of them became permanently disabled and thereby qualified for salary continuation benefits under Old Polaroid's Long-term Disability Plan ("LTD Plan"). Old Polaroid allowed Plaintiffs and other LTD Plan-recipients to continue participating in its healthcare plans and paid all required premiums.

With the sale of its assets to New Polaroid, Old Polaroid terminated its relationship with Plaintiffs, as well as with all of its employees, as the Bankruptcy Court-approved purchase agreement required, and, a few days later, terminated all of its benefits plans. New Polaroid did not offer employment to Plaintiffs because they were then, and remain today, permanently unable to work.

Plaintiffs allege in this suit that Old Polaroid terminated their employment with the intent to interfere with their claimed "right" to paid healthcare benefits under Old Polaroid's benefit plans, in violation of § 510 of ERISA, 29 U.S.C. § 1140. They seek to hold New Polaroid liable for "conspiring" with Old Polaroid to terminate their employment and benefits.

Plaintiffs' action in this Court constitutes an impermissible collateral attack on the Sale Order. By bringing their case in this Court, and by attempting to impose all of the liability relating to Old Polaroid's actions upon New Polaroid, Plaintiffs seek to circumvent

- 3 -

the bankruptcy process to which they, like all creditors of Old Polaroid, properly should be subject. That is, if Plaintiffs, as they contend, are entitled to the full amount of the benefits provided to them by Old Polaroid, even though the rest of Old Polaroid's creditors were forced to compromise their interests due to the bankruptcy priority system, it should be the Bankruptcy Court that makes that determination.

Accordingly, the question presented in this motion is whether the Court should transfer the case to the District Court for the District of Delaware pursuant to 28 U.S.C. § 1404 (for referral to the Bankruptcy Court) because:

1) the threshold issue in this case is whether the Sale Order, over which the Bankruptcy Court has specifically retained jurisdiction, forecloses Plaintiffs' claim against New Polaroid, as New Polaroid has argued in its pending motion to dismiss Plaintiffs' amended complaint;

2) Plaintiffs have contended that the Sale Order does not bind them because they did not have a sufficient opportunity to be heard by the Bankruptcy Court as a "party in interest" to the bankruptcy sale proceedings;

3) if the Sale Order is not dispositive, then the main issues in this case will be (a) whether New Polaroid acted in a manner consistent with the Bankruptcy Court-approved purchase agreement and its rights as a free-and-clear purchaser of a bankrupt estate, and (b) whether Old Polaroid, as the bankrupt debtor, properly terminated the benefits plans under which Plaintiffs claim benefits.

### III. PROCEDURAL BACKGROUND

Plaintiffs filed this suit in July 2003 against Old Polaroid, New Polaroid, and New Polaroid's largest shareholder (OEP), seeking to hold each defendant liable under the Employee Retirement Income Act (ERISA), 29 U.S.C. § 1001 *et seq.*, for (1) Old Polaroid's termination of Plaintiffs' paid-healthcare benefits, (2) Old Polaroid's decision not to insure the healthcare benefits in the same manner as the LTD Plan's salary continuation benefits, (3) Old Polaroid's termination of Plaintiffs' employment, and (4) New Polaroid's decision not to hire Plaintiffs. (*See* Complaint.) In response, Old Polaroid invoked the automatic stay

provision of the Bankruptcy Code. (*See* Suggestion of Bankruptcy and Notice of Operation of Automatic Stay (on file with the Court).) New Polaroid and OEP both moved the Court to transfer the case to the District of Delaware (the site of the bankruptcy proceeding) and, in the alternative, to the dismiss the Complaint. New Polaroid and OEP also filed a single adversary proceeding in Bankruptcy Court in which they sought a declaration that Plaintiffs' Complaint in this case was barred by the above-referenced terms of the Sale Order.

Plaintiffs responded by filing an amended complaint in which they dropped both Old Polaroid and OEP as defendants and abandoned five of the six counts pleaded against New Polaroid.[2] The sole remaining count against New Polaroid charges it with violating § 510 of ERISA by allegedly conspiring with Old Polaroid to terminate Plaintiffs' employment in order to interfere with their claimed right to paid-for medical benefits under Old Polaroid's benefits plans. (Amended Complaint ¶¶ 46-49.) Plaintiffs ask the Court to require New Polaroid to provide Plaintiffs' paid-for benefits under Old Polaroid benefits plans, even though those plans were terminated around the time that Old Polaroid terminated all of its employees in connection with the sale. (*Id.* at 40-42 ("Prayer for Relief" ¶ (4, 5).)[3]

As a result of the filing of the amended complaint, New Polaroid and Plaintiffs stipulated to the withdrawal of New Polaroid's motion to transfer the case and dismiss the original complaint as moot, without prejudice to New Polaroid's right to renew its transfer motion. The parties also stipulated that Plaintiffs would not have to respond to New Polaroid's complaint in the adversary proceeding, which the Amended Complaint also rendered moot. (Stipulation dated December 8, 2003 (on file with the Court).)

---

[2] Plaintiffs also asserted a claim for breach of fiduciary duty under ERISA against Neal Goldman, former Executive Vice-President of Old Polaroid. (Am. Compl., Count II).

[3] New Polaroid provides paid-for medical benefits to LTD recipients, but only for six months.

- 5 -

Thereafter, New Polaroid filed a new adversary proceeding with the Bankruptcy Court[4] seeking a declaration that the amended complaint, like the original complaint, is barred by the Sale Order. New Polaroid also moved this Court to dismiss the amended complaint on the authority of the Sale Order and also on the merits. This brief should be read in conjunction with Polaroid's briefs in support of its motion to dismiss.

Rather than decide the motion to dismiss Plaintiffs' Amended Complaint, this Court should, because of the bankruptcy-related issues which dominate this matter, transfer the case to the District of Delaware for referral to the Bankruptcy Court.

## IV. FACTUAL BACKGROUND

A.  **The "Free and Clear Sale."**

  1.  *Bankruptcy Court's Sale Order.*

The Bankruptcy Court approved the sale of Old Polaroid's assets to New Polaroid free and clear of all liabilities.[5] (Sale Order at 14-15.) Issued after notice to all interested parties, including Plaintiffs, *see* § I(B) *infra*, the Sale Order specifically provides that New Polaroid "is not assuming[,] and shall have no liability or responsibility, as a successor or otherwise" for, any "liabilities" or "obligations" "relating to or arising from" Old Polaroid's "ownership" of the assets or Old Polaroid's "operations" "on or prior to the Closing Date." (Sale Order at 20-21 (¶ 23).)

---

[4] Purchasers often filed such adversary proceedings when sued in contravention of a free-and-clear sale order issued by a bankruptcy court. *See, e.g., In re Colarusso*, 280 B.R. 548 (Bankr. D. Mass. 2002) (Hillman, C.J.), *aff'd*, 295 B.R. 166 (1st Cir. 2003); *In re Paris Indus. Corp.*, 132 B.R. 504 (D. Me. 1991); *see also, e.g., In re G.S.F. Corp.*, 938 F.2d 1467 (1st Cir. 1991). Adversary proceeding of this type are usually resolved expeditiously through cross-motions for summary judgement. *See, e.g., Colarusso*.

[5] The Bankruptcy Court found that New Polaroid was "not an 'insider' of any of the Debtors," but rather a "good faith purchaser" in an "arm's-length bargain." *Id.* at 7; *see also id.* at 3 (concluding that the assets were marketed in accordance with the court's orders); *id.* at 8, 18 (concluding that the assets were sold to the highest bidder and that New Polaroid paid fair consideration for the acquired assets).

Expressly included within this non-assumption provision are "any obligations which might otherwise arise [under], or pursuant to, the Employee Retirement Income Security Act of 1974 [ERISA]," among them the "obligation to pay" any "benefits" to employees of Old Polaroid. (*Id.* (¶ 23).) As for ERISA liabilities, "the Purchaser [New Polaroid] shall have no liability with respect to any . . . employee pension, employee welfare or retention, compensation, benefit and/or incentive plan, agreement, practices, or program" to which Old Polaroid was "a party." (*Id.*) The Sale Order also provides that New Polaroid is not liable for the termination of Old Polaroid's employees. (*Id.*)

The Bankruptcy Court backed the above provisions of its Sale Order with an injunction: Anyone holding any "Interest" in Old Polaroid—defined to mean any liability related to Old Polaroid, *see id.*— is "forever barred, estopped, and permanently enjoined from asserting against [New Polaroid] . . . such person's . . . respective Interests." *Id.* at 15 (¶ 7). Further: "No such persons . . . shall assert against" New Polaroid "any liability," "claim, or obligation," relating to or arising from the ownership or operation of the Acquired Assets . . . ." *Id.* (¶ 7). Another provision of the Sale Order specifically enjoins any "party" to "any employee welfare" "plan," "agreement," or "program," from suing New Polaroid with respect to "any and all claims arising from or relating thereto." *Id.* at 22-23 (¶ 23).

More broadly, the Sale Order injunction bars and enjoins any party in interest from suing New Polaroid under a successor liability theory: *"The Purchaser is not and shall not be deemed a successor of or to the Debtors for any Interest against or in the Debtors, [or] the Acquired Assets . . . ."* Id. at 23 (¶ 24) (emphasis added). This injunction extends to Old Polaroid's employees in particular: "[A]ll . . . employees, . . . [and] former employees shall be, and hereby are, forever barred . . . and permanently enjoined from asserting such Interests

. . . against" New Polaroid as "an alleged successor . . . with respect to any Interest of any kind whatever such person . . . had, has or may have against or in "Old Polaroid." *Id.* at 24 (¶ 24).

### 2. *Bankruptcy Court's Retention of Jurisdiction.*

The Bankruptcy Court has retained jurisdiction to enforce and resolve disputes arising under Sale Order:

> This Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order as well as to enforce and implement the terms and provisions of the [attached] Purchase Agreement, including . . . retaining jurisdiction to interpret, implement, and enforce the provisions of this Order . . . .

(Sale Order at 25 (¶ 27).

### 3. *Notice to Plaintiffs and Other Parties in Interest.*

Before issuing the Sale Order, the Bankruptcy Court afforded all interested parties, including Plaintiffs, an opportunity to object to its terms at a sale hearing. Notice was provided to each Plaintiff individually by mail (Ex. 2 ("Declaration of Mailing"))[6] and also published in three major newspapers: *The Boston Globe, The New York Times, The Wall Street Journal.* (Ex. 3 ("Notice of Publication").)[7] The Bankruptcy Court found, and stated in the Sale Order, that "adequate and sufficient notice" was "given to all parties-in-interest" and

---

[6] Four of the Plaintiffs' names (Elaine Johnson, John Magenheimer, Elizabeth Williams, and David A. Maniscalco) appear on pages 607, 723, 1288, and 730, respectively, of Exhibit B of the "Declaration of Mailing" (Ex. 2.) Notice to one of the Plaintiffs, Sally Ferrari (who suffers from Alzheimer's disease (Complaint ¶ 6)), was sent to her husband. His name appears on page 395 of Exhibit B to the Declaration of Mailing. (Ex. 2.)

[7] Both the newspaper notice and the notice served on each Plaintiff had the same text. (Ex. 2, 3.) The notice provides, in relevant part, that under "the terms of the Asset Purchase Agreement . . . the Debtors are selling" the business assets "free and clear of liens, claims, encumbrances and interests" to New Polaroid, "subject to higher and better offers and Court approval"; that an auction would be held on June 26, 2002; that a sale hearing would be held before the Bankruptcy Court on June 28, 2002; and that all objections to the sale had to be lodged with the Bankruptcy Court or would be forever waived. (Ex. 2.) Recipients of the notice were instructed on how to obtain copies of the documents referenced in it. (*Id.*)

that "all interested parties" were "afforded an opportunity to be heard" with respect to the sale. (Sale Order at 2-3, 4).

On June 28, 2002, the Bankruptcy Court held a hearing on the terms of the proposed sale. (*Id.* at 2.) Plaintiffs did not participate in the hearing. Nor did Plaintiffs otherwise voice any objections to the Bankruptcy Court about the terms of the proposed sale. (Ex. 1 (Docket).) Plaintiffs have not since sought any relief from the Bankruptcy Court. (*Id.*)[8]

### B.   Plaintiffs' Employment with Old Polaroid and LTD Coverage.

#### 1.   *Disability Status.*

Plaintiffs were once employed by Old Polaroid. Between 1989 and 1998, each Plaintiff suffered a disability that rendered him or her permanently unable to work. It is undisputed that none of the Plaintiffs was working or able to work for Old Polaroid when New Polaroid bought its assets. None had worked for years: Sally Ferrari qualified for LTD benefits in 1997, John Magenheimer and David Maniscalco both in 1998, Elaine Johnson in 1991, and Elizabeth Williams in 1989. (Amended Complaint ¶¶ 7-11.) None of the Plaintiffs are today able to work. (*Id.*)

#### 2.   *LTD Benefits.*

Plaintiffs received benefits under Old Polaroid's LTD Plan. The LTD Plan provided for salary continuation payments consisting of approximately two-thirds of an employee's last salary. (Ex. 4.). Payments were made through a third-party insurance carrier. Notwithstanding the termination of the LTD Plan (see below), Plaintiffs continue to receive their salary continuation benefits directly from the carrier. (Amended Complaint ¶ 33.)

---

[8]   By contrast, numerous retirees objected to the proposed sale agreement because it made no provision for New Polaroid's assumption of Old Polaroid's retiree healthcare benefits. (Preliminary Objection of the Official Committee of Retirees (Bankruptcy Court docket no. 1024).) Old Polaroid eventually reached a pre-sale court-approved settlement with the retirees within the context of the bankruptcy proceeding. ("Stipulation and Order (i) Settling Claims and Controversies and (ii) Providing for Release," Bankruptcy Court docket no. 1067.)

Once Plaintiffs qualified for coverage under its LTD Plan, Old Polaroid allowed them to continue their coverage under its medical and dental plans without requiring them to pay any premiums. Old Polaroid's healthcare plans allowed an LTD recipient to continue participating "until he terminates, retires, dies, or recovers from such disability" (Ex. 5 at 6 (§ 3.04); Ex. 6, at 7 (§ 3.04)), as did the LTD Plan (Ex. 4 (§ 3.02)). At the same time, Old Polaroid reserved the right to terminate the healthcare plans, such as the LTD Plan (Ex. 4 at 15) and its medical and dental plans, at any time in its discretion. (Ex. 5 at 14 (provision of medical plan providing that the "the Company shall have no obligation whatsoever to maintain the Plan for any given length of time and may discontinue or terminate the Plan at any time without liability"); Ex. 6 at 16 (companion provision of dental plan).)

C.   **Termination of Plaintiffs' Employment with Old Polaroid.**

The Bankruptcy-Court approved purchase agreement (which was signed on July 3, 2002, the same date that the Bankruptcy Court entered the Sale Order) required New Polaroid to designate on a list (the "35 Day List") which, if any, of the Old Polaroid employees it intended to hire. (Ex. 8 at §6.08(a).) The agreement also required Old Polaroid to terminate the employment status of any employees who were not on the 35 Day List before the sale's closing date. Employees on the 35 Day List would be terminated by Old Polaroid on the closing date, at which time New Polaroid would hire them. (*Id.* at §6.09.)[9]

New Polaroid did not designate Plaintiffs for hire because they were—and, in order to receive benefits under the LTD Plan (Ex. 4 at §1.02), had represented themselves to be— permanently unable to work. (Amended Complaint ¶¶ 1, 7-11.) As provided in the Bankruptcy Court-approved purchase agreement, Old Polaroid terminated Plaintiff's

employment just prior to the closing. (Ex. 8, § 6.09; *see also* Amended Complaint ¶ 36.)[10]

Because Old Polaroid liquidated its assets, it did not retain any employees after the sale. (Ex. 4 at §6.09.)

### D. Termination of Old Polaroid's Benefits Plans.

With no employees as of the sale's closing date, Old Polaroid terminated all of its benefits plans, including its health care plans, within two weeks of the August 2002 closing of the asset sale to New Polaroid.

## V. ARGUMENT

### A. This Court Has Discretion to Transfer the Case.

A district court may, in its discretion, transfer a case to another district court in which the case might originally have been brought "[f]or the convenience of the parties, in the interest of justice." 28 U.S.C. § 1404. The phrase "interest of justice" does not qualify the phrase "for the convenience of the parties." Rather, it "is a separate component of a § 1404(a) transfer analysis," *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220 (7th Cir. 1986), meaning that it "may be determinative in a particular case, even if the convenience of the parties and the witness might call for a different result." *Id.*; *accord In re Medrad*, 215 F.3d 1341 [unpublished], 1999 WL 507359, at *2 (Fed. Cir. 1999) (same).

The First Circuit gives district courts wide latitude to transfer cases. It reviews a district court's decision to transfer a case only for abuse of discretion. *See, e.g., Coady v. Ashcroft & Gerel*, 223 F.3d 1, 11 (1st Cir. 2000). "Only in unusual circumstances," the First

---

[9]  This was done in order to address issues relating to the WARN Act. *See* Polaroid's Brief in Support of Motion to Dismiss ("Br. in Supp."), at 13 n.15.

[10] Polaroid understands that each Plaintiff has qualified for Social Security disability benefits, which means that they are Medicare-eligible even if under age 65. *See* 42 U.S.C. § 426(b)(2)(A).

- 11 -

Circuit has said, will it "disturb a district court's [§ 1404(a)] exercise of discretion." *Edwards v. First Am. Title Ins. Co. of Nevada*, 19 F.3d 1427 (unpublished), 1994 WL 102402, at * 6 (1st Cir. 1994), *cert. denied*, 513 U.S. 915 (1994).

B.  **Cases Related to Bankruptcy Proceeding Should Be Transferred to the Bankruptcy Court.**[11]

There is a strong presumption that, in the interest of justice, all cases related to a pending bankruptcy proceeding, whether filed in another bankruptcy court or a district court, should be transferred to the district in which the bankruptcy proceeding is pending. This is the so-called "home-court presumption." *See, e.g., Havre Benard Ltd v. Nathan Rothschild*, No. 02-Civ.4033 (JGK), 2003 WL 367859, at *6-7 (S.D.N.Y. 2003); *In re Reliance Group Holdings, Inc.*, 273 B.R. 374, 406 (Bankr. E.D. Pa. 2002); *Hohl v. Bastian*, 279 B.R. 165, 177-78 (W.D. Pa. 2002); *Blanton v. IMN Fin. Mort. Corp.*, 260 B.R. 257, 266-67 (M.D.N.C. 2001); *In re Krystal Cadillac-Oldsmobile-GMC Truck, Inc.*, 232 B.R. 622, 627-28 (E.D. Pa. 1999); *Larami v. Yes! Entertainment Corp.*, 244 B.R. 56, 61 (D.N.J. 2000); *Wedlo, Inc. v. Lorch, Wedlo, Inc.*, 212 B.R. 678, 679 (Bankr. M.D. Ala. 1996); *In re Michael Carmine Galluci*, 63 B.R. 93 (Bankr. R.I. 1986); *Kotlicky v. Belford*, 64 B.R. 679, 682 (N.D. Ill. 1986); *Seybolt v. Bio-Energy of Lincoln, Inc.*, 38 B.R. 123, 128 (D. Mass. 1984). "Placing all matters before the . . . bankruptcy court . . . further[s] judicial economy and efficient resolution of the case." *Harve Benard*, 2003 WL 367859, at *6; *accord, e.g., Reliance Group Holdings*, 273 B.R. at 406; *Seybolt*, 38 B.R. at 128.

---

[11] Upon transfer, the case would be referred to the Bankruptcy Court under the District of Delaware's Standing Order of Reference.

C. **The Court Should Transfer This Case.**[12]

1. *The Interest-of-Justice Factor Strongly Supports Transfer.*

Although Plaintiffs have cleverly attempted to distance their one and only claim against New Polaroid from the bankruptcy proceedings out of which it unquestionably arose, the critical issues in this case relate directly to New Polaroid's conduct in negotiating and securing court approval of the sale of Old Polaroid's assets. Such issues require the resolution of complex legal and factual issues relating to the administration of the estate of Old Polaroid and should, therefore, be adjudicated by the bankruptcy court that has been charged with overseeing that administration.

At the heart of Plaintiffs' case is the question of whether the Bankruptcy Court intended to allow New Polaroid to purchase the assets of Old Polaroid with an entirely clean slate of liabilities, as § 363(f) of the Bankruptcy Code expressly permits. Issues relating to the propriety of the steps taken to effectuate that purchase are inextricably related to the operation of Old Polaroid's business and therefore appear to fall clearly within the scope of the Sale Order. If, however, as Plaintiffs contend, the Sale Order does not actually mean what it says, it is the Bankruptcy Court that should make that determination.

---

[12] There is no question that the Bankruptcy Court has jurisdiction over this case. The Bankruptcy Code confers jurisdiction on the federal courts over cases "under title 11 [the Bankruptcy Code]," 28 U.S.C. § 1334(b), and cases "arising under title 11, or arising in or related to cases under title 11," § 1334(c)(1). (The district courts, in turn, have authority to assign such cases to a bankruptcy court. *See* 28 U.S.C. § 157(a) & (b)(1).) If, as here, a case "involves a subsequent purchaser's interpretation of a sale order 'free and clear' . . . an order that can only be issued by a Bankruptcy court," *In re Middlesex Power Equip. & Marine, Inc.*, 292 F.3d 61, 68 (1st Cir. 2002), then it arises either "in a case under title 11 or perhaps arises under title 11." *Id. Accord In re Colarusso*, 280 B.R. 548 (Bankr. D. Mass. 2002). And if, as here, a case may "'potentially have some effect on the bankrupt estate,'" *Middlesex*, 292 F.3d at 68 (quoting *In re G.S.F. Corp.*, 938 F. 2d 1467, 1475 (1st Cir. 1991), then it falls within the Bankruptcy court's "related to" jurisdiction. *See id.* What is more, a bankruptcy court always retains jurisdiction to enforce its own order, *see, e.g., In re Public Serv. Co. of New Hampshire*, 148 B.R. 702 (Bankr. D.N.H. 1992), *aff'd*, 848 F. Supp. 318 (D.R.I. 1994), *aff'd*, 43 F.3d 763 (1st Cir. 1995), *cert. denied*, 514 U.S. 1108 (1995); *In re Paris Indust. Corp.*, 132 B.R. 504, 507-08 (D. Maine 1991), as the Bankruptcy Court here did. It is also clear that a bankruptcy court, like the district courts to which it is adjunct, has jurisdiction to hear ERISA cases. *See, e.g., Browning v. Levy*, 283 F.3d 761, 772 (6th Cir. 2002).

An examination of the fundamental nature of Plaintiffs' grievances in this case further demonstrates why this case should be transferred. As discussed above, Plaintiffs' initial complaint focused on Old Polaroid's termination of their employment and the discontinuation of their paid benefits. When it became clear that such claims could be adjudicated only in the Bankruptcy Court, Plaintiffs changed their course. However, while the description of Plaintiffs' claim has changed, the underlying circumstances have not. As Plaintiffs admit, the primary action of which they complain is the termination of their employment. (*See* Am. Compl. at 36, 46). Questions relating to the propriety of that action, and the actions of third-parties relating to the termination and the Bankruptcy Court-approved asset sale of which it was an integral part, should be answered by the Bankruptcy Court.

For at least four reasons, therefore, the interest-of-justice factor decidedly favors the transfer of this case to the District of Delaware for referral to the Bankruptcy Court.

1. *Centrality of Sale Order and Retention of Jurisdiction.* Nothing is more central to this case than the question whether the Bankruptcy Court's Sale Order forecloses the ERISA § 510 claim against New Polaroid, as New Polaroid has argued in its motion to dismiss Plaintiffs' amended complaint. *The Bankruptcy Court has specifically retained jurisdiction to enforce and resolve all disputes arising under the Sale Order.* (Sale Order at 25 (¶ 27).) This Court should allow the Bankruptcy Court to interpret its own order.

2. *Propriety of New Polaroid's Conduct.* One of the two principal questions on the merits[13] is whether, in allegedly conspiring with Old Polaroid to terminate Plaintiffs' employment, New Polaroid acted consistently with the terms of the Purchase Agreement and, more generally, with the established rights of a purchaser in a "free and clear" sale involving

---

[13] The other strictly legal question (which is now before the Court) is whether there is a cause of action for conspiracy to violate § 510 of ERISA. New Polaroid has established that there is not. Br. in Supp. at 13-15.

- 14 -

the liquidation of a bankrupt estate. The Bankruptcy Court should decide, because it is uniquely qualified to decide, what actions the Bankruptcy Code allows a free-and-clear purchaser to take in order to purchase unencumbered assets from the debtor.

3. *Adequacy of the Bankruptcy Court's Notice Procedures.* One of Plaintiffs' key contentions in arguing that the Sale Order does not preclude their ERISA claim against New Polaroid is that Plaintiffs did not have an adequate opportunity to challenge the proposed terms of sale before the Bankruptcy Court issued the Sale Order. Pl. Br. in Opp. to Polaroid's Mot. to Dismiss, at 14. Plaintiffs claim, in particular, that they did not know that their benefits would be terminated until after the issuance of the Sale Order. *Id.* The Bankruptcy Court expressly found, however, that all parties-in-interest to the sale received an adequate opportunity to challenge its terms. (Sale Order at 4, ¶ E) The Bankruptcy Court should decide Plaintiffs' implicit challenge to this finding on the adequacy of notice and, more generally, all factual and legal questions relating to the adequacy of the sale procedures it employed.

4. *Termination of Old Polaroid's Plans.* On the ERISA front, perhaps the most critical issue will be whether Old Polaroid properly terminated its benefits plans, under which Plaintiffs have claimed entitlement to "vested" benefits. (Amended Complaint ¶ 40.) If Old Polaroid properly terminated its benefits plans, then Plaintiffs have no claim under ERISA. For the alleged harm Plaintiff suffered—i.e., the loss of benefits—was occasioned ultimately not by the termination of their employment, but by Old Polaroid's termination of the plans under which Plaintiffs were receiving benefits.

2.  ***The Convenience of the Parties Does Not Support Either Forum.***

As for the convenience-of-the-parties factor, it does not point one way or the other. Neither deposition nor trial testimony will likely be needed. None of the relevant facts is in dispute. Plaintiffs' Amended Complaint raises only legal questions. In all likelihood the case will be resolved on cross-motions for summary judgment, as is common in bankruptcy-court proceedings.

Most importantly, perhaps, Plaintiffs' testimony will not be needed (or be relevant) for two reasons. First, Plaintiffs' conduct is not at issue in this case. Second, it is very unlikely that Plaintiffs have any knowledge as to the key allegations in the amended complaint—namely, those relating to communications between Old Polaroid and New Polaroid, the negotiation of the purchase agreement, the circumstances under which Old Polaroid terminated its employees, and so forth. In the very unlikely event that Plaintiffs' testimony is needed, such testimony can be taken by videotape deposition.

Finally, relevant documents will likely be few in number, and the key ones are already on file with the Bankruptcy Court in Delaware. Documents relating to notice of the terms of sale and the sale hearing were issued from the debtor's law firm in Delaware (Ex. 2, 3).

## VI. CONCLUSION

For the reasons stated above, the Court should transfer this case to the United States District Court for the District of Delaware.

Respectfully submitted,

| | |
|---|---|
| Jerome A. Hoffman<br>Mathew Lee Wiener<br>Dechert LLP<br>4000 Bell Atlantic Tower<br>1717 Arch Street<br>Philadelphia, PA 19103<br>(215) 994-4000 | _____<br>Richard D. Glovsky<br>Jeffrey J. Pyle<br>Prince, Lobel, Glovsky & Tye LLP<br>585 Commercial Street<br>Boston, MA 02109<br>(617) 456-8000 |

Counsel For Polaroid Corporation

OF COUNSEL:
J. Ian Downes
DECHERT LLP
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, PA 19103
(215) 994-4000

Dated: April 12, 2004

- 18 -

## CERTIFICATION OF COUNSEL

I, Matthew Lee Wiener, hereby certify that I have conferred with counsel for Plaintiffs in a good-faith attempt to resolve or narrow the issues presented in Polaroid Corporation's Motion to Transfer.

*[signature]*
Matthew Lee Wiener

## CERTIFICATE OF SERVICE

I, Jeffrey J. Pyle, hereby certify that on April 12, 2004, I caused the foregoing Memorandum to be served, via First Class Mail, addressed as follows:

Harvey A. Schwartz, Esquire
Rodgers, Powers & Schwartz, LLP
18 Tremont Street, Suite 500
Boston, Massachusetts 02108

Michael R. Pontrelli, Esquire
Epstein Becker & Green, PC
111 Huntington Ave.
26th Floor
Boston, Massachusetts 02199

Jeffrey J. Pyle