**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

SALLY FERRARI; ELAINE JOHNSON;            :
JOHN MAGENHEIMER; ELIZABETH              :
WILLIAMS; AND DAVID A. MANISCALCO,       :
                                          :
              Plaintiffs,                  :
                                          :
                                          :          **Civil Action No.**
        V.                                 :          **03-11275-MLW**
                                          :
POLAROID CORPORATION;                     :
AND NEAL GOLDMAN,                         :
                                          :
              Defendants.                  :

---

**POLAROID CORPORATION'S REPLY BRIEF IN SUPPORT OF ITS MOTION**
**TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**


FOR POLAROID CORPORATION:


Jerome A. Hoffman                      Richard D. Glovsky
Matthew Lee Wiener                     Jeffrey J. Pyle
DECHERT LLP                            PRINCE, LOBEL, GLOVSKY & TYE
1717 Arch Street                       585 Commercial Street
Philadelphia, PA 19103                 Boston, MA 02109
(215) 994-4000                         (617) 456-8000


OF COUNSEL:
J. Ian Downes
DECHERT LLP
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, PA 19103

Dated: April 12, 2004


878726.**4.50** 4/12/2004

## I. INTRODUCTION

Plaintiffs have abandoned five of the six counts pleaded against New Polaroid in their original complaint and dropped Old Polaroid (the bankrupt debtor Plaintiffs accuse of having unlawfully terminated their employment) as a defendant.[1]  Only a single count against New Polaroid remains in the amended complaint. (Amended Complaint ¶¶ 46-49.) In that count, Plaintiffs allege that Old Polaroid terminated their employment, in violation of § 510 of ERISA, 29 U.S.C. § 1440, to interfere with their "attainment of the medical, dental, and life insurance benefits promised them and which are terms of the *[Old] Polaroid* LTD Plan." (Amended Complaint ¶ 46 (emphasis added).)[2]  The only basis Plaintiffs cite for proceeding against New Polaroid is that it allegedly entered into a "conspiracy" with Old Polaroid to terminate their employment so as to deprive them of benefits under Old Polaroid's ERISA plans.[3]  (Amended Complaint ¶¶ 46-49; Plaintiffs' Memorandum of Law in Opposition to Defendant Polaroid Corporation's Motion to Dismiss ("Plaintiffs' Mem.") at 1-3.)

---

[1]     Plaintiffs have likely done so to try to avoid the transfer of this case to the Bankruptcy Court where it belongs. In their initial Complaint, Plaintiffs' primary focus was (properly) on Old Polaroid. Upon learning that any litigation against Old Polaroid had to be located in the Bankruptcy Court, Plaintiffs re-characterized their § 510 claim as one against New Polaroid exclusively. In light of the positions that Plaintiffs have taken in opposing New Polaroid's motion to dismiss the amended complaint, *see infra* § I, Defendants are moving the Court to transfer the case to the District of Delaware pursuant to 28 U.S.C. § 1404. (As per a stipulation on file with the Court, New Polaroid had agreed to withdraw its original transfer motion, along with the motion to dismiss the original Complaint [with which the transfer motion was combined], when Plaintiffs decided to re-plead their suit.)

[2]     Plaintiffs continue to receive from Old Polaroid's insurance carrier the only benefits actually provided for in the LTD Plan, namely, salary continuation payments (at a rate of approximately two-thirds of the last salary they earned while working for Old Polaroid). (Amended Complaint ¶ 33.)

[3]     In point of fact, the alleged injury Plaintiffs suffered — the loss of paid-for medical benefits — would have resulted anyway from the termination by Old Polaroid of its benefits plans just a few days after New Polaroid bought Old Polaroid's assets. The termination of the plans means that Plaintiffs have no claim. ERISA § 510 in no way restricts an employer's right to terminate a plan. (Polaroid Corporation's Memorandum of Law in Support of Its Motion to Dismiss Plaintiffs' Amended Complaint ("Polaroid's Mem.") at 4, 8 n.11.) New Polaroid has not moved for dismissal on the ground that Old Polaroid lawfully terminated its plans, however, because Plaintiffs have strategically omitted any reference to the termination of the plans in their amended complaint.

New Polaroid has previously established that Plaintiffs' claim should be dismissed for two independent, but equally compelling, reasons: First, the claim is barred by the Bankruptcy Court's Sale Order, which expressly provides that New Polaroid is not liable for the termination of Old Polaroid's employees or any other pre-closing claims relating to Old Polaroid or the purchase of its assets. (Polaroid's Mem. at 10-13.) Second, ERISA does not provide a cause of action for conspiracy to violate § 510. (*Id.* at 13-15.)

It is also clear, as Plaintiffs have now laid bare their theory of the case in their opposition brief, that there is a third, compelling reason as to why the Court should dismiss the amended complaint. The alleged "conspiracy" in this case was nothing more than an agreement to do exactly what the Bankrupty Court determined that New Polaroid and Old Polaroid could lawfully do: Agree that Old Polaroid would, before the sale's closing date, terminate *all* of its employees that New Polaroid did not intend to hire. An agreement to do what the Bankruptcy Court specifically countenanced does not violate § 510 of ERISA.

We make this point in Section II(A) below, then turn in Sections II(B) and (C) to Plaintiffs' arguments that the Sale Order is not preclusive and that ERISA authorizes a cause of action for conspiracy to violate § 510. Neither of Plaintiffs' arguments is persuasive or supportable.

## II. ARGUMENT

### A. New Polaroid's Alleged Actions Were Expressly Authorized by the Sale Order and Therefore Cannot Form the Basis of an Unlawful Conspiracy.

Plaintiffs argue nothing more than that New Polaroid acted unlawfully by conspiring with Old Polaroid to terminate their employment with Old Polaroid. What Plaintiffs ignore, however, is that the purchase agreement, which the Bankruptcy Court approved (Sale Order at 13

("Approval of the Sale Order") expressly required Old Polaroid to terminate, before the sale's

closing date, the employment of *all* Old Polaroid employees whom New Polaroid did not intend

to hire (Ex. 8 (Asset Purchase Agreement at 49 (§ 6.09)).[4]  (Old Polaroid terminated its other

employees on the closing date.  (*Id.*)  It is undisputed that Plaintiffs were not among the Old

Polaroid employees whom New Polaroid intended to hire.  (Amended Complaint ¶ 36.)

Plaintiffs concede the purchase agreement's terms were lawful.  (Plaintiffs' Mem. at 15.)

Because there can be no valid claim that New Polaroid unlawfully failed to hire them,[5]

Plaintiffs' claim is and can only be that New Polaroid and Old Polaroid "conspired" to do that

---

[4]     The relevant provision provides that Old Polaroid "will terminate the employment of those U.S. employees who are not listed on the 35 Day List." (Asset Purchase Agreement at 49 (§ 6.09).) The 35 Day List consists of "Employees to whom" New Polaroid "intends to offer employment, commencing on the Closing Date." (*Id.* at 48 (§ 6.08( b)).) The obvious reason for the inclusion of this provision was to ensure that New Polaroid would incur no liability under the Worker Adjustment and Retraining Notification Act (WARN Act), 29 U.S.C. § 2101 *et seq.*, as a result of the termination of Old Polaroid's employees whom New Polaroid did not intend to hire. (Polaroid's Mem. at 13 n.15.)

[5]     Any failure-to-hire claim Plaintiffs might assert could not be viable for at least three reasons: *First*, § 510 ERISA does not cover hiring, irrespective of the prospective employer's intent. *See Becker v. Mack Trucks, Inc.*, 281 F.3d 372, 379-83 (3d Cir. 2002) (so holding); *see also Williams v. Am. Int'l Group, Inc.*, No. 01 Civ. 9673 (CSH), 2002 WL 31115184, at *3 (S.D.N.Y. Sept. 23, 2002) (following *Becker*). Section 510 prevents employers from discriminating against existing employees to deprive them of promised benefits. *See Becker*, 281 F.3d at 381. The alleged promise of benefits at issue here came from Old Polaroid; New Polaroid never promised Plaintiffs any benefits. (Amended Complaint ¶¶ 24-33.) *Second*, it is undisputed that Plaintiffs—each of them permanently disabled--could not at the time of the sale, and cannot now, work for New Polaroid. Because New Polaroid had no obligation to employ individuals who could not perform any services for the company, Plaintiffs' claim for "failure to hire" is in reality a claim for failure to assume Old Polaroid's benefits liabilities. As such, the claim would run headlong into the Sale Order, which provides that New Polaroid "shall have no liability or responsibility . . . for any obligations which might arise . . . [under], or pursuant to, the Employee Retirement Income Security Act," including the "obligation to pay" any "benefits" to any Old Polaroid "employee" (Sale Order at 20-21 (¶23)), or "with respect to any . . . [Old Polaroid] employee pension, employee welfare or retention, compensation and/or incentive plan, agreement, practices or program." (*Id.* at 22 (¶ 23)). *Third*, holding New Polaroid liable for failing to assume Old Polaroid's long-term disability liabilities would require the Court to impose successor liability on New Polaroid. This would contravene the (1) Sale Order's injunction on the imposition of successor liability (Sale Order at 23 (¶ 24)); (2) the non-assumption provision of the Bankruptcy Court-approved Purchase Agreement governing ERISA liabilities, *see, e.g., Carcasole-Lacal v. American Airlines, Inc.*, No. CV-02-4359 (DGT), 2003 WL 21525484, at *4 (E.D.N.Y. July 8, 2003) (rejecting successor liability claim for benefits against purchaser of debtor's assets since purchaser did not agree to assume the liabilities in the purchase agreement); and (3) the rule that no remedy lies against the purchaser if a plaintiff fails to pursue available remedies (here, in the Bankruptcy Court) against the seller, *see, e.g., Conway v. White Trucks*, 885 F.2d 90, 97 (3d Cir. 1989).

which they already had a lawful right to do under the Bankruptcy Court-approved purchase

agreement: agree that Old Polaroid would terminate the employees New Polaroid did not intend

to hire. This alleged "conspiracy" could not, therefore, have been unlawful under ERISA.

## B.    The Bankruptcy Court's Sale Order Bars Plaintiffs' § 510 Claim.

The key provision of the Sale Order on which New Polaroid's preclusion argument rests

states, without qualification or exception, that New Polaroid "*shall have no obligation for the . . .*

*dismissal by the Debtors of employees.*"[6]  (Sale Order at 22.)[7]  Nowhere in their brief do

Plaintiffs even acknowledge, let alone address, this dispositive provision of the Sale Order.

Instead, Plaintiffs raise three wholly unpersuasive arguments as to why the Court should

not give preclusive effect to the Sale Order. The first is that the Sale Order does not cover their

claim against New Polaroid because they are not really asserting any interest in the assets that

New Polaroid bought. The second is that, at the time they received notice of their right to contest

the proposed terms of sale, they did not know that Old Polaroid had terminated their employment

(and with it their paid-for medical benefits). The third is that their § 510 claim was not actually

litigated before the Bankruptcy Court. We respond to each in turn.

1.    *Coverage of the Sale Order.*  Ignoring the above-quoted provision of the Sale

Order, Plaintiffs contend that because they describe their claim against New Polaroid as

"independent," rather than "derivative" (Plaintiffs' Mem. at 16), of any ERISA claim that they

might have against Old Polaroid, that claim could not be wiped clean by the Bankruptcy Court's

---

[6]     The Court may consider the Sale Order in deciding whether the amended complaint states a claim under Fed. R. Civ. P. 12(b)(6). (*See* Plaintiffs' Mem. at 3.)

[7]     The Sale Order also bars suit against New Polaroid "arising under or out of, in connection with, or in any way relating to" Old Polaroid, the purchased assets, or "the operation" of Old Polaroid "prior to [sale] Closing Date." (Sale Order at 15 (¶ 7).)

Sale Order: "The plaintiffs' claim does not implicate the debtor, the bankrupt estate, or
Polaroid's status as successor in interest to the debtor." (*Id.* at 16.) This argument, for which
Plaintiffs cite no cases, altogether ignores the nature of the Plaintiffs' conspiracy claim against
New Polaroid as Plaintiffs have framed it.[8]

Under § 363(f) of the Bankruptcy Code, 11 U.S.C. § 363(f), a bankruptcy court may
authorize the sale of a debtor's assets "free and clear" of any "interest in such property."
"Interest" is a broad term that covers any unsecured claims that "are 'connected to, or arise from
the property being sold.' " *In re Trans Word Airlines, Inc.*, 322 F.3d 283, 289 (3d Cir. 2003)
(citation omitted) ("*TWA*"). The term "interest in property" covers not only *in rem* interests in
the debtor's estate, but also unsecured claims arising from the debtor's operation of the assets,
including statutory employment claims by the debtor's employees. *See, e.g., TWA*, 322 F.3d at
290 (holding that "interest" covers employment discrimination claims); *In re Luckie Smokeless
Coal Co.*, 99 F.3d 573, 582 (4th Cir. 1996) (holding that "interest" covers pension claims). *See
generally Precision Indus., Inc. v. Qualitech Steel SBQ, LLC*, 327 F.3d 537, 545 (7th Cir. 2003)
(endorsing broad interpretation of "interest"); *Colarusso v. Canzano*, 295 B.R. 166, 174 (1st Cir.
Bankr. App. Pan. 2003) (same). If the "assets of the debtor" "give rise" to a claim, that claim
constitutes an "interest" in the debtor discharged under § 363(f). *Trans World Airlines*, 322
F.3d at 290.

---

[8]      In place of legal authority for their position (of which there is none), Plaintiffs analogize what allegedly
happened in this case to the hypothetical truck driver for New Polaroid's largest shareholder (One Equity Partners)
running over an Old Polaroid employee. Surely the resultant liability, Plaintiffs insist, would not be wiped clear by
the Sale Order. *See* Plaintiffs' Mem. at 16. That is true, but only because the liability would not, unlike here, be in
any way derivative of Old Polaroid's liability.

Here, Old Polaroid's assets unquestionably "give rise" to Plaintiffs' claim against New Polaroid. Plaintiffs' claim against New Polaroid arises directly from *Old Polaroid's* alleged unlawful termination of Plaintiffs' employment and is entirely derivative of Plaintiffs' direct claim (asserted in Plaintiffs' original complaint and dropped from Plaintiffs' amended complaint) against Old Polaroid. That Plaintiffs affix the label "conspiracy" to their claim does not thereby remove it from the provision of the Sale Order decreeing that New Polaroid "shall have no obligation for the . . . dismissal by the Debtors of employees." Sale Order at 22. The Court should give effect to the plain meaning of the Bankruptcy Court's Sale Order.

There are also two compelling policy reasons under the Bankruptcy Code why the Court should do so:

First, parties with claims against the debtor must file them before the bankruptcy court and, by doing so, submit to the Code's priority scheme for distributing the assets of the debtor (i.e., the proceeds of the sale) among its creditors. They may not circumvent the priority scheme by end-running the bankruptcy court and suing the purchaser of the debtor's assets in another court over a claim that arose from the debtor's business. *See, e.g., In re Trans World Airlines,* 322 F.3d 283, 292 (3d Cir. 2003) (making this point); *see also, e.g., Myers v. United States,* 2003 WL 21799968, at *6 (S.D. Cal. Apr. 10, 2003) ("Allowing Plaintiffs to disregard the plain language of the Bankruptcy Court Order would allow unsecured claims to receive greater protection than secured claims."). This is exactly what Plaintiff are attempting here. Their claim is manifestly one against Old Polaroid for terminating their employment with Old Polaroid and their paid-for healthcare benefits under Old Polaroid's benefits plans.

Second, the efficient operation of the bankruptcy system requires that purchasers enjoy the security of knowing that free-and-clear sale orders will be enforced as written. "One of the primary goals of the bankruptcy regime is to maximize the assets of the debtor available to satisfy the rightful claims of creditors." *United States v. Edwards*, 905 F. Supp. 45, 47 (D. Mass. 1995). Liabilities attached to the assets of a bankrupt estates reduce the value of the assets and hence the amount available for distribution to the estates creditors, including potential claimants like Plaintiffs, in accordance with the Code's priority scheme. Prospective purchasers of a bankrupt estate will pay less for the assets if they know that courts will not enforce free-and-clear sales orders as written. *See, e.g., In re Trans World Airlines, Inc.*, 322 F.3d at 292-93; *see also, e.g., In re Paris Indus. Corp. v. Ace Hardware Corp.*, 132 B.R. 504, 508 n.7 (D. Me. 1991) (emphasizing that suits in contravention of a free-and-clear order "would inevitably diminish the value to be realized in a sale by the estate, and in some cases, discourage sales altogether"); *cf. Myers v. United States*, 2003 WL 21799968, at *6 (S.D. Cal. Apr. 10, 2003) ("[W]ho would ever purchase assets at a bankruptcy proceeding if successor liability were not limited, despite the plain wording of the bankruptcy order?").

If parties with claims against a debtor are permitted to circumvent § 363(f) simply by alleging that a third-party "conspired" with the debtor (and here "conspiring" to do exactly what the bankruptcy court countenanced), and is therefore jointly and severally liable for the full amount of the debtor's obligations, there will be a tremendous disincentive for potential buyers to purchase assets out of bankruptcy. That is, if the mere act of entering into a bankruptcy sale agreement necessarily constitutes, as Plaintiffs suggest that it does, a conspiracy with that debtor,

- 7 -

and brings with it a serious risk of the imposition of liability for the seller's debts notwithstanding § 363(f), why would anyone purchase assets in a bankruptcy sale?

## 2. *Res Judicata - Litigation of the § 510 Claim in the Bankruptcy Court*.

Without citing any bankruptcy cases, Plaintiffs argue that the sale order should not be given preclusive effect because there is not a "sufficient identity" between the claim before this Court and the bankrupty proceeding to satisfy the requirements of the doctrine of *res judicata*. (*Id.* at 13.) Plaintiffs argue, in particular, that the Bankruptcy Court did not specifically adjudicate their ERISA claim. (*Id.*) This is true, but irrelevant to the Court's analysis.

Plaintiffs misapprehend the nature of the rights that they were entitled to have the Bankruptcy Court adjudicate in connection with the Sale Order, and hence why the Sale Order is preclusive. While the Bankruptcy Court did not adjudicate the merits of Plaintiffs' § 510 claim, it did, as discussed in the previous section, address the question of whether their *claimed* "interest" in Old Polaroid would follow its assets as they passed to New Polaroid. The Bankruptcy Court clearly adjudicated Plaintiffs' right to sue New Polaroid over the termination of their employment with Old Polaroid, and it is for this reason—and not because the Bankrupty Court decided Plaintiffs' § 510 claim against Old or New Polaroid—that the Sale Order precludes the § 510 claim they have asserted against New Polaroid in this Court.

In any event, the question, even under traditional non-bankruptcy *res judicata* principles, is not whether a prior court actually decided a particular issue, but whether it could have adjudicated that issue. *See Bay State HMO Mgmt., Inc. v. Tingley Sys., Inc.*, 181 F.3d 174, 177 (1st Cir. 1999) (res judicata applies to preclude parties "from relitigating claims that were raised or *could have been raised* in that [prior] action"). There is little question that Plaintiffs had the

right to present their objections to the terms of the proposed asset sale to the Bankruptcy Court,
just as they had the right to file claims against Old Polaroid relating to their benefits. Yet, as
discussed below, they did not avail themselves of that right.

**3.    *Notice and Opportunity to Challenge the Terms of Sale.*** Plaintiffs do not
dispute that they received notice of the terms of sale. They contend nevertheless that they should
not be held to the terms of the Sale Order because, at the time they received notice of its
proposed terms, they did not know that Old Polaroid would terminate their benefits. *See*
Plaintiffs' Mem. at 14. Whether or not this is true, Plaintiffs were certainly on notice that, under
the proposed terms of sale, New Polaroid would purchase Old Polaroid's assets free and clear of
any interest Plaintiffs might have in Old Polaroid's assets, including those arising under or
relating to the very benefit plans under which Plaintiffs now claim to have vested rights.
Plaintiffs were also on notice that Old Polaroid would be terminating its employees in connection
with the sale.[9] This was notice enough that their interests would be (or at least would very likely
be) affected. It bears reemphasis here that the Bankruptcy Court made an express finding that all
parties in interest to the sale received adequate notice. (Sale Order at 4-5.)

Of equal importance, after Plaintiffs learned that Old Polaroid intended to terminate their
benefits, they certainly could have sought relief from the Bankruptcy Court, as other interested

---

[9]     As already noted, it is undisputed that Plaintiffs received written notice that the Bankruptcy Court would be
conducting a sale hearing; that under the proposed asset purchase agreement New Polaroid would be purchasing Old
Polaroid's assets free of all claims; that Plaintiffs would receive a copy of the purchase agreement upon request; that
a hearing would be held on the terms of the sale before the Bankruptcy Court; and that Plaintiffs could file
objections to the proposed terms of sale. (App. Ex. 2 (Ex. 1 ("Notice of Auction and Sale Hearing") to "Declaration
of Mailing Regarding Notice of Action and Sale Hearing").) The purchase agreement made clear that New Polaroid
would not be responsible for "*any liability or obligation related to the termination of employment of any [Old]
Polaroid Employee,*" (Ex. 8 at 19 (§ 2.04(g)), or any of Old Polaroid's benefit liabilities (*id.* at 18-19 (§ 2.04). It
was also clear from the agreement that Old Polaroid would terminate all of its employees. (*Id.* at 47, 49) (§§ 6.08(a)
and 6.09).) Plaintiffs filed no objections to the terms of sale, and the Bankruptcy Court issued a sale order consistent
with the proposed terms of sale. (Polaroid's Mem. at 6.)

parties (such as retirees and bondholders) did and as Fed. R. Bankr. P. 9024 (which tracks Fed. R. Civ. P. 60) would have allowed them to do.[10] *See, e.g., Cummings Properties LLC v. Heidelberg Print Finances Americas, Inc.*, No. Civ. A.01-11027-GAO, 2002 WL 1839252, at *3 (D. Mass. Aug. 12, 2002) (holding that even if plaintiff did not have an "opportunity to challenge the sale order before it entered, it did have the opportunity to move, pursuant to Fed. R. Civ. P. 60(b) . . . for relief from the final order approving the sale"). Notice that Plaintiffs' paid-for healthcare benefits would terminate arrived, according to Plaintiffs' opposition brief, just a day or so after the Bankruptcy Court entered the Sale Order. What Plaintiffs may not do is precisely what they have done here—wait until a year has elapsed from the entry of the sale order and then file suit asking a court to disregard the bankruptcy court's order. *See id.* (emphasizing that even if a party adversely affected by a sale order did not receive proper notice, "it was obliged, once it had learned of the order and sale, to seek a remedy from the bankruptcy court which had entered the order"); *see also Celotex Corp. v. Edwards*, 514 U.S. 300 (1995) (holding that a bankruptcy court's order may not be collaterally attacked in another court).

## C. ERISA Does Not Authorize a Cause of Action for Conspiracy to Violate § 510 of That Statute.

Even if New Polaroid were not protected by the specific provision of the sale order cited above, Plaintiffs would still not have a claim against New Polaroid under § 510. Plaintiffs do not allege that New Polaroid violated any express provision of § 510. They could not make any such allegation because § 510 forbids a "person" from terminating (or taking some other adverse

---

[10] It bears repeating that Plaintiffs' main claim when they originally filed this suit was to recover *alleged* vested benefits under *Old Polaroid's* benefit plans. *See* Compl. ¶¶ 35-43. (In point of fact, the benefits were clearly not vested. Old Polaroid had clearly reserved the right to terminate the applicable plans and did so in accordance with ERISA. (Polaroid's Mem. at 7-8.))

- 10 -

employment action against) an employee to prevent the employee from attaining benefits under an ERISA-governed plan, and it was Old Polaroid that employed Plaintiffs and Old Polaroid that terminated their employment allegedly to prevent them from obtaining benefits under Old Polaroid's ERISA plans. Rather, Plaintiffs allege that New Polaroid was a "conspirator" in Old Polaroid's alleged violation of § 510.

But plainly no provision of ERISA authorizes a cause of action for conspiracy to violate § 510 of the statute. This Court should decline Plaintiffs' invitation to write a "common law civil conspiracy" (Plaintiffs' Mem. at 3) into ERISA § 510, like the district court in *Cippollone v. University of Pennsylvania*, No. Civ. A. 97-6565, 1998 WL 47285, at *2 (E.D. Pa. Feb. 3, 1998). *See id.* at *2 ("There is no indication of any statutory basis for Plaintiffs' [§ 510] claim[,] and ERISA itself contains no explicit cause of action for civil conspiracy. Plaintiffs have also failed to identify anything in the text or legislative history of ERISA that suggests that Congress contemplated that a cause of action should be deemed implied.").[11] *Cippollone* is faithful to the general principle, recognized by the Supreme Court and the First Circuit, that courts should be reluctant to imply causes of action in the ERISA context. *See Mertens v. Hewitt Assoc.*, 508 U.S. 248, 254 (1993); *Reich v. Rowe*, 20 F.3d 25, 30 (1st Cir. 1994); *see also Sampson v. Rubin*, No. Civ. A. 00-10215-DPW, 2002 WL 31432701, at *6 (D. Mass. Oct. 29, 2002). As the cases cited in Polaroid's opening brief show, both the Supreme Court and the First Circuit have emphasized their unwillingness to infer causes of action under ERISA. (Polaroid's Mem. at 14.)

Of the dozen or so cases Plaintiffs cite in their opposition brief, *none* of them recognizes a cause of action for conspiracy to violate *any* provision of ERISA—§ 510 or otherwise. Only

---

[11]    The facts of the case are discussed in Polaroid's Mem. at 12 & n.14.

one of the cases Plaintiffs cite, *Lessard v. Applied Risk Management*, 307 F.3d 1020 (9th Cir.

2002), even addresses the application of § 510 to the purchaser of assets, and, contrary to

Plaintiffs' assertion, that case does not recognize a conspiracy claim under § 510.[12] *See*

Plaintiffs' Mem. at 6 (referencing the "Ninth Circuit's application of conspiracy analysis in

*Lessard*). Indeed, the word "conspiracy" does not even appear once in *Lessard*.

Rather, as the opinion makes clear, the Ninth Circuit imposed liability on the buyer upon

finding that it was a *successor* to the seller. The buyer and seller in *Lessard* entered into an asset

purchase agreement, outside the bankrupty context, that required the buyer to hire all of the

seller's employees except for those who were, at the time of sale, collecting leave-related

benefits under an ERISA plan. *See id.* at 1022. Those employees were "presumptively

terminated." *Id.* at 1024. The Ninth held that the seller thereby violated § 510 and that the buyer

---

[12]     The other § 510 case on which Plaintiffs chiefly rely, *Eichhorn v. AT&T Corp.*, 248 F.3d 131 (3d Cir. 2001), is far off point. *Eichorn* involved an agreement between Lucent (including its affiliates) and the purchaser of Lucent's assets, Texas Pacific Group, under which Lucent agreed on behalf of itself (and its affiliates) that after the sale of one of its affiliates, Paradyne, to Texas Pacific Group, it would not hire any of Paradyne's employees for an eight-month period. *See id.* at 136-37. The agreement had the effect of defeating the employees' " 'bridging rights which allowed them to retain their level of accrued pension benefits if they left AT&T [Lucent's predecessor] and returned within six months." *Id.* at 137. Denying AT&T and Lucent's motion for summary judgement, the Third Circuit held that the plaintiffs had created a triable issue of fact as to whether AT&T and Lucent "had the specific intent to interfere with the Paradyne employees' pension rights or whether cancellation of the bridging rights was merely an incidental byproduct of the sale of Paradyne." *Id.* at 149. The Plaintiffs here are wrong when they state that the "Third Circuit found that all parties to the sale . . . could be held liable for the violation the ERISA obligations of the selling entity." Plaintiffs' Mem. at 7. *A footnote in Eichorn makes clear that the plaintiffs brought their § 510 claim only against the affiliated selling entities, not the purchaser*, Texas Pacific Group. *See* 248 F.3d at 149 n.8. The Third Circuit did not even hint that the purchaser could be liable for entering into an agreement whose purpose may have been to violate § 510. The other cases Plaintiffs cite are even further off point. *See* Plaintiffs' Mem. at 8. The first, *Crane v. Green & Freedman Baking Co.*, 134 F.3d 17, 24 (1st Cir. 1998), stands for the unremarkable proposition that a corporation's principals may be held liable under ERISA for delinquent benefit plan contributions if there is sufficient evidence to pierce the corporate veil. *See id.* at 23-28. The word "conspiracy" does not even appear in *Crane*, just as it does not appear in the Second Circuit case to which the First Circuit cited in support of its veil-piercing analysis—*Lowen v. Tower Asset Mgt., Inc.*, 829 F.2d 1209 (2d Cir. 1987)—and to which Plaintiffs here also cite in support of their conspiracy argument. *See* Plaintiffs' Mem. at 8. The final case Plaintiffs cite, *Aetna Casualty Surety Co. v. P&B Autobody*, 43 F.3d 1546 (1st Cir. 1994), does involve a conspiracy claim, but not one under ERISA. The case does not even concern ERISA.

was liable for the violation under traditional corporate successorship principles.[13] *See id.* at 1024. If the court intended to hold the purchaser liable under a conspiracy, rather than a successorship theory, it surely would have said so.

In contrast to the plaintiffs in *Lessard,* Plaintiffs here make very clear that *"they do not allege that [New] Polaroid is liable for acts of the debtor [Old Polaroid] under any theory of successor liability."* (Plaintiffs' Mem. at 16 (emphasis added); *see also id.* at 17 (claim is "against" New Polaroid for "acts" "taken in its own right" rather than as a successor to Old Polaroid's liabilities); Amended Complaint (successor liability claim not pleaded).) They could not plausibly so allege even if they were inclined to do so, for, among other reasons, the Bankruptcy Court's sale order expressly provides that New Polaroid is not, and cannot be sued as, a successor to Old Polaroid. (Sale Order at 23-24 (¶ 24) .) (For additional reasons, see *infra* n.5.) Even Plaintiffs appear to concede in their brief that the Bankruptcy Court's Sale Order forecloses the imposition of successor liability on New Polaroid. *See* Plaintiffs' Mem. at 15-16.

---

[13]     This is made clear in the very first line of the opinion, where the court labels the buyer the seller's "successor," *see id.* at 1022, and in the last paragraph of the opinion, where the court discusses the appropriateness of holding the buyer liable for the seller's termination of its employees, *see id.* at 1027. Commentators have read *Lessard* to impose liability on the buyer under a successorship theory. *See, e.g.,* CAL. JUR. *Corporations* § 215 (3d ed. 2003); *see also Products Liability: Liability of Successor for Injury Caused by Product Issued by Predecessor,* 66 A.L.R.3d 824 (2003). There would be no other viable basis on which to hold the buyer of assets liable under § 510 except as a successor to the seller's liabilities arising from the termination of employees to interfere with their rights under the seller's ERISA plans. A buyer could not be held liable under § 510 for failing to hire the seller's employees (even if to avoid benefits costs) for the simple reason that § 510 does not cover hiring. This is the clear holding of the Third Circuit's pre-*Lessard* decision in *Becker v. Mack Trucks, Inc.,* 281 F.3d 372, 379-83 (3d Cir. 2002). The Ninth Circuit did not give any indication that it disagreed with the Third Circuit on this issue.

Whether or not the Ninth Circuit correctly held the buyer to be a successor and what factors, if any, should trigger a successorship finding under § 510, are difficult questions with which the Court need not address. For Plaintiffs here have disavowed any reliance on the successorship doctrine, as they are compelled to do, given the Bankruptcy Court's "free and clear" sale order and the policies underlying it.

   Accordingly, the Court should not recognize a cause of action for conspiracy to violate §

510 and should therefore dismiss Plaintiffs' Amended Complaint not only because it is barred by

the Sale Order, but also because it does not state a claim under ERISA.

## III. CONCLUSION

For the reasons stated above and in New Polaroid's opening brief, the Court should

dismiss Plaintiffs' Amended Complaint with prejudice.

Respectfully submitted,

Jerome A. Hoffman
Matthew Lee Wiener
DECHERT LLP
1717 Arch Street
Philadelphia, PA 19103
(215) 994-4000

Richard D. Glovsky
Jeffrey J. Pyle
PRINCE, LOBEL, GLOVSKY & TYE LLP
585 Commercial Street
Boston, MA 02109
(617) 456-8000

Counsel for Polaroid Corporation

OF COUNSEL:
J. Ian Downes
DECHERT LLP
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, PA 19103

Dated: April 12, 2004

## CERTIFICATE OF SERVICE

I certify that on April 12, 2004, the foregoing reply brief in support of Defendant

Polaroid Corporation's motion to dismiss was served upon counsel of record for Plaintiff and

Defendant Neal Goldman, via First Class Mail, addressed as follows:

Harvey A. Schwartz, Esquire
Rodgers, Powers & Schwartz, LLP
18 Tremont Street, Suite 500
Boston, Massachusetts 02108

Michael R. Pontrelli, Esquire
Epstein Becker & Green, PC
111 Huntington Ave.
26th Floor
Boston, Massachusetts 02199

_____
Jeffrey A. Pyle

- 16 -