UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SALLY FERRARI, ELAINE JOHNSON, ) <br> JAMES A. MAGENHEIMER, as executor ) <br> of the ESTATE OF JOHN ) <br> MAGENHEIMER, ELIZABETH ) <br> WILLIAMS, and DAVID MANISCALCO ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> POLAROID CORPORATION and ) <br> NEIL GOLDMAN ) <br> Defendants. ) | C.A. No. 03-11275-MLW |

## SECOND AMENDED COMPLAINT

### Introduction

1. This is a complaint by severely disabled, and one deceased, individuals who were employed by the Polaroid Corporation until July 2002. The defendants are the entity that purchased most of Polaroid's assets and a prominent member of Polaroid's employee benefits committee. Each plaintiff received Long Term Disability benefits pursuant to Polaroid's Long Term Disability Plan ("LTD Plan"). Polaroid promised, as part of that LTD Plan, that the company would pay the plaintiffs' medical, dental, and life insurance premiums for so long as they were eligible for LTD benefits. As the defendant was negotiating its purchase of Polaroid's assets, the two corporations conspired to illegally cut off these insurance benefits for employees on Long Term Disability. In furtherance of that conspiracy and to benefit the defendants, all medical, dental and life insurance payments for

1

the plaintiffs were terminated before the sale to the defendant corporation. The individual defendant, Goldman, breached his fiduciary duties to the plaintiffs and furthered this conspiracy by taking an equity interest for himself in the purchasing entity. This complaint seeks equitable and legal relief for violations of the Employee Retirement Income and Security Act ("ERISA"), 29 U.S.C. 1001, et. Seq., and a preliminary injunction ordering medical, dental and life insurance payments to be restored for these gravely ill, long term, faithful Polaroid employees.

## Parties

2.  Sally A. Ferrari is a 59-year-old woman who was an employee of Polaroid from December 1983 until July 2002. In her last position, she was employed as the executive assistant to the director of marketing. In 1996, Ms. Ferrari was diagnosed with moderate to severe Alzheimer's disease. Alzheimer's disease is an insidious and debilitating disease of the brain that causes the gradual loss of brain cells; it is commonly characterized as a disease that affects a person's memory and ability to function. Ms. Ferrari applied and was approved for Long Term Disability benefits in 1997. Since 2002, Ms. Ferrari has been living a totally dependent lifestyle. She cannot bathe, feed or function independently. As a result, she spends each day in the constant care of either a private day care facility or her 86 year old mother-in-law. Her husband, John Ferrari, now deceased, was unable to stay at home with his wife of 39 years because he was been forced to

       delay his retirement in order to pay for his wife's medical costs.  Ms. Ferrari is a resident of Saugus, Essex County, Massachusetts.

3.       John J. Magenheimer was an employee of Polaroid from 1977 until July 2002.  In his last position with the company, Mr. Magenheimer was the Director of the Materials and Chemical Analysis Laboratory.  In 1992, Mr. Magenheimer was diagnosed with stage-four metastatic melanoma and was told he had three months to live.  Metastatic melanoma is a deadly and incurable form of skin cancer.  Mr. Magenheimer applied and was approved for Long Term Disability Benefits in 1998.  Mr. Magenheimer survived eleven years after his diagnosis, but they were eleven years of aggressive drug therapy and constant pain. Mr. Mageheimer endured four major and twelve minor surgical procedures to remove cancer from his body.  Mr. Magenheimer died on March 24, 2004.  He was a resident of Wellesley, Norfolk County, Massachusetts.

4.       Elaine Johnson is a 59 year old woman who was an employee of Polaroid from April 1972 until July 2002.  In her last position with the company, Ms. Johnson worked as an administrative specialist in the Incoming Inspection department.  In 1990, Ms. Johnson was diagnosed with stage-three lung cancer and in 1990 had her right lung removed. She also suffers from cardiomyopathy and a pulmonary embolism that caused multiple blood clots in her remaining lung.  Ms. Johnson applied and was approved for Long Term Disability Benefits in 1991.  Ms. Johnson is a resident of Attleboro, Bristol County, Massachusetts.

5. Elizabeth M. Williams is a 50 year old woman who was an employee of Polaroid from 1973 to July 2002. Ms. Williams' last position in the company was as a senior human resources administrator. In 1988, Ms. Williams was diagnosed with systemic lupus. Lupus is a chronic autoimmune disease that causes the body's immune system to attack healthy tissue throughout the body; the disease causes, among other things, debilitating fatigue and constant pain. Ms. Williams has also developed insulin-dependent diabetes. Lupus has no known cause or cure. Ms. Williams applied and was approved for Long Term Disability Benefits in 1989. Ms. Williams is a resident of Waltham, Middlesex County, Massachusetts.

6. David A. Maniscalco is a 58 year old man who was employed by Polaroid from July 1966 until July 2002. In his last position with the company, Mr. Maniscalco was the section leader in the Distribution division. In 1976, Mr. Maniscalco had an industrial accident that caused him permanent irreparable back injury. Mr. Maniscalco's injuries caused him to be in and out of the workplace. In 1989, Mr. Maniscalco applied and was accepted for Long Term Disability Rehabilitation benefits. After that, he worked four hours per day until 1998 when he was no longer able to work. In 1998 he applied and was accepted for Long Term Disability benefits. Mr. Maniscalco is a resident of Mansfield, Bristol County, Massachusetts.

7. The defendant Polaroid Corporation ("new Polaroid") is a Delaware Corporation with a principal place of business in Waltham, Middlesex County, Massachusetts.

New Polaroid was formerly called OEP Imaging Operating Corporation ("OEPI") and was an affiliate of One Equity Partners, Inc.

8. Neal David Goldman is the former General Counsel and Vice President and Secretary of the "old" Polaroid. He is a resident of Massachusetts and, until recently, was employed by the "new" Polaroid.

## Jurisdiction and Venue

9. his Court has jurisdiction under 28 U.S.C. § 1331 in that the plaintiffs' claims arise out of the terms and conditions of the applicable employee benefit plan, enforcement of which is authorized by § 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132.

10. Venue is proper in the District of Massachusetts under 28 U.S.C. § 1132(e)(2) in that the defendants reside and have principal places of business in Cambridge, Middlesex County, Massachusetts and Needham, Norfolk County, Massachusetts.

## Facts

11. The plaintiffs were employees of the original Polaroid Corporation.

12. In June 2002, pursuant to an order of the United States Bankruptcy Court, "new Polaroid," then calling itself OEPI, purchased the majority of "old Polaroid's" assets.

13. In August 2002, the original Polaroid Corporation, which retained 35% of its company's assets after the sale to OEPI, changed its corporate name to Primary PDC, Inc ("PDC"). PDC has a principal office in Cambridge, Middlesex County,

Massachusetts. (The original Polaroid Corporation and PDC will be referred to as "the old Polaroid.")

14. At the same time in August 2002, OEPI changed its name to Polaroid Corporation.

15. The "old" Polaroid at all relevant times maintained a qualified employee benefit plan as defined by 29 U.S.C. § 1002(3).

16. At all relevant times, the "old" Polaroid was a fiduciary of its employee benefit plan as defined by 29 U.S.C. § 1102(a).

17. The defendant Neil Goldman was a fiduciary of the Polaroid employee benefit plan as defined by 29 U.S.C. § 1102(a). At all relevant times he was a member of the Polaroid Benefits Committee and made decisions regarding Polaroid's employee benefit plan.

18. Goldman has an equity interest in the "new" Polaroid and negotiated and acquired that interest at the same time he acted as a fiduciary of the Polaroid employee benefit plan.

19. Each plaintiff was an employee of the "old" Polaroid Corporation until his or her termination from the company in July 2002.

20. Long Term Disability benefits were a condition of employment at the "old" Polaroid.

21. At hire and at various times throughout their employment, each "old" Polaroid employee received documents stating the terms of their employment benefits, including Long Term Disability, medical, dental, and life insurance.

22. Throughout the term of their employment, and prior to their receipt of Long Term Disability benefits, the "old" Polaroid deducted a portion of the premium for medical, dental, and life insurance benefits from each employee's paycheck.

23. Once an employee was qualified to receive Long Term Disability benefits, the "old" Polaroid paid the full medical, dental, and life insurance premiums at no cost to the employee, in addition to salary continuation, for so long as the employee remained disabled.

24. At some point during the course of each plaintiff's employment, he or she applied for Long Term Disability benefits pursuant to the "old" Polaroid's employee benefit plan.

25. Following his or her application for Long Term Disability benefits, each plaintiff received a letter from the "old" Polaroid stating that he or she was approved for the receipt of benefits pursuant to the plan. In addition, the letter detailed the employee's right to additional benefits pursuant to the plan.

26. In addition to other promises, each plaintiff's acceptance letter stated in all capital letters:

> ALL INSURANCE PREMIUMS THAT WERE BEING DEDUCTED FROM YOUR POLAROID PAYCHECKS WILL BE PAID FOR BY POLAROID WHILE YOU ARE ON LTD.

27. None of the Long Term Disability benefit acceptance letters included a limitation or reservation of rights by Polaroid or indicated that Polaroid's payment of medical, dental, and life insurance premiums was contingent in any way.

28. The Long Term Disability salary benefit itself is not contingent upon future employment with the company. All of the plaintiffs continue to receive the salary payments. The fiduciaries of the "old" Polaroid's employee benefit plan insured the Long Term Disability salary reimbursement benefit so that the benefit survived an employee's termination from the company.

29. The plaintiffs, all employees out of work on Long Term Disability, are by definition sick individuals who incur higher than average health care costs and who incur higher than average life insurance premiums.

30. In applying for and receiving Long Term Disability benefits, the plaintiffs were exercising a right to which they were entitled under the provisions of Polaroid's employee benefit plan.

31. The plaintiffs, and all other "old" Polaroid employees receiving LTD benefits, were not re-hired by the "new" Polaroid. Instead, all persons receiving LTD benefits in July 2002 were sent an unsigned letter on Polaroid letterhead informing them that they were no longer Polaroid employees and would not be re-hired by OEP. The letter also stated that all medical, dental, and life insurance premiums would cease immediately.

32. Polaroid ceased payments for the plaintiffs' medical, dental, and life insurance as of July 2002.

33. "Old" Polaroid employees not out of work on Long Term Disability benefits were not terminated by Polaroid and were re-hired by the "new" Polaroid.

34. The plaintiffs were promised that each would receive medical and life insurance benefits for the entire term of the Long Term Disability coverage. Each plaintiff was thus entitled to receive medical, dental, and life insurance benefits for the entire term of their Long Term Disability benefit.

35. When the plaintiffs were approved for Long Term Disability benefits and began to receive these benefits, their benefits vested and could not be lawfully modified or terminated thereafter.

36. The acceptance-for-benefits letter received by each plaintiff constituted a novation of the LTD plan's terms as outlined in the then existing plan documents

37. Alternatively, the acceptance of benefits letter constituted a Summary Plan Description as defined by 29 U.S.C. §1022.

38. By its acts and omissions old Polaroid breached the terms of its employee benefit plan as to each of the plaintiffs.

39. As a direct result of the defendants' conduct, the plaintiffs have been forced to pay out of pocket for medical, dental, and/or life insurance benefits at substantial cost and hardship or, if they could not afford these payments, they have lost such insurance coverage.

## COUNT I
**CONSPIRACY TO VIOLATE ERISA SEC. 510 (29 U.S.C. § 1140)**
**Defendant Polaroid Corporation**

The plaintiffs repeat and reallege the foregoing.

40. Prior to the sale of the assets of the old Polaroid to the entity that is now the defendant new Polaroid, the two corporations entered into an illegal agreement to wrongfully reduce old Polaroid's obligations toward its employees who were receiving LTD benefits. In that agreement, the old Polaroid conspired with the new Polaroid to terminate all employees receiving Long Term Disability benefits. This was done for the purpose and with the specific intent of interfering with the plaintiffs' rights to and attainment of the medical, dental, and life insurance benefits that were promised to them and which are terms of the Polaroid LTD Plan.

41. Both the "new" and the "old" Polaroid, knew or should have known that such a termination of employees because they applied for and received Long Term Disability benefits would violate § 510 of ERISA, which prohibits discrimination against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan.

42. This agreement constituted a conspiracy between the "old" Polaroid and the "new" Polaroid to interfere with the plaintiffs' rights to and attainment of the medical, dental, and life insurance premium benefits that were promised to them and which constituted a term of the Polaroid LTD Plan, in violation of § 510 of ERISA. The conduct constituting this conspiracy took place prior to the asset sale in August 2002.

43. "New" Polaroid's participation in this conspiracy violated § 510 of ERISA which makes it "...unlawful for any person to...discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan...."

44. "New" Polaroid is liable, in its own right, for its § 510 violation.

## COUNT II
### BREACH OF FIDUCIARY DUTY UNDER ERISA
### Defendant Neal Goldman

The plaintiffs repeat and reallege the foregoing.

45. As a fiduciary of an employee benefit plan, Goldman had a duty to act in the best interests of the beneficiaries and the plan. Goldman should have ensured that "old" Polaroid properly insured or otherwise adequately secured the promised medical, dental, and life insurance premiums, just as it insured the salary continuation benefit.

46. Goldman breached his fiduciary duty to the plaintiffs and to the plan by failing to ensure that "old" Polaroid insured or otherwise adequately secured the medical, dental, and life insurance premiums that were promised to each plaintiff in his or her acceptance for benefit letter.

47. Additionally, instead of acting in the best interests of Polaroid employees receiving Long Term Disability benefits and of the benefits plan, Goldman acted in his own self-interest by negotiating and accepting employment and an equity interest in the "new" Polaroid. Goldman thus had an interest in the "new"

       Polaroid that would be satisfied if the asset sale agreement went through, giving Goldman an incentive to terminate the employees on Long Term Disability that directly conflicted with his fiduciary duties toward the plaintiffs and the plan.

48. By his acts, Goldman breached his fiduciary duty to the plaintiffs and the plan.

49. By his acts, Goldman committed a prohibited transaction, as defined by 29 U.S.C. § 1106(b).

## COUNT III
### Request for Appropriate Equitable Relief Pursuant to ERISA § 502(a)(3)
### Defendant Neal Goldman

       The plaintiffs repeat and reallege the foregoing.

50. The defendant Neal Goldman violated his fiduciary duties to the plaintiffs and the plan. His violations constituted an ERISA violation for which the plaintiffs have a right to seek redress.

51. The plaintiffs are each beneficiaries of the Polaroid LTD Plan.

52. Defendant Goldman's failure to insure the plaintiffs' medical, dental and life insurance benefits, despite Plan assurances to the contrary, caused these benefits to cease.

53. The plaintiffs are entitled to be made whole for the defendant's breach of his fiduciary duty.

## Relief Requested

AS A RESULT of the above wrongful conduct by the defendants, the plaintiffs' rights have been violated. They have been damaged and have been otherwise injured. Further, as a result of Goldman's conduct, the LTD Plan has suffered injury and losses.

WHEREFORE, the plaintiffs demand:

1) declaratory judgment certifying the rights of Sally A. Ferrari, Elaine Johnson, John Magenheimer, David Maniscalco, and Elizabeth Williams, and their surviving spouses to receive medical and life insurance premium payments in addition to Long Term Disability benefits.

2) A declaratory judgment that each of the defendants has violated the plaintiffs' rights as protected by 29 U.S.C. § 1001 *et seq.*.

3) A preliminary injunction ordering restoration of medical, dental, and life insurance, payment of all premiums, and reimbursement of all amounts paid by the plaintiffs to maintain such insurance to date.

4) A permanent injunction ordering restoration of medical, dental, and life insurance, payment of all premiums, and reimbursement of all amounts paid by the plaintiffs to maintain such insurance to date and ordering the defendant to retain the plaintiffs as employees of Polaroid Corporation for the purpose of the restoration of their promised medical, dental, and life insurance premium benefits.

5) A judgment in favor of the plaintiffs and the plan for damages incurred as result of the defendants' ERISA violations and for all appropriate equitable relief allowable by law;

6) An award of the plaintiffs' attorneys' fees pursuant to § 502(g)(1) of ERISA, 29 U.S.C. §1132(g)(1).

7)   A Grant of such further equitable and legal relief as this court deems fitting and just.

The plaintiffs demand a jury trial as to all applicable claims.

                    Respectfully submitted,
                    Sally A. Ferrari, Elaine Johnson, John Magenheimer,
                    David Maniscalco, and Elizabeth Williams,
                    By their attorneys,

                    /s/ Harvey A. Schwartz
                    Harvey A. Schwartz
                     BBO # 448080
                    Laurie A. Frankl
                     BBO # 647181
                    Rodgers, Powers and Schwartz, LLP
                    18 Tremont Street, Suite 500
                    Boston, MA 02108
                    617-742-7010

Dated: September 21, 2004