

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

---

SALLY FERRARI, ELAINE JOHNSON
JAMES A. MAGENHEIMER, as executor of the
ESTATE OF JOHN MAGENHEIMER,
ELIZABETH WILLIAMS, and DAVID A.
MANISCALCO,

    Plaintiffs,

  v.

POLAROID CORPORATION and
NEAL GOLDMAN,

    Defendants.

---

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

**Civil Action No. 03-11275-MLW**

---

## POLAROID CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

Jerome A. Hoffman
Matthew Lee Wiener
DECHERT LLP
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, PA 19103
(215) 994-4000

Richard D. Glovsky
Jeffrey J. Pyle
PRINCE, LOBEL, GLOVSKY & TYE
585 Commercial Street
Boston, MA 02109
(617) 456-8000

Dated: October 22, 2004

## I. INTRODUCTION

In July 2002, the United States Bankruptcy Court for the District of Delaware approved the arms' length sale of the assets of the bankrupt debtor that Plaintiffs call "Old Polaroid" to OEP Imaging Operating Corporation (since renamed Polaroid Corporation), which Plaintiffs call "New Polaroid." The Bankruptcy Court's order approving the sale ("Sale Order") (attached with its key provisions highlighted) specifically provided that the assets of Old Polaroid were being purchased by New Polaroid "free and clear" of any liabilities arising from or relating to Old Polaroid's employee benefits plans. The Sale Order also barred any and all successor liability claims against New Polaroid.

Plaintiffs worked for Old Polaroid until (well before the bankruptcy filing) each of them became permanently disabled and qualified for salary continuation benefits under Old Polaroid's Long-term Disability Plan ("LTD Plan"). Old Polaroid also covered Plaintiffs, like all LTD Plan recipients, under its healthcare plans and paid their plan premiums. Before selling its assets to New Polaroid, Old Polaroid terminated the employment of Plaintiffs and the rest of its employees, then terminated all of its benefit plans. Plaintiffs' LTD Plan salary continuation payments were separately insured and were therefore unaffected by the bankruptcy and the termination of the LTD Plan. The insurance carrier continues to pay them in full.

Plaintiffs allege that Old Polaroid breached its promise to provide them with paid healthcare benefits so long as they remained disabled, thereby violating § 510 of ERISA, 29 U.S.C. § 1140, which prohibits an employer from "discriminating" against plan participants to prevent them from "attaining" plan benefits to which they are entitled. Rather than filing

a claim against Old Polaroid in the Bankruptcy Court to recover their claimed vested benefits, Plaintiffs have sought to circumvent the Bankruptcy Code's priority scheme by suing New Polaroid in this Court, charging it as "conspirator" in Old Polaroid's alleged ERISA § 510 violation. Plaintiffs ask the Court to order New Polaroid to "restore" their paid healthcare benefits under Old Polaroid's plans.

New Polaroid has moved this Court to transfer this action to the United States District Court for the District of Delaware.[1] If, however, the Court chooses not to transfer this case, it should dismiss Plaintiffs' claim against Polaroid for two independent, but equally compelling, reasons. First, the Sale Order specifically provides that New Polaroid, having bought Old Polaroid's assets "free and clear" under the Bankruptcy Code, is not liable for Old Polaroid's benefit plan liabilities. Second, ERISA does not authorize a cause of action for conspiracy to violate § 510, and the Court should decline to write one into the statute.

## II. STATEMENT OF THE CASE

Plaintiffs originally filed this suit as a class action against Old Polaroid, New Polaroid, and New Polaroid's largest shareholder, One Equity Partners. (Compl. at 1.) Six counts long, Plaintiffs' original Complaint sought to hold each defendant liable for (1) Old Polaroid's termination of Plaintiffs' paid healthcare benefits (to which Plaintiffs claimed entitlement so long as they remained disabled), (2) Old Polaroid's alleged breach of

---

[1]       The case would then be assigned to the Bankruptcy Court pursuant to the District Court's standing order of reference.

- 2 -

fiduciary duty in failing to insure those benefits (as it had done with the LTD Plan benefits), (3) New Polaroid's failure to hire Plaintiffs, and (4) Old Polaroid's termination of Plaintiffs' employment. (Compl. at 10-14 (¶¶ 35-58).)

New Polaroid and One Equity Partners moved the Court to transfer the case to the District of Delaware (for referral to the Bankruptcy Court) or, in the alternative, to dismiss the Complaint for failure to state a claim. Old Polaroid invoked the automatic stay provision of the Bankruptcy Code (11 U.S.C. § 362(a)). (Polaroid Corp.'s Mot. to Dismiss Pls.' Compl.; Primary PDC, Inc.'s Suggestion of Bankr. and Notice of Operation of Automatic Stay Provision.) New Polaroid and One Equity Partners also filed an adversary proceeding in the Bankruptcy Court seeking a declaration that this suit is barred by the Sale Order.

Plaintiffs responded by filing their Amended Complaint, in which they dropped five of the six counts pleaded against New Polaroid and two of the defendants named in the original Complaint, Old Polaroid and One Equity Partners. In response, New Polaroid again moved to dismiss the Amended Complaint (Polaroid Corp.'s Mot. Dismiss Pls.' Am. Compl.), renewed its transfer motion and re-filed its adversary proceeding in the Bankruptcy Court.

Plaintiffs then filed the Second Amended Complaint now before the Court in which they have dropped their class action allegations, but have otherwise reproduced the same substantive allegations that appeared in the Amended Complaint. Only a single § 510 count

- 3 -

for alleged "conspiracy" to terminate Plaintiffs' Old Polaroid healthcare benefits remains in this suit against New Polaroid. (Second Am. Compl. ¶¶ 40-44 (Count I)).[2]

While Plaintiffs purport to challenge Old Polaroid's termination of *their* benefits, they are actually challenging Old Polaroid's termination of the benefit plans under which they received those benefits—benefits, Plaintiffs claim, that Old Polaroid promised them for so long as they remained disabled. (Second Am. Compl. ¶¶ 32-39.) Section 510 of ERISA will not support this challenge. Section 510 prohibits an employer from discriminating against a participant to deprive him or her of benefits under a plan; it does not in the least restrict an employer's right to terminate the plan altogether—a right that Old Polaroid specifically retained in its plan documents and, in connection with the sale of its assets in bankruptcy, lawfully exercised. *See infra* § III(B)(2) note 9. New Polaroid does not seek dismissal of the Second Amended Complaint on this ground, however, because the Second Amended Complaint still does not plead the fact and date of plan terminations.

Rather, New Polaroid takes Count I of Plaintiffs' Second Amended Complaint as it is pled and asks the Court to dismiss it on two independent grounds: first, that it is barred by the Bankruptcy Court's Sale Order (as established in § IV(A)); and second, that ERISA does not provide a cause of action for conspiracy to violate § 510 (as established in § (IV)(B)).

---

[2]    The Second Amended Complaint's other two counts (Counts II and III) are pleaded against a former Old Polaroid officer, Neal Goldman, in his alleged capacity as a fiduciary of the *Old Polaroid's* benefit plans at issue in this case. (Sec. Am. Compl. ¶ 17.) Mr. Goldman is separately represented.

- 4 -

### III. FACTUAL BACKGROUND

The following facts are drawn from Plaintiffs' Second Amended Complaint;

documents referenced in it; and public documents on file with the Bankruptcy Court.[3]

### A.    SALE ORDER.

### 1.    Assets Ordered Sold Free and Clear of All Liabilities.

The Bankruptcy Court approved the sale of Old Polaroid's assets to New Polaroid

free and clear of all liabilities. (Sale Order at 14-15.) Issued after notice to all interested

parties, including Plaintiffs, *infra,* § I(B), the Sale Order specifically provides that New

Polaroid "is not assuming[,] and shall have no liability or responsibility, as a successor or

otherwise," for any "liabilities" or "obligations" "relating to or arising from" Old Polaroid's

"ownership" of the assets or Old Polaroid's "operations" "on or prior to the Closing Date."

(*Id.* at 20-21 (¶ 23).)

Among the liabilities that the Sale Order expressly excludes from the list of those

assumed by New Polaroid are "any obligations which might otherwise arise [under], or

pursuant to, the Employee Retirement Income Security Act of 1974 [ERISA]," among them

---

[3]      In deciding a Rule 12(b)(6) motion, a district court may consider documents "integral to or explicitly relied upon in the complaint, even though not attached to the complaint, without converting the motion into one for summary judgment." *The Clorox Co. of Puerto Rico v. The Procter and Gamble Commercial Co.*, 228 F.3d 24, 32 (1st Cir. 2000) (citation omitted). ERISA plans are among the documents that the First Circuit has allowed district courts to consider. *See, e.g., Cogan v. Phoenix Life Ins. Co.*, 310 F.3d 238, 241 n.4 (1st Cir. 2002). A district court may likewise consider "matters fairly incorporated within" a complaint and "matters susceptible to judicial notice, and may in particular 'look to matters of public record in deciding a Rule 12(b)(6) motion.'" *In Re Colonial Mortgage Bankers Corp. v. Lopez-Stubbe*, 324 F.3d 12, 15-16 (1st Cir. 2003) (citation omitted). Consistent with these well-established principles, we have attached to this brief the documents listed on the Table of Documents that appears in the brief's Appendix; among them are the applicable benefit plans. In their two briefs opposing Polaroid's two prior motions to dismiss, Plaintiffs have acknowledged that the Court may consider the attached documents consistent with Rule 12(b)(6).

- 5 -

the "obligation to pay" any "benefits" to employees of Old Polaroid. (*Id.* (¶ 23).) As for these ERISA liabilities, the Sale Order could not be any clearer than it is: *"[T]he Purchaser [New Polaroid] shall have no liability with respect to any . . . employee pension, employee welfare or retention, compensation, benefit and/or incentive plan, agreement, practices, or program" to which Old Polaroid was "a party."* (*Id.* (¶ 23) (emphasis added).) The Sale Order also provides that New Polaroid "shall have no obligation . . . for the dismissal by the Debtors of employees . . . ." (*Id.* at 22 (¶ 23).)

The Bankruptcy Court backed these free-and-clear provisions with an injunction: Anyone holding any "Interest" in Old Polaroid—defined broadly to mean any liability related to Old Polaroid, including employment liabilities— is "forever barred, estopped, and permanently enjoined from asserting against [New Polaroid] . . . such person's . . . respective Interests." (*Id.* at 15 (¶ 7).) Further: "No such persons . . . shall assert against" New Polaroid "any liability," "claim, or obligation, relating to or arising from the ownership or operation of the Acquired Assets . . . ." (*Id.*) The same paragraph specifically enjoins any "party" to "any employee welfare" "plan," "agreement," or "program," from suing New Polaroid with respect to "any and all claims arising from or relating thereto." (*Id.* at 22-23 (¶ 23).)

A companion provision of the Sale Order wipes out any successor liability claims of whatever kind against New Polaroid. *"The Purchaser is not and shall not be deemed a successor of or to the Debtors for any Interest against or in the Debtors, [or] the Acquired Assets . . . ."* (*Id.* at 23 (¶ 24) (emphasis added).) This provision, in turn, is also backed by an injunction, which bars Old Polaroid employees from asserting any successor liability

- 6 -

claims against New Polaroid: "[A]ll . . . employees, . . . [and] former employees shall be, and hereby are, forever barred . . . and permanently enjoined from asserting such Interests . . . against" New Polaroid as "an alleged successor . . . with respect to any Interest of any kind whatever such person . . . had, has or may have against or in "Old Polaroid." (*Id.* at 24 (¶ 24)).

## 2.    Notice to Plaintiffs of Sale Order and Opportunity to Object.

Before issuing the Sale Order, the Bankruptcy Court afforded all interested parties, including Plaintiffs, an opportunity to object to its terms at a sale hearing. Notice of the hearing was provided to each Plaintiff by mail (Ex. 2 ("Declaration of Mailing")),[4] and published in *The Boston Globe, The New York Times*, and *The Wall Street Journal*. (Ex. 3 ("Notice of Publication")).[5] The Bankruptcy Court found that "adequate and sufficient notice" was "given to all parties-in-interest" and that "all interested parties" were "afforded an opportunity to be heard" with respect to the sale. (Sale Order at 2-4.)

On June 28, 2002, the Bankruptcy Court held a hearing on the terms of the proposed sale. (*Id.* at 2.) Plaintiffs did not participate. Neither before nor after the hearing did any of

---

[4]    The names of four of the Plaintiffs (Elaine Johnson, John Magenheimer, Elizabeth Williams, and David A. Maniscalco) appear on pages 607, 723, 1288, and 730, respectively, of Exhibit B of the "Declaration of Mailing." (Ex. 2.) Notice to one of the Plaintiffs, Sally Ferrari (who suffers from Alzheimer's disease (Sec. Am Compl. ¶ 2), was sent to her husband. (Ex. 2 (p. 395 of Exhibit B to the "Declaration of Mailing")).

[5]    Both the newspaper notices and the notice served on each Plaintiff had the same text. (Exs. 2-3.) The notice provides, in relevant part, that under "the terms of the Asset Purchase Agreement . . . the Debtors are selling" the business assets "free and clear of liens, claims, encumbrances and interests" to New Polaroid, "subject to higher and better offers and Court approval"; that an auction would be held on June 26, 2002; that a sale hearing would be held before the Bankruptcy Court on June 28, 2002; and that all objections to the sale had to be lodged with the Bankruptcy Court or would be forever waived. (Ex. 2.) The notice also instructed recipients how to obtain copies of the documents referenced in it. (*Id.*)

them otherwise voice any objections to the proposed terms of sale. (Ex. 1.) Plaintiffs have

not at any time in the more than two years since the Sale Order was issued sought any relief

from the Bankruptcy Court or filed with it any claims against Old Polaroid to recover the

alleged benefits that they claim Old Polaroid owes them. (*Id.*)[6]

## B.    PLAINTIFFS' EMPLOYMENT WITH OLD POLAROID AND LTD STATUS.

### 1.    Employment With Old Polaroid.

Each of the five Plaintiffs once worked for Old Polaroid; none has ever worked for

New Polaroid. Between 1989 and 1998, each Plaintiff suffered a disability that rendered

him or her permanently unable to work. It is undisputed that none of the Plaintiffs was

working or able to work for Old Polaroid when Old Polaroid filed for bankruptcy or when it

sold its assets to New Polaroid. In fact, none had worked for years.[7]

### 2.    Plaintiffs Receipt of Coverage under Old Polaroid's LTD Plan.

Having established permanent disability status, each Plaintiff qualified for coverage

under Old Polaroid's LTD plan, which provided for salary continuation payments consisting

of about two-thirds of an employee's last salary. (Ex. 4.) Old Polaroid insured the plan

through an outside insurance carrier, which paid Plan benefits directly to the recipients.

---

[6]    By contrast, numerous retirees objected to the proposed sale agreement because it made no provision for New Polaroid's assumption of Old Polaroid's retiree healthcare benefits, just as it made no provision for the assumption of Old Polaroid's LTD liabilities. (Preliminary Objection of the Official Committee of Retirees (Bankruptcy Court docket no. 1024).) Old Polaroid eventually reached a pre-sale, court-approved settlement with the retirees within the context of the bankruptcy proceeding. (Stipulation and Order (i) Settling Claims and Controversies and (ii) Providing for Release (Bankruptcy Court docket no. 1067).)

[7]    Sally Ferrari qualified for Old Polaroid's LTD benefits in 1997, John Magenheimer and David Maniscalco in 1998, Elaine Johnson in 1991, and Elizabeth Williams in 1989. (Second Am. Compl. ¶¶ 2-6.)

(Second Am. Compl. ¶ 28.) Plaintiffs still receive from the carrier the full amount of the salary continuation benefits provided for under the LTD Plan. (*Id.*)

Once Plaintiffs qualified for LTD Plan benefits, Old Polaroid also continued their coverage under its medical and dental plans. The healthcare plans provided that an LTD Plan recipient could continue participating "until he terminates, retires, dies, or recovers from such disability," (Ex. 5 at 6 (§ 3.04 of Medical Plan); Ex. 6 at 7 (§ 3.04 of Dental Plan)), as did the LTD Plan itself (Ex. 4 (§ 3.02)). Plaintiffs allege that, under the LTD Plan, Old Polaroid was responsible for paying their healthcare plan premiums. (Second Am. Compl. ¶ 23.)

Old Polaroid expressly reserved the right to terminate both the LTD Plan and the healthcare plans at any time. (Ex. 4 at 15 (LTD Plan, § 9.02 ) ("[T]he Company will have *no obligation whatsoever to maintain the Plan for any given length of time and may discontinue or terminate the Plan at any time* without liability.") (emphasis added); Ex. 5 at 14 (Medical Plan, § 9.02) ("[T]he Company will have *no obligation whatsoever to maintain the Plan for any given length of time and may discontinue or terminate the Plan at any time without liability.") (emphasis added); Ex. 6 at 16 (Dental Plan, § 9.02) (same)).[8]

---

[8]    Old Polaroid terminated these welfare benefit plans, as well as all of its other benefit plans, at the time of the bankruptcy sale (as a bankrupt debtor would customarily do). Under ERISA, an employer may modify or eliminate a welfare benefit plan at any time—even absent the type of reservation-of-rights language that appeared in the old Polaroid plans—unless the plan says otherwise. The reason is that welfare-plan benefits (like the LTD and healthcare benefits at issue here) do not vest by law. *See, e.g., Curtis-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 74 (1995); *Campbell v. BankBoston, N.A.*, 327 F.3d 1, 7 (1st Cir. 2003); *Allen v. Adage, Inc.*, 967 F.2d 695, 798 (1st Cir. 1993); *Center v. First Int'l Life Ins. Co.*, Civ. A. No. 94-11596-PBS, 1997 WL 1364473, at *7-9 (D. Mass. Mar. 13, 1997). What Plaintiffs are really complaining about here is not that their employment was terminated—they did not and could not, after all, actually work for Old Polaroid,

- 9 -

3.    **Old Polaroid's Termination of Plaintiffs' Employment.**

The Bankruptcy Court-approved asset purchase agreement (which was signed on

July 3, 2002, the same date that the Bankruptcy Court entered the Sale Order) required New

Polaroid to designate on a list (the "35 Day List") which, if any, Old Polaroid employees it

intended to hire. (Ex. 8 at § 6.08(a).)  The agreement also authorized Old Polaroid to

terminate, prior to the sale's closing date, the employment relationship of anyone not on the

35 Day List. Those identified on the 35 Day List would also have their employment

relationships with Old Polaroid terminated on the closing date, at which time New Polaroid

would hire them. (*Id.* at §6.09.)[9]

New Polaroid did not designate Plaintiffs to be hired because they were—and, in

order to receive benefits under the LTD Plan (Ex. 4, §1.02), had represented themselves to

be— permanently unable to work. (Second Am. Compl. ¶¶ 1, 2-6.) As provided in the

Bankruptcy Court-approved Asset Purchase Agreement (which the parties were expressly

authorized by the Sale Order to implement), (Sale Order ¶¶ 4, 11.), Old Polaroid terminated

its employment relationship with Plaintiffs just prior to the closing. (Ex. 8, § 6.09; Second

Am. Compl. ¶ 31.) Old Polaroid then commenced wrapping-up its affairs. (Ex. 4, § 6.09.)[10]

---

and Old Polaroid did not retain any of its employees—but that their paid healthcare benefits were terminated.
Plaintiffs are in effect trying to use § 510 to abrogate Old Polaroid's right to terminate the plans under which
the benefits were paid. The Supreme Court has made clear, however, that § 510 cannot be put to this use; it
does not take away an employer's right to terminate a plan. *See Inter-Modal Rail Employees' Ass'n v.
Atchison, Topeka & Santa Fe Railway Co.*, 520 U.S. 510 *passim* (1997).

[9]        This was done in order to address issues relating to the WARN Act. (Ex. 8, §§ 6.08-.09.)

[10]       Old Polaroid had continued to classify recipients of LTD as employees in order to continue their
eligibility for these benefits.

- 10 -

**4.    Termination of Plaintiffs' Paid Healthcare Benefits; Continuation of Plaintiffs' LTD Plan Benefits.**

On July 2, 2002, Old Polaroid informed Plaintiffs by letter that, as a result of the bankruptcy, it was terminating their employment with Old Polaroid and with it their paid healthcare benefits, but that an insurance carrier would continue to pay their LTD-Plan salary continuation benefits. (Second Am. Compl. ¶ 31; Ex. 7.) Old Polaroid stopped paying Plaintiffs' healthcare premiums on July 31, 2002, the date the bankruptcy sale closed. (Ex. 7; Second Am. Compl. ¶ 32.) Plaintiffs continue to receive the full amount of the salary continuation payments provided under the LTD Plan. (Second Am. Compl. ¶ 28.)

## IV. ARGUMENT

Set forth in paragraphs 40-44 of the Second Amended Complaint, the single count (Count I) remaining in this suit against New Polaroid alleges as follows:

- *Paragraph 40: "Prior to the sale* of the assets of old Polaroid to the entity that is now the defendant new Polaroid, the two corporations entered into an illegal agreement to wrongfully reduce Old Polaroid's obligations toward its employees who were receiving LTD benefits. In that agreement, the *Old Polaroid conspired with the new Polaroid to terminate all employees receiving Long Term Disability benefits.* This was done for the purpose and with the specific intent of interfering with the plaintiffs' rights and attainment of the medical, dental, and life insurance benefits that were promised to them and which are terms of the Polaroid LTD Plan." (emphasis added).

- *Paragraph 41:* "Both the 'new' and the 'old' Polaroid, knew or should have known that such a termination of employees because they applied for and received Long Term Disability benefits would violate § 510 of ERISA, which prohibits discrimination against a participant or a beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan."

- 11 -

- *Paragraph 42*: "This agreement constituted a conspiracy between the 'old' Polaroid and the 'new' Polaroid to interfere with the plaintiffs' rights to and attainment of the medical, dental, and life insurance premium benefits that were promised to them and which constituted a term of the Polaroid LTD Plan, in violation of § 510 of ERISA. The conduct constituting the conspiracy took place prior to the asset sale in August 2002" (emphasis added).

- *Paragraph 43*: "This conduct violated § 510 of ERISA, which makes it '. . . unlawful for any person . . . to discriminate against a participant or a beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . .'"

- *Paragraph 44:* "New Polaroid is liable, in its own right, for its § 510 violation."

This count fails to state a claim for two independent reasons: first, the Sale Order bars claims to hold New Polaroid liable for Old Polaroid's ERISA plan liabilities; and second, ERISA does not authorize a cause of action for conspiracy to violate § 510.

## A.    THE SALE ORDER BARS PLAINTIFF'S CLAIMS.[11]

Plaintiffs contend only that New Polaroid violated § 510 of ERISA by allegedly "conspiring" with Old Polaroid to terminate their paid healthcare benefits. [12] The specific conduct alleged to underlie this conspiracy is New Polaroid's failure to assume Old Polaroid's *alleged* obligation to provide Plaintiffs with paid healthcare benefits so long as

---

[11]    The preclusive effect of another court's order can, of course, be raised in a motion to dismiss under Rule 12(b)(6). *See, e.g., Colonial Mortgage Bankers Corp. v. Lopez-Stubbe*, 324 F.3d 16, 16 (1st Cir. 2003).

[12]    Plaintiffs dropped from both the Amended Complaint and Second Amended Complaint the allegation in the original Complaint that New Polaroid violated ERISA § 510 by not hiring them. In any event, any failure-to-hire claim Plaintiffs might assert would not be viable for at least two reasons: First, § 510 ERISA does not cover hiring, irrespective of the prospective employer's intent. *See Becker v. Mack Trucks, Inc.*, 281 F.3d 372, 379-83 (3d Cir. 2002) (so holding). Second, it is undisputed that Plaintiffs—each of them permanently disabled—could not at the time of the sale, and cannot now, work for New Polaroid.

- 12 -

they remained disabled. That this is the basis of Plaintiffs' ERISA § 510 claim is made clear

by the prayer for relief in their Second Amended Complaint. (Second Am. Compl. at 13-

14.) The only relief Plaintiffs ask for there (apart from attorney's fees, costs, and other

incidentals) is an order requiring New Polaroid to assume Old Polaroid's liabilities under the

welfare plans by restoring the benefits that *Old Polaroid* provided Plaintiffs under *Old*

*Polaroid's* benefit plans and to compensate Plaintiffs "equitably" for the value of the

benefits they lost under *Old Polaroid's* benefit plans. (Second Am. Compl at 13.) This

request for relief directly violates the free-and-clear provisions of the Sale Order.

1.    **A Bankruptcy Court May Order a Debtor's Assets Sold "Free and Clear" of All
      Liabilities, and Its Order Binds All Parties in Interest.**

Section 363(f) of the Bankruptcy Code gives a bankruptcy court the authority to

order the sale of the debtor's property "free and clear of any interest in such property."

11 U.S.C. § 363(f). Nearly all courts have construed "interest in property" to cover not only

specific (*in rem*) interests in the debtor's property, like liens, but also any 'other obligations

that may flow from the ownership of the property.' " *In re Trans World Airlines, Inc.*, 322

F.3d 283, 289 (3d Cir. 2003) (citation omitted); *accord In re Colarusso*, 280 B.R. 548, 557

(D. Mass. 2002).[13]

---

[13]     The authority to provide for a free and clear sale in fact exists independent of § 363(f). It is a function
of a bankruptcy court's inherent powers to administer a bankrupt estate. *See, e.g., Trans World Airlines*, 322
F.3d at 291 (holding that "the priority scheme of the Bankruptcy Code supports the transfer of TWA's assets
free and clear" irrespective of §363(f)); *In re White Motor Credit Corp.*, 75 B.R. 944, 948 (Bankr. N.D. Ohio
1987) (holding that the "authority is implicit in the court's general equitable powers")

Legal claims generally, and employment claims in particular, plainly fall within the definition of "interests." *Trans World Airlines*, the leading case, held that § 363 authorized the sale of TWA's assets to American Airlines free of both employment discrimination claims and related liabilities under a consent decree. Before that, *In re Luckie Smokeless Coal Co.*, 99 F.3d 573 (4th Cir. 1996), held that § 363(f) authorized the sale of the debtor's assets free of the debtor's financial obligations to an employee benefit plan and fund. *See id.* at 582; *see also Carcasole-Lacal v. American Airlines, Inc.*, Civ. A. No. CV-02-4359 (DGT), 2003 WL 21525484 (E.D.N.Y. July 8, 2003) (holding that the purchaser of assets out of bankruptcy was not liable for the debtor's obligations under an early retirement plan).

Once entered, a bankruptcy court sale order precludes claims by any "party in interest"—that is, anyone whose interests may have been adversely affected by the sale's terms, *see, e.g.*, *In re Savage Indus., Inc.*, 43 F.3d 714, 718 (1st Cir. 1994)—who thereafter asserts claims disposed by the order. *See, e.g.*, *In re Colarusso*, 280 B.R. 548 (D. Mass. 2002); *Cummings Properties, LLC v. Heidelberg Print Finance Americas*, No. Civ.A.01-11027-GAO, 2002 WL 1839252, at *3 (D. Mass. Aug. 12, 2002); *see also, e.g.*, *ITOFCO v. Megatrans Logistics, Inc.*, 322 F.3d 928, 932 (7th Cir. 2002) (Posner, J.) (holding that a bankruptcy sale order is entitled to res judicata effect*); In re Clinton St. Food Corp.*, 254 B.R. 523, 530 (S.D.N.Y. 2000) (same); *cf. Savage*, 43 F.3d at 720 n.9 (providing that a sale order is the "functional equivalent" of an "order confirming a conventional chapter 11 reorganization plan"). *See generally FCIC v. Shearson-American Express*, 996 F.3d 493, 498 (1st Cir. 1993) (holding that unappealed bankruptcy court "[o]rders, judgments, and decrees" are entitled to *res judicata* effect); *In re Belmont Realty Corp.*, 11

- 14 -

F.3d 1092, 1095 (1st Cir. 1993) (noting that *res judicata* applies to bankruptcy sale

orders).[14]

## 2.    The Sale Order Provides for the Sale of Old Polaroid's Assets Free from any Employee Benefit (and Other) Liabilities.

The Sale Order extinguishes any successor liability that might, outside the context of

a free-and-clear bankruptcy sale, otherwise attach to New Polaroid and enjoins any party-in-

interest from seeking to impose it. *See supra* § III(A)(1). With regard to ERISA benefits in

particular, the Sale Order could not be any more clear. It shields New Polaroid from

successor liability relating to "any obligations which might . . . arise [under], or pursuant to,

the Employee Retirement Income Security Act of 1974 [ERISA]," including the "obligation

to pay" any "benefits" to employees of Old Polaroid. (*Id.* (¶ 23).) It also provides that New

Polaroid "shall have no liability with respect to any . . . employee pension, employee welfare

or retention, compensation, benefit and/or incentive plan, agreement, practices, or program"

to which Old Polaroid was "a party." (*Id.* ¶ 23).)

Whatever label Plaintiffs choose to affix to their claim under ERISA, the inescapable

fact remains that they are seeking to have New Polaroid assume liability for Old Polaroid's

alleged promise in its "welfare plans" (Second Am. Compl. ¶ 34) to provide them with paid

healthcare benefits for so long as they remain disabled. Plaintiffs' attempt to do so must fail

---

[14]    Litigants who file suit in disregard of a free-and-clear sale order are subject to an injunction by the issuing bankruptcy court. *See, e.g., In re Paris Indus. Corp.,* 132 B.R. 504, 508-10 (D. Me. 1991); *see also In re All Am. of Ashburn, Inc.,* 56 B.R. 186, 191 (N.D. Ga. 1986); *In re P.K.R. Convalescent Ctrs., Inc.,* 189 B.R. 90, 96 (E.D. Va. 1995); *In re WBC Partnership,* 189 B.R. 97 (Bankr. E.D. Va. 1995); *In re White Motor Credit Corp.,* 75 B.R. 944 (Bankr. N.D. Ohio 1987). *See generally In re GSF Corp.,* 938 F.2d 1467 (1st Cir. 1991) (holding that a bankruptcy court has authority under 11 U.S.C. § 105(a) to issue an injunction enjoining an action contrary to the terms of the court's order of judgment).

- 15 -

under the plain language of the Sale Order. The Court should give effect to the plain

meaning of the Sale Order and hold that it bars Plaintiffs' Second Amended Complaint.

**3.     The Enforcement of "Free and Clear" Sale Orders, Like the Sale Order Here, Is
        Critical to the Administration of the Bankruptcy System.**

Public policy strongly supports giving effect to the Sale Order. First, the efficient

operation of the bankruptcy system requires that purchasers enjoy the security of knowing

that free-and-clear sale orders will be enforced as written. "One of the primary goals of the

bankruptcy regime is to maximize the assets of the debtor available to satisfy the rightful

claims of creditors." *United States v. Edwards*, 905 F. Supp. 45, 47 (D. Mass. 1995).

Liabilities attached to the assets of a bankrupt estate reduce the value of the assets when it

comes time for sale and hence the amount available for distribution to the estates creditors,

including potential claimants like Plaintiffs. Prospective purchasers of a bankrupt estate will

pay less for the assets if they know that courts will not enforce free-and-clear sales orders as

written. *See, e.g.*, *In re Trans World Airlines, Inc.*, 322 F.3d 283, 292-93 (3d Cir. 2003); *see*

*also, e.g.*, *In re Paris Indus. Corp. v. Ace Hardware Corp.*, 132 B.R. 504, 508 n.7 (D. Me.

1991) (emphasizing that suits in contravention of a free-and-clear order "would inevitably

diminish the value to be realized in a sale by the estate, and in some cases, discourage sales

altogether"); *cf. Myers v. United States*, 2003 WL 21799968, at *6 (S.D. Cal. Apr. 10, 2003)

("[W]ho would ever purchase assets at a bankruptcy proceeding if successor liability were

not limited, despite the plain wording of the bankruptcy order?").

Similarly, it is essential to both the operation and fairness of the bankruptcy process

that potential claimants such as the Plaintiffs not be permitted to end-run the statutory

- 16 -

priority scheme established under the Bankruptcy Code by bringing claims directly related

to the bankruptcy in another forum. Under the Bankruptcy Code, parties with claims against

the debtor must file them before the bankruptcy court and, by doing so, submit to the Code's

priority scheme for distributing the assets of the debtor (i.e., the proceeds of the sale) among

its creditors. To permit otherwise would allow some claimants to "jump the queue" and

receive a greater share than other similarly situated creditors. Such actions are entirely

inconsistent with the operation of the bankruptcy system. *See, e.g.*, *In re Trans World

Airlines*, 322 F.3d at 292; *see also, e.g.*, *Myers v. United States*, 2003 WL 21799968, at *6

(S.D. Cal. Apr. 10, 2003) ("Allowing Plaintiffs to disregard the plain language of the

Bankruptcy Court Order would allow unsecured claims to receive greater protection than

secured claims.").

## B.    ERISA DOES NOT PERMIT CLAIMS FOR CONSPIRACY TO VIOLATE § 510

Even were the Sale Order not dispositive, Plaintiffs' Second Amended Complaint

would not state a claim against New Polaroid because ERISA § 510 does not authorize a

cause of action for conspiracy.

### 1.    ERISA § 510 Does Not Authorize a Cause of Action for Conspiracy.

Plaintiffs do not have a cause of action under the plain language of ERISA § 510, the

only statutory section on which they base their claim. That section provides, in relevant

part, that it "shall be unlawful for any person to discharge, fine, suspend, expel, discipline,

or discriminate against a participant . . . for the purpose of interfering with the attainment of

any right to which such participant may become entitled . . . [under an ERISA] plan . . . ."

- 17 -

29 U.S.C. § 1140. Plaintiffs allege that Old Polaroid, not New Polaroid, "discharge[d]" Plaintiffs with the *alleged* intent of depriving them of benefits. It is not alleged, nor could it be alleged, that New Polaroid was a "person" that employed Plaintiffs or that it provided the benefits that Old Polaroid allegedly prevented Plaintiffs from attaining. It is undisputed (in fact it is affirmatively alleged) that Plaintiffs were Old Polaroid's, not New Polaroid's, employees, and that Old Polaroid sponsored the benefit plans on which Plaintiffs' claims are based. (Second Am. Compl. ¶¶ 15, 21, 24, 33, 40.)

The only federal court of which New Polaroid is aware to have addressed whether ERISA § 510 authorizes a conspiracy cause of action answered "no." *See Cipollone v. University of Pennsylvania*, No. Civ. A. 97-6565, 1998 WL 47285, at *2 (E.D. Pa. Feb. 3, 1998). The non-employer in *Cippollone* was a firm to which a university had subcontracted work, resulting in the termination of the university employees who previously performed the work. *See id.* at *1. The employees alleged that the university terminated them to avoid ERISA liabilities. Much like here, the conspiracy was alleged to reside in the subcontracting agreement. *See id.* The court dismissed the § 510 conspiracy claim pled against the subcontractor for failure to state a claim, concluding that [t]here is no indication of any statutory basis for Plaintiffs' claim and *ERISA itself contains no explicit cause of action for civil conspiracy.*" *Id.* at 2 (emphasis added).

## 2.    The Court Should Not Write a Conspiracy Cause of Action Into § 510.

Only by grafting a "conspiracy" cause of action onto § 510—extending liability not just to the "person" who discriminates against an employee, but also to a third party that

conspires to bring about the discrimination—can the Court find that Count I states a claim against New Polaroid. The Court should not do so.

ERISA is a "comprehensive and reticulated statute." *Mertens v. Hewitt Assoc.*, 508 U.S. 248 (1993). The Supreme Court has several times strongly "emphasized" its "unwillingness to infer causes of action in the ERISA context." *Id.* at 254; *see also Aetna Health Inc. v. Davila*, -- U.S. --, 124 S. Ct. 1288 (2004) ("'The six carefully integrated civil enforcement provisions found in § 502(a) of [ERISA] as finally enacted provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.'") (quoting *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 174 (1985)); *see also Sampson v. Rubin*, No. Civ. A. 00-10215-DPW, 2002 WL 31432701, at *6 (D. Mass. Oct. 29, 2002) ("I am mindful of the Supreme Court's 'unwillingness to infer causes of action in the ERISA context' ").

Relying on the Supreme Court's recognition that causes of action under ERISA are limited to those specifically enumerated in the statute, the First Circuit held in *Reich v. Rowe* that ERISA does not permit claims against nonfiduciaries for knowingly participating in a fiduciary breach. 20 F.3d 25, 30 (1st Cir. 1994). As one district court has held, *Rowe* provides strong support for the conclusion that there is no cause of action for conspiracy to breach ERISA-imposed fiduciary duties. *See Riley v. Murdock*, 890 F. Supp. 444, 454 (E.D.N.C. 1995) (relying on *Rowe* for holding that ERISA "does not prohibit anyone from 'conspiring' with a fiduciary for any purpose, just as it does not prohibit 'aiding and abetting' the breach of fiduciary duty."); *cf. Daley v. Wellpoint Health Networks, Inc.*, 146 F. Supp. 2d 92, 104 & n.17 (D. Mass. 2001) (dismissing claim against supervisor alleged to

- 19 -

have aided and abetted the employer in its violation of Title VII of the Civil Rights Act of 1964 because "Title VII has no analogue to [a state law]'s 'aiding and abetting' provision which has been held to permit the naming of individual defendants in state discrimination suits").

3.    **The Ninth Circuit's Decision in *Lessard* Does Not Support Plaintiff's Position.**

Plaintiffs have claimed in several briefs already submitted to the Court that ERISA § 510 authorizes a conspiracy cause of action.  Of the dozen or so cases Plaintiffs have cited to the Court, however, not a single one recognized a cause of action for conspiracy to violate *any* provision of ERISA, let alone § 510.  In particular, Plaintiffs have claimed that *Lessard v. Applied Risk Management*, 307 F.3d 1020 (9th Cir. 2002), recognized a cause of action for conspiracy to violate § 510 against the buyer of assets, but *Lessard* did no such thing.  In fact, the word "conspiracy" does not even appear once in *Lessard*.

As its opinion makes clear, the Ninth Circuit in *Lessard* imposed liability on the buyer upon finding that it was a *successor* to the seller.  The buyer and seller in *Lessard*, neither one of which was in bankruptcy, entered into an asset purchase agreement that required the buyer to hire all of the seller's employees except for those who were, at the time of sale, collecting leave-related benefits under several ERISA welfare plans.  *See id.* at 1022.  Those employees were "presumptively terminated."  *Id.* at 1024.  The Ninth Circuit held that the seller thereby violated § 510 and that the buyer was liable for the violation

- 20 -

under traditional corporate successorship principles.[15] *See id.* at 1024. There is no discussion whatsoever of conspiracy in the court's decision. Given that establishment of a cause of action for conspiracy to violate § 510 would constitute a dramatic expansion of ERISA liability, if Ninth Circuit intended to hold the purchaser liable under such a theory, it surely would have said so.

## V. CONCLUSION

For the reasons stated above, the Court should dismiss Plaintiffs' Second Amended Complaint with prejudice as against New Polaroid.

Respectfully submitted,

Jerome A. Hoffman
Mathew Lee Wiener
Dechert LLP
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, PA 19103
(215) 994-4000

Richard D. Glovsky
Jeffrey J. Pyle
Prince, Lobel, Glovsky & Tye LLP
585 Commercial Street
Boston, MA 02109
(617) 456-8000

Dated: October 22, 2004

---

[15]    This is made clear in the very first line of the opinion, where the court labels the buyer the seller's "successor," and in the last paragraph of the opinion, where the court discusses the appropriateness of holding the buyer liable for the seller's termination of its employees. *See id.* at 1022, 1027. Commentators have read *Lessard* to impose liability on the buyer under a successorship theory. *See, e.g.,* CAL. JUR. *Corporations* § 215 (3d ed. 2003); *see also Products Liability: Liability of Successor for Injury Caused by Product Issued by Predecessor,* 66 A.L.R.3d 824 (2003). There would be no other viable basis on which to hold the buyer of assets liable under § 510 except as a successor. A buyer could not be held liable under § 510 for failing to hire the seller's employees (even if to avoid benefits costs) for the simple reason that § 510 does not cover hiring. *Becker v. Mack Trucks, Inc.,* 281 F.3d 372, 379-83 (3d Cir. 2002), expressly so holds. The Ninth Circuit did not give any indication that it disagreed with the Third Circuit on this issue. Whether or not the Ninth Circuit correctly held the buyer to be a successor and what factors, if any, should trigger a successorship finding under § 510, are difficult and complicated questions that the Court need not address given the bankruptcy aspects of this case and, in particular, the Sale Order's extinguishment of successor liability claims.

## CERTIFICATE OF SERVICE

I certify that on October 22, 2004, the foregoing document was served upon

Plaintiffs' counsel of record, via First Class Mail, addressed as follows:

Harvey A. Schwartz
Rodgers, Powers & Schwartz, LLP
18 Tremont Street, Suite 500
Boston, Massachusetts 02108

Michael R. Pontrelli, Esquire
Epstein Becker & Green, PC
111 Huntington Ave.
26th Floor
Boston, Massachusetts 02199

Richard D. Glovsky

- 22 -