05- 436

Exhibit "A"

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------x
In re:                              )   Chapter 11
                                    )
PRIMARY PDC, INC.,                  )   Case No. 01-10864 (PJW)
(f/k/a Polaroid Corporation), et al.,)
                                    )   Jointly Administered
                Debtors.            )
                                    )
                                    )
------------------------------------x
                                    )
POLAROID CORPORATION                )
(f/k/a OEP Imaging Operating Corporation),)
                                    )
                Plaintiff,           )  Adv. Proc. No. 04-50342
                                    )
against                             )
                                    )
SALLY A. FERRARI, ELAINE JOHNSON,   )
JOHN MAGENHEIMER, ELIZABETH M.      )
WILLIAMS, AND DAVID A. MANISCALCO,  )
                                    )
                Defendants.         )
------------------------------------x

**OBJECTION OF POLAROID CORPORATION TO
DEFENDANTS' AMENDED MOTION TO STAY ADVERSARY PROCEEDING**

**TO THE HONORABLE PETER J. WALSH,
UNITED STATES BANKRUPTCY JUDGE:**

Polaroid Corporation f/k/a OEP Imaging Operating Corporation ("New Polaroid"), the purchaser of substantially all of the assets of the above-referenced debtors (collectively, the "Debtors") pursuant to an order of this Court dated July 3, 2002 (the "Sale

- 1 -

Order"),[1] by and through its undersigned attorneys, hereby objects to the amended motion, dated March 19, 2004 (the "Stay Motion"), of the above-referenced defendants, Sally A. Ferrari, Elaine Johnson, John J. Magenheimer, Elizabeth M. Williams, and David A. Maniscalco (collectively, the "Defendants"), to stay this adversary proceeding, and respectfully submits as follows:[2]

## PRELIMINARY STATEMENT

1. Although it is designated as an action for "conspiracy" to terminate the Defendants' employment and deprive them of certain benefits, the Defendants' pending action (the "Massachusetts Action") before the United States District Court for the District of Massachusetts (the "Massachusetts Court") is actually an attempt to hold New Polaroid liable for certain of the Debtors' pre-Sale employee obligations. New Polaroid expressly did not assume these obligations under the Purchase Agreement.

2. This Court's Sale Order expressly shields New Polaroid from the exact type of liability the Defendants have asserted against it in the Massachusetts Action. New Polaroid has therefore filed this action to request that this Court enforce its prior order and rule that the Defendants' claims are barred thereunder.

3. Although the Defendants acknowledge that the resolution of their claim in the Massachusetts Action will necessarily center on an interpretation of this Court's Sale Order and other issues pertaining to the Sale, they nevertheless request that this Court stay this action

---

[1] A copy of the Sale Order is attached as Exhibit 1 to the Complaint in this Adversary Proceeding and is incorporated herein by reference. All capitalized terms not otherwise defined herein shall have the meaning as ascribed to them in the Sale Order.

[2] The Defendants originally filed a motion to stay this Adversary Proceeding on March 15, 2004, which was superseded by their amended motion.

and defer to the Massachusetts Court to interpret this Court's Sale Order as it relates to their purported claims.

4. The Defendants' stay request flies in the face of the well-established principle that the issuing court should be the one to interpret its prior order. The Defendants should not be permitted to circumvent this Court's authority (and expressly retained jurisdiction) to address and determine matters pertaining to such prior order.[3] Rather, this Court is the most appropriate one to interpret and resolve the issues presented both in this proceeding and in the Massachusetts Action, all of which dispositively turn on the meaning of the Sale Order.

5. In addition, this Court should not sit idly by while the Defendants' Massachusetts Action threatens two key bankruptcy policies. First, the Defendants' collateral attack on the Sale Order (and the protections such Order expressly granted the purchaser, New Polaroid, thereunder) challenges the enforceability of a final and non-appealable Bankruptcy Code § 363 "free and clear" sale order, and thereby potentially undermines a key means available to debtors to maximize the value of their estates. Second, the Defendants cannot be permitted to circumvent the Bankruptcy Code's priority scheme and elevate their unsecured claims against the Debtors above all other such claims by obtaining a dollar-for-dollar recovery from New Polaroid, when the Debtors' other creditors received only a percentage recovery on their claims under the Debtors' Chapter 11 plan (the "Plan").

6. Thus, the Stay Motion should be denied, and the Court should adjudicate the matters raised in this action.

---

[3] See Sale Order, ¶ 27 (this Court retained jurisdiction over, among other things, any action to interpret or enforce the provisions of the Sale Order or to protect New Polaroid against any of the Excluded Liabilities).

## BACKGROUND

7. A more extensive description of the factual background regarding this Adversary Proceeding is contained in (a) New Polaroid's Complaint in this action, seeking declaratory relief pursuant to Bankruptcy Code §§ 105(a) and 363 and Bankruptcy Rules 7001 and 7004, and (b) its Memorandum of Law in Support of Motion of Polaroid Corporation for Judgment on the Pleadings, filed simultaneously herewith (the "Judgment on the Pleadings Memorandum of Law"). A brief recitation of those facts particularly germane to the Stay Motion follows.

**The Defendants Did Not Object to or Otherwise Challenge**
**the Sale, Despite Notice and an Opportunity to be Heard**

8. This Court's Sale Order shields New Polaroid from the Debtors' pre-Sale liabilities (including, specifically, those arising under ERISA), and also expressly states that New Polaroid shall have no liability regarding the termination of the Debtors' employees (which the Defendants were). See Sale Order, ¶ 23 at p. 22. The Sale Order also enjoins, among other parties, former employees of the Debtors (such as the Defendants) from bringing actions against New Polaroid (1) that they had, have, or may have had against the Debtors, (2) that were in any way connected to, or that arose out of, the Debtors' operation of their business prior to the Sale, or (3) arising from or relating to the termination of any of the Debtors' welfare or other benefit plans or programs. Sale Order, ¶¶ 7, 23, and 24.

9. New Polaroid relied on the protections and injunctions set forth in the Sale Order, and without them would not have closed on the Purchase Agreement.[4]

---

4   See Sale Order, ¶ X (New Polaroid "would not have entered into the Purchase Agreement and would not consummate the Transactions, thus adversely affecting the Debtors, if the Sale of the Acquired Assets and

10. The Defendants each had prior notice of the Sale, but never objected to, or otherwise challenged the entry of, the Sale Order at any point during or after the Sale process.

**The Defendants Have Attempted to Collaterally Attack the Sale Order by**
<u>Filing the Initial and Amended Complaints in the Massachusetts Action</u>

11. On July 7, 2003 (more than one year after the entry of the Sale Order on July 3, 2002), and despite the fact that this Court was then (as now) presiding over the Debtors' Chapter 11 cases and continues to adjudicate issues and claims in connection therewith, the Defendants commenced the Massachusetts Action by filing an initial complaint (the "Massachusetts Initial Complaint") against Primary PDC, Inc. (f/k/a Polaroid Corporation) ("Old Polaroid"), New Polaroid, and One Equity Partners LLC ("One Equity Partners") (New Polaroid's largest shareholder).

12. In that action (which is in direct violation of, and an attempted collateral attack upon, the Sale Order), the Defendants sought damages arising from the termination of their employment by Old Polaroid prior to the consummation of the Sale. Thus, in the Massachusetts Initial Complaint, the Defendants' primary focus was on Old Polaroid, the party that terminated their employment with the alleged intent to deprive them of benefits under its – and not New Polaroid's -- benefit plans, and the only party with whom they had any sort of relationship (as the Defendants were never employed by New Polaroid).[5]

---

the assignment of the Assigned Contracts to the Purchaser were not free and clear of all Interests … of any kind or nature whatsoever, or if the Purchaser would, or in the future could, be liable for any of the Interests, including, without limitation, the Excluded Liabilities.").

5   Specifically, the Defendants' Massachusetts Initial Complaint against Old Polaroid, One Equity Partners, and New Polaroid sought redress for (1) Old Polaroid's termination of its long term disability and employee benefit plans, (2) Old Polaroid's alleged breach of its fiduciary duty in failing to insure those benefits, (3) Old Polaroid's termination of the Defendants' employment, and (4) New Polaroid's failure to hire the Defendants. <u>See</u> Massachusetts Initial Complaint, a copy of which is attached to the Complaint

13. In response to the Massachusetts Initial Complaint, Old Polaroid invoked the automatic stay (Bankruptcy Code § 362(a));[6] New Polaroid filed a motion to transfer the Massachusetts Action to this Court or, in the alternative, to dismiss that action on the ground, among other things, that the Sale Order expressly precluded the Defendants' claims; and One Equity Partners similarly filed motions to transfer the Massachusetts Action to this Court or to dismiss that action. New Polaroid and One Equity Partners also filed a complaint in this Court against the Defendants, seeking a declaration (akin to the relief sought in this adversary proceeding) that the Sale Order barred the Massachusetts Action (the "First Bankruptcy Action").[7]

14. The Defendants did not contest Old Polaroid's invocation of the stay or take any other action against Old Polaroid in this Court or otherwise.[8] Nor did they initially file a response to One Equity Partners' and New Polaroid's respective motions in the Massachusetts Court.[9] Instead, they filed an amended complaint in the Massachusetts Court on November 6, 2003 (the "Massachusetts Amended Complaint") that, among other things, removed Old Polaroid and One Equity Partners as defendants, and recast the nomenclature of their claim

---

filed in the First Bankruptcy Action (as defined below) (Docket No. 1 in Adv. Pro. No. 03-56386) as Exhibit A, at 10-14 (¶¶ 35-58).

6   See Suggestion of Bankruptcy and Notice of Operation of the Automatic Stay, a copy of which is on file with the Massachusetts Court.

7   See Adv. Pro. No. 03-56386 (Docket No. 1). After the Defendants filed the Massachusetts Amended Complaint (as defined below), the parties entered into a stipulation to dismiss One Equity Partners' claims against the Defendants therein; however, the stipulation was treated by the Clerk's office as dismissing the First Bankruptcy Action in its entirety.

8   It is unclear that the automatic stay necessarily precluded the Defendants from asserting any cause of action against Old Polaroid, particularly for its alleged post-petition conduct.

9   The Defendants did ultimately file a response to these motions on or about November 24, 2003, or approximately 18 days after they filed the Massachusetts Amended Complaint (as defined below).

against New Polaroid in a naked attempt both (1) to skirt the plain text of the Sale Order and (2) to further distance themselves and their claim from these bankruptcy cases.[10]

15. Specifically, in the Massachusetts Amended Complaint, the Defendants attempted to disguise their claim against New Polaroid by denominating it one of "conspiracy," somehow arising under ERISA -- in an effort to evade the clear and unambiguous terms of the Sale Order that insulate New Polaroid from liability. In actuality, however, the Defendants, in no uncertain terms, still seek merely to hold New Polaroid responsible for the liabilities and obligations of Old Polaroid in connection with Old Polaroid's termination of their employment and/or under Old Polaroid's benefit and related welfare plans, which they are clearly enjoined from doing under the Sale Order.

16. Faced with a deadline for filing an answer or other responsive pleading to the Massachusetts Amended Complaint, on January 9, 2004, New Polaroid filed a motion in the Massachusetts Court to dismiss the Massachusetts Amended Complaint pursuant to Rule 12 of the Federal Rules of Civil Procedure (the "Motion to Dismiss"). Thereafter, New Polaroid filed a motion to transfer the Massachusetts Action to this District and ultimately to this Court (the "Motion to Transfer"). In the latter motion, New Polaroid requested that the Massachusetts Court rule on the Motion to Transfer, rather than on the Motion to Dismiss. See Motion to Transfer, p. 6. The Massachusetts Court has not yet addressed either of these motions.

---

10    The Defendants also added a new defendant to the Massachusetts Amended Complaint, Neal David Goldman, who was Old Polaroid's Executive Vice-President and Chief Legal Officer and was also briefly employed by New Polaroid following the Sale. A copy of the Massachusetts Amended Complaint is attached both as Exhibit 1 to the Stay Motion and as Exhibit A to the Complaint in this action.

This Action Seeking an Interpretation of the Sale Order as it Relates to the Defendants' Claims

17.  As it had done in the First Bankruptcy Action with respect to the Massachusetts Initial Complaint, on January 8, 2004, New Polaroid commenced this action, seeking a declaration from this Court that the Defendants are barred from pursuing the Massachusetts Action (and the claims asserted therein, as amended) and any other actions or proceedings against it.[11] To date, the Defendants have failed to answer the Complaint in this adversary proceeding.[12]

18.  On the date hereof, New Polaroid has filed a Motion for Judgment on the Pleadings in the hopes of achieving a prompt resolution of this action.[13] New Polaroid seeks such a judgment on the grounds that this action does not raise a genuine issue of material fact and, pursuant to Bankruptcy Code § 363, the doctrine of res judicata, this Court's injunction, and public policy, among other things, the Defendants are barred from pursuing the Massachusetts Action.

---

11  It is common for purchasers to file such adversary proceedings when sued in another court in contravention of a free and clear sale order issued by a bankruptcy court. See, e.g., In re Paris Indus. Corp., 132 B.R. 504 (D. Me. 1991); In re Colarusso, 280 B.R. 548 (Bankr. D. Mass. 2002), aff'd, 295 B.R. 166 (1st Cir. 2003); In re Allegheny Health, Education and Research Foundation, 265 B.R. 88 (Bankr. W.D. Pa. 2001).

12  Pursuant to a stipulation dated February 24, 2004, the Defendants' extended deadline to answer the Complaint in this proceeding expired on March 15, 2004. Rather than file an answer, the Defendants filed the Stay Motion. New Polaroid reserves all rights with respect to the Defendants' failure to timely answer the Complaint.

13  Adversary proceedings of this type are usually resolved expeditiously through dispositive motions. See, e.g., In re Colarusso, 280 B.R. 548 (Bankr. D. Mass. 2002).

## ARGUMENT

I. **This Court Should Deny the Defendants' Requested Stay of the Adversary Proceeding, and Should Instead Resolve the Issues Regarding the Meaning of its Own Order Properly Before It.**

A. The Meaning of the Sale Order is the Ultimate Issue at the Heart of Both this Proceeding and the Massachusetts Action

19. As the Defendants have acknowledged, the "identical legal issue" of whether the Sale Order bars claims against New Polaroid arising from the termination of Old Polaroid employees such as the Defendants "governs" both New Polaroid's Motion to Dismiss the Massachusetts Action and this adversary proceeding. See Memorandum of Law in Support of Defendants' Motion to Stay Adversary Proceeding, p. 3.

20. Specifically, although the Defendants have recast and attempted to disguise their claim against New Polaroid as an ERISA conspiracy action (i.e., New Polaroid somehow violated ERISA by allegedly "conspiring" with Old Polaroid to terminate the Defendants' employment), the true nature of their claim is merely an attempt to hold New Polaroid liable for Old Polaroid's actions in connection with its now terminated welfare and other employee benefit plans and/or for other damages arising out of the Defendants' termination by Old Polaroid. Therefore, the key issues on the merits of both the Massachusetts Action and this proceeding are (1) whether the Sale Order means what it says in stating that New Polaroid would have no liability arising out of, among other things, the dismissal by Old Polaroid of employees such as the Defendants, or under any of these employee benefit plans, and (2) whether this Court will sanction the Defendants' attempt to ignore the clear language of its Sale Order to assert these liabilities against New Polaroid.

21. The Defendants also suggest that they somehow did not have an adequate opportunity to challenge the proposed terms of the Sale before this Court issued the Sale Order (although other claimants and allegedly aggrieved parties, such as certain retirees and shareholders, did adhere to the procedures this Court established for timely objecting to and/or appealing the Sale).[14] This Court expressly found, however, that all parties-in-interest to the Sale did receive an adequate opportunity to challenge its terms. See Sale Order at 4, ¶ E.[15] Thus, the Defendants have also belatedly attempted to challenge this Court's prior findings on the adequacy of notice and any other related issues.

      B.    Under Well-Settled Law, this Court Should
             Interpret the Meaning of its Own Order

22. Because the interpretation of the meaning of this Court's Sale Order is the linchpin of this proceeding as well as the Massachusetts Action, rather than deferring to the Massachusetts Court for that interpretation (as the Defendants have requested in the Stay Motion), this Court should address these issues. See In re Hillsborough Holdings Corp., 197 B.R. 366, 371 (Bankr. M.D. Fla. 1996) (in refusing to stay, transfer, or dismiss adversary proceeding brought to enforce settlement agreement embodied in its confirmation order, court notes that "obviously, the interpretation of the [settlement agreement] and this Court's own

---

14    See Plaintiffs' Brief in Opposition to Polaroid's Motion to Dismiss (a copy of which is attached as Exhibit 3 to the Stay Motion), at p. 14.

15    This Court found, and stated in the Sale Order, that "adequate and sufficient notice" was "given to all parties-in-interest" and that "all interested parties" were "afforded an opportunity to be heard" with respect to the sale. See the Sale Order at pp. 2-4. Moreover, in the Bidding Procedures Order, this Court found that that the Debtors' proposed notice of the Sale "is reasonably calculated to provide all interested parties with timely and proper notice of the Transactions and the Bidding Procedures." Bidding Procedures Order, ¶ C; see also id. at ¶ 19.

Order of Confirmation could be more properly interpreted and construed by this Court than by a Court which did not enter the same.").

23.     It is well settled that the issuing court is best suited to interpret its own orders. See, e.g., Phoenix American Life Ins. Co. v. Devan, 2004 WL 825276 at *3 (D. Md. 2004) ("A bankruptcy court is deemed to be in the best position to interpret its own orders, and thus a court's interpretation of its own order must be given substantial deference."); National Shopmen Pension Fund v. Folger Adam Security, Inc., 274 B.R. 1, 3 (Bankr. D.D.C. 2002) ("[T]he court concludes that the bankruptcy court itself can provide the best interpretation and enforcement of its own order."); In re Mountain Laurel Resources Co., 258 B.R. 652, 658 (S.D.W. Va 2001) ("Because a bankruptcy court was directly engaged in the earlier proceedings, it had a better vantage point to make a determination on its earlier order."); In re Zinchiak, 280 B.R. 117, 125 (Bankr. W.D. Pa. 2002) ("A bankruptcy court can provide the best interpretation of its own order."); In re U.S.H. Corp. of New York, 280 B.R. 330, 335 (Bankr. S.D.N.Y. 2002) ("[I]t is well settled that 'the bankruptcy court is undoubtedly the best qualified to interpret and enforce its own orders including those providing for discharge and injunction.'") (quoting In re Texaco, Inc., 182 B.R. 937, 947 (Bankr. S.D.N.Y. 1995)).[16]

24.     Similarly, this Court -- the bankruptcy court that issued the Sale Order -- and not the Massachusetts Court (which had no role in these Chapter 11 cases until the

---

16   In addition, there is a strong presumption that, in the interest of justice, all proceedings related to a pending bankruptcy case, whether filed in another bankruptcy court or a district court, should be transferred to the district in which the bankruptcy proceeding is pending. This is the so-called "home-court presumption." See, e.g., Hohl v. Bastian, 279 B.R. 165, 177-78 (W.D. Pa. 2002); Larami v. Yes! Entertainment Corp., 244 B.R. 56, 61 (D.N.J. 2000); In re Krystal Cadillac-Oldsmobile-GMC Truck, Inc., 232 B.R. 622, 627-28 (E.D. Pa. 1999); In re Reliance Group Holdings, Inc., 273 B.R. 374, 406 (Bankr. E.D. Pa. 2002).

Defendants filed the Massachusetts Action), is in the best position to interpret its own ruling and all related matters and issues.

25. Accordingly, this Court should deny the Stay Motion, and instead should adjudicate this action to ensure that its Sale Order is properly interpreted and enforced.

    C.    This Court Should Adjudicate the Defendants' Claims to Ensure that they Do Not Interfere with the Bankruptcy Code's Priority Scheme

26. Under the Debtors' Plan, general unsecured creditors received less than the full amount of their allowed claims.[17]

27. The Defendants did not object to the Plan or to the confirmation process in general. Instead, in bringing the Massachusetts Action, they seek a dollar-for-dollar recovery against New Polaroid on account of their claim. However, as set forth above, if they somehow do have any claim at all, it would only be against Old Polaroid. They thus should have raised any such claim against Old Polaroid in these bankruptcy cases, just as the other creditors of the Debtors were required to do. Allowing them to go forward with the Massachusetts Action against New Polaroid would unfairly and artificially elevate the priority of their claim above those of the Debtors' other creditors. See, e.g., In re Trans World Airlines, Inc., 322 F. 3d 283, 292 (3d Cir. 2003) ("To allow the claimants to assert successor liability claims against American while limiting other creditors' recourse to the proceeds of the asset sale would be inconsistent with the Bankruptcy Code's priority scheme."); In re All American of Ashburn, Inc., 56 B.R. 186, 190 (Bankr. N.D. Ga. 1986) ("[I]f a plaintiff asserts a claim grounded on successor liability after a bankruptcy sale, he, in effect, receives a priority over those claims which were paid in

---

[17] See, e.g., Disclosure Statement with Respect to Third Amended Joint Plan of Reorganization of Primary PDC, Inc. (f/k/a Polaroid Corporation) and its Debtor Subsidiaries and the Official Committee of Unsecured Creditors, p. vii (estimating the recovery on account of Class 3 General Unsecured Claims under the Plan to be between 14% – 18%).

accordance with the Bankruptcy Code. The result is that successor liability theory would rearrange the priority scheme established by the Bankruptcy Code.") (citation omitted).

28. Therefore, this Court should not stay this proceeding and defer to the Massachusetts Court. Instead, it should adjudicate this matter, to ensure that the Defendants are not permitted to undermine and circumvent the Bankruptcy Code's and the Plan's priority and distribution scheme in a manner that is unfair to the Debtors' other creditors.

> D. This Court Has Jurisdiction Over All Claims Asserted in the Massachusetts Action

29. The Defendants argue that this Court should stay this proceeding pending resolution of the Massachusetts Action because this Court allegedly does not have jurisdiction over the underlying so-called "ERISA claim." To the contrary, regardless of the Defendants' efforts to recharacterize their claim in the Massachusetts Action, this Court indisputably has jurisdiction over such claims under the terms of the Sale Order and the Bankruptcy Code.

30. As stated above, this Court expressly retained jurisdiction to "... (c) interpret, implement, and enforce the provisions of [the Sale Order], and (d) protect the Purchaser against any . . . of the Excluded Liabilities, of any kind or nature whatsoever, attaching to the proceeds of the Transactions [.]" See Sale Order, ¶ 27.

31. Although the Defendants have artfully attempted to concoct a claim against New Polaroid for an alleged "conspiracy" under ERISA that is somehow separate from the bankruptcy proceeding, the Massachusetts Action is clearly a matter or dispute arising from or relating to the implementation, interpretation, or enforcement of the Sale Order. Indeed, as

the Defendants acknowledge, the critical issues in the case relate directly to the meaning of this Court's Sale Order.[18]

32.  Similarly, New Polaroid has filed this action in part to "protect [it] against any . . . of the Excluded Liabilities" now being asserted by the Defendants, whether under ERISA or otherwise. Thus, this Court has expressly reserved jurisdiction to adjudicate the matters raised in this adversary proceeding.

33.  Applicable federal law further grants this Court jurisdiction over the claims asserted in the Massachusetts Action. Bankruptcy courts have jurisdiction over proceedings "arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. §§ 1334(b), (c)(1). If, as here, a case "involves a subsequent purchaser's interpretation of a sale order 'free and clear' . . . an order that can only be issued by a Bankruptcy court," then it arises either "in a case under title 11 or perhaps arises under title 11," and thus squarely falls within a bankruptcy court's jurisdiction. In re Middlesex Power Equip. & Marine, Inc., 292 F.3d 61, 68 (1st Cir. 2002). Accord In re Colarusso, 280 B.R. 548 (Bankr. D. Mass. 2002).

34.  Further, a "bankruptcy court has core subject matter jurisdiction to enforce its own orders," and "likewise has core subject matter jurisdiction to enforce its own orders if those orders, at a minimum, involve sales of assets within the bankruptcy court pursuant to 11 U.S.C. § 363." In re Allegheny Health, Education and Research Foundation, 265 B.R. 88, 95-96 (Bankr. W.D. Pa. 2001) (citing numerous cases). See also In re Public Serv. Co. of New Hampshire, 148 B.R. 702, 705 (Bankr. D.N.H. 1992) ("the Court does in fact have jurisdiction to enforce its own orders when that relief is warranted... That jurisdiction includes the power to

---

18  See, e.g., the Stay Motion, p. 3.

declare and determine the scope and effect of orders entered in the bankruptcy proceeding in certain circumstances"), aff'd, 848 F. Supp. 318 (D.R.I. 1994), aff'd, 43 F.3d 763 (1st Cir. 1995), cert. denied, 514 U.S. 1108 (1995); In re Paris Indust. Corp., 132 B.R. 504, 507-08 (D. Maine 1991) ("[b]ankruptcy courts must have the ability to enforce prior orders and secure or preserve the fruits and advantages of a judgment or decree rendered therein"). It is also clear that a bankruptcy court has jurisdiction to hear ERISA-related cases (even assuming this were in fact such a case). See, e.g., Browning v. Levy, 283 F.3d 761, 772 (6th Cir. 2002).

35. If, as here, a case "could conceivably have any effect on the estate being administered in bankruptcy," then, at a minimum, it falls within the court's "related to" jurisdiction. Corestates Bank, N.A. v. Huls America, Inc., 176 F.3d 187, 196 (3d Cir. 1999) ("the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate") (quoting Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984)). Allowing the Massachusetts Action to continue may further harm the Debtors' estates and creditors, as the existence of the Massachusetts Action could adversely affect the estates by impacting the value of the recovery of the Debtors' general unsecured creditors under the now-confirmed Plan. Specifically, pursuant to the Plan, those creditors have received a significant percentage of the outstanding common and preferred stock of New Polaroid's parent company (the "Stock"), and the Plan Administrator appointed in these cases has kept a portion of this Stock in reserve as it continues the claims reconciliation process. Allowing the Defendants to pursue a claim against New Polaroid in the Massachusetts Action

could reduce the value of New Polaroid and, in turn, reduce the value of the Stock either held by the Debtors' creditors, or currently held in reserve by the Plan Administrator to satisfy certain remaining claims.[19]

36.     Accordingly, there are no jurisdictional impediments preventing this Court from adjudicating this action, and the Stay Motion should be denied.

> E.      The Defendants Will Suffer No Harm if this Proceeding
>         is Not Stayed, Whereas New Polaroid Would Suffer Harm
>         and be Unduly Prejudiced if this Proceeding Were Stayed

37.     The Defendants will not be harmed, economically or otherwise, if this proceeding is not stayed, and this Court (rather than the Massachusetts Court) addresses the issues raised therein. This proceeding (a request for declaratory judgment) raises only legal questions. None of the relevant facts are in dispute. Resolution of this proceeding should not require discovery. The Defendants' testimony should not be needed (or be relevant), since the Defendants' conduct is not at issue. The relevant documents are already on file with this Court. Additionally, New Polaroid's Motion for Judgment on the Pleadings should lead to a prompt resolution of this matter.

38.     Unlike the Defendants, New Polaroid would be harmed if this action were stayed. Throughout the long and arm's-length process leading up to the Sale and its

---

[19]     Moreover, even assuming such claims were not barred under the Sale Order (which is clearly not the case), if the Massachusetts Court were to hold New Polaroid liable as a "co-conspirator" under ERISA as the Defendants allege, New Polaroid might well have a claim over against one or more of the Debtors (i.e., the parties who actually terminated the Defendants' employment and had a direct relationship therewith) for contribution or indemnity. See, e.g., Chemung Canal Trust Co. v. Sovran Bank/Maryland, 939 F.2d 12, 16 (2d Cir. 1991) ("We see no reason to reject contribution as an equitable means of apportioning wrongdoing in this [ERISA] context . . . we think that even a breaching fiduciary should be entitled to the protection of contribution that has been traditionally granted fiduciary defendants under the equitable provisions of trust law. There is no reason why a single fiduciary who is only partly responsible for a loss should bear its full brunt. Full responsibility should not depend on the fortuity of which fiduciary a plaintiff elects to sue.").

consummation, New Polaroid bargained heavily for the relief contained in the Sale Order, especially the numerous provisions providing that the Sale would be free and clear of pre-Sale liabilities such as those asserted in the Massachusetts Action. New Polaroid relied on the protections set forth in the Sale Order, and without them would not have agreed to close on the Purchase Agreement (such that the Debtors would not have received the consideration from New Polaroid that formed the basis for the Plan). As the purchaser of the Acquired Assets from the Debtors, New Polaroid has the right to have the Court that issued the Sale Order interpret and enforce that very order, and also has the right to expect finality with regard to the Sale transaction, now nearly two years after the Sale Order was entered and ultimately upheld on appeal. See, e.g., Myers v. United States, 2003 WL 21799968, at *6 (S.D. Cal. Apr. 10, 2003) ("[W]ho would ever purchase assets at a bankruptcy proceeding if the successor liability argument were not limited, despite the plain wording of the bankruptcy order?").

## CONCLUSION

WHEREFORE, New Polaroid respectfully requests that the Court enter an order (1) denying the Defendants' Stay Motion and (2) granting such other and further relief as is just and proper under the circumstances.

Dated: Wilmington, Delaware
June 3, 2004

_____
Michael L. Vild (#3042)
Christopher Ward (#3877)
THE BAYARD FIRM
222 Delaware Avenue
Suite 900
P.O. Box 25130
Wilmington, Delaware 19899
(302) 655-5000

and

Joel H. Levitin
Stephen J. Gordon
DECHERT LLP
30 Rockefeller Plaza
New York, NY 10112
(212) 698-3500

*Attorneys for Polaroid Corporation f/k/a OEP Imaging Operating Corporation*