05 -   4 3 6

Exhibit "B"

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------x
In re:                                        )
                                              )    Chapter 11
PRIMARY PDC, INC.                             )
(f/k/a Polaroid Corporation), et al.,         )    Case No. 01-10864 (PJW)
                                              )
                                              )    Jointly Administered
                          Debtors.            )
------------------------------------------------------x
                                              )
POLAROID CORPORATION                          )
(f/k/a OEP Imaging Operating Corporation),    )
                                              )
                          Plaintiff,          )    Adversary Proceeding No.: 04-50342
                                              )
              -against-                       )
                                              )
SALLY A. FERRARI, ELAINE JOHNSON,             )
JOHN J. MAGENHEIMER, ELIZABETH M.             )
WILLIAMS, and DAVID A. MANISCALCO,            )
                                              )
                          Defendants.         )
------------------------------------------------------x
```

## MEMORANDUM OF LAW IN SUPPORT OF MOTION OF
## POLAROID CORPORATION FOR JUDGMENT ON THE PLEADINGS

Dated: June 3, 2004

**TABLE OF CONTENTS**

Page

I.    SUMMARY OF ARGUMENT ................................................................. 1

II.    BACKGROUND ................................................................................... 2

    A.    The Defendants and the Employee Benefit Plans.................................. 3

    B.    The Sale of the Acquired Assets to New Polaroid Pursuant to the Sale Order ........................................................................................... 4

        1.    Despite Notice and an Opportunity To Be Heard, the Defendants Did Not Object to or Challenge the Terms of the Sale ............................. 4

        2.    The Purchase Agreement and the Sale Order Expressly Provided that New Polaroid Shall Not Be Liable for, Among Other Things, Obligations under the Employee Benefit Plans or in Connection with the Termination of the Defendants' Employment ............................. 7

    C.    The Debtors' Confirmed Liquidating Chapter 11 Plan........................... 9

    D.    The Massachusetts Action ............................................................... 10

III.    STANDARD FOR JUDGMENT ON THE PLEADINGS............................. 12

IV.    ARGUMENT ...................................................................................... 13

    A.    The Purchase Agreement and the Sale Order Preclude the Massachusetts Action and the Defendants' "Conspiracy" Claim................................. 14

    B.    11 U.S.C. § 363 Precludes Successor and Similar Liability................... 16

    C.    The Doctrine of *Res Judicata* Precludes Successor and Similar Liability........... 18

    D.    The Relief Sought Herein is Consistent With Public Policy ................... 21

V.    CONCLUSION.................................................................................... 25

i

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Family Home Sales Center, Inc. v. Bonapfel (In re All American of Ashburn, Inc.)*,
   56 B.R. 186 ................................................................................................17, 21, 23

*In re American Metrocomm Corp. v. Duane Morris Heckscher LLP*,
   274 B.R. 641 ................................................................................................22

*Bank of Am. Nat'l. Trust and Sav. Ass'n. v. 203 N. LaSalle Street P'ship*,
   526 U.S. 434 ................................................................................................22

*In re Belmont Realty Corp.*,
   11 F.3d 1092 ................................................................................................19

*Board of Trustees of Trucking Employees of New Jersey Welfare Fund, Inc. Pension Fund v. Centra*,
   983 F.2d 495 ................................................................................................18

*In re Brown*,
   296 B.R. 20 ................................................................................................21

*In re Burlington Coat Factory*,
   114 F.3d 1410 ................................................................................................13

*Celotex Corp. v. Edwards (In re Celotex)*,
   514 U.S. 300 ................................................................................................19

*Chemung Canal Trust Co. v. Sovran Bank/Maryland*,
   939 F.2d 12 ................................................................................................24

*In re Colarusso*,
   295 B.R. 166 ................................................................................................17

*Corestates Bank, N.A. v. Huls America, Inc.*,
   176 F.3d 187 ................................................................................................12

*Forde v. Kee-Lox Manufacturing Co.*,
   437 F.Supp. 631 ................................................................................................17, 23

*In re Garfinkle*,
   672 F.2d 1340 ................................................................................................19

*Hawthorne v. Mac Adjustment, Inc.*,
   140 F.3d 1367 ................................................................................................13

i

*ITOFCA, Inc. v. Mega Trans Logistics, Inc.*,
   322 F.3d 928 ............................................................................................................19

*Katchen v. Landy*,
   382 U.S. 323 ............................................................................................................19

*Kruzits v. Okuma Machine Tool, Inc.*,
   40 F.3d 52 ...............................................................................................................13

*In re Leckie Smokeless Coal Co.*,
   99 F.3d 573 .......................................................................................................14, 17

*In re Lee*,
   179 B.R. 149 ............................................................................................................12

*In re Lockard*,
   884 F.2d 1171 ..........................................................................................................21

*Novacare Holdings, Inc. v. Mariner Post-Acute Network, Inc. (In re Mariner
   Post-Acute Network, Inc.)*,
   267 B.R. 46 ..............................................................................................................18

*In re Mobile Tool International, Inc. v. American Capital Financial Services,
   Inc.*,
   306 B.R. 778 ......................................................................................................12, 13

*Myers v. United States*,
   297 B.R. 774 ...........................................................................................14, 16, 21, 23

*Rubinstein v. Alaska Pacific Consortium (In re New England Fish Co.)*,
   19 B.R. 323 ..............................................................................................................18

*In re Parker*,
   289 B.R. 779 ............................................................................................................12

*Precision Industries, Inc. v. Qualitech Steel, SBQ, LLC*,
   327 F.3d 537 ......................................................................................................16, 19

*Republic Supply Co. v. Shoaf*,
   815 F.2d 1046 ..........................................................................................................21

*In re Shary*,
   152 B.R. 724 ............................................................................................................19

*Stoll v. Gottlieb*,
   305 U.S. 165 ............................................................................................................20

*Stratosphere Litigation L.L.C. v. Grand Casinos, Inc.*,
   298 F.3d 1137 ..........................................................................................................20

*Thomas v. Moore Business Forms,*
  1994 WL 449030 .........................................................................................................18

*In re Trans World Airlines, Inc.,*
  322 F.3d 283 ..........................................................................................................16, 21

*Trulis v. Barton,*
  107 F.3d 685 ..................................................................................................................20

*United States v. Athlone Industries, Inc.,*
  746 F.2d 977 ..................................................................................................................18

*United States v. Edwards,*
  905 F.Supp. 45 ...............................................................................................................22

*Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor
  Credit Corp.),*
  75 B.R. 944 ...........................................................................................................15, 22, 23

## DOCKETED CASES

*Carcasole-Lacal v. American Airlines, Inc.,* 2003 WL 21525484 ...................................17

*Cibulka v. Trans World Airlines, Inc.,*
  2004 WL 87695 ...............................................................................................................17

## FEDERAL STATUTES

11 U.S.C. § 362.......................................................................................................................10

11 U.S.C. § 363........................................................................................................... passim

Fed. R. Bankr. P. 7012.......................................................................................................1, 12

Fed. R. Bankr. P. 7056...........................................................................................................1

Fed. R. Bankr. P. 9024.......................................................................................................6, 20

Fed. R. Civ. P. 12.................................................................................................................12

Fed. R. Civ. P. 60.................................................................................................................6

## I. SUMMARY OF ARGUMENT

In July 2002, this Court approved the sale (the "Sale") of substantially all of the assets (the "Acquired Assets") of Polaroid Corporation (n/k/a Primary PDC, Inc.) ("Old Polaroid"), and the other above-captioned debtors and debtors-in-possession (together with Old Polaroid, the "Debtors") to OEP Imaging Operating Corporation (n/k/a Polaroid Corporation) ("New Polaroid").

This Court's order approving the Sale, dated July 3, 2002 (the "Sale Order"),[1] shields New Polaroid from the Debtors' liabilities and obligations (except as otherwise expressly assumed), and enjoins the Debtors' creditors and other parties-in-interest from asserting any claims for such liabilities or obligations against New Polaroid.  The Sale Order specifically shields New Polaroid from any liabilities related to dismissal or termination of Old Polaroid's employees or its employee benefit plans and enjoins Old Polaroid's employees from asserting any claims against New Polaroid.

More than a year after the entry of the Sale Order, the above-captioned defendants (collectively, the "Defendants"), all permanently disabled, former Old Polaroid employees, commenced an action (the "Massachusetts Action") against New Polaroid, among others, in the United States District Court for the District of Massachusetts (the "Massachusetts Court").  The Defendants subsequently amended their complaint in the Massachusetts Action (the

---

[1]     A true and correct copy of the Sale Order is attached as Exhibit G to the complaint commencing this action, dated January 8, 2004 (the "Complaint"), and is incorporated herein by reference.  Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Sale Order or the Purchase Agreement (as defined below), as applicable.

"Massachusetts Amended Complaint")[2] to assert a single claim against New Polaroid, which arises from their termination by Old Polaroid.

Although it is designated as an action for "conspiracy" to terminate the Defendants' employment and deprive them of certain benefits, the Massachusetts Action is actually an attempt to hold New Polaroid liable for the Debtors' pre-Sale obligations, from which New Polaroid was expressly protected pursuant to the Sale Order. To prevent the Defendants from collaterally attacking the Sale Order in Massachusetts and, in effect, elevating the priority of their claims above that of other creditors of the Debtors, New Polaroid commenced this action against the Defendants, seeking a declaratory judgment that the Sale Order bars the relief sought in the Massachusetts Action.

There are no material, disputed factual issues. Rather, the facts set forth in the Complaint relate to (1) the termination of the Defendants and their benefits under the LTD Plan and the Employee Benefit Plans (as defined below), (2) the Defendants' failure to object to, appeal, or otherwise challenge the Sale or the entry of the final and non-appealable Sale Order despite having received notice thereof, and (3) the terms of the Purchase Agreement and the Sale Order. These facts cannot be contested. Accordingly, New Polaroid requests that this Court grant judgment on the pleadings in its favor.

## II. BACKGROUND

The following facts, which are drawn from the Massachusetts Amended Complaint, the documents on which it relies, and certain public documents on file with the

---

[2]       A true and correct copy of the Massachusetts Amended Complaint is attached to the Complaint as Exhibit A and is incorporated herein by reference.

2

Court, are accepted as true for the limited purposes of New Polaroid's Motion for Judgment on the Pleadings and this Memorandum of Law in support thereof.

A.    The Defendants and the Employee Benefit Plans

The Defendants are former Old Polaroid employees who were not working or able to work for Old Polaroid after 1998 and who have never been employed by New Polaroid. See Massachusetts Amended Complaint, ¶¶ 7-11. Rather, between 1989 and 1998, each of the Defendants became permanently unable to work, but qualified for salary continuation benefits under Old Polaroid's long-term disability plan (the "LTD Plan"). See id. at ¶¶ 1, 7-11. The Defendants have since received and continue to receive these salary continuation payments from a third-party insurance carrier.

Old Polaroid permitted individuals who qualified for salary continuation payments under the LTD Plan to participate in its medical plan, its dental plan, and its life insurance plan (collectively, the "Employee Benefit Plans") in accordance with, and subject to, the terms of such plans. See id. at ¶¶ 1, 28.[3] Old Polaroid paid the full cost of the premiums under the Employee Benefit Plans. See id.

In connection with the wind-down of its business, Old Polaroid terminated the LTD Plan and the Employee Benefit Plans (and its other benefit plans) contemporaneously with the Sale, which is to say contemporaneously with the termination of the Defendants' employment by Old Polaroid. See id. at ¶ 37.[4] Specifically, on July 2, 2002, Old Polaroid

---

[3]    In fact, upon information and belief, Old Polaroid continued to classify the Defendants as employees for the sole purpose of allowing them to participate in the Employee Benefit Plans.

[4]    Although not necessarily relevant for these purposes, it should be noted that, according to their terms, the Employee Benefit Plans were terminable at any time.

3

provided written notice (the "Termination Letter")[5] to the Defendants that it was terminating their benefits under the Employee Benefit Plans as of late July 2002, and, on July 31, 2002 (the date the Sale to New Polaroid closed), terminated such benefits. See id. at ¶ 36.

B.    The Sale of the Acquired Assets to New Polaroid Pursuant to the Sale Order

1.    *Despite Notice and an Opportunity To Be Heard, the Defendants Did Not Object to or Challenge the Terms of the Sale*

On April 18, 2002, the Debtors and New Polaroid (through its parent company) entered into an asset purchase agreement (including all exhibits and attachments thereto, and as modified, supplemented, and amended, the "Purchase Agreement"), by which New Polaroid agreed to purchase the Acquired Assets and to assume only certain specific liabilities of the Debtors, subject to higher and better offers and to this Court's approval.[6]

Also on April 18, 2002, the Debtors filed a Motion for Order (I) Authorizing and Approving (A) Sale of Substantially All of the Debtors' Assets to OEP Imaging Corporation, or a Party Making a Higher or Better Offer, Free and Clear of Liens, Claims, Encumbrances, and Interests, and (B) Assumption and Assignment of Certain Related Executory Contracts and Unexpired Leases, and (II) (A) Establishing Competitive Bidding Procedures in Connection with the Sale, (B) Approving Bid Protections, Including Expense Reimbursement and Termination Payment, (C) Setting Sale Hearing and Objection Deadline, (D) Authorizing and Approving Form and Manner of Notice of Bidding Procedures and Sale Hearing, (E) Determining that Such Sale is Exempt from any Stamp, Transfer, Recording, or Similar Tax, and (F) Deeming the Purchaser a "Successor" to the Debtors under Section 1145(a) of the Bankruptcy Code and (III)

---

[5]    A true and correct copy of Termination Letter is attached to the Complaint as Exhibit B and is incorporated herein by reference.

[6]    A true and correct copy of the Purchase Agreement (without exhibits) is attached to the Complaint as Exhibit C and is incorporated herein by reference.

Granting Related Relief (the "Sale Motion").[7]

On May 10, 2002, this Court entered an order (the "Bidding Procedures Order") approving bidding procedures, scheduling the Sale Hearing, and approving the form of notice of the Sale Hearing.  In the Bidding Procedures Order, this Court found that that "[t]he Debtors' proposed notice of the Transactions (including, without limitation, the Sale of the Acquired Assets and the assumption and assignment of the Initial Assumed Contracts) . . . is reasonably calculated to provide all interested parties with timely and proper notice of the Transactions and the Bidding Procedures.").  Bidding Procedures Order, ¶ C; see also id. at ¶ 19.

All interested parties, including the Defendants, had an opportunity to object to the Sale Motion.  Specifically, on May 16, 2002, in accordance with the Bidding Procedures Order, the Debtors provided notice of the auction of the Acquired Assets and of the Sale Hearing to each of the Defendants and to thousands of other creditors by First Class United States Mail.[8] In addition, notice was published in The Boston Globe, The New York Times, and The Wall Street Journal on or about May 17, 2002.[9]

Such notices clearly and expressly stated that, pursuant to the Purchase Agreement, the Acquired Assets would be sold free and clear of all liens, claims, encumbrances, and interests and provided the date, time, and location of the auction and the Sale Hearing and

---

[7]    A true and correct copy of the Sale Motion is attached to the Complaint as Exhibit D and is incorporated herein by reference.

[8]    A true and correct copy of the relevant portions of the declaration of mailing evidencing such notice, along with the notice itself, is attached to the Complaint as Exhibit E and is incorporated herein by reference.  In particular, four of the Defendants' names (Elaine Johnson, John Magenheimer, Elizabeth Williams, and David A. Maniscalco) appear on pages 607, 723, 1288, and 730, respectively, of Exhibit B of the "Declaration of Mailing."  Notice to one of the Defendants, Sally Ferrari (who suffers from Alzheimer's disease, see Massachusetts Amended Complaint, ¶ 7), was sent to her husband.  See p. 395 of Exhibit B to the "Declaration of Mailing."

[9]    True and correct copies of the affidavits of publication evidencing such notice are attached to the Complaint as Exhibit F and are incorporated herein by reference.

the deadline for objecting to the Sale.  See Complaint, Exs. E, F.  The notices instructed recipients how to obtain free copies of the documents referenced therein.

On June 28, 2002, the Bankruptcy Court held a hearing on the terms of the proposed Sale.  See Sale Order, Preamble.  Unlike certain retirees and other creditors and shareholders who acted in a timely manner and made themselves heard, none of the Defendants objected to or otherwise challenged the Sale Motion or the entry of the Sale Order.  See generally Docket, Case No. 01-10864 (PJW).  Nor did any of the Defendants appeal the Sale Order or file a motion for relief therefrom under Fed. R. Bankr. P. 9024.[10]  See generally id.

This Court found that the notice of the Sale Motion, the Sale Hearing, and the related transactions was "due, proper, timely, adequate, and sufficient" and that no other or further notice was required.  Sale Order, ¶ D; see also id. at Preamble.  It also specifically found that "[a] reasonable opportunity to object or be heard with respect to the [Sale] Motion and the relief requested therein . . . has been afforded to all interested persons and entities." Id. at ¶ E; see also id. at Preamble.

The Sale Order, which was affirmed by the United States District Court for the District of Delaware, is no longer subject to appeal or reconsideration.[11]

---

[10]    Fed. R. Bankr. P. 9024, which incorporates Fed. R. Civ. P. 60(b), requires that motions for relief from an order be made "within a reasonable time" or, under certain circumstances, within a year of the entry of the order.

[11]    In fact, the Court appointed an examiner in the Debtors' Chapter 11 cases (the "Examiner") to, among other things, investigate the process undertaken by the Debtors in connection with the Sale.  The Examiner's extensive investigation and report, dated August 22, 2003 (D.I. #2934), uncovered no improprieties with respect to either the sale process or the Sale.

2.      *The Purchase Agreement and the Sale Order Expressly Provided that New
Polaroid Shall Not Be Liable for, Among Other Things, Obligations under the
Employee Benefit Plans or in Connection with the Termination of the Defendants'
Employment*

The Purchase Agreement clearly indicated which liabilities New Polaroid did and

did not assume.  Pursuant to the Purchase Agreement, New Polaroid specifically did not assume,

among other things:

> (g) any liability or obligation to the Polaroid Employees or any former
> Polaroid Employees of Sellers, including any liability or obligation
> associated with, or in any way related to (in whole or in part): (i) any
> Pension or **Welfare Plan**, (ii) any other plan, agreement, arrangement or
> understanding of Sellers or any ERISA Affiliates of Sellers that provides
> any compensation or benefit to any Polaroid Employee or any former
> Polaroid Employee . . . (iv) **any liability or obligation related to the
> termination of the employment of any Polaroid Employee or any
> former Polaroid Employees of Sellers, or related to any employment,
> severance, retention or termination agreement with any Polaroid
> Employee or any former Polaroid Employees of Sellers**; . . . [or] (l) any
> other liability or obligation of Sellers including any liability or obligation
> directly or indirectly arising out of or relating to the operation of the
> Business or ownership of the Acquired Assets on or prior to the Closing
> Date, whether contingent or otherwise, fixed or absolute, known or
> unknown, matured or unmatured, present, future or otherwise, except for
> the Assumed Liabilities. . . .

Purchase Agreement, § 2.04 (emphasis added).[12]  Because the Employee Benefit Plans were

"Welfare Plans,"[13] New Polaroid did not assume any liability or obligation associated therewith

or related thereto.

---

[12]    The Purchase Agreement also provided, more generally, that New Polaroid did not assume "any Liability
of any Seller, or any predecessors or Affiliate of any Seller, and any of their respective Representatives or
any claim against any and all of the foregoing, whether matured or unmatured, known or unknown,
contingent or absolute, direct or indirect, whensoever incurred, whether or not related to the Business, other
than the Assumed Liabilities."  Purchase Agreement, § 2.04.

[13]    "Welfare Plan" was defined broadly in the Purchase Agreement as "any 'employee welfare benefit plan' as
defined in Section 3(l) of ERISA, (A) which any Seller or any ERISA Affiliate maintains, administers,
contributes to or is required to contribute to, and (B) which covers (or covered) any current or former
Employee, officers, director or consultant of any Seller or any ERISA Affiliate (with respect to their
relationship with such entity)."  Id. at § 1.01.

The Sale Order also specified which liabilities New Polaroid did and did not

assume. It stated that New Polaroid did not assume, among other things:

> any liabilities based on any theory of . . . labor law, including, without
> limitation, any obligations which might otherwise arise . . . pursuant to,
> the **Employee Retirement Income Security Act of 1974**, as amended . . .
> [or] to pay wages, bonuses, severance pay, benefits (including, without
> limitation, unemployment benefits and contributions or payments on
> account of any undertaking with respect to any and all pension plans) **or
> any other payment to employees of Debtors . . . [or] for the cessation
> of any of the Debtors' operations, dismissal by the Debtors of
> employees, or termination by the Debtors of employment or labor
> agreements . . . [or] with respect to any collective bargaining
> agreement, employee pension plan, employee welfare** or retention,
> compensation, benefit and/or incentive plan, agreements, practices, or
> program to which any of the Debtors are a party (including, without
> limitation, arising from or related to the rejection or termination of any
> such agreement). . . .

Sale Order, ¶ 23 (emphasis added).[14]

Moreover, the Sale Order stated that New Polaroid "is not and shall not be

deemed a successor of or to the Debtors" with respect to the Acquired Assets. Id. at ¶ 24.[15]

To further ensure that New Polaroid would have no liability for the Debtors' pre-

Sale obligations or related obligations, the Sale Order enjoined all of the Debtors' creditors

(including the Defendants and the Debtors' other employees and former employees), from

---

[14]    In addition, the Sale Order provided that the Acquired Assets were purchased by New Polaroid "free and
clear of any and all claims . . . and other liabilities (whether secured or unsecured, contingent, or absolute,
liquidated or unliquidated, perfected or unperfected, choate or inchoate, filed or unfilled [sic], scheduled or
unscheduled, noticed or unnoticed, recorded or unrecorded) . . . and any actions and proceedings of any
kind or nature, and any claim by any person or entity asserting any rights or interests except as specifically
reserved within the Purchase Agreement." Sale Order at ¶ 6; see also id. at ¶¶ S, T.

[15]    The Sale Order also provided that, except as set forth in the Purchase Agreement, New Polaroid "shall have
no liability or responsibility, as a successor or otherwise, for any liabilities, debts, or obligations of the
Debtors or the Sellers or any liabilities, debts, or obligations in any way whatsoever relating to or arising
from the Sellers' ownership or operation of the Acquired Assets or the Assumed Contracts to the Closing
Date or any liabilities calculable by reference to the Debtors or the Sellers or their assets or operations, or
relating to continuing conditions existing on or prior to the Closing Date. . . ." Id. at ¶ 23; see also id. at ¶
31.

8

asserting claims against New Polaroid.  The Sale Order stated that:

> all persons holding [claims] against or in the Debtors, the Acquired Assets, or the Assumed Contracts of any kind or nature whatsoever (including, but not limited to . . . **employees** . . . [and] **former employees** . . .) shall be, and hereby are, forever barred, banned, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing such [claims] . . . [and] no holder of [a claim against] the Debtors shall interfere with [New Polaroid's] title to, or use and enjoyment of [the Acquired Assets].

Id. (emphasis added).[16]

C.    The Debtors' Confirmed Liquidating Chapter 11 Plan

As partial consideration for its purchase of the Acquired Assets pursuant to the Purchase Agreement and the Sale Order, New Polaroid delivered to the Debtors' estates shares of common and preferred stock of New Polaroid's parent (the "Stock"), which shares originally represented a 35% ownership interest in New Polaroid.

By order dated November 18, 2003, this Court confirmed the Third Amended

---

[16]    The Sale Order also established that "all parties to any [i.e., collective bargaining agreement, employee pension plan, employee **welfare** or retention, compensation, benefit and/or incentive plan, agreements, practices, or program to which any of the Debtors are a party **(including, without limitation, arising from or related to the rejection or termination of any such agreement)**] are hereby enjoined from asserting against [New Polaroid] any and all claims arising from or relating thereto." Id. at ¶ 23 (emphasis added).

Furthermore, under paragraph 7 of the Sale Order, except as expressly permitted by the Purchase Agreement or the Sale Order, "all persons and entities . . . holding [claims] of any kind or nature whatsoever against or in the Debtors . . . arising under or out of, in connection with, or in any way relating to, the Debtors, the Acquired Assets, the Assumed Contracts, the Excluded Liabilities, the operation of the Business prior to the Closing Date, or the transfer of the Acquired Assets or the Assumed Contracts to [New Polaroid], hereby are forever barred, estopped, and permanently enjoined from asserting against [New Polaroid], its successors or assigns, property, or assets, such persons' or entities' respective [claims]." Id. at ¶ 7.

The Sale Order also provided that no "persons or entities shall assert against [New Polaroid] or its successors in interest any liability, debt, claim, or obligation relating to or arising from the ownership or operation of the Acquired Assets or any liabilities calculable by reference to the Debtors or the Sellers or the Debtors' or the Sellers' assets or operations." Id.

In addition, the Bidding Procedures Order provided that "[t]he failure of any objecting party or entity to timely file its objection shall be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to

Joint Plan of Reorganization of Primary PDC, Inc. (f/k/a Polaroid Corporation, Inc.) and its Debtor Subsidiaries and the Official Committee of Unsecured Creditors (the "Plan"), and the Plan became effective on December 17, 2003. The Plan provided, among other things, that, subject to appropriate reserves, the Stock held by the Debtors would be distributed to the Holders of Allowed Class 3 General Unsecured Claims (as such terms are defined in the Plan) on a pro rata basis. Thus, the consideration that New Polaroid provided to the Debtors' estates in exchange for the Acquired Assets constituted the primary source of distribution to the Debtors' unsecured creditors under the now confirmed and consummated Plan.[17]

D.    The Massachusetts Action

The Defendants originally filed the Massachusetts Action on July 7, 2003 (more than a year after the entry of the Sale Order and the distribution of the Termination Letter) against Old Polaroid, New Polaroid, and New Polaroid's largest shareholder, One Equity Partners LLC. In their initial complaint (the "Massachusetts Initial Complaint"), the Defendants' primary focus was on Old Polaroid, the party that terminated their employment and the only party with which they had any relationship. Specifically, the Massachusetts Initial Complaint sought to impose liability for (1) Old Polaroid's termination of the LTD Plan and the Employee Benefit Plans, (2) Old Polaroid's alleged breach of its fiduciary duty in failing to insure those benefits, (3) Old Polaroid's termination of the Defendants' employment, and (4) New Polaroid's failure to hire the Defendants. See Massachusetts Initial Complaint, ¶¶ 35-58.

---

the Motion, the Sale, or the Purchase Agreement and the Transactions. . . ." Bidding Procedures Order, ¶ 18.

[17]    Moreover, the Debtors' primary secured creditors received the net cash proceeds (save for $10 million) of the Sale, such that the consideration that New Polaroid provided further enabled the Debtors to satisfy the major claims asserted against them. See Sale Order, ¶ 38.

On November 6, 2003, in response to (1) New Polaroid's and One Equity Partners
LLC's respective motions to transfer the Massachusetts Action to this Court or, in the alternative,
to dismiss that action and (2) Old Polaroid's invocation of the automatic stay provision of the
Bankruptcy Code (11 U.S.C. § 362(a)), the Defendants filed the Massachusetts Amended
Complaint, which recast their claim against New Polaroid in a transparent effort to skirt the plain
text of the Sale Order.[18]

The Massachusetts Amended Complaint dropped from the action five of the six
counts pleaded against New Polaroid. The Defendants' sole remaining claim in the
Massachusetts Amended Complaint against New Polaroid (Count I) is for allegedly "conspiring"
with Old Polaroid to terminate the Debtors' employment and deprive them of certain benefits, in
purported violation of the Employee Retirement Income Security Act of 1974 ("ERISA"). See
Massachusetts Amended Complaint, ¶¶ 46-49. Specifically, the Defendants allege in the
Massachusetts Amended Complaint that "old Polaroid conspired with the new Polaroid to
terminate all employees receiving Long Term Disability benefits. This was done for the purpose
and with the specific intent of interfering with the [Defendants'] rights to and attainment of the
medical, dental, and life insurance benefits that were promised to them. . . ." Massachusetts
Amended Complaint, ¶ 46.

In the guise of the repleaded Massachusetts Amended Complaint, the Defendants
seek precisely the same relief (i.e., that New Polaroid "retain" them as employees and "restore"
their medical, dental, and life insurance benefits) they requested in the Massachusetts Initial
Complaint, where they *openly* sought to hold New Polaroid liable for "failure to hire" them and

---

[18]    The Massachusetts Amended Complaint also removed Old Polaroid and One Equity Partners LLC as
defendants and added Neil David Goldman, who was Old Polaroid's Executive Vice-President and Chief
Legal Officer, as a defendant.

to assume Old Polaroid's obligations thereto.    Massachusetts Amended Complaint and Massachusetts Initial Complaint, Relief Requested, ¶¶ 3, 4.

Thus, the "new" formulation of the Defendants' claim against New Polaroid -- a concocted claim for an alleged "conspiracy" somehow arising under ERISA -- is, plain and simple, another attempt to hold New Polaroid liable for Old Polaroid's obligations in direct violation of the clear and unambiguous terms of the Sale Order.

Accordingly, on January 9, 2004, New Polaroid filed a motion in the Massachusetts Court to dismiss the Massachusetts Amended Complaint.  In addition, on April 12, 2004, New Polaroid filed a motion to transfer the Massachusetts Action to this Court.  These matters are currently pending before the Massachusetts Court.

### III.  STANDARD FOR JUDGMENT ON THE PLEADINGS

Federal Rule of Bankruptcy Procedure 7012(b) makes Rule 12(c) of the Federal Rules of Civil Procedure applicable to bankruptcy adversary proceedings.  See In re Mobile Tool International, Inc. v. American Capital Financial Services, Inc., 306 B.R. 778, 779-80 (Bankr. D. Del. 2004); In re Lee, 179 B.R. 149, 162 n.14 (B.A.P. 9th Cir. 1995); In re Parker, 289 B.R. 779, 781 (Bankr. M.D. Ga. 2002).

Rule 12(c) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c). Under Rule 12(c), judgment on the pleadings shall be granted "[i]f after review of the pleadings, the moving party has established that there is no material issue of fact and it is entitled to judgment as a matter of law. . . ."  Mobile Tool, 306 B.R. at 780 (citing Hal Roach Studios, Inc. v. Richard Feiner & Co., 869 F.2d 1542 (9th Cir. 1989)); see also Corestates Bank, N.A. v. Huls

America, Inc., 176 F.3d 187, 193 (3d Cir. 1999); Kruzits v. Okuma Machine Tool, Inc., 40 F.3d 52, 54 (3d Cir. 1994).[19]

In considering a motion for judgment on the pleadings, a court "must accept the facts in the [nonmoving party's pleadings] as true and must view those facts in a light most favorable to the nonmoving party." See Mobile Tool, 306 B.R. at 780 (citing Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1371 (11th Cir. 1989). It may take into account "the substance of the pleadings and any judicially noticed facts," id., and may also consider "document[s] integral to or explicitly relied upon in the complaint." In re Burlington Coat Factory, 114 F.3d 1410, 1426 (3d Cir. 1997) (considering motion to dismiss).

## IV. ARGUMENT

The Court should grant New Polaroid's motion for judgment on the pleadings because there are no genuine issues of material fact and, as a matter of law, the Sale Order and the Purchase Agreement bar the claim asserted by the Defendants against New Polaroid in the Massachusetts Amended Complaint. Specifically, the Sale Order bars claims arising from the termination of Old Polaroid's employees (such as the Defendants) and of the Employee Benefit Plans. In addition, the doctrine of *res judicata* bars the Massachusetts Action.

---

[19] Rule 12(c) refers to the pleadings being "closed," and the Defendants have not yet filed an answer to the Complaint, but rather filed a motion on the March 15, 2004 answer deadline requesting that this Court stay this action, which New Polaroid has opposed. Nonetheless, New Polaroid submits that the pleadings should be treated as closed for these purposes: The Complaint and the Massachusetts Amended Complaint are sufficient to establish that there are no material issues of fact in this action and that New Polaroid is entitled to judgment as a matter of law. To the extent this Court were to conclude, however, that this motion is procedurally inappropriate, New Polaroid has requested that the motion be treated as one for summary judgment. See Rule 12(c) ("If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as a motion for summary judgment and disposed of as provided in Rule 56. . . .")

A.    The Purchase Agreement and the Sale Order
      Preclude the Massachusetts Action and the Defendants' "Conspiracy" Claim

Count I of the Massachusetts Action -- the only count against New Polaroid --

seeks to hold New Polaroid liable for the termination of the Defendants, the LTD Plan, and the

Employee Benefit Plans under ERISA, in direct contravention of the Purchase Agreement and

Sale Order. Although the Defendants have couched their claim against New Polaroid as a

"conspiracy" claim, at its heart, that claim is based on New Polaroid's failure to assume Old

Polaroid's liabilities, and represents a thinly-veiled attempt to circumvent the protections

afforded New Polaroid under the Sale Order.   Under the Defendants' theory, a buyer that

expressly bargains not to assume specific liabilities, by virtue of striking such a bargain

(presumably the only possible evidence of any "conspiracy"), would nevertheless be responsible

for such liabilities.  This interpretation should be rejected, and the Sale Order and the Purchase

Agreement should control. [20]

Bankruptcy Code section 363(f) provides that a debtor may sell property "free and

clear of any interest in such property." 11 U.S.C. § 363(f).  The extent to which property is sold

"free and clear" turns, in large measure, on the court-approved purchase agreement and the

related sale order.  See In re Leckie Smokeless Coal Co., 99 F.3d 573, 586 (4th Cir. 1996)

("Congress has given no indication that bankruptcy courts cannot order property sold free and

clear of interests that Congress has itself created by statute. . . ."); Myers v. United States, 297

B.R. 774, 780 (S.D. Cal. 2003) ("What controls is the language of the final order," which stated,

---

[20]    To adopt such an interpretation would be particularly inappropriate here, because this Court specifically
found that "[t]he Purchase Agreement was negotiated, proposed, and entered into by the Debtors and the
Purchaser without collusion, in good faith, and from arm's-length bargaining positions.  Neither the
Debtors nor the Purchaser have engaged in any conduct that would cause or permit the Purchase
Agreement or any part of the Transactions to be avoided under section 363(n) of the Bankruptcy Code."
See Sale Order, ¶ K.

in part, that the transfer of assets to the purchaser "'will not subject [the purchaser] to any liability with respect to the operation of the Debtor's business prior to the Closing Date.'"); Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor Credit Corp.), 75 B.R. 944, 946 (Bankr. N.D. Ohio 1987) ("The terms of the order approving this agreement are unambiguous regarding preclusion of successor liability. The order of sale approved the parties' agreement 'in all respects.' Successor liability's preclusion by the language in the purchase agreement is further corroborated by Volvo's subsequent assumption of a portion of the liability in the supplemental agreement.")

As set forth above, the Purchase Agreement unequivocally insulated New Polaroid from successor and similar liability, as New Polaroid specifically did not assume, among other things, any obligations arising under the LTD Plan or the Employee Benefit Plans or any "liability or obligation related to the termination of the employment of any Polaroid Employee or any former Polaroid Employees of Sellers." See Purchase Agreement, §§ 1.01, 2.04.

Moreover, the Sale Order provided, among other things, that New Polaroid (1) did not assume any liabilities "based on any theory of . . . the Employee Retirement Income Security Act of 1974" and (2) "shall have no liability or responsibility" for the pre-Sale conduct of Old Polaroid in general and "no obligation for the . . . the dismissal by the Debtors of employees" in particular. Sale Order, ¶ 23.

Finally, the Sale Order specifically stated, in addition to the provisions set forth above, that "former employees . . . shall be, and hereby are, forever barred, banned, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing" claims against New Polaroid. Id. at ¶ 24.

Based on the unambiguous language in the Purchase Agreement and the Sale Order, judgment on the pleadings should be granted.

B.    11 U.S.C. § 363 Precludes Successor and Similar Liability

In addition to the protections afforded them by the provisions of a particular purchase agreement or sale order, purchasers of assets are protected by the "free and clear" language in 11 U.S.C § 363(f). The United States Court of Appeals for the Third Circuit has recently interpreted 11 U.S.C § 363(f) broadly, as precluding successor liability claims against, and claims connected or arising from assets sold to, a purchaser. In In re Trans World Airlines, Inc., 322 F. 3d 283, 285-286 (3d Cir. 2003), American Airlines, agreed to purchase substantially all of the assets of debtor TWA. The bankruptcy court approved the sale and rejected the Equal Employment Opportunity Commission's argument that successor liability should be imposed on American for TWA's alleged violations of various federal employment discrimination statutes. See id. at 288. The Court of Appeals held that the sale extinguished such successor liability claims "[b]ecause section 363(f) of the Bankruptcy Code permits a sale of property 'free and clear' of an 'interest in such property' and because the claims against TWA . . . were connected to or arise from the assets sold." Id. at 285.

The Court also noted that its expansive reading of the phrase "any interest in such property" was consistent with the current trend and stated, "to equate interests in property with only *in rem* interests such as liens would be inconsistent with section 363(f)(3), which contemplates that a lien is but one type of interest." Id. at 289, 290; see also Precision Industries, Inc. v. Qualitech Steel, SBQ, LLC, 327 F.3d 537, 545 (7th Cir. 2003) ("[T]he Code itself does not suggest that 'interest' should be understood in a special or narrow sense; on the contrary, the use of the term 'any' counsels in favor of a broad interpretation" and "rigid and technical definitions drawn from other areas of law" should be avoided); Myers, 297 B.R. at 781-82

16

(embracing the TWA Court's broad definition of "interest" under 11 U.S.C. § 363(f)); In re Colarusso, 295 B.R. 166, 175 (B.A.P. 1st Cir. 2003) (rejecting unsuccessful bidder's claim that he owned a portion of the real property sold by the debtor and holding that "any interest" under 11 U.S.C. § 363(f) "is meant to cover the same scope of interests for entities other than the estate as those encompassed in the definition of property of the estate. . . . Indeed, the range of interests under § 363(f) may be broader than under § 541(a)(1), because, unlike § 541(a)(1), § 363(f) has no exceptions.").

Courts in several other jurisdictions have similarly held that 11 U.S.C. § 363 precludes successor liability claims and comparable claims against the purchaser of a debtor's assets. See, e.g., Cibulka v. Trans World Airlines, Inc., 2004 WL 87695, *1 (8th Cir. Jan. 21, 2004) (affirming denial of motion to amend and dismissal of employment discrimination claim because, among other things, "the Third Circuit affirmed the bankruptcy court's order approving the sale free and clear of successor liability for employment discrimination claims against TWA."); Leckie Smokeless Coal, 99 F.3d at 586 (even if the purchaser is a successor-in-interest, "the Bankruptcy Court may extinguish Coal Act successor liability pursuant to 11 U.S.C. § 363(f)(5)"); Carcasole-Lacal v. American Airlines, Inc., 2003 WL 21525484 (E.D.N.Y. July 8, 2003) (holding that the purchaser of assets out of bankruptcy was not liable as a successor for the debtor's obligations under an early retirement plan); Forde v. Kee-Lox Mfg. Co., 437 F. Supp. 631, 634 (W.D.N.Y. 1977) (sale of the debtors' assets under the predecessor to 11 U.S.C. § 363 precluded successor liability claims against purchasers based on the debtors' alleged pre-acquisition employment discrimination); Family Home Sales Center Inc. v. Bonapfel (In re All American of Ashburn, Inc.), 56 B.R. 186, 191 (Bankr. N.D. Ga. 1986) (sale of debtors' assets under 11 U.S.C. § 363 precluded successor liability claims against purchasers based on the

17

debtors' alleged pre-acquisition product liability claims); <u>Rubinstein v. Alaska Pacific</u> <u>Consortium (In re New England Fish Co.)</u>, 19 B.R. 323, 327 (Bankr. W.D. Wash. 1982) (sale of the debtors' assets under 11 U.S.C. § 363 precluded successor liability claims against purchasers based on the debtors' alleged pre-acquisition violations of employees' civil rights).

Here, notwithstanding the Defendants' allegation of a "conspiracy" between Old Polaroid and New Polaroid, their claim against New Polaroid in the Massachusetts Amended Complaint stems from the Acquired Assets and is based entirely on the pre-Sale conduct of Old Polaroid and, specifically, on its termination of the Defendants' employment and their benefits under the Employee Benefit Plans. Accordingly, pursuant to 11 U.S.C. § 363(f), the Defendants are precluded from pursuing the Massachusetts Action against New Polaroid as successors to the Debtors or otherwise on account of the Debtors' pre-Sale conduct, and judgment on the pleadings should be granted in favor of New Polaroid.

C.       The Doctrine of *Res Judicata* Precludes Successor and Similar Liability

The doctrine of *res judicata* prevents the Defendants from collaterally attacking the Sale Order.[21] Also referred to as claim preclusion, *res judicata* gives dispositive effect to a prior judgment if a particular issue, although not litigated, could have been raised in an earlier proceeding. <u>See</u> <u>Board of Trustees of Trucking Employees of New Jersey Welfare Fund, Inc.</u> <u>Pension Fund v. Centra</u>, 983 F.2d 495, 504-05 (3d Cir. 1992). Courts in this Circuit generally require only "an essential similarity of the underlying events giving rise to the various legal claims" for the doctrine of res judicata to apply. <u>United States v. Athlone Industries, Inc.</u>, 746

---

[21]       "The purpose of res judicata is to require that parties to a suit bring all claims related to that suit at once so that the court is not required to litigate the same or related issues more than once." <u>Novacare Holdings,</u> <u>Inc. v. Mariner Post-Acute Network, Inc. (In re Mariner Post-Acute Network, Inc.)</u>, 267 B.R. 46, 53 (Bankr. D. Del. 2001); <u>see also</u> <u>Thomas v. Moore Business Forms</u>, 1994 WL 449030 at *2 (N.D. Cal. Aug. 16, 1994) ("Res judicata is a judicial doctrine designed to halt vexatious litigation, curb excessive duplication of efforts, and promote judicial economy.").

F.2d 977, 983-84 (3d Cir. 1984).

Specifically, in the context of bankruptcy transactions, where, as here, a party receives notice of a sale of assets, is afforded an opportunity to be heard, and does not object or otherwise oppose the sale or appeal the sale order, that party is barred from later challenging the sale order. See, e.g., Precision Industries, 327 F.3d at 542 ("[O]nce the time for appeal from a bankruptcy court's sale order has expired, res judicata precludes a party to the sale from attacking the sale order. . . ."); ITOFCA, Inc. v. Mega Trans Logistics, Inc., 322 F.3d 928, 930 (7th Cir. 2003) ("When a bankruptcy court approves the sale of an asset of the debtor, a person who has notice of the sale cannot later void it on the ground that he is the asset's real owner.") (citations omitted); In re Belmont Realty Corp., 11 F.3d 1092, 1095 (1st Cir. 1993) (citing Katchen v. Landy, 382 U.S. 323, 334 (1966) (res judicata applies to bankruptcy court decisions)); In re Garfinkle, 672 F.2d 1340, 1348 (11th Cir. 1982) ("An order of sale cannot be collaterally attacked.") (citing Slocum v. Edwards, 168 F.2d 627 (2d Cir. 1948)); In re Shary, 152 B.R. 724, 725 (Bankr. N.D. Ohio 1993) (where trustee sold debtors' licenses and no objections were filed, the court held that the State of Ohio could not oppose the transfer of the liquor license because it did not object to the sale); cf. Celotex Corp. v. Edwards (In re Celotex), 514 U.S. 300, 313 (1995) (allowing the collateral attack of bankruptcy court's decision would "seriously undercut[] the orderly process of the law").

As discussed above, the Debtors provided direct notice of the auction and the Sale Hearing to the Defendants and even published such notice in The Boston Globe, The New York Times, and The Wall Street Journal. Such notices clearly and expressly stated that, pursuant to the Purchase Agreement, the Acquired Assets would be sold free and clear of all liens, claims, encumbrances, and interests and provided the date, time, and location of the auction and the Sale

Hearing and the deadline for objecting to the Sale. The notices even instructed recipients how to obtain free copies of the documents referenced therein. Accordingly, this Court found that the notice of the Sale Motion, the Sale Hearing, and the related transactions was "due, proper, timely, adequate, and sufficient" and that no other or further notice was required. Sale Order, ¶ D; see also id. at Preamble.

The Defendants received notice of the Sale, were afforded an opportunity to be heard, and did not object or otherwise raise the issues set forth in the Massachusetts Action on or before the Sale Hearing, within a reasonable time following the distribution of the Termination Letter, within the appeal period following the entry of the Sale Order, or prior to Closing. Indeed, they waited more than a year after the entry of the Sale Order to bring an action and, when they finally did so, instead of seeking relief under Fed. R. Bankr. P. 9024, as required, they commenced the Massachusetts Action in the Massachusetts Court. As a matter of law, the Sale Order has a *res judicata* effect, precluding the Massachusetts Action.

In fact, the Defendants would be barred from now challenging the Sale Order even if this Court could somehow be viewed as having granted New Polaroid greater protection from successor and similar liability than was otherwise available under applicable law, because even erroneous bankruptcy court rulings are not subject to collateral attack. See, e.g., Stoll v. Gottlieb, 305 U.S. 165, 172 (1938) (judgment is not open to collateral attack, even if it may have been erroneous); Stratosphere Litigation L.L.C. v. Grand Casinos, Inc., 298 F.3d 1137, 1143 (9th Cir. 2002) (absent a timely appeal, successor indenture trustee was barred from challenging bankruptcy court's confirmation order, even if plan contained illegal provisions); Trulis v. Barton, 107 F.3d 685, 691 (9th Cir. 1995) ("Once a bankruptcy plan is confirmed, it is binding on all parties and all questions that could have been raised pertaining to the plan are entitled to

*res judicata* effect."); Republic Supply Co. v. Shoaf, 815 F.2d 1046, 1049 (5th Cir. 1987) (where bankruptcy court had confirmed debtor's plan of reorganization, and creditor did not object to plan's release provisions (including release of a guaranty) at confirmation hearing, the creditor was barred from enforcing guaranty, as "the bankruptcy court order is res judicata to [the appellee's] suit"); In re Brown, 296 B.R. 20, 21 (Bankr. N.D. Cal. 2003) ("Once a plan is confirmed, its terms are binding even if they are inconsistent with the Bankruptcy Code.") (citation omitted); cf. In re Lockard, 884 F.2d 1171, 1179-80 (9th Cir. 1989) (but for creditor's timely motion for reconsideration, creditor would have been barred, under principle of *res judicata*, from bringing state court action premised upon erroneous bankruptcy court judgment).

The *res judicata* effect of the Sale Order requires that judgment on the pleadings be granted in New Polaroid's favor.

D.     The Relief Sought Herein is Consistent With Public Policy

Several strong policy reasons support granting New Polaroid's request for judgment on the pleadings and precluding the imposition of successor or similar liability on New Polaroid in the Massachusetts Action.

First, successor or related liability should be precluded in the context of bankruptcy sales because it would wholly circumvent the priority scheme created by the Bankruptcy Code. See, e.g., TWA, 322 F.3d at 292 ("To allow the claimants to assert successor liability claims against American while limiting other creditors' recourse to the proceeds of the asset sale would be inconsistent with the Bankruptcy Code's priority scheme."); Myers, 297 B.R. at 781 ("Allowing the Plaintiff to disregard the plain language of the Bankruptcy Court Order would allow unsecured claims to receive greater protection and more priority than secured claims."); All American of Ashburn, 56 B.R. at 190 ("[I]f a plaintiff asserts a claim grounded on successor liability after a bankruptcy sale, he, in effect, receives a priority over those claims

which were paid in accordance with the Bankruptcy Code. The result is that successor liability theory would rearrange the priority scheme established by the Bankruptcy Code.") (citation omitted); White Motor Credit Corp., 75 B.R. at 951 ("This negative effect on sales would only benefit product liability claimants, thereby subverting specific statutory priorities established by the Bankruptcy Code. This result precludes successor liability imposition.") (citation omitted).

Given that secured creditors in the Debtors' bankruptcy cases did not even receive the full value of their allowed claims under the Plan, and that general unsecured creditors received significantly less than the full amount of their allowed claims under the Plan,[22] the effect of allowing the Defendants to go forward with the Massachusetts Action would be to elevate, unfairly and artificially, the priority of their claims above that of other creditors.

Second, the Defendants' collateral attack on the Sale Order challenges the enforceability of a final and non-appealable Bankruptcy Code § 363 "free and clear" sale order. The availability of such an order is often a key to maximizing the value of a debtor's estate. As such, the Massachusetts Action interferes with "the bankruptcy goal of maximizing Debtor's estate for the benefit of all creditors." In re American Metrocomm Corp. v. Duane Morris Heckscher LLP, 274 B.R. 641 (Bankr. D. Del. 2002); see also Bank of Am. Nat'l. Trust and Sav. Ass'n v. 203 N. LaSalle Street P'ship, 526 U.S. 434, 453 (1991) (referencing the "two recognized policies of Chapter 11, of preserving going concerns and maximizing property available to satisfy creditors"); United States v. Edwards, 905 F. Supp. 45, 47 (D. Mass. 1995) ("One of the primary goals of the bankruptcy regime is to maximize the assets of the debtor

---

[22]    See, e.g., Disclosure Statement with Respect to Third Amended Joint Plan of Reorganization of Primary PDC, Inc. (f/k/a Polaroid Corporation) and its Debtor Subsidiaries and the Official Committee of Unsecured Creditors, p. vii (estimating recoveries on account of Class 3 General Unsecured Claims under the Plan to be 14% – 18%).

available to satisfy the rightful claims of creditors.").

In these cases, the Debtors, with the support of the official committee of unsecured creditors and upon notice to the Defendants and other parties-in-interest, determined that the Sale of the Acquired Assets to New Polaroid afforded the best opportunity to maximize the value of the Debtors' assets. See Sale Order, ¶ J ("[T]he entry of this Order and the approval of (a) the Sale of the Acquired Assets . . . [is] necessary and appropriate to maximize the value of the Debtors' estates.").

The goal of maximizing the value of a debtor's assets through a court-approved sale process is frustrated where successor or similar liability is imposed on the purchaser of a debtor's assets in a § 363 sale, because such liability breeds uncertainty, resulting in a lower purchase price than otherwise attainable or even preventing the consummation of a transaction altogether. See Myers, 297 B.R. at 781 ("[W]ho would ever purchase assets at a bankruptcy proceeding if the successor liability argument were not limited, despite the plain wording of the bankruptcy order?"); All American of Ashburn, 56 B.R. at 190 (one reason to prevent successor liability in bankruptcy sales is "the negative impact that potential successor liability claims would have on the trustee's ability to sell assets of the estate at a fair price") (citation omitted); Forde, 437 F. Supp. at 633-34 ("If the trustee in a liquidation sale is not able to transfer title to the bankrupt's assets free of all claims . . . prospective purchasers may be unwilling to pay a fair price for the property leaving less to distribute to the creditors."); White Motor Credit Corp., 75 B.R. at 951 ("The effects of successor liability in the context of a corporate reorganization preclude its imposition. The successor liability specter would . . . deleteriously affect sales of corporate assets, forcing debtors to accept less on sales to compensate for this potential liability.").

If parties with claims against a debtor were permitted to circumvent § 363(f) (and the express terms of a properly and adequately noticed sale order) simply by alleging that a third-party purchaser "conspired" with the debtor, and is therefore jointly and severally liable for the full amount of the debtor's obligations, there would be a tremendous disincentive for potential buyers to purchase assets under 11 U.S.C. § 363. Indeed, this Court found that New Polaroid "would not have entered into the Purchase Agreement and would not consummate the Transactions, thus adversely affecting the Debtors, if the Sale of the Acquired Assets and the assignment of the Assigned Contracts to the Purchaser were not free and clear of all Interests . . . of any kind or nature whatsoever, or if the Purchaser would, or in the future could, be liable for any of the Interests, including, without limitation, the Excluded Liabilities." Sale Order, ¶ X. Accordingly, this Court should afford New Polaroid the protections for which it bargained and should grant New Polaroid's motion for judgment on the pleadings, precluding the Defendants from prosecuting the Massachusetts Action.

Third, if the Massachusetts Court were to hold New Polaroid liable as a "co-conspirator" under ERISA, New Polaroid might well have a claim over against one or more of the Debtors (i.e., the parties who actually terminated the Defendants' employment and had a direct relationship therewith) for contribution or indemnity. See, e.g., Chemung Canal Trust Co. v. Sovran Bank/Maryland, 939 F.2d 12, 16 (2d Cir. 1991) ("We see no reason to reject contribution as an equitable means of apportioning wrongdoing in this [ERISA] context [and] we think that even a breaching fiduciary should be entitled to the protection of contribution that has been traditionally granted fiduciary defendants under the equitable provisions of trust law. There is no reason why a single fiduciary who is only partly responsible for a loss should bear its full brunt. Full responsibility should not depend on the fortuity of which fiduciary a plaintiff elects

24

to sue."). Thus, the prosecution of the Massachusetts Action could impose further liability on the Debtors and their estates, to the detriment of their creditors.

Fourth, allowing the Massachusetts Action to continue would further harm the Debtors' estates and creditors, as the existence of the Massachusetts Action could adversely affect the value of the recovery of general unsecured creditors under the Plan. Specifically, pursuant to the Plan, those creditors have received a significant percentage of the Stock, and the Plan Administrator appointed in these cases has kept a portion of this Stock in reserve as it continues the claims reconciliation process. Allowing the Defendants to pursue a claim against New Polaroid in the Massachusetts Action could reduce the value of New Polaroid and, in turn, reduce the value of the Stock either held by the Debtors' creditors or currently held in reserve by the Plan Administrator to satisfy certain remaining claims.

Accordingly, to prevent any further liability to the Debtors and their estates and creditors, and to uphold the Bankruptcy Code's priority scheme and the integrity of 11 U.S.C. § 363, this Court should grant judgment on the pleadings in favor of New Polaroid and bar the Defendants from pursuing the Massachusetts Action.

## V. CONCLUSION

There is no material factual dispute. As a matter of law, New Polaroid is not liable on account of any of the Debtors' pre-Sale conduct or for any of their obligations with respect to the termination of their employees or their benefit plans because (1) pursuant to the Purchase Agreement, the Sale Order, and Bankruptcy Code § 363(f), New Polaroid purchased the Acquired Assets "free and clear" of claims for such liabilities and (2) the Defendants are precluded from collaterally attacking the Sale Order by its own terms and under the doctrine of *res judicata*.

25

For the reasons set forth herein, New Polaroid respectfully requests that this Court grant its motion for judgment on the pleadings and grant such other and further relief as is just and proper under the circumstances.

Dated: Wilmington, Delaware
      June 3, 2004

                                                         
Michael L. Vild (#3042)
Christopher Ward (#3877)
THE BAYARD FIRM
222 Delaware Avenue
Suite 900
P.O. Box 25130
Wilmington, Delaware 19899
(302) 655-5000

        -- and --

DECHERT LLP
Joel H. Levitin
David C. McGrail
30 Rockefeller Plaza
New York, NY 10112
(212) 698-3500

Attorneys for Polaroid Corporation (f/k/a OEP Imaging Corporation)

26