FILED
IN CLERKS OFFICE

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

2004 OCT 22  P 4:40

U.S. DISTRICT COURT
DISTRICT OF MASS.

|  |  |
|---|---|
| SALLY FERRARI, ELAINE JOHNSON JAMES A. MAGENHEIMER, as executor of the ESTATE OF JOHN MAGENHEIMER, ELIZABETH WILLIAMS, and DAVID A. MANISCALCO,<br><br>Plaintiffs,<br><br>v.<br><br>POLAROID CORPORATION and NEAL GOLDMAN,<br><br>Defendants. | **Civil Action No. 03-11275-MLW** |

---

## POLAROID CORPORATION'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION TO TRANSFER

Jerome A. Hoffman
Matthew  Lee Wiener
DECHERT LLP
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, PA 19103
(215) 994-4000

Richard D. Glovsky
Jeffrey J. Pyle
PRINCE, LOBEL, GLOVSKY & TYE LLP
585 Commercial Street
Boston, MA 02109
(617) 456-8000

Counsel for Polaroid Corporation

Dated:  October 22, 2004

## I. INTRODUCTION

By filing their action in this Court, Plaintiffs have attempted to circumvent the effects of extensive proceedings that have taken place before the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court"). Defendant Polaroid Corporation ("Polaroid" or "New Polaroid") is therefore moving to transfer this case to the United States District Court for the District of Delaware in order to allow the Bankruptcy Court to determine whether Plaintiffs' attempts to evade the provisions of that Court's free-and-clear sale order and the Bankruptcy Code's priority scheme should be permitted to succeed.

The extensively publicized bankruptcy proceedings involving Old Polaroid have been ongoing before the Bankruptcy Court for more than three years. Indeed, the Bankruptcy Court's docket for the bankruptcy proceedings contains more than 4,200 entries and runs some 260 pages. [1] Because this case involves issues with which the Bankruptcy Court is intimately familiar and particularly well-equipped to deal, this case should be transferred to the Bankruptcy Court for a definitive determination as to the contours and implications of that Court's orders. Pursuant to 28 U.S.C. § 1404, such transfer will serve "the interest of justice" because it will allow the Bankruptcy Court to construe its own Sale Order and to review claims that arise out of proceedings with which the Bankruptcy Court is already intimately familiar.

---

[1]    New Polaroid's Appendix of Documents accompanying this motion includes only the portion of the Bankruptcy Court docket (Ex. 1) that covers the brief period between the filing of the motion to approve the sale of assets to New Polaroid and the granting of that motion.

## II.  SUMMARY OF THE ARGUMENT[2]

On July 3, 2002, the Bankruptcy Court approved the arms' length sale of the assets of the bankrupt debtor that Plaintiffs call "Old Polaroid" to OEP Imaging Operating Corporation (since renamed Polaroid Corporation), which Plaintiffs call "New Polaroid." That same day, the Bankruptcy Court issued an order (the "Sale Order") that provided that New Polaroid is not a successor to Old Polaroid and is not liable for any obligations arising under Old Polaroid's employee benefit plans or for the termination of Old Polaroid's employees. The Bankruptcy Court further enjoined any "party in interest" from claiming otherwise in subsequent litigation and specifically retained jurisdiction to enforce the Sale Order.

Plaintiffs worked for Old Polaroid until, well before the bankruptcy filing, each of them claimed permanent disability and qualified for salary continuation benefits under Old Polaroid's Long-term Disability Plan ("LTD Plan"). Under Old Polaroid's ERISA-governed welfare plans, Plaintiffs and other LTD Plan-recipients were permitted to continue participating in Old Polaroid's healthcare plans. Old Polaroid paid all premiums for these individuals.

With the sale of its assets to New Polaroid, Old Polaroid terminated its relationship with Plaintiffs, as well as with all of its employees, pursuant to the Bankruptcy Court-approved asset purchase agreement. Old Polaroid also terminated all of its benefits plans at that time. New Polaroid did not offer employment to Plaintiffs because they were then, and remain today, permanently unable to work.

---

[2]    The documents referenced in this brief appear in the Appendix of Documents submitted in connection with the instant motion, except for the document referred to below as the "Sale Order," which is appended to Polaroid Corporation's Memorandum of Law in Support of Its Motion to Dismiss Plaintiffs' Second Amended Complaint.

- 3 -

Plaintiffs allege that Old Polaroid, which is no longer a party to this litigation, breached its promise to provide them with paid healthcare benefits so long as they remained disabled, thereby violating § 510 of ERISA, 29 U.S.C. § 1140, which prohibits an employer from "discriminating" against plan participants to prevent them from "attaining" plan benefits to which they are entitled. Rather than filing a claim against Old Polaroid in the Bankruptcy Court to recover their claimed vested benefits, however, Plaintiffs sued New Polaroid in this Court charging it as "conspirator" in Old Polaroid's alleged ERISA § 510 violation, even though New Polaroid has done nothing more than what the Bankruptcy Court has authorized it to do. Plaintiffs, recognizing that they cannot sue the bankrupt Old Polaroid in this Court, now ask the Court to require New Polaroid to assume Old Polaroid's alleged welfare plan liabilities by ordering New Polaroid to restore Plaintiffs' paid healthcare benefits under Old Polaroid's plans. Plaintiffs have also asserted a claim against Neal Goldman, as an alleged fiduciary of Old Polaroid's benefit plans, for his alleged breach of fiduciary duties in connection with the bankruptcy sale.

Plaintiffs' suit constitutes an impermissible attempt to impose upon New Polaroid the very successor liability that the Bankruptcy Court extinguished in the Sale Order. By bringing their case in this Court rather than the Bankruptcy Court, and by attempting to impose liability on New Polaroid for Old Polaroid's actions, Plaintiffs seek to circumvent the bankruptcy priority scheme and process to which they, like all creditors of Old Polaroid, properly were and should now be subject. That is, Plaintiffs are attempting to get from New Polaroid the full amount of the benefits allegedly promised to them under Old Polaroid's plans—even though Old Polaroid's other creditors (including retirees) were required to

- 4 -

compromise their respective interests in Old Polaroid's estate under the bankruptcy priority system.

The question presented in this motion is whether the Court should transfer the case to the District Court for the District of Delaware pursuant to 28 U.S.C. § 1404 (for referral to the Bankruptcy Court) because:

1) the Bankruptcy Court has specifically retained jurisdiction over the critical issue of whether the Sale Order forecloses Plaintiffs' claim against New Polaroid, as New Polaroid has argued in moving to dismiss Plaintiffs' Second Amended Complaint;

2) the breach of fiduciary duty claims against Neal Goldman relate to actions allegedly taken by Goldman in connection with the Bankruptcy Court-administered sale process;

3) if the Sale Order is not dispositive, then the main issues in this case will be (a) whether New Polaroid acted in a manner consistent with the Bankruptcy Court-approved asset purchase agreement and its rights as a free-and-clear purchaser of a bankrupt estate's assets, and (b) whether Old Polaroid, as the bankrupt debtor, properly terminated the benefits plans under which Plaintiffs claim benefits.

## III. PROCEDURAL BACKGROUND

Plaintiffs filed this suit in July 2003 as a putative class action against Old Polaroid, New Polaroid, and New Polaroid's largest shareholder (OEP), seeking to hold each defendant liable under the Employee Retirement Income Act (ERISA), 29 U.S.C. § 1001 *et seq.*, for (1) Old Polaroid's termination of Plaintiffs' paid healthcare benefits, (2) Old Polaroid's decision not to insure the healthcare benefits in the same manner as the LTD Plan's salary continuation benefits, (3) Old Polaroid's termination of Plaintiffs' employment, and (4) New Polaroid's decision not to hire Plaintiffs. (Complaint.) In response, Old Polaroid invoked the automatic stay provision of the Bankruptcy Code. (Suggestion of Bankruptcy and Notice of Operation of Automatic Stay (on file with the Court).) New Polaroid and OEP both moved the Court to transfer the case to the District of Delaware (the site of the bankruptcy proceeding) or, in the

- 5 -

alternative, to dismiss the Complaint.  New Polaroid and OEP also filed an adversary proceeding in the Bankruptcy Court seeking a declaration that Plaintiffs' Complaint was barred by the Sale Order.

Plaintiffs responded by filing an Amended Complaint in which they dropped both Old Polaroid and OEP as defendants and abandoned five of the six counts pleaded against New Polaroid.  The sole remaining count against New Polaroid charged it with violating § 510 of ERISA by allegedly conspiring with Old Polaroid to interfere with Plaintiffs' right to paid-for medical benefits that Old Polaroid had allegedly promised under its benefits plans.  (Am. Compl. ¶¶ 46-49.)  Plaintiffs asked the Court to require New Polaroid to assume Old Polaroid's alleged welfare plan liabilities by providing Plaintiffs' paid-for benefits under Old Polaroid benefits plans, even though those plans were terminated around the time that Old Polaroid terminated all of its employees in connection with the sale.  (*Id.* at 13.)  Plaintiffs also added to their Amended Complaint a claim against Defendant Neal Goldman, an alleged fiduciary of Old Polaroid, arising from his acts in connection with the bankruptcy sale.  (*Id.* at ¶¶ 50-54.)

In response, New Polaroid filed a new adversary proceeding with the Bankruptcy Court seeking a declaration that the Amended Complaint, like the original Complaint, was barred by the Sale Order.[3]  A dispositive motion filed by New Polaroid is now pending before the Bankruptcy Court.  New Polaroid also moved this Court to dismiss the Amended Complaint and, by separate motion, moved to transfer this case to the District of Delaware.

---

[3]     Purchasers often file such adversary proceedings when sued in contravention of a free-and-clear sale order issued by a bankruptcy court.  *See, e.g.*, *In re Colarusso*, 382 F.3d 51 (1st Cir. 2004); *In re Paris Indus. Corp.*, 132 B.R. 504 (D. Me. 1991); *see also, e.g.*, *In re G.S.F. Corp.*, 938 F.2d 1467 (1st Cir. 1991).

On August 20, 2004, this Court denied Polaroid's motions without prejudice and granted Plaintiffs leave to file a second amended complaint. On September 21, 2004, Plaintiffs filed their Second Amended Complaint. The Second Amended Complaint dropped Plaintiffs' class allegations and, apart from adding a second count for "Appropriate Equitable Relief" against Neal Goldman, reproduced the substantive allegations of the Amended Complaint without modification.

## IV. **FACTUAL BACKGROUND**

A.    **The "Free and Clear Sale."**

1.    *Bankruptcy Court's Sale Order.*

The Bankruptcy Court approved the sale of Old Polaroid's assets to New Polaroid free and clear of all liabilities other than those that New Polaroid expressly agreed to assume. (Sale Order at 14-15.) Issued after notice to all interested parties, including Plaintiffs, *see* § I(B) *infra*, the Sale Order specifically provides that New Polaroid "is not assuming[,] and shall have no liability or responsibility, as a successor or otherwise," for any "liabilities" or "obligations" "relating to or arising from" Old Polaroid's "ownership" of the assets or Old Polaroid's "operations" "on or prior to the Closing Date." (Sale Order at 20-21 (¶ 23).)

Expressly included within this non-assumption provision are "any obligations which might otherwise arise [under], or pursuant to, the Employee Retirement Income Security Act of 1974 [ERISA]," among them the "obligation to pay" any "benefits" to employees of Old Polaroid. (*Id.* (¶ 23).) As for ERISA liabilities, "the Purchaser [New Polaroid] shall have no liability with respect to any . . . employee pension, employee welfare or retention, compensation, benefit and/or incentive plan, agreement, practices, or program" to which Old

- 7 -

Polaroid was "a party." (*Id.*) The Sale Order also provides that New Polaroid is not liable for the termination of Old Polaroid's employees. (*Id.*)

The Bankruptcy Court backed the above provisions of its Sale Order with an injunction: Anyone holding any "Interest" in Old Polaroid—defined to mean any liability related to Old Polaroid (*id.*)— is "forever barred, estopped, and permanently enjoined from asserting against [New Polaroid] . . . such person's . . . respective Interests." (*Id.* at 15 (¶ 7).) Further: "No such persons . . . shall assert against" New Polaroid "any liability," "claim, or obligation," "relating to or arising from the ownership or operation of the Acquired Assets..." (*Id.* (¶ 7).) Another provision of the Sale Order specifically enjoins any "party" to "any employee welfare" "plan," "agreement," or "program" from suing New Polaroid with respect to "any and all claims arising from or relating thereto." (*Id.* at 22-23 (¶ 23 ).)

More broadly, the Sale Order injunction bars and enjoins any party in interest from suing New Polaroid under a successor liability theory: "*The Purchaser is not and shall not be deemed a successor of or to the Debtors for any Interest against or in the Debtors, [or] the Acquired Assets . . . .*" (*Id.* at 23 (¶ 24) (emphasis added).) This injunction extends to Old Polaroid's employees in particular: "[A]ll . . . employees . . . [and] former employees shall be, and hereby are, forever barred . . . and permanently enjoined from asserting such Interests . . . against" New Polaroid as "an alleged successor . . . with respect to any Interest of any kind whatever such person . . . had, has or may have against or in [Old Polaroid]." (*Id.* at 24 (¶ 24).)

### 2.    *Bankruptcy Court's Retention of Jurisdiction.*

The Bankruptcy Court has retained jurisdiction to enforce and resolve disputes arising under the Sale Order:

- 8 -

> This Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order as well as to enforce and implement the terms and provisions of the [attached] Purchase Agreement, including . . . retaining jurisdiction to interpret, implement, and enforce the provisions of this Order . . . .

(Sale Order at 25 (¶ 27).)

### 3.    *Notice to Plaintiffs and Other Parties in Interest.*

Before issuing the Sale Order, the Bankruptcy Court afforded all interested parties, including Plaintiffs, an opportunity to object to its terms at a sale hearing. Notice was provided to each Plaintiff individually by mail (Ex. 2 ("Declaration of Mailing"))[4] and also published in three major newspapers: *The Boston Globe, The New York Times*, and *The Wall Street Journal*. (Ex. 3 ("Notice of Publication").)[5] The Bankruptcy Court found, and stated in the Sale Order, that "adequate and sufficient notice" was "given to all parties-in-interest" and that "all interested parties" were "afforded an opportunity to be heard" with respect to the sale. (Sale Order at 2-3, 4.)

On June 28, 2002, the Bankruptcy Court held a hearing on the terms of the proposed sale. (*Id.* at 2.) Plaintiffs did not participate in the hearing. Nor did Plaintiffs otherwise voice

---

[4]      The names of four of the Plaintiffs (Elaine Johnson, John Magenheimer, Elizabeth Williams, and David A. Maniscalco) appear on pages 607, 723, 1288, and 730, respectively, of Exhibit B of the "Declaration of Mailing" (Ex. 2.) Notice to one of the Plaintiffs, Sally Ferrari (who suffers from Alzheimer's disease (Second Am. Compl. ¶ 2)), was sent to her husband. His name appears on page 395 of Exhibit B to the Declaration of Mailing. (Ex. 2.)

[5]      Both the newspaper notice and the notice served on each Plaintiff had the same text. (Ex. 2, 3.) The notice provides, in relevant part, that under "the terms of the Asset Purchase Agreement . . . the Debtors are selling" the business assets "free and clear of liens, claims, encumbrances and interests" to New Polaroid, "subject to higher and better offers and Court approval"; that an auction would be held on June 26, 2002; that a sale hearing would be held before the Bankruptcy Court on June 28, 2002; and that all objections to the sale had to be lodged with the Bankruptcy Court or would be forever waived. (Ex. 2.) Recipients of the notice were instructed on how to obtain copies of the documents referenced in it. (*Id.*)

any objections to the Bankruptcy Court about the terms of the proposed sale. (Ex. 1 (Docket).) Plaintiffs have not since sought any relief from the Bankruptcy Court. *(Id.)*[6]

## B.    **Plaintiffs' Employment with Old Polaroid and LTD Coverage**.

### 1.    *Disability Status.*

Plaintiffs were once employed by Old Polaroid. Between 1989 and 1998, each claimed to have suffered a disability that rendered him or her permanently unable to work. It is undisputed that none of the Plaintiffs was working or able to work for Old Polaroid when New Polaroid bought its assets. None had worked for years: Sally Ferrari qualified for LTD benefits in 1997, John Magenheimer and David Maniscalco both in 1998, Elaine Johnson in 1991, and Elizabeth Williams in 1989. (Second Am. Compl. ¶¶ 2-6.) None of the Plaintiffs is today able to work. *(Id.)*[7]

### 2.    *LTD Benefits.*

Once having qualified as disabled, Plaintiffs received benefits under Old Polaroid's LTD Plan. The LTD Plan provided for salary continuation payments consisting of approximately two-thirds of an employee's last salary. (Ex. 4.) Payments were made through a third-party insurance carrier. Notwithstanding the termination of the LTD Plan (see below), Plaintiffs continue to receive their salary continuation benefits directly from the carrier. (Second Am. Compl. ¶ 28.)

---

[6]    By contrast, numerous retirees objected to the proposed sale agreement because it made no provision for New Polaroid's assumption of liability for Old Polaroid's retiree healthcare benefits. (Preliminary Objection of the Official Committee of Retirees (Bankruptcy Court docket no. 1024).) Old Polaroid eventually reached a pre-sale court-approved settlement with the retirees within the context of the bankruptcy proceeding. (Stipulation and Order (i) Settling Claims and Controversies and (ii) Providing for Release, Bankruptcy Court docket no. 1067.)

[7]    Plaintiff John Magenheimer passed away on March 24, 2004. *See* Second Am. Compl. ¶ 3.

- 10 -

Once Plaintiffs qualified for coverage under its LTD Plan, Old Polaroid allowed them to continue their coverage under its medical and dental plans without requiring them to pay any premiums.[8] Old Polaroid's healthcare plans allowed an LTD recipient to continue participating "until he terminates, retires, dies, or recovers from such disability" (Ex. 5 at 6 (§ 3.04); Ex. 6, at 7 (§ 3.04)), as did the LTD Plan (Ex. 4 (§ 3.02)). At the same time, Old Polaroid's plans expressly reserved to Old Polaroid the right to terminate the LTD Plan (Ex. 4 at 15) and the healthcare plans at any time in its discretion. (Ex. 5 at 14 (provision of medical plan providing that the "the Company shall have no obligation whatsoever to maintain the Plan for any given length of time and may discontinue or terminate the Plan at any time without liability"); Ex. 6 at 16 (companion provision of dental plan).)

C.    **Termination of Plaintiffs' Employment Relationship with Old Polaroid.**

The Bankruptcy Court-approved asset purchase agreement (which was signed on July 3, 2002, the same date that the Bankruptcy Court entered the Sale Order) required New Polaroid to designate on a list (the "35 Day List") which, if any, Old Polaroid employees it intended to hire. (Ex. 8 at § 6.08(a).)  The agreement also authorized Old Polaroid to terminate, prior to the sale's closing date, the employment relationship of anyone not on the 35 Day List. Those identified on the 35 Day List would also have their employment relationships with Old Polaroid terminated on the closing date, at which time New Polaroid would hire them. (*Id.* at §6.09.)[9]

---

[8]    This was in contrast to Old Polaroid's active employees, who were required to pay a portion of their health insurance premiums themselves.

[9]    This was done in order to address issues relating to the WARN Act. (Ex. 8, §§ 6.08-.09.)

New Polaroid did not designate Plaintiffs to be hired because they were—and, in order to receive benefits under the LTD Plan (Ex. 4, §1.02), had represented themselves to be—permanently unable to work. (Second Am. Compl. ¶¶ 1, 2-6.) As provided in the Bankruptcy Court-approved purchase agreement (which the parties were expressly required by the Sale Order to implement, (Sale Order ¶¶ 4, 11.), Old Polaroid terminated Plaintiff's employment just prior to the closing. (Ex. 8, § 6.09; Second Am. Compl. ¶ 31.) Old Polaroid then commenced wrapping-up its affairs. (Ex. 4, § 6.09.)

D.    **Termination of Old Polaroid's Benefits Plans.**

Within two weeks of the sale's closing date, Old Polaroid terminated all of its benefits plans, including the health care plans under which Plaintiffs now claim benefits.

## V. ARGUMENT

A.    **This Court Has Discretion to Transfer the Case.**

A district court may, in its discretion, transfer a case to another district court in which the case might originally have been brought "[f]or the convenience of the parties, in the interest of justice." 28 U.S.C. § 1404. The phrase "interest of justice" does not qualify the phrase "for the convenience of the parties." Rather, it "is a separate component of a § 1404(a) transfer analysis," *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220 (7th Cir. 1986), meaning that it "may be determinative in a particular case, even if the convenience of the parties and the witnesses might call for a different result." *Id.*; *accord In re Medrad*, 215 F.3d 1341, 1999 WL 507359, at *2 (Fed. Cir. 1999) (unpublished) (same).

The First Circuit gives district courts wide latitude to transfer cases. It reviews a district court's decision to transfer a case only for abuse of discretion. *See, e.g., Coady v. Ashcroft & Gerel*, 223 F.3d 1, 11 (1st Cir. 2000). "Only in unusual circumstances," the First

- 12 -

Circuit has said, will it "disturb a district court's [§ 1404(a)] exercise of discretion [to transfer

a case]." *Edwards v. First Am. Title Ins. Co. of Nevada*, 19 F.3d 1427, 1994 WL 102402, at *

6 (1st Cir. 1994) (unpublished), *cert. denied*, 513 U.S. 915 (1994).

B.    **Cases Related to Bankruptcy Proceeding Should Be Transferred to the Bankruptcy Court.**[10]

There is a strong presumption that, in the interest of justice, all cases related to a

pending bankruptcy proceeding, whether filed in another bankruptcy court or a district court,

should be transferred to the district in which the bankruptcy proceeding is pending. *See, e.g.,*

*Havre Benard Ltd. v. Nathan Rothschild*, 2003 WL 367859, at *6-7 (S.D.N.Y. 2003); *In re*

*Reliance Group Holdings, Inc.*, 273 B.R. 374, 406 (Bankr. E.D. Pa. 2002); *Hohl v. Bastian*,

279 B.R. 165, 177-78 (W.D. Pa. 2002); *Blanton v. IMN Fin. Mort. Corp.*, 260 B.R. 257, 266-

67 (M.D.N.C. 2001); *In re Krystal Cadillac-Oldsmobile-GMC Truck, Inc.*, 232 B.R. 622, 627-

28 (E.D. Pa. 1999); *Larami v. Yes! Entertainment Corp.*, 244 B.R. 56, 61 (D.N.J. 2000);

*Wedlo, Inc. v. Lorch, Wedlo, Inc.*, 212 B.R. 678, 679 (Bankr. M.D. Ala. 1996); *In re Michael*

*Carmine Galluci*, 63 B.R. 93 (Bankr. R.I. 1986); *Kotlicky v. Belford*, 64 B.R. 679, 682 (N.D.

Ill. 1986); *Seybolt v. Bio-Energy of Lincoln, Inc.*, 38 B.R. 123, 128 (D. Mass. 1984). "Placing

all matters before the . . . bankruptcy court . . . further[s] judicial economy and efficient

resolution of the case." *Harve Benard*, 2003 WL 367859, at *6; *accord, e.g., Reliance Group*

*Holdings*, 273 B.R. at 406; *Seybolt*, 38 B.R. at 128.

---

[10]    Upon transfer, the case would be referred to the Bankruptcy Court under the District of Delaware's Standing Order of Reference.

- 13 -

C.    **The Court Should Transfer This Case.**

    1.    ***The Interest-of-Justice Factor Strongly Supports Transfer.***

        a.    *Plaintiffs Claims Are Inextricably Intertwined with the Bankruptcy Proceedings.*

Although Plaintiffs have attempted to distance their one and only claim against New Polaroid from the bankruptcy proceedings out of which it unquestionably arose, the critical issues in this case relate directly to New Polaroid's conduct in negotiating and securing court approval of the sale of Old Polaroid's assets. As is made clear by the relief requested in Plaintiffs' Second Amended Complaint, the critical issue in this case is whether New Polaroid was obligated under the Bankruptcy Code to assume the liabilities allegedly imposed by Old Polaroid's benefit plans. The claims against Neal Goldman, both of which relate to Goldman's involvement, on behalf of Old Polaroid, in negotiating the sale of Old Polaroid's assets to New Polaroid, are also unquestionably part and parcel of the bankruptcy proceedings. These issues should, therefore, be adjudicated by the bankruptcy court that has been charged with overseeing the administration of Old Polaroid's bankruptcy. [11]

---

[11]    There is no question that the Bankruptcy Court has jurisdiction over this case. The Bankruptcy Code confers jurisdiction on the federal courts over cases "under title 11 [the Bankruptcy Code]," 28 U.S.C. § 1334(b), and cases "arising under title 11, or arising in or related to cases under title 11," § 1334(c)(1). (The district courts, in turn, have authority to assign such cases to a bankruptcy court. *See* 28 U.S.C. § 157(a) & (b)(1).) If, as here, a case "involves a subsequent purchaser's interpretation of a sale order 'free and clear' . . . an order that can only be issued by a bankruptcy court," *In re Middlesex Power Equip. & Marine, Inc.*, 292 F.3d 61, 68 (1st Cir. 2002), then it arises either "in a case under title 11 or perhaps arises under title 11." *Id. Accord In re Colarusso*, 280 B.R. 548 (Bankr. D. Mass. 2002), *aff'd* 295 B.R. 166, (1st Cir. BAP 2003), *aff'd*, 382 F.3d 51 (1st Cir. 2004). A claim arises in a bankruptcy proceeding if it "would have no existence outside of the bankruptcy." *In re Goldstein*, 201 B.R. 1, 4 (Bankr. D. Me. 1996). This is clearly such a case as it involves claims based entirely on conduct occurring after the filing of Old Polaroid's bankruptcy petition and in connection with the proceedings relating to that petition. Further, if, as here, a case may "potentially have some effect on the bankrupt estate," *Middlesex*, 292 F.3d at 68 (quoting *In re G.S.F. Corp.*, 938 F. 2d 1467, 1475 (1st Cir. 1991), then it also falls within the bankruptcy court's "related to" jurisdiction. *See id.* What is more, a bankruptcy court always retains jurisdiction to enforce its own order, *see, e.g., In re Public Serv. Co. of New Hampshire*, 148 B.R. 702 (Bankr. D.N.H. 1992), *aff'd*, 848 F. Supp. 318 (D.R.I. 1994), *aff'd*, 43 F.3d 763 (1st Cir. 1995), *cert. denied*, 514 U.S. 1108 (1995); *In re Paris Indust. Corp.*, 132 B.R. 504, 507-08 (D. Maine 1991), as the Bankruptcy Court here expressly did. It is also clear that a bankruptcy court, like the district courts to which it is adjunct, has jurisdiction to hear ERISA cases. *See, e.g., Browning v. Levy*, 283 F.3d 761, 772 (6th Cir. 2002).

- 14 -

At the heart of Plaintiffs' case against New Polaroid is the question of whether the Bankruptcy Court intended to allow New Polaroid to purchase the assets of Old Polaroid with an entirely clean slate of liabilities, as § 363(f) of the Bankruptcy Code expressly permits. Issues relating to the propriety of the steps taken by either New Polaroid or Goldman to effectuate that purchase are inextricably related to the operation of Old Polaroid's business and therefore appear to fall clearly within the scope of the Sale Order. If, however, as Plaintiffs contend, the Sale Order does not actually mean what it says, it is the Bankruptcy Court that should make that determination.

An examination of the fundamental nature of Plaintiffs' claims in this case further demonstrates why this case should be transferred. As discussed above, Plaintiffs' initial Complaint focused on Old Polaroid's discontinuation of their paid benefits. When they realized that all claims against Old Polaroid could be adjudicated only in the Bankruptcy Court, Plaintiffs tried to change their course. However, while the description of Plaintiffs' claim has changed, the character of that claim has not. Plaintiffs' claim is nothing more than an attempt to impose on New Polaroid the successor liability expressly precluded by the Sale Order. Indeed, Plaintiffs explicitly ask that the Court order "restoration of [the] medical, dental and life insurance" that was available under Old Polaroid's benefit plans, even though those plans have been terminated. (Second Am. Compl. at 13.)

Because the three most critical issues in this case relate directly to the bankruptcy proceedings involving Old Polaroid, the interest-of-justice factor decidedly favors the transfer of this case to the District of Delaware for referral to the Bankruptcy Court. These issues are:

1.    *Centrality of Sale Order and Retention of Jurisdiction.* Nothing is more central to this case than the question of whether the Bankruptcy Court's Sale Order forecloses

- 15 -

the ERISA § 510 claim against New Polaroid, as New Polaroid has argued in its motion to dismiss Plaintiffs' Second Amended Complaint. It is well settled that the issuing bankruptcy court is best suited to interpret its own orders. *See Phoenix American Life Ins. Co. v. Devan,* 2004 WL 825276, at *3 (D. Md. 2004) ("A bankruptcy court is deemed to be in the best position to interpret its own orders, and thus a court's interpretation of its own order must be given substantial deference."); *National Shopmen Pension Fund v. Folger Adam Sec., Inc.,* 274 B.R. 1, 3 (Bankr. D.D.C. 2002) ("[T]he court concludes that the bankruptcy court itself can provide the best interpretation and enforcement of its own order."); *In re Mountain Laurel Ress Co.,* 258 B.R. 652, 658 (S.D. W. Va 2001) ("Because a bankruptcy court was directly engaged in the earlier proceedings, it had a better vantage point to make a determination on its earlier order."); *In re Zinchiak,* 280 B.R. 117, 125 (Bankr. W.D. Pa. 2002) ("A bankruptcy court can provide the best interpretation of its own order."); *In re U.S.H. Corp. of New York,* 280 B.R. 330, 335 (Bankr. S.D.N.Y. 2002) ("[I]t is well settled that 'the bankruptcy court is undoubtedly the best qualified to interpret and enforce its own orders including those providing for discharge and injunction.'") (citation omitted). Indeed, it is for this reason that *the Bankruptcy Court has specifically retained jurisdiction to enforce and resolve all disputes arising under the Sale Order.*

2.    *Propriety of New Polaroid's and Goldman's Conduct.* One of the two principal legal questions on the merits[12] is whether New Polaroid's actions in furtherance of its purchase of the assets of Old Polaroid were consistent with, and sanctioned by, the terms of the Asset Purchase Agreement approved by the Bankruptcy Court and, more generally,

---

[12]    The other strictly legal question (which is now before the Court) is whether there is a cause of action for conspiracy to violate § 510 of ERISA. New Polaroid has established that there is not. Mem. of Law in Supp. of Polaroid's Mot. to Dismiss Second Am. Compl. at 18-23.

- 16 -

with the established rights of a purchaser in a "free and clear" sale involving the liquidation of a bankrupt estate. Similarly, the claims against Goldman require a determination of whether his conduct in negotiating the bankruptcy sale of Old Polaroid to New Polaroid—a sale which had to be, and was, approved by the Bankruptcy Court—was consistent with his alleged fiduciary duties under ERISA. The Bankruptcy Court should decide, because it is uniquely well-situated to decide, what actions the Bankruptcy Code allows a free-and-clear purchaser to take in order to purchase unencumbered assets from the debtor and what actions the debtor's fiduciaries may take to effectuate such a purchase.[13]

3.      *Termination of Old Polaroid's Plans.*  On the ERISA front (which is only significant if the Bankruptcy Court determines that its Sale Order is not preclusive of Plaintiffs' claims), perhaps the most critical issue will be whether Old Polaroid properly terminated its benefits plans, under which Plaintiffs have claimed entitlement to "vested" benefits. (Second Am. Compl. ¶ 35.)  If Old Polaroid properly terminated its benefits plans, then Plaintiffs have no claim under ERISA against either New Polaroid or Goldman. For the alleged harm Plaintiff suffered—i.e., the loss of benefits—was occasioned ultimately not by the termination of their employment or the sale of Old Polaroid's assets, but by the termination of the plans under which Plaintiffs were receiving benefits.

b.      *The Bankruptcy Court Is Already Intimately Familiar with the Facts of this Case and the Legal Issues It Involves.*

The Bankruptcy Court issued the Sale Order only after a contested hearing regarding its terms. The terms of the Order were presumably informed by the Bankruptcy Court's

---

[13]      Goldman may also contend that he is entitled, under Old Polaroid's corporate by-laws, to indemnification from Old Polaroid in this matter. The potential effect of such a claim on the estate of Old Polaroid is therefore an additional consideration favoring transfer.

familiarity with the complexities of the Bankruptcy Code and bankruptcy practice, as well as the Court's observations of and interactions with the parties to the proceedings before it. The Bankruptcy Court entered the Sale Order only after requiring extensive public notice of proposals and motions and conducting numerous public proceedings against a background of protracted litigation involving many competing interests. Further, the Sale Order is one of the most critical elements of the entire bankruptcy proceeding involving New Polaroid, as the plan of liquidation which provides for the distribution of Old Polaroid's assets is predicated upon the sale to New Polaroid. In light of the expertise of the Bankruptcy Court and the time that it has invested in administering Old Polaroid's bankruptcy case, fairness and concern for judicial efficiency dictate that this action be transferred.

2.    *The Convenience of the Parties Does Not Favor Either Forum.*

New Polaroid believes that this case can and should be dismissed because the Second Amended Complaint fails to state a claim on which relief can be granted. However, even if this case were to require discovery on the merits, transfer would remain appropriate.

Neither depositions nor trial testimony from the Plaintiffs will likely be needed in this case for the simple reason that Plaintiffs' conduct is not at issue. Plaintiffs have no knowledge regarding the merits of the key allegations in the Second Amended Complaint—namely, those relating to communications between Old Polaroid and New Polaroid, the negotiation of the Asset Purchase Agreement (including Neal Goldman's involvement in those negotiations), the circumstances under which Old Polaroid terminated its employees, and so forth. Indeed, Plaintiffs had not worked for Old Polaroid for years, and they had no involvement whatsoever in its day-to-day affairs, let alone the sale of its assets to New Polaroid.

In their brief opposing New Polaroid's original transfer motion, Plaintiffs recognized that they would not be witnesses in this case. Rather, they contended only that transfer would impose a hardship on them because they would have to litigate two separate cases—one against Goldman before this Court, the other against New Polaroid before the Bankruptcy Court. (Pls.' Mem. Law Opp. to Def. Polaroid Corp.'s Mot. Transfer at 9.) There are at least three reasons why this is not a legitimate concern: First, because the claims against both New Polaroid and Goldman are inextricably interwoven with the bankruptcy proceedings, the Court should transfer the entire case to the District of Delaware (not just the case against New Polaroid), leaving only a single suit for the Plaintiffs to prosecute or defend. *See infra* § V(C)(3). Second, participation in two separate lawsuits would not impose any hardships on Plaintiffs themselves, as they would not be witnesses in either case. Third, the possibility of proceedings in two separate courts should not inform the Court's transfer decision if, in the interest of justice, the case against New Polaroid belongs in the Bankruptcy Court, as it plainly does for the reasons already given. *See supra* §§ V(A)-(C).

### 3. *The Court Can and Should Transfer the Claims Against Neal Goldman to the District of Delaware.*

In its August 20, 2004 Order, the Court directed New Polaroid to address the question of whether this Court has the authority to transfer Plaintiffs' claim against Goldman to the Bankruptcy Court even if Goldman does not ask for such transfer. The answer is that the Court does have the authority under § 1404 to transfer the claims against Goldman and that it should exercise that authority without regard to whether Goldman expressly asks for transfer.

Nothing in the transfer statute, 28 U.S.C. § 1404, requires that all defendants request transfer. In fact, § 1404 does not even require that transfer be requested by any party. A district court may *sua sponte* transfer a case under § 1404 if transfer is appropriate. *See, e.g.,*

- 19 -

*Cento Pearl v. Arts and Craft Supply Inc.*, 2003 WL 1960595, at *1 (S.D.N.Y. April 24, 2003) ("The power of district courts to transfer cases under Section 1404(a) *sua sponte* therefore is well established."); *Smiths Indus. Med. Sys., v. Ballard Med. Prods., Inc.*, 728 F. Supp. 6, 7 (D.D.C. 1989); 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure: Juris. 2d*, § 3844 (1986) (explaining that section 1404 "is broad enough that a judge can order transfer on his own initiative").[14]

Like the claim against Polaroid, the claim against Goldman arises from the proceedings in the Bankruptcy Court and is most properly adjudicated by that court. Specifically, Plaintiffs allege that Goldman breached his fiduciary duties by "act[ing] in his own self-interest by negotiating and accepting employment and an equity interest in the 'new' Polaroid" in connection with the bankruptcy sale. (Second Am. Compl. ¶ 47.) Plaintiffs are thus directly challenging Goldman's conduct, as an officer of Old Polaroid, with respect to the negotiation and implementation of the sale terms expressly approved by the Bankruptcy Court. (*Id.*)

Thus, just as the claims against New Polaroid should be adjudicated by the Bankruptcy Court, so too should the claims against Goldman be decided by the court that oversaw the bankruptcy sale process out of which the claim against him arose. Indeed, in

---

[14]     In one of their prior filings, the Plaintiffs cursorily suggested that the Bankruptcy Court has no jurisdiction over their claim against Goldman. This is clearly untrue. As noted above, *supra* n. 11, a bankruptcy court has jurisdiction over, among others, claims that "arise in" or are "related to" a bankruptcy proceeding. Because, as explained in the text above, the claims against Goldman arise from actions that he allegedly took in his capacity as a fiduciary of Old Polaroid, a debtor in bankruptcy, in connection with the *Bankruptcy Court-approved* asset sale, they unquestionably fall within the Bankruptcy Court's "arising in" and "related to" jurisdiction. *See, e.g., In re El San Juan Hotel Corp.*, 149 B.R. 263, 272 (D.P.R. 1992) (holding that bankruptcy court possessed jurisdiction over breach of fiduciary duty claim brought by a former employee of the debtor against the bankruptcy estate's attorney). Further, like New Polaroid, Goldman has asserted in prior pleadings that the Plaintiffs' claims are barred by an order (the order approving the debtors' plan of reorganization) of the Bankruptcy Court. (Answer and Counterclaim of Defendant Neal Goldman, Eighth Defense, at 10.) Accordingly, for much the same reasons that the Bankruptcy Court has jurisdiction over Plaintiffs' claims

- 20 -

response to Plaintiffs' Amended Complaint, Goldman raised as defenses in this case both that Plaintiffs' claim against him is barred by the Bankruptcy Court's order confirming the plan of reorganization of Old Polaroid and that Plaintiffs' claim against him may only be prosecuted in the Bankruptcy Court. *See* Answer and Counterclaim of Neal Goldman, at 10 (Defenses 9-11).

## VI. CONCLUSION

For the reasons stated above, the Court should transfer this case to the United States District Court for the District of Delaware.

Respectfully submitted,

Jerome A. Hoffman
Mathew Lee Wiener
Dechert LLP
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, PA 19103
(215) 994-4000

Dated: October 22, 2004

Richard D. Glovsky                    /JJP
Jeffrey J. Pyle
Prince, Lobel, Glovsky & Tye LLP
585 Commercial Street
Boston, MA 02109
(617) 456-8000

---

against New Polaroid, it has jurisdiction over the claim against Goldman. *See In re Middlesex Power Equip.*, 292 F.3d at 68.

# CERTIFICATION OF COUNSEL

I, Richard D. Glovksy, hereby certify that I have conferred with counsel for Plaintiffs in a good-faith attempt to resolve or narrow the issues presented in Polaroid Corporation's Motion to Transfer or, in the Alternative, to Dismiss.

Richard D. Glovsky

- 22 -

## CERTIFICATE OF SERVICE

I, Richard D. Glovsky, hereby certify that on October 22, 2004, I caused the foregoing

document to be served, via First Class Mail, addressed as follows:

> Harvey A. Schwartz, Esquire
> Rodgers, Powers & Schwartz, LLP
> 18 Tremont Street, Suite 500
> Boston, Massachusetts 02108
>
> Michael R. Pontrelli, Esquire
> Epstein Becker & Green, PC
> 111 Huntington Ave.
> 26th Floor
> Boston, Massachusetts 02199

Richard D. Glovsky

- 23 -