## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **SALLY FERRARI, ELAINE JOHNSON,** | ) | |
| **JAMES A. MAGENHEIMER, as executor** | ) | |
| **of the ESTATE OF JOHN** | ) | **C.A. No. 03-11275-MLW** |
| **MAGENHEIMER, ELIZABETH** | ) | |
| **WILLIAMS, and DAVID MANISCALCO** | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **POLAROID CORPORATION and** | ) | |
| **NEAL GOLDMAN** | ) | |
| **Defendants.** | ) | |

### PLAINTIFFS' OPPOSITION TO POLAROID CORPORATION'S MOTION TO TRANSFER THE CASE, OR, IN THE ALTERNATIVE, TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

### INTRODUCTION

This lawsuit is brought by former Polaroid[1] employees and their surviving

spouses who were receiving Long Term Disability Benefits ("LTD") pursuant to

the company's qualified employee benefit plan.  As a part of the LTD plan, the

plaintiffs were promised that for so long as they were receiving LTD benefits they

would also receive medical, dental and life insurance benefits cost-free.  In

summer 2002, Polaroid and One Equity Partners ("OEP") agreed on the terms of a

purchase agreement whereby One Equity Partners purchased 65% of Polaroid's

assets.  The purchase of Polaroid's assets was approved by the U.S. Bankruptcy

Court for Delaware in a final Sale Order.  Just days before the Bankruptcy Court

---

[1]  The debtor/seller company is referred to as the "old" Polaroid; the defendant/purchaser company is referred to as the new Polaroid.

order on the asset sale, the plaintiffs received notice from old Polaroid that their

employment was terminated and that they would no longer have their medical,

dental and life insurance premiums paid by the company.[2]  The plaintiffs allege

that the defendants conspired with the "old" Polaroid to discriminate against them

because they exercised their ERISA rights. The plaintiffs seek equitable and legal

relief against the defendant new Polaroid, and others, pursuant to the Employee

Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et. seq.* ("ERISA").

The plaintiffs filed their Second Amended Complaint on September 21,

2004.  This amended pleading differed from the Amended Complaint in that it

removed the claim for class status.   The Second Amended Complaint also added a

Count for Appropriate Equitable Relief pursuant to ERISA Sec. 502(a)(3) against

defendant Neal Goldman[3].

Because Polaroid's Motion to Transfer the Case or, in the Alternative, to

Dismiss Plaintiff's Second Amended Complaint, is essentially identical to the

previously filed Motion to Dismiss and Motion to Transfer, the plaintiffs herein

incorporate and rest, with the exception of the below arguments, on their

Opposition to Polaroid's Motion to Dismiss Plaintiff's Amended Complaint filed

---

[2] The plaintiffs continue to receive LTD salary reimbursement payments because this benefit had been properly insured.

[3] *See Aetna Health Inc. v. Davila*,    U.S.    ; 124 S. Ct. 2488 (2004)("[T]he Government suggests that the Act, as currently written and interpreted, may "allo[w] at least some forms of 'make-whole' relief against a breaching *fiduciary* in light of the general availability of such relief in equity at the time of the divided bench." . . .  As the Court points out, respondents here declined the opportunity to amend their complaints to state claims for relief under § 502(a); the District Court, therefore, properly dismissed their suits with prejudice. . . . But the Government's suggestion may indicate an effective remedy others similarly circumstanced might fruitfully pursue.")

with this Court in February 2004 and their previously filed Opposition to

Polaroid's Motion to Transfer.

## ARGUMENT

**A.**     **Non-employers, such as the present defendants, can be liable for conspiracy to violate ERISA Sec. 510**

As recently as August 2004, this Court (Woodlock, J.) endorsed a cause of

action for conspiracy to violate ERISA Sec. 510, the cause of action alleged in the

present case.  In *Tobin v. Nadeau, et al.*, 2004 U.S. Dist. LEXIS 17187 (D. Mass.

2004), Judge Woodlock held that an allegation of conspiratorial action to interfere

with an employee's Section 510 rights "fall[s] within § 510 of ERISA" and is

actionable as such.  *Tobin*, 2004 U.S. Dist. LEXIS 17187, 12-14.  This Court

should be guided by Judge Woodlock's decision, under which there is no question

that the plaintiff's Second Amended Complaint states a cause of action upon

which relief can be granted.

The plaintiff in *Tobin* brought state law claims alleging intentional

infliction of emotional distress, negligent infliction of emotional distress and

intentional interference with contractual relations.  Primarily, Tobin contended

that the individual defendants, a supervisor and a human resources administrator,

conspired to build a case to justify his termination from the company.  Tobin

claimed that he had inquired as to his job performance and had clearly indicated to

the defendants that if his job performance was inadequate, such that his job was in

jeopardy, that he intended to immediately apply for disability benefits.   Knowing

3

that Tobin intended to apply for these benefits, the defendants assured Tobin that his performance was adequate, yet, according to Tobin, they simultaneously put plans in place to terminate his employment. Tobin was terminated before he had an opportunity to apply for the disability benefits. Following his termination, he was refused the opportunity to apply because disability benefits are only provided to "employees."

The defendants removed the plaintiff's case to federal court on the grounds that the state law claims were preempted by ERISA, 29 U.S.C. §§ 1001-1461. The plaintiff moved to remand, claiming that since his employer was not a defendant, actions by a non-employer could not form the basis of an ERISA claim, thus the state law actions were not preempted by ERISA.

The Court held that a non-employer can be liable for conspiracy to violate ERISA Sec. 510[4] and, therefore, denied plaintiff's motion to remand. As to the non-employer individual defendants, the Court found that because § 510 "concerns the actions of 'any person,' not just the employer" that the alleged conduct fell within the section's ambit. Specifically, the Court held that Tobin's allegation that Schwitters (direct supervisor), conspired with Vance (human resource administrator ) and Nadeau ( indirect supervisor ) to mislead Tobin into believing that Tobin would not be terminated so that Tobin would not take disability leave "falls squarely within the scope of § 510."

---

[4] Section 510, under which the present action is brought, in part, states that it is unlawful for **any person** to "discharge, fine, suspend, expel, discipline, or discriminate against" a participant or beneficiary for exercising a right under an employee benefit plan or for the purpose of interfering with the attaining of any such right. 29 U.S.C. § 1140.

Under the same reasoning applied in *Tobin*, "new" Polaroid can be held liable for conspiring with "old" Polaroid to terminate the plaintiff's employment for the purpose of interfering with their medical and life insurance benefits.  Judge Woodlock's decision in Tobin focused on the wrongful conduct of the non-employer individual defendants in violating the plaintiff's ERISA rights. Similarly, in the present case, the defendant's liability derives from their conduct and their role in bringing about the plaintiff's loss of their ERISA benefits. If anything, the present case presents a stronger ERISA conspiracy claim than in *Tobin*, since the present plaintiffs allege that the named defendants conspired directly with their employer, while in *Tobin* the plaintiff alleged a conspiracy among several individuals, none of whom were his employer, to violate his ERISA rights.

The decision in *Tobin* is consistent with other cases applying traditional conspiracy analysis in the ERISA context. Clearly, the "old" Polaroid could not arbitrarily fire all of its employees because they had asserted their ERISA rights by seeking and obtaining benefits under the LTD plan.  *See Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 143 (1995) (allegation that employer terminated employee to prevent employee from receiving benefit is the "prototypical" ERISA claim.).  The question, then, is whether the "old" Polaroid and the "new" Polaroid, acting together and assisted by the defendant Goldman, could legally do what the "old" Polaroid alone could not have done. The plaintiffs, supported by the Ninth Circuit decision in *Lessard v. Applied Risk Management*, *et al.*, 307 F.3d 1020 (9th

Cir. 2002), suggest that the "new" Polaroid is liable for conspiring to violate

ERISA rights to the same extent that the debtor Polaroid would be. This liability

arises not at all from the fact the "new" Polaroid is some sort of successor to the

"old" Polaroid. Rather, the liability is based directly on the conduct of OEPI

(which changed its name to "Polaroid") itself prior to the sale.

     *Lessard*, *id*., involved a situation virtually identical to the present case.

Two companies negotiated the sale of one of the companies. As a term of the sale,

all employees would be automatically transferred to employment with the new

company. However, in order to transfer, the employee must have been actively

employed, or on non-medical, non-extended leave on the day that the sale

agreement was effectuated. Employees who were out of work on disability or

other medically related leaves on the day of the sale were eligible for transfer only

"if and when he or she returns to active employment." *Lessard*, 307 F.3d at 1022,

n. 1.   In short, all employees receiving long term disability benefits at the time of

the sale were terminated, all active employees were hired by the purchasing

corporation.  This is identical to the situation in the present case.

     Plaintiff Lessard was on medical leave the day of the sale; at the time of the

lawsuit her medical condition was such that her return to active work was unlikely.

She originally filed her suit under the Americans with Disabilities Act. On motion,

the District Court dismissed her ADA claim and held that her state law claims

were to be construed as alleging a single claim for wrongful termination pursuant

to ERISA Sec. 510. The Court then found that <u>both the buyer and the seller </u>had

violated Lessard's Section 510 rights. *Lessard,* 307 F.3d at 1024-1025. The Court

of Appeals affirmed, finding both buying and selling companies liable for the

ERISA violation.

　　　Other courts have similarly extended ERISA liability to those who conspire

with ERISA employers or fiduciaries. For example, in *Thornton v. Evans*, 692

F.2d 1064 (7th Cir. 1982), the Seventh Circuit found that entities not directly

subject to ERISA liability can be found liable to ERISA beneficiaries if they act

jointly with proper ERISA defendants. The Court said,

> But, even though plaintiffs have failed to state a
> claim against these defendants as fiduciaries
> within the meaning of ERISA, they may still
> have stated a claim under ERISA on the theory
> that the defendants conspired with parties who
> *are* fiduciaries to breach the duties imposed by
> ERISA

*Thornton*, 692 F.2d at 1078.  *See also Fremont v. McGraw-Edison Co.*, 606 F.2d

752, 759 (7th Cir. 1979*), cert. denied*, 445 U.S. 951 (1980) ("We are not saying

that in an ordinary civil action against a trustee, others who have aided him, or

conspired with him, in a breach of fiduciary duty may not be liable to the extent

that they have profited from the breach.  *See* Restatement, Second, Trusts § 256.")

Accord *Freund v. Marshall & Ilsley Bank,* 485 F. Supp. 629, 641-42 (W.D. Wis.

1979) (In an ERISA action, "the Court is fully empowered to award the relief

available in traditional trust law against nonfiduciaries who knowingly participate

. . . in a breach of trust.")[4]

Similarly, in *Eichorn v. AT&T Corp*, 248 F.3d 131 (3rd Cir. 2001), the

Third Circuit found that all parties to the sale of a corporation could be jointly

liable for violating the ERISA obligations of the selling entity. The Court

specifically found that evidence that the purchasing entity would be relieved from

paying expensive benefits for some employees of the selling company could

supply a motivation for violating the employees' ERISA rights, the same

motivation alleged in the present case.  The Court said,

> Plaintiffs point to the economic benefits that
> both Lucent and AT&T received from the no-
> hire agreement, specifically that neither
> defendant was required to pay for pension
> benefits, as evidence of specific intent to
> interfere with an ERISA pension plan in
> violation of § 510. *Turner v. Schering-Plough
> Corp.*, 901 F.2d 335, 348 (3d. Cir. 1990)
> (savings to an employer that result from
> employees' termination might be viewed as a
> motivating factor sufficient to satisfy the intent
> element of § 510 liability).

*Eichorn*, 248 F.3d at 149. Such facts, the Court found, are prima facie evidence of

both the purchasing and selling corporations' intent to violate the beneficiaries'

ERISA rights. "We hold that plaintiffs have produced sufficient evidence that both

---

[4] A long line of cases are in accord with *Freund's* reasoning. *See, e.g., Brock v. Hendershott*, 840 F.2d 339, 342 (6th Cir. 1988); *Lowen v. Tower Asset Management, Inc.*, 829 F.2d 1209, 1220 (2d. Cir. 1987); *Fink v. Nat. Savings & Trust Co.*, 772 F.2d 951, 958 (D.C. Cir. 1985) (dicta); *Dole v. Compton*, 753 F. Supp. 563, 565-69 (E.D. Pa. 1990); *Pension Benefit Guar. Corp. v. Ross*, 733 F. Supp. 1005, 1006-08 (M.D.N.C. 1990); *Pension Fund-Mid Jersey Trucking Ind. v. Omni-Funding Group*, 731 F. Supp. 161, 177-79 (D.N.J. 1990).

AT&T and Lucent received a direct and substantial financial gain from the cancellation of pension benefits, namely they were relieved from paying large sums for the pension benefits of the several Paradyne employees affected by the agreement." *Id.,* at 150.

The First Circuit has similarly applied traditional civil conspiracy law in the ERISA context. In *Crane v. Green & Freedman Baking Co.*, 134 F.3d 17, 24 (1st Cir. 1998), the Court cited *Lowen v. Tower Asset Management,* 829 F.2d 1209, 1220 (2nd Cir. 1987), which held that an entity that conspires with a proper ERISA defendant may become liable itself for the ERISA violation. "Parties may not use shell-game-like maneuvers to shift fiduciary obligations to one legal entity while channeling profits from self-dealing to a separate legal entity under their control." This is consistent with the application of civil conspiracy law, which requires simply an agreement to do something wrong and an act in furtherance of that agreement. For example, in *Aetna Casualty Sur. Co. v. P & B Autobody*, 43 F.3d 1546, 1564 (1st Cir. 1994), the Court said that "[f]or liability to attach on this basis, there must be, first, a common design or an agreement, although not necessarily express, between two or more persons to do a wrongful act and, second, proof of some tortious act in furtherance of the agreement." *See* Restatement (Second) of Torts § 876 cmt. b. ("Where two or more persons act in concert, each will be jointly and severally liable for the tort.")

The sale of the "old" Polaroid to One Equity Partners (which is now Polaroid Corporation) is factually similar to these cases. ERISA barred "old"

Polaroid from terminating all its employees who were receiving LTD benefits so that it could avoid the expense of paying for those benefits. Such an action would have violated Section 510. A party who conspired with Polaroid to violate ERISA is equally liable as Polaroid itself, once an act in furtherance of the conspiracy takes place. What the "old" Polaroid could not do on its own, the "old" Polaroid and the "new" Polaroid could not do together. The motion to dismiss the complaint against new Polaroid should be denied.

**B.    Polaroid's Motion to Transfer Should Be Denied**

Polaroid bases its arguments that the present case should be transferred to the Delaware Bankruptcy Court on a theory of the plaintiffs' case in which "new" Polaroid's liability arises only because it is the **successor** to the debtor "old" Polaroid. Under this view of the case, venue should be in the Bankruptcy Court. That legal theory may be correct, but the underlying premise – that the complaint alleges successor liability – is out and out wrong. The Second Amended Complaint alleges that "new" Polaroid is liable for **its own conduct,** which took place prior to debtor's bankruptcy filing. The plaintiffs do not: 1) raise **any** allegations against the debtor estate; 2) do not allege **any** claims against the debtor "old" Polaroid for which "new" Polaroid might be considered liable under a theory of successor liability; and 3) do not allege **any** claims for which, if "new" Polaroid is found liable, "new" Polaroid could seek payment or indemnification from the debtor's estate. In short, whether or not the present defendants are found liable to

10

the present plaintiffs is of no interest or effect on either the debtors or the creditors

in the Delaware bankruptcy case.

Though this Court may have discretion to transfer this case, transfer is

inappropriate because Polaroid cannot meet its burden for a transfer under 28

U.S.C. § 1404(a), the bankruptcy court lacks jurisdiction over the plaintiffs'

ERISA claim and because the interests of justice dictate that this court should

retain jurisdiction.

> **1.    Polaroid's Motion Should Be Denied Because Polaroid Can Not Meet Its Burden Under 28 U.S.C. §1404(a).**

 "[F]or the convenience of the parties and witnesses, in the interest of

justice, a district court may transfer any civil action to another district or division

where it might have been brought." 28 U.S.C. §1404(a).  Polaroid, as the moving

party, "has the burden of making a clear showing that the balance of interests

weighs in favor of the transfer."  *Martin v. Levingston Shipbuilding Co.*, 1992 U.S.

Dist. LEXIS 12534, 8-9 (D. Mass. 1992).  "The burden of proof rests with

[Polaroid] and there is a strong presumption in favor of the plaintiff[s'] choice of

forum."  *Sigros v. Walt Disney World Co.*, 129 F.Supp. 2d 56, 71 (D. Mass. 2001).

"Moreover, the balance of convenience focuses on the comparative financial

abilities of the parties and the cost of litigation should be borne by the party in the

best position to absorb and spread it."  *Id.*

This Court should find, for the reasons discussed below, that the balance of

interests weighs heavily in favor of the sick, dying and financially strapped

plaintiffs who chose to bring their claim in this Massachusetts Court. Further, Polaroid's Motion to Transfer also fails under §1404(a) because the Delaware Bankruptcy Court lacks jurisdiction over the plaintiffs' claims. Lastly, Polaroid's motion should be denied because a transfer would cause the plaintiffs' case to be bifurcated between two states and two courts.  The other defendant in this case, Neal Goldman, has not requested, nor does he have grounds to request, a transfer of the case against him to Delaware.  If Polaroid's motion is granted, the plaintiffs would be forced to litigate their claim against Polaroid in Delaware and their claim against Goldman in Massachusetts – a result that is against the weight of fairness, reason, and judicial economy.

> **2.    The Delaware Bankruptcy Court Does Not Have Jurisdiction to Hear The Plaintiffs' Claims Because The Plaintiffs' Suit Is Not A Core Proceeding and Related to the Bankruptcy Action.**

Jurisdiction for the claims alleged in the Plaintiffs' Second Amended Complaint properly lies in this Court.  The plaintiffs allege an ERISA violation that does not constitute a "core proceeding" and which is "unrelated" to the debtor Polaroid's bankruptcy proceedings in Delaware.  *Celotex v. Edwards*, 517 U.S. 300, 115 S.Ct. 1493, 131 L. Ed. 2d 403 (1995).  Polaroid does not contest this Court's jurisdiction over the plaintiffs' claim.

The plaintiffs' Second Amended Complaint is not a "core proceeding." *28 U.S.C. § 57 (B)(2)(A-O)*.   The statute's listed examples of core proceedings demonstrate that in order to be considered such, the proceeding at issue must have some effect on the bankruptcy estate.  *Id.*  None of the plaintiffs' claims do.

> To qualify as core, a proceeding must at least be so integral to the
> bankruptcy process that Congress has the power under Article I of the
> Constitution to authorize a specialized, non-Article III judge to render a
> final decision of its merits. Accordingly, under the guiding precedent in this
> Circuit, a proceeding is 'core' under § 157(b) only if it is integral to the
> basic function of the bankruptcy court and historically has been entrusted to
> the bankruptcy court, not reserved exclusively for Article III courts.

*Gray v. Exec. Risk Indem., Inc. (In Re Molten Metal Tech., Inc.)*, 271 B.R. 711,

714 (Bankr. D. Mass. 2002). As the plaintiffs' claim against Polaroid does not

implicate the debtor or the debtor's estate, it does not qualify as a core proceeding.

*See In re Gardner*, 913 F.2d 1515, 1518 (10th Cir. 1990) ("Actions which do not

depend on the bankruptcy laws for their existence and which could proceed in

another court are not core proceedings.")

Bankruptcy court jurisdiction also fails because the plaintiffs' claim is not

"related to" the administration of the debtor's estate. "A bankruptcy judge may

hear a proceeding that is not a core proceeding but that is otherwise related to a

case under title 11 [11 USCS §§ 101 *et seq.*]." 28 U.S.C. § 157(c)(1).

> The usual articulation of the test for determining whether a civil proceeding
> is related to bankruptcy is whether the outcome of that proceeding **could
> conceivably have any effect on the estate being administered** in
> bankruptcy…An action is related to bankruptcy if the outcome could alter
> the debtor's rights, liabilities, options or freedom of action (either positively
> or negatively) and which in any way impacts upon the handling and
> administration of the bankrupt estate.

*In Re Calorie Express,* 288 B.R. 167, 169 (D. Mass. 2002), *quoting Celotex,* 514

U.S. at 308, n.6 (emphasis added). The Second Amended Complaint does not

name the debtor Polaroid as a defendant and alleges claims only against new

Polaroid Corporation and Neal Goldman for acts taken in their own right – actions

not arising from successor liability of the debtor Polaroid – and which do not

impact the debtor's bankruptcy estate.  As a result, the Delaware Bankruptcy

Court does not have jurisdiction over the plaintiffs' present claims because

"[b]ankruptcy courts have no jurisdiction over proceedings that have no effect on

the debtor." *Celotex , supra* at 308, n.6.

> Both the case law and the legislative history make it clear that the lodestar
> of bankruptcy jurisdiction is the effect of a given action on a bankruptcy
> estate...A matter may be unrelated to a bankruptcy estate because it
> substantively had no impact on that estate or it may be unrelated because
> the estate does not exist anymore. Either way, if a give dispute is unrelated
> to a bankruptcy estate, a bankruptcy court...has no subject-matter
> jurisdiction over that dispute.

*In Re Calorie Express*, *supra* at 169. "Related proceedings ...must, however,

'potentially have some effect on the bankruptcy estate, such as altering debtor's

rights, liabilities, options, or freedom of action, or otherwise have an impact upon

the handling and administration of the bankrupt estate.' (citations omitted)." *In Re

G.S.F. Corp.,* 978 F.2d 1467, 1475 (1st Cir. 1991).  This case has *no effect* on the

debtor "old" Polaroid.

If Polaroid is found liable for the acts alleged in the Second Amended

Complaint it can not look to the bankruptcy estate to satisfy the plaintiffs'

judgments. Just as "new" Polaroid did not agree to assume "old" Polaroid's

ERISA liabilities, debtor Polaroid bears no liability for new Polaroid

Corporation's independent acts.  "New" Polaroid's invocation of successor

liability theory is simply misplaced.  Plaintiffs have not and do not make any

claim that "new" Polaroid is liable under any theory of successor liability.

14

**3.     The Court Should Deny Polaroid's Motion to Transfer Because Polaroid Has Failed to Meet Its Burden of Proving That the Balance of Interests Weighs In Favor of Transfer.**

Polaroid is a going corporate concern, based and operating in Massachusetts. The factual issues in dispute in this case will all be investigated by written and testimonial discovery of persons working and/or residing in Massachusetts. The plaintiffs dispute Polaroid's contention that "neither deposition nor trial testimony will likely be needed." To the contrary, the motivation of the decision makers at Polaroid, currently working in Massachusetts, is at the very heart of the plaintiffs' Second Amended Complaint. The gravamen of a Section 510 action is proof of an invidious motivation to retaliate against the plaintiffs because they asserted their ERISA rights. Indeed, "[t]he ultimate inquiry in a Section 510 case is whether the employment action was taken with the specific intent of interfering with the employee's ERISA benefits." *Barbour v. Dynamics Research Corporation,* 63 F.3d 32, 37 (1st Cir. 1995), *cert. denied* 516 U.S. 113 (1996). Proof of specific intent will be sought from deposition testimony of numerous witnesses, all of whom are likely to be either working or living in Massachusetts. Even if Polaroid's prophecy that this case will be resolved on cross-motions for summary judgment were to be realized, any summary judgment motion by the plaintiffs could only be drafted following extensive depositions and written discovery -- in Massachusetts -- on the intent issue. Even still, issues of motive and intent are rarely appropriate for summary judgment. *Santiago-Ramos*

*v. Centennial Wireless P.R. Corp.*, 217 F.3d 46 54 (1st Cir. 2000).  The plaintiffs

expect that this case will require disposition by a fact finder.

Of particular interest during discovery will be the "35 Day List" ("List")

mentioned in Polaroid's pleadings.  (Memorandum in Support of Motion to

Transfer, p. 11).  According to new Polaroid, this is a list of employees to whom

"new" Polaroid intended to extend offers of employment, or employment status.

According to "new" Polaroid, "[t]hose identified on the 35 Day List would also

have their employment relationships with 'old' Polaroid terminated on the closing

date, at which time new Polaroid would hire them." *Id.*   Plaintiffs anticipate

discovering information about the decision making process regarding which "old"

Polaroid employees were designated on that list for hire and which were

deliberately left off the list.  In fact, it is the plaintiffs' contention that all "old"

Polaroid employees, save those on Long Term Disability, were designated on the

list.  See, Second Amended Complaint, ¶ 31.  Clearly, "new" Polaroid's

motivation in leaving the plaintiffs off the 35 Day List is central to the plaintiffs' §

510 claim.

Finally, the balance of equities leans heavily toward the plaintiffs. This

Court should consider "the comparative financial abilities of the parties," *Sigros,*

129 F.Supp. 2d at 71, in deciding whether transfer  Delaware will cause hardship

to any parties.  That, by itself, is a decisive factor in the present case. Transfer out

of Massachusetts will functionally terminate the plaintiffs' claims. They simply

are in no financial position to retain bankruptcy counsel in another state, who

would certainly require payment of hourly fees, rather than the present contingent fee representation in Massachusetts that makes the present case possible for plaintiffs[5]. After all, the plaintiffs allege they cannot afford to pay for their necessary medications; they certainly cannot pay legal fees for out-of-state bankruptcy court counsel to conduct extensive litigation, particularly since that Delaware counsel would have to travel to Massachusetts for all depositions. The Court should give this equitable factor great weight, as transfer will almost certainly end this case without even reaching the merits.

### 4. This Court Should Not *Sua Sponte* Transfer the Plaintiffs' Claim Against Neal Goldman

The Bankruptcy Court does not have jurisdiction over the plaintiffs' claim against Neal Goldman.  Any judgment against Goldman will be satisfied from the bankruptcy estate.  Goldman is insured by a Directors and Officers Liability Policy.  If Goldman is found liable for breach of his fiduciary duties, then any judgment against him will be paid  either by him personally or directly from the insurance policy.

> Generally, when insurance policies provide direct coverage to directors and officers, the proceeds of the insurance policy are not property of the bankruptcy estate because the proceeds are payable to the directors and officers not the estate. *See Louisiana World Exposition Inc*., 832 F.2d at 1399 (the debtor has no ownership interest in proceeds from a liability policy where the obligation of the insurance company is only to the directors and officers who are the named and the only insured); *In re Daisy Sys. Sec. Litig.,* 132 B.R. 752, 755 (N.D.Cal. 1991) (When directors and officers' liability insurance policy

---

[5]  Plaintiffs counsel has had to retain Delaware bankruptcy counsel for the limited purpose of filing pleadings in that court. Such counsel requires payment of hourly fees.

provides direct coverage to the directors and officers the proceeds are not property of the estate to be divided among the debtor's creditors).

*In re Allied Digital Techs. Corp.* 306 B.R, 505, 510 (Bankr. D. Del. 2004).

Because the plaintiffs' claims against Goldman will have "no effect" on the

bankruptcy estate," the Bankruptcy Court lacks jurisdiction over plaintiffs'

claims against Goldman, thus those claims cannot be transferred to Delaware.

If the balance of the equities weighs heavily in favor of retaining the case

against Polaroid in Massachusetts, that balance tilts further toward the plaintiffs

when the possibility that this case could be bifurcated between two federal

courts in two states arises. Rather, this Court should retain jurisdiction and

deny Polaroid's Motion to Transfer, with respect to <u>both</u> defendants.

## <u>CONCLUSION</u>

For the reasons set forth above, this Court should deny Polaroid's Motion to

Transfer the Case Or, In the Alternative, to Dismiss Plaintiff's Second Amended

Complaint.

Respectfully submitted,
Sally A. Ferrari, Elaine Johnson, John
Magenheimer, David Maniscalco, and Elizabeth
Williams,
By their attorneys,


/s/ Harvey A. Schwartz
Harvey A. Schwartz
 BBO # 448080
Laurie A. Frankl
 BBO # 647181
Rodgers, Powers and Schwartz, LLP

18 Tremont Street, Suite 500
Boston, MA 02108
617-742-7010

Dated: December 9, 2004