UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SALLY FERRARI, ELAINE JOHNSON JOHN MAGENHEIMER, ELIZABETH WILLIAMS, and DAVID MANISCALCO,<br><br>Plaintiffs,<br><br>v.<br><br>POLAROID CORPORATION and NEAL GOLDMAN,<br><br>Defendants. | CIVIL ACTION NO. 03-11275 (MLW) |

**REPLY MEMORANDUM IN SUPPORT
OF DEFENDANT NEAL D. GOLDMAN'S MOTION FOR JUDGMENT
ON THE PLEADINGS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT**

In accordance with the Court's November 30, 2004 order, Defendant Neal D. Goldman ("Goldman") submits this reply memorandum in support of his motion for judgment on the pleadings, or, in the alternative, for summary judgment.

Plaintiffs have all but abandoned their central allegation that Goldman "should have ensured that 'old' Polaroid properly insured or otherwise adequately secured [their] medical, dental, and life insurance premium payments." SAC ¶ 45; see also id. ¶ 46. Until now, they avowed, their case turned on "Goldman's [alleged] failure to insure the plaintiffs' [benefits]." Id. ¶ 52. Goldman has demonstrated at length that the funding of ERISA plan benefits constitutes a "settlor" function which implicates no fiduciary obligations. Plaintiffs never mention, much less address, the case law on this point. In their three successive complaints, they never even allege that Goldman had the slightest authority or discretionary control to "insure" plan financing. He had none. This should end the case.

Backpedaling, Plaintiffs say they meant to allege only that Goldman should have sued in an effort to compel Old Polaroid to maintain their benefits. Pls.' Opp'n to Motion to Dismiss or for Summ. J. at 10-12 [hereinafter "Opp'n"]. As they would now have it, a provision in the plan documents, which required each plan to be "administered according to its terms," somehow obligated Goldman to sue Old Polaroid over the financing of its plans. Id. at 8-9. It did not. A garden-variety directive to follow a plan document in the course of administering the plan hardly translates into the specific, affirmative duty of suing the plan sponsor to channel millions of dollars into funding benefits indefinitely.[1]

Nor was Old Polaroid even in a position to pay its debts as they came due. That is why the company declared bankruptcy, sold its business, and terminated its benefits program. That is also why Plaintiffs themselves elected not to bother pursuing any claim before the bankruptcy court for the wrongful deprivation of allegedly vested benefits. Plaintiffs cannot answer this obvious question: What good would it have done for Goldman to sue Old Polaroid? A lawsuit initiated by him would have been just as unavailing as the bankruptcy claim Plaintiffs' counsel understandably did not pursue.

The contention that Goldman should have warned Plaintiffs they were at risk of losing allegedly vested benefits is equally lacking in merit, see Opp'n at 12. The pleadings themselves establish that a warning was given. Old Polaroid's July 2002 letter stated: "it is important that you be advised of the impact [of the anticipated sale of the business] to your health and welfare

---

[1] The sole case cited by Plaintiffs, Laborers Fringe Benefit Funds Detroit and Vicinity v. Northwest Concrete & Construction, Inc., 640 F.2d 1350 (6th Cir. 1981), is beside the point because it involved only whether ERISA's enforcement section permitted the trustee of the union trust fund to seek injunctive relief with respect to an employer's obligations under a collective bargaining agreement, and in no way involved whether the controlling plan documents imposed the duty, or conferred the authority, to sue.

2

benefits." SAC ¶ 31; Counterclaim ¶ 16; Answer to Counterclaim ¶ 16. Be that as it may, the overriding reality remains that nothing communicated by Goldman could have averted the termination of benefits.

Plaintiffs devote but one, single-sentence footnote to the decision of Polaroid's board of directors to terminate Old Polaroid's benefits plans. Opp'n at 5 n.1. They neither contest the termination, nor explain why it is not dispositive. It is dispositive. This fact — the only one outside of the pleadings which Goldman has asked the Court to consider — destroys any argument that Goldman somehow could have saved Plaintiffs' benefits.

Fully half of Plaintiffs' 20-page opposition is devoted to irrelevant argument that Goldman's motion should not be converted to one for summary judgment, Opp'n at 2-6, and that discovery instead is required, id. at 8-14. Plaintiffs have not begun to show how any such discovery might change the outcome of this case. It would not. Unless Goldman had a duty to insure plan financing, which he did not, and unless he had it in his power to preserve those benefits, which he could not, no amount of discovery can breathe life into this action.

Plaintiffs argue for "a cognizable claim" that Goldman acted under a conflict of interest. Opp'n at 14-15. Goldman already has demonstrated that ERISA's "prohibited transaction" provision, 29 U.S.C. § 1106, upon which Plaintiffs previously relied in their pleadings, does not apply. In response, Plaintiffs have dropped their reliance on Section 1106. Instead, they now cite cases about the general duty of loyalty owed by ERISA fiduciaries. Opp'n at 14-16. This approach yields no independent claim, however, since it presumes the existence of a fiduciary duty concerning the continuation of Plaintiffs' benefits despite the Old Polaroid bankruptcy, sale of assets, and plan termination — a duty Goldman did not have. If he had no fiduciary duty to

3

insure financing, and if he could have done nothing in a fiduciary capacity to prevent the termination of benefits, then ERISA's general fiduciary standards do not apply at all.

In a last gasp as to liability, Plaintiffs insinuate that Goldman might have participated in an alleged conspiracy between Old and New Polaroid. Opp'n at 15. No facts are alleged to support this charge. It cannot defeat Goldman's motion.

As to remedy, Plaintiffs once again never mention, much less address, the legal authorities cited by Goldman. The law is that ERISA nowhere authorizes suit against a fiduciary, individually, for wrongfully-withheld plan benefits. While Plaintiffs profess not to "hold Goldman liable for a failure to fund the plan," Opp'n at 16, they nevertheless seek to make him an insurer of benefits which Old Polaroid could not pay, under plans which Old Polaroid (and not Goldman) terminated. ERISA contemplates no such relief.

For these reasons, and for the reasons stated in his opening brief, the Court should grant Goldman's motion for judgment on the pleading or, alternatively, for summary judgment.

Respectfully submitted,

/s/ Michael R. Pontrelli
Thomas I. Elkind (BBO # 153080)
Michael R. Pontrelli (BBO # 549194)
Jeffrey M. Rosin (BBO # 629216)
 Epstein, Becker & Green, P.C.
 111 Huntington Avenue
 Boston, MA 02199
 (617) 342-4000

Attorneys for Defendant Neal D. Goldman

Dated: December 22, 2004