UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SALLY FERRARI; ELAINE JOHNSON;
JOHN MAGENHEIMER; ELIZABETH
WILLIAMS; AND DAVID A. MANISCALCO,

Plaintiffs,

v.

POLAROID CORPORATION and
NEAL GOLDMAN,

Defendants.

Civil Action No.
03-11275-MLW

## POLAROID CORPORATION'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO TRANSFER THE CASE OR, IN THE ALTERNATIVE, TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT[*]

The pending motion (which asks the Court to transfer the case or, in the alternative, to dismiss Plaintiffs' second amended complaint)[1] raises three principal questions—the first of which relates to the transfer issue, the second and third of which relate to the dismissal issue:

1) Should the Court exercise its discretion to transfer the case so as to allow the Bankruptcy Court, which has specifically retained jurisdiction to interpret and enforce the Sale Order, to decide: (a) whether the Sale Order bars the Plaintiffs' claims, as New Polaroid contends; and if it does not, then (b) whether New Polaroid acted

---

[*] This brief uses the same proper names, defined terms, and abbreviations as New Polaroid's opening briefs.

[1] New Polaroid has also moved the Court to strike Plaintiffs' jury trial demand because, as every court within this District to have addressed the question has held and as the First Circuit has suggested, there is no right to a jury trial under ERISA. (Renewed Mot. to Strike Pls.' Demand for a Jury Trial.) Plaintiff has not responded to New Polaroid's motion, and the Court should grant it as unopposed.

consistently with the rights of a free-and-clear purchaser under the Bankruptcy Code, and (c) whether Neal Goldman, as an alleged fiduciary of the bankrupt debtor's (Old Polaroid's) benefit plans, lawfully discharged his fiduciary obligations with respect to Plaintiffs?

2) Does the Sale Order bar Plaintiffs' § 510 claim?

3) Sale Order aside, does ERISA authorize a cause of action for conspiracy to violate § 510 (the sole cause of action remaining against New Polaroid)?

In its opening briefs, New Polaroid established that Plaintiffs should be required to litigate this case before the Bankruptcy Court, as were all other former employees with claims for benefits against Old Polaroid; that the Sale Order expressly bars Plaintiffs' ERISA § 510 claim; and that ERISA does not authorize a cause of action for conspiracy to violate § 510. New Polaroid's arguments stand unrebutted. Plaintiffs have not even addressed most of them.

In opposing transfer, Plaintiffs contend principally that the Bankruptcy Court lacks jurisdiction over their claim, but they fail to acknowledge that the Bankruptcy Court specifically retained jurisdiction to enforce and interpret its Sale Order. In opposing New Polaroid's motion to dismiss, Plaintiffs do not even acknowledge, let alone respond to, New Polaroid's argument that the Sale Order on its face bars their claim and that, if the Sale Order is not enforced against them, they will have been allowed to circumvent the Bankruptcy Code's priority scheme. In contending that that the Court should recognize a cause of action for conspiracy to violate ERISA § 510, Plaintiffs ignore the well-established principle that courts should not read causes of action into ERISA, relying instead on cases that do not support their position (including several that do not even deal with § 510 at all).

- 2 -

Because Plaintiffs have not for the most part addressed New Polaroid's arguments, only a few brief points need be made in reply. Section I of this brief sets forth the points relating to the transfer motion, Section II those relating to the motion to dismiss.

## I. THE COURT SHOULD TRANSFER THE CASE TO THE DISTRICT OF DELAWARE FOR REFERRAL TO THE BANKRUPTCY COURT.

New Polaroid has set forth at least three reasons why the interest-of-justice prong of 28 U.S.C. § 1404 should lead the Court to transfer this case to the District of Delaware. (Polaroid Corp.'s Mem. Law in Supp. of Its Mot. to Transfer at 14-18 ("Polaroid's Transfer Br.").) Rather than addressing them, Plaintiffs have raised several spurious arguments to which we respond briefly in this section.

### A. Plaintiffs Ignore the Interest-of-Justice Considerations.

While arguing that transfer will inconvenience them (an argument we address below in § C), Plaintiffs ignore § 1404's key interest-of-justice considerations on which New Polaroid bases its transfer motion: that by proceeding with their claims in this Court, Plaintiffs are attempting to end run the Bankruptcy Court, circumvent the Bankruptcy Court's priority scheme, seek relief in this Court from another court's carefully drafted order, and challenge conduct inextricably linked to the Bankruptcy Court-ordered sale of Old Polaroid's assets. (Polaroid's Transfer Br. at 14-16.) For the reasons already given (*id.* at 12), the Court should give these considerations decisive weight in exercising its discretion—without regard to the convenience-of-the-parties factor—as 28 U.S.C. § 1404 allows the Court to do.

916612.1.PHI_LIT_50 12/23/04 2:43 PM

### B. Plaintiffs Wrongly Contend that the Bankruptcy Court Does Not Have Jurisdiction over this Case.

One of Plaintiffs' two main arguments against transfer is that the Bankruptcy Court does not have jurisdiction over this case. (Plaintiffs' Opp. to Polaroid Corp.'s Mot. to Transfer the Case, or, in the Alternative, to Dismiss Pls.' Sec. Am. Compl. at 15-15 ("Pls.' Br.").) In so arguing, however, Plaintiffs continue to ignore the provision of the Sale Order under which the Bankruptcy Court has expressly retained jurisdiction "over any matter or dispute arising from or relating to the implementation" of the Sale Order, "including . . . jurisdiction to interpret, implement, and enforce the provisions" of the order. (Sale Order at 25 (¶ 27).)

The Bankruptcy Court's specific retention of jurisdiction forecloses Plaintiffs' jurisdictional challenge. *See, e.g., Haseotes v. Cumberland Farms, Inc.*, 216 B.R. 690, 694 (D. Mass. 1997) (holding that bankruptcy court had jurisdiction over a post-confirmation claim of breach of fiduciary duty because "the Bankruptcy Court clearly retained jurisdiction over those issues to carry out the purposes and intent of the Plan"); *Frazier v. American Airlines, Inc.*, No. Civ. A. 03-734-JJF, 2004 WL 115118, *2 (D. Del. Jan 16, 2004) (bankruptcy court's retention of jurisdiction in sale order provided basis for transfer from district court).

Even had the Bankruptcy Court not included an express reservation-of-jurisdiction clause in the Sale Order, though, it would still clearly have jurisdiction over this case. The First Circuit in *In re Middlesex Power Equipment & Marine, Inc.*, 292 F.3d 61 (1st Cir. 2002),

- 4 -

ruled that a bankruptcy court had jurisdiction over a "dispute" between a free-and-clear purchaser of a bankrupt's assets and a third party—neither of them parties to the underlying bankruptcy case itself— involving the "purchaser's interpretation" of the "free and clear order" because the dispute involved an order that "can only be issued by a bankruptcy court." *Id.* at 68. *Accord In re Michael J. Colarusso*, 280 B.R. 548, 554-55 (Bankr. Mass. 2002) (holding that, under *Middlesex*, bankruptcy court had jurisdiction over a dispute between the purchaser of a bankrupt debtor's property and a third-party involving the "validity and scope" of a free-and-clear bankruptcy court sale order). *Middlesex* is conclusive here against Plaintiffs' challenge to the Bankruptcy Court's jurisdiction.[2]

### C. Transfer Will Not Unduly Inconvenience Plaintiffs.

Contrary to Plaintiffs' contention (Pls.' Br. at 15-16), New Polaroid has not in moving for transfer contended that testimony will not be needed in this case (although New Polaroid does expect that that the Bankruptcy Court will resolve the case, if not on the pleadings, then on summary judgment). New Polaroid has contended only that no testimony will be needed from Plaintiffs themselves on the issue of liability, as it is clear that they have no relevant testimony to give about the bankruptcy sale. (Polaroid's Transfer Br. at 18-19.) Plaintiffs do

---

[2] In their brief, Plaintiffs harp on the issue of whether the Bankruptcy Court has jurisdiction over this case either because (1) it involves a "core proceeding" under the Bankruptcy Code, *see* 28 U.S.C § 1334, or (2) it "relates to" the case pending before the Bankruptcy Court, *see id.* (Pls.' Br. at 12-14.) But "core proceeding" and "relates to" jurisdiction are not, contrary to Plaintiffs' suggestion, the only categories of bankruptcy court jurisdiction. *See id.* The First Circuit based its finding of jurisdiction in *Middlesex* on a bankruptcy court's statutory jurisdiction over cases "arising in a case" under the Bankruptcy Code ("or perhaps arises under" the Code). 292 F.3d at 68. It declined to decide whether the case also arose under the bankruptcy court's "related to" jurisdiction. *See id.* In any event, New Polaroid has established in a filing with the Bankruptcy Court that the Bankruptcy Court has both "relates to" and "core proceeding" jurisdiction. (Objection of Polaroid Corp. to Defs.' Am. Mot. to Stay Adversary Proceeding in *In re Primary PDC, Inc.*, Case No. 01-10863 (PJW) (Bankr. D. Del.) (docket no. 9).)

not dispute this point in their brief. Certainly they do not identify any testimony that they might give—even with respect to the factual issues on which they claim (wrongly) that others' testimony will be needed (Pls.' Br. at 15-16)[3]—or explain why, if their testimony were needed, it could not be given in Massachusetts.

That leaves only Plaintiffs' new argument that the Court should not transfer the case because they will need to retain a new lawyer. (*Id.* at 16-17.) Plaintiffs do not explain, however, why their current counsel would be unable to represent them just because the case is transferred to a bankruptcy court, whose rules of procedure mirror the Federal Rules of Civil Procedure on essential matters. They have, after all, already retained a large firm in Delaware to represent them before the Bankruptcy Court. Plaintiffs should not be allowed to avoid transfer to a court where the case belongs by retaining a lawyer to represent them in the wrong court.

### D. The Bankruptcy Court Has Jurisdiction Over the Claims Against Goldman.

New Polaroid has already responded to Plaintiffs' argument (first made in one of their earlier briefs) that the Bankruptcy Court would not, if the case were transferred, have jurisdiction over the claims against Neal Goldman. (Polaroid's Transfer Br. at 29 n.14). In their opposition brief, Plaintiffs add only one argument to which New Polaroid has not yet already responded: that, because any judgment against Goldman "will be" satisfied by an Old

---

[3] One of the key factual issues to which Plaintiffs point—why New Polaroid did not hire them (Pls.' Br. at 16)—is not at issue in this case. Plaintiffs are not challenging, and cannot challenge under ERISA § 510, New Polaroid's decision not to hire them. *See infra* note 7.

Polaroid insurance policy, the claim against Goldman will not affect the bankrupt estate. (Pls.' Br. at 17.)

New Polaroid's response to this additional point is twofold. First, jurisdiction over the claim against Goldman does not, for the reasons already given, depend on an indemnification right against the bankrupt estate as Plaintiffs seem to contend. (Polaroid's Transfer Br. at 29 n.14.) Second, Plaintiffs have no factual or legal basis to assume that any Old Polaroid insurance policy will satisfy all or part of a judgment against Goldman, how coverage would be apportioned, or what coverage conditions any policy might impose.[4]

## II.  IN THE ALTERNATIVE, THE COURT SHOULD DISMISS THE CASE.

If the Court decides to retain the case, it should dismiss the second amended complaint's ERISA § 510 conspiracy claim with prejudice for the two independent, but equally compelling, reasons established in New Polaroid's opening brief: first, that the Sale Order bars Plaintiffs' claim; and second, ERISA does not authorize a cause of action for conspiracy to violate § 510. Plaintiffs have ignored the first point and have failed to offer any persuasive rebuttal to the second one.

### A.  The Sale Order Bars Plaintiffs' Claim.

As established in New Polaroid's opening brief, the Sale Order could not more clearly foreclose Plaintiffs' ERISA § 510 claim in this suit. The Sale Order both expressly provides

---

[4] Plaintiffs do not address the issue on which the Court has solicited New Polaroid's position—namely, whether it can *sua sponte* transfer the entire case without Goldman's consent—which New Polaroid addressed in its opening brief. (Polaroid's Transfer Br. at 19-20.) After New Polaroid filed its brief, Goldman filed a statement with the Court in which he did not object to the transfer of the case, but instead asked the Court to decide his pending dispositive motion before transferring the case. (Statement of Def. Neal D. Goldman in Connection with Polaroid Corp.'s Mot. to Transfer.)

that New Polaroid "shall have no liability with respect to . . . any" Old Polaroid ERISA plan and enjoins any plan participant from suing New Polaroid with respect to "any and all claims arising from or relating" to such a plan. (Polaroid Corp.'s Mem. Law in Supp. of Its Mot. to Dismiss Pls.' Second Am. Compl. ("Polaroid's Dismissal Brief").)[5] What more the Sale Order might say with respect to the issue before the Court is hard to imagine.

Plaintiffs offer no response to these (and related) provisions of the Sale Order. They do not even acknowledge them. In fact, there is only a single stray reference to the Sale Order in Plaintiffs' entire brief, which itself is a telling admission that they have no response to offer. (Pls.' Br. at 1.)

At most, Plaintiffs suggest that the liability they seek to impose on New Polaroid "arises not at all from the fact [that] the 'new' Polaroid is some sort of successor to the "old" Polaroid. They argue that liability is based directly on the conduct of OEPI [New Polaroid] . . . itself prior to the sale." (*Id.* at 6.) Plaintiffs do not elaborate on this argument. It is plain, however, that the allegedly unlawful "conduct" about which they are complaining is nothing other than New Polaroid's sale-related, failure to assume (consistent with the Bankruptcy-Court approved asset purchase agreement) Old Polaroid's alleged promise to provide them with paid healthcare coverage for so long as they remained disabled.[6] (Polaroid's Dismissal

---

[5] A companion provision extinguishes any liability that New Polaroid might otherwise have for the "dismissal" of the Old Polaroid's employees. (Sale Order at 22 (¶ 23); Polaroid's Dismissal Br. at 6.) Sale Order aside, no claim would lie against Old Polaroid (or New Polaroid) for Old Polaroid's termination of Plaintiffs' (alleged) employment as Plaintiffs were not treated any worse than any other Old Polaroid employee; all lost their jobs with Old Polaroid when Old Polaroid liquidated its assets. (Polaroid's Dismissal Br. at 10.)

[6] In one place in their brief, Plaintiffs mistakenly claim that the challenged conduct "took place prior to the debtor's [Old Polaroid's] bankruptcy filing." (Pl.'s Br. at 10.) They presumably mean to say "prior to the sale," consistent with rest of their brief and complaint allegations. (Pls.' Br. at 6; Second Am. Compl. ¶ 40.)

Brief at 12-13.) Plaintiffs' claim that they are not seeking to impose successor liability on New Polaroid, when read against their own complaint allegations and prayer for relief, cannot be taken seriously.[7]

### B. ERISA Does Not Provide a Cause of Action for Conspiracy to Violate § 510.

Plaintiffs concede a critical point: Nothing New Polaroid did in connection with the sale (even assuming the truth of Plaintiffs' allegations) can itself be condemned under the actual language of § 510. (Pls.' Br. at 3-10.) Only if New Polaroid can be held liable for *Old Polaroid's* alleged § 510 violation under a conspiracy theory of liability does the complaint state an ERISA claim against New Polaroid. (Polaroid's Dismissal Br. at 17-18; Pls.' Br. at 3.)

This Court should not follow Plaintiffs in disregarding the Supreme Court's and First Circuit's admonition not to recognize ERISA causes of action nowhere found in the actual language of the statute. Plaintiffs offer the Court no argument as to why it should do so, just a lengthy string of cases that Plaintiffs claim recognized a cause of action for conspiracy to violate § 510. Not one of these cases, however, recognized any such cause of action.[8] The three main cases on which they rely are:

---

The essential—and undisputed—point here is that the challenged conduct took place at the time and within the context of the Bankruptcy Court-approved sale proceedings.

[7]    Elsewhere in their brief (in arguing against transfer) Plaintiffs complain that New Polaroid failed to hire them. (Pls.' Brief at 16.) There is, however, no longer a failure-to-hire claim in this case. Plaintiffs dropped it from their original complaint. (Polaroid's Dismissal Br. at 12 n.12.) Even had they retained it, though, it could not survive a motion to dismiss because (1) ERISA § 510 does not cover hiring, and (2) Plaintiffs have admitted that, being permanently disabled, they are unable to work for New Polaroid (*Id.*)

[8]    Several of the cases Plaintiffs cite do not even deal with § 510. (Pls.' Br. at 7-9.) None of them therefore deserves any extended discussion. The principal case, *Crane v. Green & Freedman Baking Co.*, 134

1.  *Lessard* (Ninth Circuit). One of the principal cases on which Plaintiffs rely is the Ninth Circuit's non-bankruptcy decision in *Lessard v. Applied Risk Management*, 307 F.3d 1020 (9th Cir. 2002). (Pls.' Br. at 5-7.) New Polaroid has already addressed *Lessard* at length. (Polaroid's Dismissal Br. at 20-21 & n.15.) At least two points—both again ignored in Plaintiffs' brief—bear reemphasis. First, the Ninth Circuit's decision says nothing whatsoever about recognizing a conspiracy cause of action; the word "conspiracy" does not, in fact, even appear in the decision. Second, the Ninth Circuit held the purchaser of assets in *Lessard* (to which Plaintiffs liken New Polaroid) liable for the seller's termination of its employees on extended leaves of absence under a theory of *successor liability*. (*Id.* at 20-21.) In their brief, however, Plaintiffs have expressly disavowed any reliance on a successor liability theory (Pls.' Br. at 6), as they must given the express provision of the Sale Order extinguishing any such liability. (Polaroid's Dismissal Br. at 15, 21 n.15.)

2.  *Tobin* (District of Massachusetts). Another case on which Plaintiffs rely is *Tobin v. Nadeau*, No. Civ. A.03-11817-DPW, 2004 WL 1922134 (D. Mass. Aug. 30, 2004). At issue in *Tobin* was whether a state law claim "that, by its factual allegations, falls within

---

F.3d 17, 24 (1st Cir. 1998), stands for the unremarkable proposition that a corporation's officers may be held liable under ERISA for delinquent benefit plan contributions if there is sufficient evidence to pierce the corporate veil. *See id.* at 23-28. The word "conspiracy" does not even appear in *Crane*. Nor does it appear in the Second Circuit case to which *Crane* cited in support of its veil-piercing analysis—*Lowen v. Tower Asset Mgt., Inc.*, 829 F.2d 1209 (2d Cir. 1987)—and on which Plaintiffs also rely in their brief. The other First Circuit case to which Plaintiffs cite, *Aetna Casualty Surety Co. v. P&B Autobody*, 43 F.3d 1546 (1st Cir. 1994), does involve a conspiracy claim, but not one under ERISA. Finally, Plaintiffs have cite several dated cases dealing with the circumstances under which a non-fiduciary can be sued for participating in a fiduciary's breach of its fiduciary duty (by, for example, misappropriating plan funds). (Pls.' Br. at 7-8). This inapposite body of case law has been displaced by two more recent Supreme Court decisions, which together stand for the proposition that non-ERISA fiduciaries may only be sued for equitable restitution if they are holding ill-gotten plan assets as a result of a fiduciary breach in which they have participated. *See Harris Trust and Savings Bank v. Solomon Smith Barney, Inc.*, 530 U.S. 238 (2000); *Mertens v. Hewitt Associates*, 508 U.S. 248 (1993).

916612.1.PHI_LIT_50 12/23/04 2:43 PM

[ERISA] § 510 is completely preempted by ERISA," *id.* at *4, so as to permit removal of the case under federal question jurisdiction, *see id.* (Pls.' Br. at 3.) The principal allegation was that two management employees of the employer that terminated the plaintiff's employment "conspired" to bring about the termination so that the employer would not have to provide the plaintiff with ERISA benefits.

The court held that because § 510 prohibits a "person," not just an "employer," from discriminating against a plan participant to prevent him from "attaining" any right under an ERISA plan, § 510's reach extended beyond the employer to the agents of the employer who undertook the allegedly discriminatory employment action on its behalf. Nowhere in its opinion did the Court recognize a cause of action for conspiracy to violate § 510, let alone hold that one corporation could be held liable under that statute for conspiracy with another corporation in the termination of the latter's employees. As New Polaroid pointed out in its opening brief, the only district court of which it is aware to have addressed that precise question squarely held that no conspiracy cause of action lies under § 510. *See Cipollone v. University of Pennsylvania*, No. Civ. A. 97-6565, 1998 WL 47285, at *2 (E.D. Pa. Feb. 3, 1998). (Polaroid's Dismissal Br. at 18.)

Plaintiffs cannot plausibly liken New Polaroid to the two employees in *Tobin* who, acting as agents of the employer, terminated the plaintiff's employment. New Polaroid and Old Polaroid were and are separate employers. It is undisputed—in fact it is alleged—that Plaintiffs never worked for New Polaroid. It was Old Polaroid that employed them and Old Polaroid that terminated their benefits. (Polaroid's Dismissal Br. at 18.) New Polaroid's alleged wrongdoing was not continuing Plaintiffs' benefits. *See* § II(A) *supra*.

916612.1.PHI_LIT_50 12/23/04 2:43 PM

3.   *Eichhorn* (Third Circuit). The third § 510 case on which Plaintiffs rely, *Eichhorn v. AT&T Corp.*, 248 F.3d 131 (3d Cir. 2001), is even more attenuated than *Lessard* and *Tobin*. (Pls.' Br. at 8.) *Eichorn* involved an agreement between Lucent (including its affiliates) and the purchaser of Lucent's assets, Texas Pacific Group, under which Lucent agreed on behalf of itself (and its affiliates) that after the sale of one of its affiliates, Paradyne, to Texas Pacific Group, Lucent would not hire any of Paradyne's employees for an eight-month period. *See id.* at 136-37. The agreement had the effect of defeating the employees' "bridging rights which allowed them to retain their level of accrued pension benefits if they left AT&T [Lucent's predecessor] and returned within six months." *Id.* at 137. Denying AT&T and Lucent's motion for summary judgment, the Third Circuit held that the plaintiffs had created a triable issue of fact as to whether AT&T and Lucent, as the sellers, "had the specific intent to interfere with the Paradyne employees' pension rights or whether cancellation of the bridging rights was merely an incidental byproduct of the sale of Paradyne." *Id.* at 149.

The Plaintiffs here are wrong when they state that the "Third Circuit found that all parties to the sale . . . could be held liable for the violation of ERISA obligations of the selling entity." (Pls.' Br. at 8.) A footnote in Eichhorn makes clear that the plaintiffs brought their § 510 claim *only against the affiliated selling entities* and that the purchaser, Texas Pacific Group, was simply not involved in the case at all. *See* 248 F.3d at 149 n.8. The Third Circuit did not so much as hint that the purchaser could be liable simply for entering into an agreement whose purpose may have been to violate § 510.

916612.1.PHI_LIT_50 12/23/04 2:43 PM

## III. CONCLUSION

For the reasons set forth above and in Polaroid's opening briefs, the Court should transfer the case to the United States District Court for the District of Delaware or, in the alternative, dismiss the Plaintiffs' second amended complaint with prejudice for failure to state a claim upon which relief can be granted.

Respectfully submitted,

Richard D. Glovsky
Jeffrey Pyle
PRINCE, LOBEL, GLOVSKY & TYE LLP
585 Commercial Street
Boston, MA 02109
(617) 456-8000

Jerome A. Hoffman
Matthew Lee Wiener
DECHERT LLP
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, PA 19103
(215) 994-4000

Attorneys for Polaroid Corporation

OF COUNSEL:
J. Ian Downes
DECHERT LLP
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, PA 19103

December 23, 2004

## CERTIFICATE OF SERVICE

I certify that on December 23, 2004, the foregoing document was served upon the following counsel of record, via First Class Mail, addressed as follows:

> Harvey A. Schwartz
> Rodgers, Powers & Schwartz, LLP
> 18 Tremont Street, Suite 500
> Boston, Massachusetts 02108
>
> Michael R. Pontrelli, Esq.
> Epstein Becker & Green, PC
> 111 Huntington Avenue
> Boston, Massachusetts 02199

_____
Richard D. Glovsky