UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SALLY FERRARI, ELAINE JOHNSON JOHN MAGENHEIMER, ELIZABETH WILLIAMS, and DAVID MANISCALCO | ) ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION NO. 03-11275 (MLW) |
| v. | ) ) | |
| POLAROID CORPORATION and NEAL GOLDMAN | ) ) ) | |
| Defendants. | ) ) ) | |

### ANSWER AND COUNTERCLAIM
### OF DEFENDANT NEAL GOLDMAN

Defendant Neal Goldman ("Goldman") answers the Amended Complaint in this action

through counsel as follows:

### FIRST DEFENSE

The Amended Complaint fails to state a claim upon which relief can be granted.

### SECOND DEFENSE

Goldman answers the numbered paragraphs of the Amended Complaint as follows:

1.      Responding to the allegations of Paragraph 1 of the Amended Complaint,

Goldman admits that the first and last sentences purport to summarize the nature of this action,

and denies the remaining allegations of this paragraph.

2.      The allegations of Paragraph 2 of the Amended Complaint set forth conclusions

of law which require no response.  To the extent that Paragraph 2 contains factual allegations,

Goldman lacks knowledge and information sufficient to form a belief about the truth of these allegations, and on that basis denies them.

3.     Goldman lacks knowledge and information sufficient to form a belief about the truth of the allegations of Paragraph 3 of the Amended Complaint, and on that basis denies the allegations of this paragraph.

4.     The allegations of Paragraph 4 of the Amended Complaint set forth conclusions of law which require no response. To the extent that Paragraph 4 contains factual allegations, Goldman lacks sufficient knowledge and information sufficient to form a belief about the truth of these allegations, and on that basis denies them.

5.     The allegations of Paragraph 5 of the Amended Complaint set forth conclusions of law which require no response. To the extent that Paragraph 5 contains factual allegations, Goldman lacks knowledge and information sufficient to form a belief about the truth of these allegations, and on that basis denies them.

6.     The allegations of Paragraph 6 of the Amended Complaint set forth conclusions of law which require no response. To the extent that Paragraph 6 contains factual allegations, Goldman lacks knowledge and information sufficient to form a belief about the truth of these allegations, and on that basis denies them.

7.     Goldman lacks knowledge and information sufficient to form a belief about the truth of the allegations of Paragraph 7 of the Amended Complaint, and on that basis denies the allegations of this paragraph.

8.     Goldman lacks knowledge and information sufficient to form a belief about the truth of the allegations of Paragraph 8 of the Amended Complaint, and on that basis denies the allegations of this paragraph.

9.      Goldman lacks knowledge and information sufficient to form a belief about the truth of the allegations of Paragraph 9 of the Amended Complaint, and on that basis denies the allegations of this paragraph.

10.     Goldman lacks knowledge and information sufficient to form a belief about the truth of the allegations of Paragraph 10 of the Amended Complaint, and on that basis denies the allegations of this paragraph.

11.     Goldman lacks knowledge and information sufficient to form a belief about the truth of the allegations of Paragraph 11 of the Amended Complaint, and on that basis denies the allegations of this paragraph.

12.     Goldman admits the allegations of Paragraph 12 of the Amended Complaint.

13.     Responding to the allegations of Paragraph 13 of the Amended Complaint, Goldman admits that he is a resident of the Commonwealth of Massachusetts. Further responding, Goldman admits that he held various positions with Polaroid Corporation (the "Debtor") beginning in 1997 and continuing until the Debtor sold its business out of bankruptcy on or around July 31, 2002, but denies that Paragraph 13's description of those positions is accurate and complete. Goldman admits that he was subsequently employed by the operating company for OEPI Imaging Corporation ("OEPI"), which changed its name to Polaroid Corporation, until September 26, 2003. Goldman denies the remaining allegations of Paragraph 13.

14.     The allegations of Paragraph 14 of the Amended Complaint set forth a conclusion of law which requires no response.

15.     The allegations of Paragraph 15 set forth a conclusion of law which requires no response.

3

16.    Goldman lacks knowledge and information sufficient to form a belief about the truth of the allegations in Paragraph 16 of the Amended Complaint, and on that basis denies the allegations of this paragraph.

17.    Responding to the allegations of Paragraph 17 of the Amended Complaint, Goldman admits that on or around July 31, 2002, pursuant to an order of the United States Bankruptcy Court for the District of Delaware, OEPI purchased substantially all of the assets of the Debtor. Goldman denies the remaining allegations of Paragraph 17.

18.    Responding to the allegations of Paragraph 18 of the Amended Complaint, Goldman admits that the Debtor received 35 percent of the stock of OEPI, subject to distribution under a confirmed Chapter 11 plan of reorganization. See Second Amended and Restated Asset Purchase Agreement by and among OEP Imaging Corporation and Polaroid Corporation and the Polaroid Subsidiaries Identified Herein, dated as of July 3, 2002, §§ 1.01 (definition of "Sellers' Stock), 2.05(a), & 7.05 [hereinafter, as amended and restated, the "Purchase Agreement"]. Goldman denies the remaining allegations of Paragraph 18.

19.    Responding to the allegations of Paragraph 19 of the Amended Complaint, Goldman that at some point after July 31, 2002, the operating company for OEPI changed its name to Polaroid Corporation, but lacks knowledge and information sufficient to form a belief about the date of the name change.

20.    Responding to the allegations of Paragraph 20 of the Amended Complaint, Goldman denies that the Debtor maintained only one employee benefit plans. The remaining allegations of Paragraph 20 set forth a conclusion of law which requires no response.

21.    The allegations of Paragraph 21 of the Amended Complaint set forth a conclusion of law which requires no response.

22.    Responding to the allegations of Paragraph 22 of the Amended Complaint, Goldman admits that in or around July 2001, he was appointed to a committee which served as plan administrator for the Debtor's employee benefits plans. Goldman denies that Paragraph 22's characterization of the decisionmaking process for such plans is accurate or complete. The remaining allegations of Paragraph 22 set forth a conclusion of law about Goldman's status as a fiduciary which requires no response.

23.    Responding to the allegations of Paragraph 23 of the Amended Complaint, Goldman admits that he currently owns stock in Polaroid Corporation, but denies that he received or was promised any such stock when he accepted and assumed employment with OEPI. The allegation about Goldman acting as a fiduciary sets forth a conclusion of law which requires no response.

24.    Goldman lacks knowledge and information sufficient to form a belief about the truth of the allegations of Paragraph 24 of the Amended Complaint, and on that basis denies the allegations of this paragraph.

25.    Goldman lacks knowledge and information sufficient to form a belief about the truth of the allegations of Paragraph 25 of the Amended Complaint, and on that basis denies the allegations of this paragraph.

26.    Responding to the allegations of Paragraph 26 of the Amended Complaint, Goldman admits that employees of the Debtor historically received material at the time of hiring and thereafter which described their benefits, but lacks knowledge and information sufficient to form a belief about the content of any such material at particular times before July, 2001.

27.    Responding to the allegations of Paragraph 27 of the Amended Complaint, Goldman admits that employees generally contributed via payroll deductions to the periodic

premium payments for their medical, dental, and life insurance coverage. Goldman lacks knowledge and information sufficient to form a belief about the truth of the remaining allegations of Paragraph 27, and on that basis denies these allegations.

28.    Responding to the allegations of Paragraph 28 of the Amended Complaint, Goldman admits that the Debtor generally paid the medical, dental, and life insurance premiums for individuals on long-term disability. Goldman lacks knowledge and information sufficient to form a belief about the truth of the remaining allegations of Paragraph 28, and on that basis denies these allegations.

29.    Goldman lacks knowledge and information sufficient to form a belief about the truth of the allegations of Paragraph 29 of the Amended Complaint, and on that basis denies the allegations of this paragraph.

30.    Goldman lacks knowledge and information sufficient to form a belief about the truth of the allegations of Paragraph 30 of the Amended Complaint, and on that basis denies the allegations of this paragraph.

31.    Goldman lacks knowledge and information sufficient to form a belief about the truth of the allegations of Paragraph 31 of the Amended Complaint, and on that basis denies the allegations of this paragraph.

32.    Goldman lacks knowledge and information sufficient to form a belief about the truth of the allegations of Paragraph 32 of the Amended Complaint, and on that basis denies the allegations of this paragraph.

33.    Responding to the allegations of Paragraph 33 of the Amended Complaint, Goldman admits that the Debtor procured insurance to finance long-term disability payments,

and that the individuals thus insured continued to receive such payments after their termination by the Debtor. Goldman denies the remaining allegations of Paragraph 33.

34.    Goldman lacks knowledge and information sufficient to form a belief about the truth of the allegations of Paragraph 34 of the Amended Complaint, and on that basis denies the allegations of this paragraph.

35.    The allegations of Paragraph 35 of the Amended Complaint set forth a conclusion of law which requires no response. To the extent that Paragraph 35 contains factual allegations, Goldman lacks knowledge and information sufficient to form a belief about the truth of these allegations, and on that basis denies them.

36.    Responding to the allegations of Paragraph 36 of the Amended Complaint, Goldman admits that individuals receiving long-term disability benefits were not hired by OEPI, and that the Debtor sent such individuals a letter dated July 2, 2002. The letter is in writing and speaks for itself. Goldman denies the remaining allegations of Paragraph 36.

37.    Responding to the allegations of Paragraph 37 of the Amended Complaint, Goldman admits that by letter dated July 2, 2002, the Debtor terminated individuals who were not being hired by OEPI, and that on or around July 31, 2002, the Debtor ceased paying of group medical, dental, and life insurance premiums for those individuals. Goldman denies the remaining allegations of Paragraph 37.

38.    Responding to the allegations of Paragraph 38 of the Amended Complaint, Goldman admits that OEPI hired employees of the Debtor who were not receiving long-term disability payments and denies the remaining allegations of Paragraph 38.

39.    Goldman denies the allegations of Paragraph 39 of the Amended Complaint.

40.    The allegations of Paragraph 40 of the Amended Complaint set forth conclusions of law which require no response. To the extent that Paragraph 40 contains any factual allegations, Goldman denies them.

41.    The allegations of Paragraph 41 of the Amended Complaint set forth conclusions of law which require no response. To the extent that Paragraph 41 contains any factual allegations, Goldman denies them.

42.    The allegations of Paragraph 42 of the Amended Complaint set forth conclusions of law which require no response. To the extent that Paragraph 42 contains any factual allegations, Goldman denies them.

43.    The allegations of Paragraph 43 of the Amended Complaint set forth conclusions of law which require no response. To the extent that Paragraph 43 contains any factual allegations, Goldman denies them.

44.    Goldman lacks knowledge and information sufficient to form a belief about the truth of the allegations of Paragraph 44 of the Amended Complaint, and on that basis denies the allegations of this paragraph.

45.    Goldman lacks knowledge and information sufficient to form a belief about the truth of the allegations of Paragraph 45 of the Amended Complaint, and on that basis denies the allegations of this paragraph.

46-49.  The allegations of Paragraphs 46-49 of the Amended Complaint are not directed against Goldman. To the extent that any response is required, Goldman denies the allegations of these paragraphs.

50-54. The allegations of Paragraphs 50-54 of the Amended Complaint set forth conclusions of law which require no response.  To the extent that Paragraphs 50-54 contain factual allegations, Goldman denies them.

55.    Paragraph 55 of the Amended Complaint contains no factual allegations.  To the extent any response is required to this paragraph, Goldman reserves the right to move to strike Plaintiffs' demand for trial by jury, on the grounds that no jury is available for breach of fiduciary duty claims under the Employee Retirement Income Security Act of 1974, as amended ("ERISA").

### THIRD DEFENSE

Any alleged harm to Plaintiffs resulted from actions undertaken by the Debtor in its "settlor" capacity for which Goldman had no fiduciary responsibility, including but not limited to the sale of the Debtor's business out of bankruptcy, the concomitant termination of those individuals not hired by OEPI, and the termination of the Debtor's long-term disability, medical, dental, and life insurance plans themselves.

### FOURTH DEFENSE

Goldman had no authority or discretion as a fiduciary to ensure the financing of any employee benefit plan at issue, either before or after the Debtor declared bankruptcy.

### FIFTH DEFENSE

Plaintiffs had no right to "vested" benefits under what were employee welfare benefit plans within the meaning of 29 U.S.C. § 1002(1).

### SIXTH DEFENSE

If the Debtor undertook any contractual obligation via the letters alleged in Paragraphs 30-32 of the Amended Complaint, which Goldman denies, the Debtor did so before Goldman

became a plan administrator and he can in no event be held personally responsible as a fiduciary for any such contractual obligation of the Debtor.

## SEVENTH DEFENSE

The quoted sentence allegedly contained in such letters served to notify Plaintiffs that payroll deductions would cease for medical, dental, and life insurance premiums while Plaintiffs remained on long-term disability, and did not rise to the level of a promise of benefits at no cost under any and all circumstances.

## EIGHTH DEFENSE

The purported claim against Goldman is barred under principles of claim and issue preclusion by the confirmation of a plan of reorganization in the Debtor's pending bankruptcy proceeding in the United States Bankruptcy Court for the District of Delaware, Docket No. 01-10864 (PJW)(the "Bankruptcy Proceeding").

## NINTH DEFENSE

Plaintiffs must prosecute their purported claim against Goldman in the Bankruptcy Proceeding.

## TENTH DEFENSE

Any relief against Goldman is limited to what Plaintiffs might have obtained by prosecuting a claim against the Debtor, along with other creditors in the Bankruptcy Proceeding.

## ELEVENTH DEFENSE

Plaintiffs have waived any rights they might have had against Goldman.

## TWELFTH DEFENSE

Plaintiffs have failed to mitigate their damages.

## COUNTERCLAIM FOR DECLARATORY RELIEF

Goldman, as and for his counterclaim seeking declaratory relief, alleges through counsel as follows:

1.       In this action, Plaintiffs claim that Goldman had a fiduciary obligation to ensure that the Debtor financed medical, dental, and life insurance at no cost to them for so long as they remain disabled.  During the summer of 2002, the Debtor sold its business out of bankruptcy, terminated those individuals whom the buyer did not hire, and terminated the employee welfare benefit plans themselves.  The Debtor took these actions in its "settlor" capacity.  As an individual plan administrator, Goldman had no fiduciary responsibility for this chain of events. He lacked authority and discretion as a fiduciary to ensure the continued financing of any of the Debtors' employee welfare benefit plans.  Plaintiffs' claim against Goldman further hinges on letters which they allegedly received from the Debtor before Goldman became a plan administrator.  For multiple reasons, the alleged letters created no rights as to which Goldman had any fiduciary responsibility.

2.       Goldman is a resident of Massachusetts.  From 1997 through the sale of the Debtor's business to OEPI, he was an employee of the Debtor and held various executive, legal, and administrative positions.

3.       Sally Ferrari, Elaine Johnson, John Magenheimer, Elizabeth Williams, and David Maniscalco are the plaintiffs in this action.  Upon information and belief, they have been receiving, and continue to receive, long-term disability payments under insurance procured by the Debtor.  They claim, however, that their medical, dental, and life insurance benefits were wrongfully discontinued as alleged in the Amended Complaint.

4. This Court has subject matter jurisdiction over Goldman's counterclaim under 28 U.S.C. § 1331, in that Plaintiffs/Counterclaim-Defendants have purported to claim a breach of fiduciary duty by Goldman under ERISA.

5. Venue is proper under 28 U.S.C. § 1391(b) and 29 U.S.C. § 1332(e)(2), in that, upon information and belief, Plaintiffs/Counterclaim-Defendants reside in this judicial district.

6. In or around July 2001, Goldman was appointed, along with others, to a committee which served as plan administrator of the Debtor's employee benefit plans.

7. Among other employee benefit plans, the Debtor maintained long-term disability, medical, dental, and life insurance plans.

8. Each of these plans was an "employee welfare benefit plan" within the meaning of 29 U.S.C. § 1002(1).

9. Goldman is informed and believes, and upon that basis alleges, that these plans were in writing at all relevant times, and that the respective plan documents contained provisions addressing eligibility for benefits, financing, the powers and duties of plan administrators, and plan termination.

10. The Debtor procured insurance to cover long-term disability payments in lieu of salary.

11. The Debtor also paid periodic medical, dental, and life insurance premiums for those who had sustained long-term disabilities.

12. On or around October 12, 2001, the Debtor commenced the Bankruptcy Proceeding.

13. By April 18, 2002, an agreement was reached to sell substantially all of the Debtor's assets to OEPI.

14. Section 6.08 of the Purchase Agreement required OEPI to provide a list of employees of the Debtor to whom OEPI intended to offer employment commencing on the closing date.

15. OEPI provided such a list to the Debtor, which did not include individuals who were receiving long-term disability payments.

16. On or around July 2, 2002, the Debtor sent letters to those on long-term disability which stated in part:

> In anticipation of the upcoming sale by Polaroid Corporation of substantially all of the Company's assets, it is important that you be advised of the impact to your health and welfare benefits.
>
>     \*   \*   \*   \*
>
> Under the Asset Purchase Agreement, employees on long-term disability will not be hired by One Equity Partners. Consequently, as of the date of the closing expected in late July, 2002, you will be terminated from Polaroid Corporation, and your group medical, dental and life insurance benefits will end. However, your long-term disability benefits are insured benefits and should continue for as long as you remain LTD eligible.

17. The Bankruptcy Court approved the sale of "substantially all of the Debtor's assets," finding and determining that the "Purchase Agreement was negotiated, proposed, and entered into by the Debtor and the Purchaser without collusion, in good faith, and from arms-length bargaining positions."

18. On or around July 31, 2002, the sale to OEPI closed.

19. As stated in its July 2, 2002 letter, the Debtor terminated those receiving long-term disability payments who were not hired by OEPI, and their medical, dental, and life insurance benefits were discontinued as a result.

20. The respective plan documents provided for the discontinuance of benefits in case of any such termination from the Debtor.

13

21.     Attached as Exhibit A is a copy of the minutes for an August 15, 2002 meeting of the Board of Directors of Primary PDC, Inc. (the new name of the Debtor).

22.     At this August 15, 2002 meeting, the board unanimously adopted resolutions terminating the Debtor's long-term disability, medical, dental, life insurance and certain other benefit plans, effective that day.

23.     On or around November 18, 2002, the Bankruptcy Court confirmed a plan of reorganization for the Debtor (the "Plan").

24.     Notwithstanding the purported claim against him, Goldman contends that he has no liability to Plaintiffs on the following grounds:

    (a)     Any alleged harm to Plaintiffs resulted from actions undertaken by the Debtor in its "settlor" capacity for which Goldman had no fiduciary responsibility;

    (b)     Goldman had no authority or discretion as a fiduciary to ensure the financing of any employee welfare benefit plan, either before or after the Debtor declared bankruptcy;

    (c)     Plaintiffs had no right to "vested" benefits under any of the welfare plans at issue;

    (d)     If the Debtor undertook any contractual obligation via the letters alleged in Paragraphs 30-32 of the Amended Complaint, the Debtor did so before Goldman became a plan administrator and he can in no event be held personally responsible as a fiduciary for any such contractual obligation;

    (e)     The quoted sentence allegedly contained in such letters served to notify Plaintiffs that payroll deductions would cease for medical, dental, and life insurance premiums while Plaintiffs remained on long-term disability, and did not rise to the level of a promise of benefits at no cost under any and all circumstances; and

    (f)     The purported claim against Goldman is barred under the doctrines of claim and issue preclusion by confirmation of the Plan in the Bankruptcy Proceeding.

25.     An actual controversy exists between Plaintiffs and Goldman, which a declaration by this Court would resolve.

Based upon the foregoing, Goldman requests that this Court: dismiss the Amended Complaint as against Goldman; enter a declaratory judgment that Goldman violated no fiduciary duty to Plaintiffs, or any of them; and award Goldman such other further or different relief as justice may require.

NEAL GOLDMAN

By his attorneys,

MICHAEL R PONTRELLI

_____
Michael R. Pontrelli (BBO # 549194)
Jeffrey M. Rosin, (BBO #629216)
  Epstein, Becker & Green, P.C.
  111 Huntington Avenue
  Boston, MA 02199
  (617) 342-4000

Dated: April 7, 2004

# **Exhibit A**

**Primary PDC, Inc.**

1265 Main Street
Waltham, MA 02451

March 31, 2004

Attached is a true and accurate copy of the Primary PDC, Inc. Board of Director minutes dated August 15, 2002.

*KRKeed*

Kevin R. Pond
Past President & Secretary
Primary PDC, Inc.

*Sherh La Rocque*
Notary
My Commission Expires
February 27, 2009

# MINUTES

## BOARD OF DIRECTORS

## PRIMARY PDC, INC.

## AUGUST 15, 2002

**Time and Place of Meeting**:

A telephonic meeting of the Board of Directors (the "Board") of Primary PDC, Inc.

(the "Company") was held on August 15, 2002.

**Present**:

The following directors participated in the call:

John W. Loose
Stephen A. Bernazzani
Stephen P. Kaufman
Gary T. DiCamillo
Albin F. Moschner
Ralph Z. Sorenson
Carole F. St. Mark
Bernee D. L. Strom
Alfred M. Zeien

constituting a quorum of the members of the Board.  Also participating were:

| | |
|---|---|
| Neal Goldman | Executive Vice President, Polaroid Corporation |
| Louise Cavanaugh | Assistant General Counsel, Polaroid Corporation |
| Kevin Pond | Consultant, Primary PDC, Inc. |
| Benjamin C. Byrd, III | Consultant, Primary PDC, Inc. |
| Gary Ford | Groom Law Group |
| Lonie Hassel | Groom Law Group |
| Gregg Galardi | Partner, Skadden, Arps, Slate, Meagher & Flom, LLP |
| Chipman L. Flowers, Jr. | Associate, Skadden, Arps, Slate, Meagher & Flom, LLP |

At 4:00 p.m., the meeting was called to order.

## Principal Purposes of the Meeting

The principal purposes of the meeting was to (1) authorize an amendment to the Company's Bylaws to create the offices of President, Executive Vice President, Treasurer and Secretary (the "Amendment"), (2) remove the existing officers of the Company and appoint new officers of the Company, (3) approve the consulting agreements between the Company and Messrs. Pond and Byrd (collectively, the "Consulting Agreements"), (4) discuss outstanding issues related to the Company's benefit, pension and retirement plans (collectively, the "Plans"), (5) approve the Transition Services Agreement between the Company and Polaroid Corporation (the "Transition Services Agreement"), and (6) discuss issues related to the Pension Benefit Guaranty Corporation's ("PBGC") claim against the Company (the "PBGC Claim").

## Removal/Appointment of Officers, the Amendment, and the Consulting Agreements

After a brief opening, Mr. Goldman informed the Board that the Company did not receive the required number of signatures to adopt resolutions, by unanimous written consent, pertaining to the (1) removal of the Company's officers, (2) the appointment of new Company officers, (3) the Amendment, and (4) the Consulting Agreements.

Mr. Goldman introduced Mr. Galardi, who made a presentation to the Board. Mr. Galardi discussed the significance of removing the Company's existing officers versus acceptance of resignations from the officers of the Company. Mr. Galardi informed the Board that the removal of the officers from the Company would not trigger additional payment obligations on behalf of the Company. Also, Mr. Galardi discussed the need for the Board to adopt the Amendment and appoint new officers in order for the Company to conduct operations on a going forward basis. Additionally, Mr. Galardi discussed the significance of the Consulting Agreements and informed the Board of the powers granted to the Messrs. Pond and Byrd under the Consulting Agreements. Following the presentation, the Board and its advisors discussed the foregoing matters and requested additional background information on Mr. Pond.

After a brief introduction, Mr. Goldman introduced Mr. Pond. Mr. Pond provided the Board with a brief description of his responsibilities and duties during his thirty-three (33) years of employment with the Company. Mr. Pond informed the Board that he had discussed his responsibilities with Mr. William Murphy of Zolfo Cooper and Mr. Galardi prior to accepting his nomination for the positions of President and Secretary of the Company.

Following Mr. Pond's presentation to the Board, the Board engaged in a discussion regarding the Company's existing internal control procedures. Mr. Galardi informed the Board that the Company does have certain internal control procedures in place, particularly with respect to Company expenditures in excess of US$15,000. The Board and its advisors discussed the existing internal control procedures and the role of the Creditor's Committee with respect to such procedures.

Upon a motion duly made, seconded and carried, the following resolutions were then unanimously adopted by the Board:

## *Amended and Restated By-laws*

WHEREAS, the Board has determined that it is advisable and in the best interests of the Company to amend and restate the Company's By-laws (the "By-Laws"), to (i) reflect the change of the Company's name to "Primary PDC, Inc." and (ii) provide that the only officers of the Company shall be a President, Executive Vice President, Secretary and Treasurer; and

WHEREAS, pursuant to Section 109 of the General Company Law of the State of Delaware and Section 9(c)(1) of the Company's Restated Certificate of Incorporation, as amended, the Board is authorized to amend the By-Laws;

NOW, THEREFORE, BE IT RESOLVED, that the By-Laws be amended and restated in their entirety to read as set forth in the Amended and Restated By-Laws attached hereto as <u>Exhibit A</u>, such Amended and Restated By-Laws to become effective immediately upon the adoption of these resolutions; and

## *Appointment and Removal of Officers*

WHEREAS, the Board has determined that it is advisable and in the best interests of the Company to remove all of the officers of the Company and to appoint Kevin Pond to serve as the President and Secretary of the Company and Benjamin C. Byrd, III to serve as the Executive Vice President and Treasurer of the Company and to empower each of them to manage the day-to-day business and affairs of the Company and to take any and all actions necessary or desirable in connection with winding down the business and affairs of the Company and assisting in the implementation of the Company's Plan of Reorganization;

NOW, THEREFORE, BE IT RESOLVED, that the officers of the Company are hereby removed; and

FURTHER RESOLVED, that Kevin Pond is hereby appointed to serve as the President and Secretary of the Company and to hold such offices until his successor is chosen and qualified or until his earlier resignation or removal by the Board; and

FURTHER RESOLVED, that Benjamin C. Byrd, III is hereby appointed to serve as Executive Vice President and Treasurer of the Company and to hold such offices until his successor is chosen and qualified or until his earlier resignation or removal by the Board; and

FURTHER RESOLVED, that Kevin Pond and Benjamin C. Byrd, III be, and each of them hereby is, authorized and directed to manage the day-to-day business and affairs of the Company and to take any and all actions necessary or desirable in connection with winding down the business and affairs of the Company and assisting in the implementation of the Company's Plan of Reorganization; and

FURTHER RESOLVED, that any banking institutions chosen by the officers of the Company be, and they hereby are, designated as depositories of the funds of this Company and that the proper officers of this Company are hereby authorized and directed to open checking and other depository accounts with such banking institutions; and that any resolutions required to be adopted by banking institutions are hereby adopted in haec verba as resolutions of this Board of Directors; and

FURTHER RESOLVED, that the officers of the Company are authorized to, and the signature of two officers shall be sufficient to, sign and issue checks and make any other withdrawals and payments from any and all bank and depository accounts of the Company; and

### _Consulting Agreements_

WHEREAS, the Board has determined that it is advisable and in the best interests of the Company for the Company to enter into a Consulting Agreement with Kevin Pond, substantially in the form presented to the Board at this meeting (the "Pond Consulting Agreement"), pursuant to which the Company will retain Mr. Pond to serve as its President and Secretary, and to provide certain consulting and other services in connection therewith, and Mr. Pond will agree to serve the Company in such capacities, all upon the terms and subject to the conditions set forth therein; and

WHEREAS, the Board has determined that it is advisable and in the best interests of the Company for the Company to enter into a Consulting Agreement with Benjamin C. Byrd, III, substantially in the form presented to the Board at this meeting (the "Byrd Consulting Agreement" and, together with the Pond Consulting Agreement, the "Consulting Agreements"), pursuant to which the Company will retain Mr. Byrd to serve as its Executive President and Treasurer, and to provide certain consulting and other services in connection therewith, and Mr. Byrd will agree to serve the Company in such capacities, all upon the terms and subject to the conditions set forth therein; and

NOW, THEREFORE, BE IT RESOLVED, that the form, terms and provisions of the Consulting Agreements, substantially in the form presented to the Board at this meeting, be, and they hereby are, approved and adopted in all respects; and

FURTHER RESOLVED, that the officers of the Company be, and each of them hereby is, authorized and directed to execute and deliver, in the name and on behalf of the Company, the Consulting Agreements, substantially in the form presented to the Board at this meeting, with such changes therein and additions thereto as shall be deemed necessary, appropriate or advisable by the officer or officers executing the same on behalf of the Company, the execution thereof by such officer or officers to be conclusive evidence of the approval by them of such changes and additions; and

*General Authorizations*

FURTHER RESOLVED, that all actions taken by the officers of the Company prior to the adoption of these resolutions in furtherance of the respective transactions contemplated by and approved in these resolutions, including, without limitation, the execution and delivery on behalf of the Company of any and all instruments, documents and certificates, are hereby ratified, approved, adopted and confirmed in all respects, as and for the act and deed of the Company; and

FURTHER RESOLVED, that the officers of the Company are hereby authorized to do and perform, or cause to be done and performed, all such acts, deeds and things, and to make, execute and deliver, or cause to be made, executed and delivered, all such agreements, undertakings, documents, instruments and certificates, in the name and on behalf of the Company, as they, or each of them, may approve as being necessary, desirable or appropriate to effectuate or carry out more fully the purpose and intent of the foregoing resolutions, and to incur all such fees and expenses as in their judgment shall be necessary or advisable in order to carry out fully the intent and purposes of the foregoing resolutions and each of them in each such case, such execution or action when made or taken to be conclusive evidence of such approval and of the authority therefor hereunder.

## Benefit, Pension and Retirement Plans

After a brief introduction, Mr. Goldman introduced Ms. Hassel and Mr. Ford, whom made a presentation to the Board. Ms. Hassel provided the Board with an overview of the Company's outstanding Plans, including the Company's responsibility as the sponsor and fiduciary of the Plans, and recommended an amendment to the Company's Retirement and Savings Plan (the "401(k) Plan") to allow former employees of the Company to have their accounts in the 401(k) Plan rolled over into a comparable plan sponsored by the Polaroid Corporation (the "Rollover"). Ms. Hassel and Mr. Ford discussed the legal framework that allows the Company to grant its former employees the ability to Rollover, without negative tax consequences. During Ms. Hassel's presentation, the Board discussed comparable plans at Polaroid Corporation and the distributions to be given to the former employees of the Company. Ms. Cavanaugh provided the Board with a description of the mechanics that will be used to effectuate the Rollover.

Upon a motion duly made, seconded and carried, the following resolutions were then unanimously adopted by the Board:

NOW, THEREFORE, BE IT RESOLVED, the amendments to the retirement plans and trust agreements to reflect the changes in the company and the administration of the Plans, specifically the name changes and individuals authorized to provide direction are approved; and further

FURTHER RESOLVED, the officers of the Company be, and each of them hereby is, authorized to take any and all actions necessary or desirable to commence and maintain the Rollover, including, without limitation, (1) authorizing those persons necessary to transfer individual accounts of former employees of the Company to Polaroid Corporation and (2) to engage in discussions and correspondence with any governmental taxing authority to receive favorable tax treatment with respect to such Rollover.

**Termination of the Plans**

Ms. Hassel, with input from Mr. Ford, continued her presentation and recommended that the Board terminate the Polaroid Retirement Savings, Medical, Dental, Life Insurance, Long Term Disability and Severance Plans, the ID subsidiary 401(k), medical, dental, life insurance, short term and long term disability and severance plans, and any other employee benefit plans maintained by Primary PDC or its subsidiaries, other than the Polaroid Pension Plan. Ms. Hassel informed the Board, since the Company has no employees that the Company would obtain certain benefits by terminating these Plans, including cost savings. Ms. Hassel advised the Board that before its assets were completely distributed, the 401(k) Plan would need to apply for and receive a determination letter from the Internal Revenue Service (the "IRS") stating the Retirement Savings Plan is tax qualified (the "IRS Letter") upon its termination. This would ensure that no penalty would be assessed to individuals who participate in the Rollover or on the plan that accepts the Rollover. Ms. Hassel informed the Board that obtaining the IRS Letter takes approximately six (6) months. At the conclusion of Ms. Hassel's presentation, the Board discussed the impact of terminating these Plans on benefits owed to the Company's former employees.

Mr. Kaufman discussed the need to provide ample notice to the employees affected by the termination of the Plans. The Board discussed issues surrounding the timing of such notice and the Board agreed that the Company should be encouraged to provide notice to the former employees as soon as possible.

The Board also discussed the necessary steps to "wind down" all issues related to the Plans, including the duration of service of the Board members. Mr. Galardi informed the Board that the composition of the Board will remain intact until a plan of reorganization is consummated in the Company's Chapter 11 proceedings.

Upon a motion duly made, seconded and carried, the following resolutions were then unanimously adopted by the Board:

NOW, THEREFORE, BE IT RESOLVED, that the Polaroid Retirement Savings, Medical, Dental, Life Insurance, Long Term Disability and Severance Plans, the ID subsidiary 401(k), medical, dental, life insurance, short term and long term disability and severance plans, and any other employee benefit plans maintained by Primary PDC or its subsidiaries, other than the Polaroid Pension Plan, are hereby terminated, effective August 15, 2002;

FURTHER RESOLVED, the officers of the Company be, and each of them hereby is, authorized to take any and all actions necessary or desirable to implement termination of the above-referenced plans, including, without limitation (1) seeking a determination letter that any tax-qualified plans are qualified upon termination, (2) engaging such advisors as necessary to implement the terminations, (3) engaging in discussions and correspondence with any governmental authority to receive favorable advice; and (4) adopting and implementing such plan amendments and trust amendments as required, consistent with this objective.

FURTHER RESOLVED, upon receipt of the appropriate governmental advice or determinations, that the officers of the Company be, and each of them hereby is, authorized to take any and all actions necessary or desirable to effect the distribution of assets of the Polaroid Retirement Savings Plan and the Polaroid ID 401(k) Plan including, without limitation, to provide such notices and correspondence as necessary with respect to Plan participants, trustees, and governmental entities.

FURTHER RESOLVED, that Mr. Jeffrey Miller is hereby authorized to take any and all actions necessary to administer and maintain the Polaroid Retirement Savings Plan on behalf of the Company until such time as all assets are distributed.

## Transition Services Agreement

Ms. Cavanaugh provided the Board with an overview of the Transition Services Agreement. The Board discussed the Transition Services Agreement and the co-obligations of the signatories thereunder. Additionally, the Board discussed the oversight responsibility of the employees of Polaroid Corporation that will be performing functions on behalf of the Company under the Transition Services Agreement. Mr. Galardi discussed the Company's existing safeguards with respect to persons serving as agents of the Company. Mr. Byrd offered to develop a monthly internal control procedure and report any major findings to the Board. The Board accepted Mr. Byrd's offer.

Upon a motion duly made, seconded and carried, the following resolutions were then unanimously adopted by the Board:

NOW, THEREFORE, BE IT RESOLVED, that the form, terms and provisions of the Transition Services Agreement in substantially the form heretofore presented to the Board be, and it hereby is, approved and adopted in all respects; and

FURTHER RESOLVED, that the appropriate officers of the Company be, and they hereby are, authorized and directed to enter into, execute and deliver, for and on behalf of the Company, the Transition Services Agreement, with such changes therein and additions thereto as such officers deem necessary, proper or advisable and in the best interests of the Company, the approval of such changes or additions to be conclusively established by the execution and delivery thereof.

PBGC Claim

Ms. Hassel, with input from Mr. Galardi, made a presentation to the Board regarding the status of the PBGC Claim.  Mr. Galardi advised the Board on the outstanding legal issues surrounding the PBGC Claim.  The Board discussed the PBGC Claim and recommended the Company's officers continue to inform the Board of any major developments.

There being no further business, upon motion duly made and seconded, the meeting was adjourned at 5:30 p.m.

_____
Secretary

# EPSTEIN BECKER & GREEN, P.C.

ATTORNEYS AT LAW

111 HUNTINGTON AVENUE
26TH FLOOR
BOSTON, MA 02199-7610
617.342.4000
FAX: 617.342.4001
EBGLAW.COM

April 7, 2004

**HAND DELIVERY**

Civil Clerk of Court
United States District Court
District of Massachusetts
John J. Moakley U.S. Courthouse
1 Courthouse Way
Boston, MA 02210

     Re:  Ferrari et al. v. Polaroid Corporation and Neal Goldman:
           Civil Action No. 03-11275 (MLW)

Dear Sir/Madam:

Enclosed for filing, please find the Answer and Counterclaim of Defendant, Neal Goldman.

Thank you for your attention and assistance and please do not hesitate to contact me at (617) 342-4076 if you have any questions.

Very truly yours,

Jeffrey M. Rosin

cc:    Harvey Schwartz/Laurie Frankl
       Richard Glovsky/Jeffrey Pyle
       Jerome Hoffman/Matthew Lee Wiener

       (All With Encl.; by First Class Mail)

ATLANTA • BOSTON • CHICAGO • DALLAS • HOUSTON • LOS ANGELES
NEWARK • NEW YORK • SAN FRANCISCO • STAMFORD • WASHINGTON, D.C.

BO:121343v1

EPSTEIN BECKER GREEN WICKLIFF & HALL, P.C. IN TEXAS ONLY