UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SALLY FERRARI, ELAINE JOHNSON, ) | |
| JAMES A. MAGENHEIMER, as executor ) | |
| of the ESTATE OF JOHN ) | C.A. No. 03-11275-MLW |
| MAGENHEIMER, ELIZABETH ) | |
| WILLIAMS, and DAVID MANISCALCO ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| POLAROID CORPORATION and ) | |
| NEAL GOLDMAN ) | |
| Defendants. ) | |

PLAINTIFFS' OPPOSITION TO NEAL GOLDMAN'S MOTION FOR
JUDGMENT ON THE PLEADINGS, OR ALTERNATIVELY,
FOR SUMMARY JUDGMENT

INTRODUCTION

The plaintiffs allege In their Second Amended Complaint that Neal Goldman, Polaroid's former General Counsel, Vice President and Secretary, who was head of the LTD Plan Administration Committee, breached his fiduciary duties to the plaintiff-beneficiaries and to the Polaroid LTD plan ("Plan") in violation of ERISA, 29 U.S.C. § 1104. 5:13 PMhe plaintiffs allege Goldman failed to ensure that the plaintiffs' medical, dental and life insurance benefits would be paid, as promised, for the duration of time that the plaintiffs were receiving Long Term Disability ("LTD") payments causing them to lose these benefits since July 2002. The plaintiffs also allege that Goldman violated 29 U.S.C. §1106(b) when,

as chairperson of the Polaroid Plan Administration Committee, he negotiated employment and an equity interest in the "New" Polaroid while at the same time conspiring with "Old" Polaroid to terminate the plaintiffs' benefits, thereby breaching his fiduciary duty to act in the sole interest of the participants and beneficiaries of the Plan. As a result of Goldman's conduct, the plaintiffs lost and vested medical, dental and life insurance benefits.

Goldman moves pursuant to Fed. R. Civ. P. 12(c) for Judgment on the Pleadings in his favor, or, alternatively to convert his Rule 12(c) motion into a Motion for Summary Judgment and to enter judgment in his favor pursuant to Rule 56 standards.

For the reasons articulated below, the plaintiffs ask this Court to treat Goldman's Motion as a Motion for Judgment on the Pleadings and to deny the motion on the merits and because the plaintiffs are entitled to discovery on their claims as properly pled in their Second Amended Complaint.

## ARGUMENT

**I.     This Court Should Deny Goldman's Motion for Judgment on the Pleadings Because The Plaintiffs' Claims are Well-Pled and Deserve to Be Fleshed-out Through Discovery.**

This Court should treat Goldman's motion as a Motion for Judgment on the Pleadings, not as a motion for summary judgment, and then should deny his motion. "Judgment on the pleadings under Rule 12(c) may not be entered unless it appears beyond a doubt that the nonmoving party can prove no set of facts in support of her claim which would entitle her to relief." *McCord v. Horace Mann*

*Ins. Co.*, 2004 U.S. App. LEXIS 24765 (1st Cir., 2004). The plaintiffs' claims are well-pled and sufficiently allege actionable claims for breach of fiduciary duty against Goldman that, with the assistance of discovery, will be proven before a fact finder. At this stage "[i]t is incumbent upon the court to 'accept the complaint's allegations as true, including all reasonable inferences in favor of [the non-moving party].'" *Eggert v. Merrimac Paper Co.*, 311 F. Supp. 2d 245, 247 (D. Mass. 2004) (internal citations omitted).

Conversion of the defendant's motion to a Motion for Summary Judgment is premature and inappropriate. A court should not convert a Rule 12(c) motion to a Rule 56 motion where only one of the parties has access to key documents that will affect the outcome of the litigation. "A party is entitled to discovery with respect to information that may bear upon the disposition of a pending motion, including a motion for judgment on the pleadings…[m]utual knowledge of all relevant facts <u>gathered by both parties</u> is essential to proper litigation." *Halder v. Digital Equipment Corp.*, 1978 U.S. Dist. LEXIS 18811, 3-4 (D. Mass. 1978) (emphasis added). Though this litigation was commenced over one and one-half years ago, the parties have yet to appear before this Court. The Court has not yet held an initial scheduling conference and, most importantly, automatic disclosures have not yet been made. At this point, the parties are reliant on materials that are in their own possession without the assistance of either mandatory or optional discovery. As a result, the scale is heavily tipped in favor of the defendants because they possess superior knowledge and have access to documents that will

3

prove central to the plaintiffs' case. For instance, Goldman and Polaroid have presented selected Polaroid plan documents with their motions to the Court. These documents do not, however, tell the entire story. Most significantly, the plaintiffs' claims require proof of Goldman's motives and intent, proof that can only be obtained through discovery.

Because the plaintiffs' Second Amended Complaint properly pleads claims against Goldman, the plaintiffs are entitled to discovery of facts before any adjudication on the merits of their claims can be made. "Notice pleading . . . relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 512, 122 S. Ct. 992 ,152 L. Ed. 2d 1 (2002).

Goldman's inclusion of documents besides the complaint should not convert his motion to a Rule 56 motion. Goldman has incorporated certain corporate documents into his motion, using a selective hand in choosing which documents come before the Court. Specifically, he has incorporated the Polaroid LTD, medical and dental plans that were included in the Appendix to Defendant Polaroid Corporation's Motion to Dismiss Plaintiff's Amended Complaint**.** Not before the Court, but presumably within the defendants' possession and potentially dispositive of the plaintiffs' claims, are thousands of corporate documents, including the Plan documents for each year that the plaintiffs applied for or were in receipt of LTD benefits as well as all Summary Plan Descriptions ("SPDs") for those years.

4

Goldman's inclusion of Polaroid plan documents should not affect the Court's Rule 12(c) analysis of this motion because the documents are integral to the plaintiffs' Second Amended Complaint.[1] "[T]he court 'may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint . . . without converting the motion into one for summary judgment.'" *Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 32 (1st Cir. 2000) (*citing Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)); *Lamarche v. Metro. Life Ins. Co.*, 236 F. Supp. 2d. 50, 54-55 (D. Me. 2002). The Court should decline to convert Goldman's 12(c) motion into a motion for summary judgment because the Plan documents presented with his motion are all integral to and incorporated in the plaintiffs' Second Amended Complaint. The documents, with the exception of the Pond declaration, the consideration of which the plaintiffs contest, can all be considered part and parcel of the plaintiffs' Second Amended Complaint. *See Clorox Co. Puerto Rico v. Proctor & Gamble Commerical Co.*, 228 F.3d 24, 32 (1st Cir. 2000). *Compare Gulf Coast Bank & Trust Co. v. Reder*, 355 F. 3d 35, 38 (1st Cir. 2004) ("It is true…that not every attachment to a 12(c) motion or opposition thereto requires conversion into a motion for summary judgment") and *Rubert-Torres ex rel. Cinton-Rupert v. Hospital San Pablo, Inc.,* 205 F.3d 472, 476 (1st. Cir. 2002). *See also Beddall, et al. v. State Street Bank and Trust Co.,* 137 F.3d 12 (1st Cir. 1998) *aff'g* 1996 U.S.

---

[1] The plaintiffs do not consent to any consideration by the Court of the Declaration of Kevin R. Pond (in support of Neal Goldman's Motion of Judgment on the Pleadings, or Alternatively for Summary Judgment and the document attached to his Declaration, which he declares to be the Minutes of Primary PDC, Inc Board of Directors, August 15, 2002.

Dist. LEXIS 1844 (D. Mass 1996) (Wolf, J.) (dismissing complaint, pursuant to 12(b)(6) where Court considered documents integral to plaintiff's complaint, without converting defendant's motion into a Rule 56 motion).

This Court should address Goldman's motion as a motion for judgment on the pleadings, pursuant to Rule 12(c).

**II.    Goldman's Motion for Judgment on the Pleadings Should Be Denied Because The Plaintiffs Have Satisfied Their Notice Pleading Requirements and Have Properly Pled Claims of Fiduciary Breaches Against Goldman.**

The plaintiffs have properly pled a prima facie case for Goldman's breach of fiduciary duty pursuant to the federal notice pleading standard. Claims need only consist of "a short plain statement…showing that the pleader is entitled to relief." *Fed. R. Civ. P. 8(a)(2). See also Swierkiewicz v. Sorema*, *N.A.*, 534 U.S. 506 (2002). "The [Federal] Rules contemplate a minimal burden to bringing a claim; that claim is then fleshed out through vigorous and expansive discovery." *Zubulake v. UBS Warburg LLC.*, 217 F.R.D. 309, 311 (D.N.Y. 2003) noting *Hickman v. Taylor*, 329 U.S. 495, 500-01, 91 L. Ed 451, 67 S. Ct. 385 (1947). Plaintiffs' allegations against Goldman must, at this stage, be accepted as true. *Feliciano v. Rhode Island*, 160 F.3d. 780, 788 (1st Cir. 1998). "Where a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. at

6

514, quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 40 L.Ed. 2d 90, 94 S. Ct. 1683 (1974). The following allegations, considered with the inferences that flow from them, as well as the LTD plan documents, are sufficiently pled such that denial of Goldman's motion is mandated. *See Rivera-Gomez v. de Castro*, 843 F.2d 631, 635 (1st Cir. 1988). Plaintiffs allege that:

> The defendant Neil Goldman was a fiduciary of the Polaroid employee benefit plan as defined by 29 U.S.C. § 1102(a). At all relevant times he was a member of the Polaroid Benefits Committee and made decisions regarding Polaroid's employee benefit plan. *Second Amended Complaint* ¶ 17.
>
> As a fiduciary of an employee benefit plan, Goldman had a duty to act in the best interests of the beneficiaries and the plan. Goldman should have ensured that "old" Polaroid properly insured or otherwise adequately secured the promised medical, dental, and life insurance premiums, just as it insured the salary continuation benefit. *Second Amended Complaint* ¶ 45
>
> Goldman breached his fiduciary duty to the plaintiffs and to the plan by failing to ensure that "old" Polaroid insured or **otherwise adequately secured** the medical, dental, and life insurance premiums that were promised to each plaintiff in his or her acceptance for benefit letter. *Second Amended Complaint* ¶ 46 (emphasis added).
>
> Additionally, instead of acting in the best interests of Polaroid employees receiving Long Term Disability benefits and of the Plan, Goldman acted in his own self-interest by negotiating and accepting employment and an equity interest in the "new" Polaroid. At the same time, Goldman, as old Polaroid's General Counsel, was integral to the negotiations between old Polaroid and new Polaroid to eliminate the financial obligation to the plaintiffs to make the sale to new Polaroid more profitable, as alleged in Count One of the Second Amended Complaint. Goldman thus had an interest in the "new" Polaroid that would be satisfied if the asset sale agreement went through, giving Goldman an incentive to assist old Polaroid in terminating the employees on Long Term Disability that directly conflicted with his fiduciary duties toward the plaintiffs and the plan. *Second Amended Complaint* ¶ 47

By his acts, Goldman breached his fiduciary duty to the plaintiffs and the plan. *Second Amended Complaint* ¶ 48

By his acts, Goldman committed a prohibited transaction, as defined by 29 U.S.C. § 1106(b). *Second Amended Complaint* ¶ 49.

### A. Plaintiffs properly pled Goldman's fiduciary status and are entitled to further discovery on the issue.

Fiduciary status under ERISA is a mixed question of fact and law. *Reich v. Lancaster*, 55 F.3d 1034, 1044-1045 (5th Cir. 1995). Fiduciary duties "attach to a person who exercise[s] discretionary authority or control respecting 'management of [the] plan or…management or disposition of its assets.'" *Campbell v. Bankboston, N.A., et al.* 327 F. 3d 1, 12 (1st Cir. 2003) quoting 26 U.S.C. §1002(21)(A). The Court has at its disposal facts supporting Goldman's fiduciary status. He was General Counsel and Vice President and Secretary of the "old" Polaroid. *Second Amended Complaint* ¶ 8. Goldman admits that for the last year that the Plan was being administered, he was the Chairperson of the Plan Administration Committee. *See Memorandum of Law in Support of Neal Goldman's Motion for Judgment on the Pleadings or, Alternatively for Summary Judgment,* 3-4. The plaintiffs allege that Goldman, as a Plan Administrator, failed in his fiduciary duty to ensure that the Plan would be administered according to its provisions, which, the plaintiffs allege, included provision of medical, life and dental insurance benefits for so long as they were in receipt of LTD benefits. In this case, fiduciary duties attached to Goldman because he was charged with ensuring that the Plan was administered according to its terms and because he had

8

the power to interpret the Plan. *See Article 6.02(a) and (b) LTD Plan*. That Goldman had a fiduciary duty to ensure that the Plan was administered to the benefit of the plaintiffs in accordance with its terms is <u>specifically articulated</u> in Article 6.02 of the Plan, which states:

> Specifically, the Plan Administrator shall:
>
> (a) administer the Plan in accordance with all its terms and shall have all the powers necessary to carry out the provisions of the Plan;
> (b) have the exclusive discretionary authority to interpret the Plan on any and all matters which it has not delegated to the Plan Manager;
> (c) develop policies and procedures as may be necessary for the proper and effective administration of the Plan;
> (d) serve on a panel to make final judgment on appeals by Employees;
> (e) maintain records of its actions;
> (f) appoint the Plan Manager;
> (g) engage and consult with counsel, accountants, specialists and other persons as the Plan Administrator deems necessary and desirable;
> (h) notify the Trustee in writing of all actions the Plan Administrator desires of the Trustee; and
> (i) delegate such additional duties and responsibilities to the Plan Manager as it in [sic] its sole discretionary authority deems appropriate.

At a minimum, Article 6.02 supports the plaintiffs' pleadings and allows them to flesh-out, through the discovery process, what Goldman's specific Plan Administrator duties were in practice, including whether these duties included ensuring that Polaroid had adequately funded the Plan.

Of course, Goldman was not responsible for actually funding the plan himself from his own pocket, as Goldman appears to suggest the plaintiffs argue.

9

Providing the money to fund the plan was the employer's responsibility. However, as Plan Administrator, Goldman was responsible for taking reasonable steps to ensure that Polaroid met its obligation. For instance, if Polaroid failed to fund or provide for payment of the plaintiffs' the vested benefits, Goldman, as fiduciary could have brought suit on behalf of the plan to force Polaroid to meet its obligations. *See* 29 U.S.C. § 1132(a)(3)(emphasis added) ("A civil action may be brought by a participant, beneficiary, **or fiduciary** (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan.") *See also Laborers Fringe Benefit Funds-Detroit & Vicinity v. N.W. Concrete & Constr., Inc.,* 640 F.2d. 1350 (6th Cir. 1981) (holding that fiduciaries have standing to bring suit against non-paying employer for contracted for benefits). Discovery is required to determine what, if any, steps Goldman took to ensure that Polaroid met its financial obligations.

  The First Circuit is hesitant to dismiss complaints where there are undeveloped factual issues and novel questions of law, such as those presented in this case. *See LaLonde v. Textron, Inc.,* 369 F.3d 1 (1st Cir. 2004) (vacating dismissal, by Fed. R. Civ. P. 12(b)(6), of ERISA breach of fiduciary duty claim). In fact, in *LaLonde,* the Court underlined the importance of discovery of fiduciary claims by hypothesizing, in dicta, how discovery of certain facts would and could support the plaintiffs' allegations of fiduciary breach. *Id.* at 7. The First Circuit

emphasized the importance of application of the notice pleading standard to the defendants' Rule 12(b)(6) motion, noting, "[t]he odds of plaintiffs succeeding on their breach of fiduciary duty claims against the Textron defendants might be very long, but 'that is not the test." *Id.*, quoting, *Swierkiewicz v. Sorema N.A.*, 534 U.S. at 515. A similar approach is warranted in this case.

> B. **The plaintiffs are entitled to discovery as to whether their ERISA benefits had vested.**

The plaintiffs allege that their medical, dental and life insurance benefits had vested, based in part on written promises each received that these benefits would continue to be paid for so long as they received LTD benefits[2]. *See Second Amended Complaint*, ¶¶ 34-35. That assertion is enough to place that claim before the Court, in accordance with notice pleading. The plaintiffs can not be expected at this stage to be able to produce complete documentation to support this allegation, since the defendants, not the plaintiffs, have control over almost all the relevant documents. The plaintiffs are entitled to undertake discovery of facts that support their well-pled claim that their medical, dental and life insurance benefits were vested**.**

If these benefits were vested, Goldman had a fiduciary duty to determine whether Polaroid had made adequate financial provisions to ensure payment of these vested benefits. If Goldman determined that Polaroid had failed to adequately fund these vested benefits, Goldman was obligated to either bring suit

---

[2] Although plaintiffs have not received medical, dental or life insurance benefits since July 2002, they continue to receive disability payments through the LTD Plan.

11

pursuant to 29 U.S.C. § 1132(a)(3) or to otherwise attempt to have Polaroid rectify this problem. Further, a factfinder could conclude that Goldman breached his fiduciary duty to the plaintiffs simply by his failure to warn them that their vested benefits were not protected. *See also 29 U.S.C. 1104(a)(1)* ("[a] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and in accordance with the documents and instruments governing the plan…").

    The plaintiffs are entitled to discover relevant documents from the entire period during which the plaintiffs either applied for or were in receipt of LTD benefits to support their claim that their medical, dental and life insurance benefits were vested. Whether these benefits were vested, and correspondingly, whether Goldman therefore had a duty to ensure that the vested benefits were adequately secured, is an issue of fact that simply can not be decided at this stage in the case, and certainly not by an analysis of the selectively produced documents currently before the Court. *See Barker v. Ceridian, et al.*, 122 F.3d 628 (8th Cir. 1997) (holding that if Summary Plan Descriptions and Plan documents contradict, an ambiguity is created regarding whether medical, dental and life insurance benefits are vested that must be presented to a fact finder); *Burstein v. Ret. Account Plan for Employees. of Allegheny Health Edu.*, 334 F.3d 365 (3rd Cir. 2003) (where a Summary Plan Description conflicts with Plan documents, plaintiffs can state a claim for benefits). If the discovery of other Plan documents and/or SPDs shows, as the plaintiffs allege, that the plaintiffs' medical, dental and life insurance

benefits were vested, then these documents will also be critical to an analysis of Goldman's duties with respect to administering the Plan "according to its terms." *LTD Plan Article 6.02(a)*.

The plaintiffs also are entitled to discovery regarding the parameters of the LTD Plan. "ERISA defines 'plan' generally as 'an employee welfare benefit plan or an employee pension benefit plan' or a plan combining aspects of both, see *29 U.S.C. § 1002*(3), and determining whether a 'plan' exists requires an inquiry into 'the nature and extent of [the] employer's benefit obligations' under the package." *Rodowicz v. Mass. Mut. Life Ins. Co.,* 192 F.3d 162, 170 (1st Cir. 1999) (quoting *Belanger v. Wyman-Gordon Co., 71 F.3d 451, 454* (1st Cir. 1995)), modified on other grounds, 195 F.3d 65 *(*1st Cir. 1999)*" Tobin v. Nedeau, et al.*, 2004 U.S. Dist. LEXIS 17187, n.1. Plaintiffs' discovery may also include probing into internal protocols for the administration of the plan. *Glista v. Unum Life Insurance*, 378 F.3d 113, 122-123 (1st Cir. 2004) (holding that plaintiffs have a right to discover plan administrator's internal documents "interpreting the language of the Plan...[which] shed light on the 'legal' rule the Plan applies."). These documents will be critical to understanding whether the Plan Administrator administered benefits in light of the plaintiffs' benefits acceptance letters or in light of potentially conflicting SPD language concerning medical and life insurance benefits. Additionally, the plaintiffs are entitled to discover facts regarding whether the Plan Administrators, including Goldman, knew about the content of the benefits acceptance letters that each plaintiff received. The

plaintiffs are also entitled to discover facts regarding what "powers" Plan Administrators functionally had to "administer the Plan in accordance with all its terms and…to carry our the provisions of the Plan" as well as discovery regarding Goldman understanding of Plan terms. *See LTD Plan Article 6.02(a).* Simply, the plaintiffs are entitled to ask Goldman whether he believed that the Plan's terms included a promise of medical, dental and life insurance benefits during receipt of LTD benefits. The plaintiffs should also be entitled to inquire into facts regarding when the Plan's reservation of rights came into existence.

    **C.**    **The Plaintiffs Allege A Cognizable Claim That Goldman Breached His Fiduciary Duties When He Negotiated An Equity Interest in the New Polaroid When He Was A Fiduciary Charged With Ensuring That the Plan Was Administered According To Its Terms.**

The plaintiffs allege that at the same time that Goldman was charged with acting in their best interests to ensure that the LTD Plan was administered according to its terms, he was negotiating an equity interest for himself in the New Polaroid. *Second Amended Complaint*, ¶ 47. ERISA "imposes an unwavering duty on an ERISA trustee to make decisions with single-minded devotion to a plan's participants and beneficiaries and, in so doing, to act as a prudent person would act in a similar situation." *James v. Pirelli Armstrong Tire Corp.,* 305 F. 3d 439, 449 (6th Cir. 2002). (internal citations omitted). A fiduciary of an ERISA health care plan is obligated to act exclusively in the interest of plan beneficiaries. *Pegram v. Herdrich*, 530 U.S. 211; 120 S. Ct. 2143; 147 L. Ed. 2d 164 (2000). Goldman could not have simultaneously acted in the sole interest of the disability plan's

beneficiaries who had a vested promise of medical, dental and life insurance benefits and at the same time negotiated for himself an equity interest and employment with an entity that would benefit from the termination of the plaintiffs' benefits.  Further, as old Polaroid's General Counsel, plaintiffs are entitled to discover Goldman's role in the conspiracy between old and new Polaroid to retaliate against the plaintiffs for asserting their ERISA rights, as alleged in Count One of the Second Amended Complaint.  Goldman's participation in the alleged conspiracy between "New" and "Old" Polaroid to terminate the plaintiffs' benefits before the sale – conduct the plaintiffs expect to uncover during discovery – would constitute a further and even more egregious breach of Goldman's fiduciary duties.  *See Tobin v. Nedeau, et al.*, 2004 U.S. Dist. LEXIS 17187.

### D. The Plaintiffs Allege Claims For Which Goldman, as a Fiduciary, Can Be Held Liable.

The plaintiffs allege that Goldman's fiduciary breaches harmed both them individually and the Plan.  ERISA provides that "any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach…." *29 U.S.C. §1109(a)*.  Though the plan is no longer in existence, restoration is still possible.  Goldman's personal liability for the loss to the plaintiffs and to the plan is a direct result of a finding that he violated his fiduciary duties.  The plaintiffs

are not, as Goldman suggests, trying to hold Goldman liable for a failure to fund the plan. Instead, plaintiffs allege that Goldman is: 1) liable to the plan for the plan losses incurred as a direct result of his breach, pursuant to 29 U.S.C. §1109(a), and 2) that as a result of Goldman's fiduciary breaches he must compensate the plaintiffs for the losses they sustained as a direct result of Goldman's fiduciary failure to ensure that their promise of vested benefits was fulfilled.

The claims against Goldman meet notice pleading standards and should be permitted to proceed through discovery. If, after discovery, proof of these allegations is lacking, then summary judgment may be proper. At this stage, however, the claims are properly pled and should not be dismissed.

Finally, the plaintiffs' claim for compensatory "make whole" damages directly from Goldman, pursuant to Section 502(a)(3), an admittedly novel claim, was prompted in part by Justice Ginsburg's recent concurrence in *Aetna Health v. Davila, et al.*, 124 S. Ct. 2488, 159 L. Ed. 2d 312 (2004). In *Aetna Health*, Justice Ginsberg, though concurring in the Court's holding that the specific plaintiff's claim that a denial of benefits violated Texas state law was preempted by ERISA Sec. 502(a)(1)(B), suggested that "fresh consideration of the availability of consequential damages under §502(a)(3) is plainly in order." *Id*, at 2503. Justice Ginsberg goes on to encourage future plaintiffs, in suits against fiduciaries, to include counts for "make-whole" relief, as the plaintiffs in this case have done. Dismissal of this aspect of plaintiffs' claims at this stage would frustrate their

16

effort to obtain judicial review of this ERISA damage theory, as elucidated by Justice Ginsberg.

## CONCLUSION

The plaintiffs meet their burden of properly alleging claims against Goldman that, if supported by the evidence, are sufficient to impose liability against him. Plaintiffs are entitled to take discovery to support these properly pled claims. Goldman's Motion for Judgment on the Pleadings should be <u>denied</u>.

                        Respectfully submitted,

                        Sally Ferrari, Elaine Johnson, John Magenheimer, Elizabeth Williams, and David Maniscalco, plaintiffs,

                        By their attorneys,

                        _/s/ Harvey A. Schwartz___
                        HARVEY A. SCHWARTZ
                        BBO # 448080
                        LAURIE A. FRANKL
                        BBO # 647181
                        Rodgers, Powers and Schwartz, LLP
                        18 Tremont Street, Suite 500
                        Boston, MA 02108
                        617-742-7010

Dated:  December 9, 2004